# 16-3355-cr

---

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

Appellee,

-v-

Emily Oberst,

Defendant,

---

JASON KOPP,

Defendant-Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

**BRIEF ON APPEAL FOR DEFENDANT-APPELLANT
JASON KOPP**

---

LISA A. PEEBLES
Federal Public Defender
Melissa A. Tuohey, *on brief*
Assistant Federal Public Defender
Office of the Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
315-701-0080

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ii

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUE PRESENTED ...................................... 2

STATEMENT OF THE CASE ............................................................ 3

STATEMENT OF FACTS ................................................................. 4

SUMMARY OF THE ARGUMENT .................................................. 16

ARGUMENT .................................................................................. 17

    THE DISTRICT COURT'S IMPOSITION OF A
    235-YEAR TERM OF IMPRISONMENT WAS
    SUBSTANTIVELY UNREASONABLE. ...................................... 17

    A.    Standard of review ............................................... 17

    B.    Discussion ............................................................. 19

CONCLUSION ............................................................................... 30

CERTIFICATE OF COMPLIANCE…………………………………. 31

CERTIFICATE OF SERVICE .......................................................... 32

i

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States*, 552 U.S. 38 (2007) .............................................. 17

*United States v. Booker,* 543 U.S. 220 (2005) ...................................... 17

*United States v. Brown,* 843 F.3d 74
(2d Cir. 2016) ......................................................... 19, 20, 23, 25, 26, 27

*United States v. Castro-Valenzuela,* 304 Fed.Appx. 986
(3d Cir. 2008) ................................................................................. 26

*United States v. Cavera,* 550 F.3d 180 (2d Cir. 2008) .................... 17, 25

*United States v. Dorvee,* 616 F.3d 174 (2d Cir. 2010) .......................... 22

*United States v. Gilmore,* 599 F.3d 160 (2d Cir. 2010) ....................... 26

*United States v. Irey,* 612 F.3d 1160 (11th Cir. 2010) .......................... 26

*United States v. Jones,* 531 F.3d 163 (2d Cir. 2008) ........................... 18

*United States v. Newsom,* 402 F.3d 780 (7th Cir. 2005) ................. 25

*United States v. Rattoballi,* 452 F.3d 127 (2d Cir. 2006) ................... 17

*United States v. Rigas,* 583 F.3d 108 (2d Cir. 2009) ........................... 19

*United States v. Swackhammer,* 400 Fed.Appx. 615 (2d Cir. 2010) ...26

*United States v. Tutty,* 612 F.3d 128 (2d Cir. 2010) ...................... 22-23

*United States v. Whitley,* 503 F.3d 74 (2d Cir. 2007) .......................... 17

## STATUTES

18 U.S.C. § 2251(a) .............................................................................. 1,3

18 U.S.C. § 2252A(a)(2)(A) ................................................................... 1,3

18 U.S.C. § 2252A(a)(5)(B)............................................................1,3

18 U.S.C. § 3231 ......................................................................1

18 U.S.C. § 3553(a)............................................................ *passim*

18 U.S.C. § 3553(a)(2)(D) ....................................................11, 27-28

18 U.S.C. § 3742 ......................................................................1

28 U.S.C. § 1291 ......................................................................1

## SENTENCING GUIDELINES

U.S.S.G. § 2G2.1 ....................................................................23

U.S.S.G. § 2G2.2 ....................................................................22

U.S.S.G. § 3D1.4 ................................................................10, 23

U.S.S.G. § 4B1.5 ...................................................................10

## OTHER SOURCES

U.S. Sentencing Comm'n, Federal Child Pornography Offenses, 249 (2012), http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf............................23

U.S. Sentencing Comm'n, *Measuring Recidivism: the Criminal History Computation of Federal Sentencing Guidelines,* (May 2004) http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf. ...........29

# JURISDICTIONAL STATEMENT

This appeal is taken from a judgment of conviction entered against the Defendant-Appellant, Jason Kopp, in the United States District Court for the Northern District of New York by the Honorable Glenn T. Suddaby, Chief United States District Court Judge, and entered on September 14, 2016. JA. 241.[1] The district court had subject matter jurisdiction, pursuant to 18 U.S.C. § 3231, because this was a criminal case alleging violations of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B). JA. 16-22. Jurisdiction in this appeal is invoked in this Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. A Notice of Appeal was timely filed on September 27, 2016. JA. 248.

---

[1] Citations to the Joint Appendix (JA) are to the page numbers inserted therein.

1

## STATEMENT OF THE ISSUE PRESENTED

WHETHER THE DISTRICT COURT'S IMPOSITION OF A 235-YEAR PRISON SENTENCE WAS SUBSTANTIVELY UNREASONABLE.

## STATEMENT OF THE CASE

Jason Kopp appeals from a judgment of the Northern District of New York (Suddaby, J.), entered on September 14, 2016, principally imposing a 235 year (2,820 months) term of imprisonment. JA. 242-243. On May 20, 2016, Kopp pled guilty to 22 counts of a 28 count indictment which charged him with one count of conspiracy to sexually exploit a child; ten counts of sexual exploitation of a child; nine counts of distribution of child pornography; and two counts of possession of child pornography, all in violation of 18 U.S.C. § 2251(a) and (e); 2251(a); 2252A(a)(2)(A); and 2252A(a)(5)(B), respectively. JA. 16-21, 25, 131-138. On September 13, 2016, the district court sentenced Kopp to a combined term of 2,820 months' imprisonment, life supervised release, and a $2,200 special assessment. JA. 241-247. A Notice of Appeal was timely filed on September 27, 2016. JA. 248. The Office of the Federal Public Defender was continued by this Court as counsel to Kopp on this appeal, pursuant to the Criminal Justice Act.

3

# STATEMENT OF FACTS

## A. The offense conduct and the Indictment

The offense conduct of Jason Kopp and Emily Oberst came to light in March of 2016, when Kopp began communicating with an undercover FBI Agent, posing as "John," through Kik Messenger.[2]   Kopp's communications revealed he had engaged in sexual activity with a daughter (V-1) of a friend (Emily Oberst).  PSR ¶¶  19-20. Kopp's sexual activity with V-1 began when she was six days old and was ongoing in March of 2016, when V-1 was 14 months old.  *Id.*  Kopp's communications further revealed that he had a 2-year-old son (V-3) with whom Oberst had engaged in sexual activity.  PSR ¶ 21.

"John" asked Kopp for proof of the activity and directed Kopp to produce a sexually explicit image of V-1 with "hi john" written next to V-1 with the date the image was produced.  PSR ¶ 22.  On March 5, 2016, Kopp sent a text message to Oberst asking her to fulfill "John's" request. *Id.*  Oberst complied and Kopp sent a sexually explicit image of V-1 to "John" on March 7, 2016, that contained a typed banner across the image

---

[2] Kik, or Kik Messenger, is an instant messenger application through which users transmit messages, photos, videos, and other content.

that read, "Hi John march 6th 2016." PSR ¶¶ 23-25. John complained to Kopp about the typed banner and asked Kopp to produce a new sexually explicit image of V-1 with a handwritten sign containing a message to "John" along with the date the image was produced. PSR ¶ 25. Kopp agreed and contacted Oberst with "John's" request and Oberst produced a sexually explicit image of V-1 that contained a handwritten sign that read "4 John March 16." *Id.* Kopp sent this image, and a second image, to "John" on March 17, 2016. *Id.* Kopp sent 11 more sexually explicit images of V-1 to "John" on March 18, 2016. PSR ¶ 26.

On March 18, 2016, a federal search warrant was executed at Kopp's residence. PSR ¶ 27. Kopp agreed to speak with law enforcement and admitted to engaging in communications with "John" through Kik messenger where he had sent sexually explicit images of V-1 to "John." *Id.* Kopp explained that V-1 was Oberst's daughter and she allowed Kopp to engage in sexual activity with Kopp and allowed him to take pictures and video of the activity. *Id.*

Kopp's cooperation with law enforcement on March 18, 2016, allowed law enforcement to learn of additional offense conduct that Kopp and others had engaged in with minors. PSR ¶¶ 27-54. Kopp told FBI

5

agents that he had been involved in sexual activity with V-1 since her birth. PSR ¶ 29. Kopp had access to V-1 through her mother, Emily Oberst. *Id.* Kopp admitted engaging in sexual activity with his son, V-3, and also allowing Oberst to do the same. PSR ¶¶ 34-39. Kopp produced sexually explicit images and videos of V-3, some of which included Kopp engaging in sexual activity with V-3. *Id.*

Kopp's information led to the arrest of Oberst. Law enforcement obtained a federal search warrant for Oberst's residence on March 19, 2016, and obtained a confession from Oberst which revealed additional criminal activity Oberst had been involved in without Kopp. PSR ¶¶ 30-33. For example, Oberst admitted taking sexually explicit images of V-2, while employed at a daycare. PSR ¶ 33.

Kopp's information also led to the arrest of Kerry Smith. PSR ¶¶ 60-61. Kopp volunteered to law enforcement that he had received sexually explicit images of a minor from a person he knew only as "Kerry." PSR ¶ 60. Images of the child were found on his cell phone and agents were able to find Kerry Smith through the contact information contained in Kopp's cell phone. *Id.* When confronted by law enforcement, Smith admitted taking sexually explicit images of her 10-year-old

6

daughter and sending them to Kopp. PSR ¶ 61.  Smith was arrested on April 4, 2016.  *Id.*

During his interview, Kopp also admitted that he had taken sexually explicit pictures of other minors including his daughter when she was 10 and 11 years old (PSR ¶ 55);  his daughter's friends (PSR ¶¶ 56-57); two sisters he had babysat in 2006 (PSR ¶¶ 58-59); and Kopp's 17-year-old girlfriend in 2000 (PSR ¶¶ 62-63).

The forensic evidence taken from Kopp's cell phone, Kopp's computer, and Oberst's cell phone all corresponded with Kopp's admissions.  PSR ¶¶ 7-63.

## B.  The Plea and Sentencing

Kopp pled guilty to 22 counts of the 28-count indictment on May 2, 2016, and again on May 20, 2016.  JA. 52-61, 131-142.[3]

---

[3] Because Kopp did not enter into a written plea agreement with the government, on the date of Kopp's May 2, 2016 change of plea hearing, the government filed an 11-page "Offer of Proof" with the district court seeking Kopp's agreement to the entirety of the document.  JA. 23-34, 35-45.  During the May 2, 2016 change of plea hearing, Kopp pled guilty to the 22 counts in the indictment, which were read to him before he entered his plea.  Each count of the indictment was supported by a specific factual basis for the plea.  JA. 16-22.  The defense objected to having to admit to extraneous facts in the offer of proof that pertained to Oberst's offense conduct and sentencing enhancements.  JA. 49-50, 78-84.  The defense further argued Kopp's plea satisfied the requirements of Rule 11 of the Federal Rules of Criminal Procedure.  *Id.*  The district court disagreed and adjourned the matter for the parties to reach an agreement on the government's offer of proof or proceed to trial.  JA.  86.  The

As calculated by the PSR, Kopp's initial guideline range was life. PSR ¶ 226. This range was based on a Total Offense Level of 43 and a Criminal History Category of I. PSR ¶¶ 197, 204, 226. The total offense level resulted from the creation of 15 distinct groups for counts 1-3, 6-22, 27, and 28 of the Indictment. PSR ¶ 188.

Group 1 (count 1) pertained to the conspiracy between Oberst and Kopp, which included the agreement to sexually exploit V-1 from 2014 through March 18, 2016. PSR ¶ 71; JA. 16-17. The base offense level was set at 32 and four specific enhancements were added including a 4-level enhancement because the victim was under the age of 12; a 2-level enhancement because the offense involved sexual contact; a 2-level enhancement because the offense involved distribution of the produced images; and a 4-level enhancement because the produced images involved sadistic or masochistic conduct. PSR ¶¶ 71-75.

---

government filed an amended offer of proof on May 19, 2016 and Kopp reentered his guilty plea to 22 counts of the 28-count indictment on May 20, 2016 and agreed with the contents of the government's amended offer of proof. JA. 98, 131-138.

Groups 2 through 4 are pseudo-counts pertaining to relevant conduct involving V-1 during the time period of the conspiracy addressed in Group 1.  PSR ¶ 80, 88, 95; JA. 16-17.  The base offense level for each pseudo count group was set at 32 and three specific enhancements were added, including a 4-level enhancement because the victim was under the age of 12; a 2-level enhancement because the offense involved sexual contact; and a 2-level enhancement because the offense involved distribution of the produced images.  PSR ¶¶ 80-83, 88-90, 95-97.  Pseudo count 3 included an additional 4-level enhancement because the offense conduct portrayed sadistic or masochistic conduct.  PSR ¶ 98.

Groups 5 through 14 addressed the sexual exploitation of V-1 and V-3 by Kopp individually, as well as with Oberst, and the distribution of the produced images.  PSR ¶¶ 103, 111, 119, 126, 134, 142, 150, 158, 165, 171.  The base offense level for each of these groups was set at 32, and each group received a 4-level enhancement because the victim was under the age of 12.  PSR ¶¶ 103, 104, 111, 112, 119, 120, 126, 127, 134, 135, 142, 143, 150, 151, 158, 159, 165, 166, 171, 172.  Each of these groups received additional enhancements because the offense conduct involved the commission of a sexual act or contact (Groups 5-12; PSR ¶¶ 105, 113,

9

121, 128, 136, 144, 152, 160); distribution of the produced images (Groups 5, 6, 9, 11, 14; PSR ¶¶ 106, 114, 137, 153, 173); and material that portrayed sadistic or masochistic conduct (Groups 8, 10; PSR ¶¶ 129,145).

Group 15 pertained to Kopp's possession of child pornography with a base offense level of 18 and five specific sentencing enhancements including a 2-level enhancement because the offense involved a victim under the age of 12; a 4-level enhancement because the material portrayed sadistic or masochistic conduct; a 5-level enhancement because Kopp engaged in a pattern of activity involving the sexual abuse or exploitation of a two minors; a 2-level enhancement because Kopp used a computer to commit the offense; and a 5-level enhancement because Kopp possessed more than 600 images of child pornography. PSR ¶¶ 178-183.

Under U.S.S.G. § 3D1.4, the multiple-count adjustment increased the offense level by five, resulting in a combined adjusted offense level of 43. PSR ¶¶ 188-191. An adjustment for acceptance of responsibility and Kopp's timely plea decreased the total offense level to 46. PSR ¶¶ 192-194. Finally, pursuant to U.S.S.G. § 4B1.5(b), a five-level enhancement applied because Kopp qualified as a repeat and dangerous sex offender against minors. PSR ¶ 195. This resulted in a total adjusted offense level

of 51, but was reduced to 43, pursuant to note 2 of U.S.S.G. § 5A. PSR ¶¶ 196, 197.

With a total offense level of 43, and a criminal history category of I, Kopp's guideline range of imprisonment became life. PSR ¶ 226. Because no count of conviction carried a life sentence, the PSR added the maximum penalty for each of the 22 counts of conviction together to reach 550 years. *Id.* According to the PSR, 550 years became the guideline range of imprisonment. *Id.* Kopp objected to this guideline calculation prior to sentencing. PSR Addendum, pp. 46-47; JA. 174-175, 221-224.

Kopp's sentencing submissions argued for a combined sentence of 15 years' imprisonment based on a number of mitigating factors. JA. 165-177. First, Kopp argued that he had a traumatic childhood which included mental, physical, and sexual abuse. JA. 167-169. Second, Kopp suffered from mental health disorders stemming from sexual abuse he experienced as a child. JA. 169. Third, Kopp had a good employment history. JA. 170. Fourth, Kopp had family support and they were willing to assist in his rehabilitation efforts. JA. 171. Fifth, citing 18 U.S.C. § 3553(a)(2)(D), Kopp argued for a sentence that incorporated a prison sentence with sex offender treatment during and after incarceration. JA.

11

172. Sixth, because of his age, a sentence of 15 years' imprisonment would not allow for Kopp's release until he reached the age of 55. *Id.* Studies from the United States Sentencing Commission showed Kopp's likelihood of recidivating at this advanced age was low. JA. 172-173. Finally, Kopp argued that a life sentence was excessive and "greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a)(2).

The government's submissions argued that a sentence of 550 years' imprisonment was "fair, just, and warranted." JA. 199, 200. The government relied upon only the offense conduct, arguing that Kopp was "evil" and "vile" and the record was devoid of a single mitigating factor in support of a sentence below 550 years. JA. 200-201, 205. The government denied that the guideline range of 550 years was improperly calculated in the PSR and was not excessive or "greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553(a). JA. 207-216.

The district court conducted Kopp's sentencing hearing on September 13, 2016. JA. 218. Kopp's objection to the guideline calculation was renewed at the hearing. JA. 221. The government

12

reiterated their opposition to Kopp's argument and the district court adopted the guideline calculation set forth in the PSR.  JA.  221-225.

The government argued for a sentence of 550 years' imprisonment for all of the reasons set forth in their sentencing submissions.  The defense agreed that Kopp's conduct was terrible but asked the district court to look at Kopp's behavior once he was confronted by law enforcement.  JA.  229.  Kopp immediately admitted to his conduct and even revealed other criminal acts he had engaged in that law enforcement was unaware of.  JA.  229-230. Because Kopp was too emotional to speak on his own behalf, defense counsel read Kopp's statement of remorse into the record.  JA. 231.  Kopp expressed deep remorse to his victims and his family for his conduct.  JA.  231.  Kopp pleaded for treatment and a second chance.  JA.  232.

After hearing from the parties, the district court imposed a sentence of 2,820 months' imprisonment consisting of 360 months' imprisonment on count 1; 180 months on each of counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months' imprisonment on each of counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28 all to run consecutively.  JA. 234.  The district court believed consecutive sentences were warranted "because each count of

13

conviction constitutes a separate and distinct criminal act, which calls for a Guidelines sentence that is equivalent to a life of imprisonment." JA. 234. The district court added:

> Now, let me further explain. The Court finds that this defendant's behavior, criminal acts, which were separate and distinct as charged in the indictment, warrant no consideration of any type of leniency and the Court would be justified in giving the 6,600 months or 550 years, as the government has requested. But the Court is, also, mindful of the case law in this area, which indicates that the Court should try and achieve a lifetime sentence, based on the Guidelines.
>
> And after careful consideration of the record and the arguments presented by the parties, I find no reason to depart or vary from the applicable Guideline sentence, given this Court's responsibility to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. Section 3553(a). In fact, I find the Guideline sentence is necessary to reflect the seriousness of this defendant's numerous crimes against children, to provide just punishment for the extent of these crimes against children, and to deter others from engaging in the same incomprehensible conduct, that being the sexual exploitation of children as young as toddlers and a newborn baby. I do not find one mitigating factor for your behavior which spanned over a decade and involved the sexual exploitation of at least nine children, including your own two children.
>
> ***
>
> I find the sentence imposed today which guarantees a life sentence, which is what this Court is trying to accomplish, is justified and reasonable because you are a repeat and

14

dangerous sex offender who preys on the most vulnerable in our society and because only a life sentence can insure the safety of the community, reflect the seriousness of your offenses against children, provide just punishment for your crimes and afford adequate deterrence.

JA. 235, 237.

Kopp's sentence also included a term of life supervised release on each count to run concurrently, restitution in the amount of $1,000, and a special assessment of $2,200. JA. 237-238.

The written statement of reasons reiterated the district court's statements at sentencing. SOR.[4]

Judgment was entered on September 14, 2016. JA. 241. Kopp filed a timely notice of appeal on September 27, 2016. JA. 248.

---

[4] The district court's Statement of Reasons (SOR) has been filed under seal.

15

## SUMMARY OF THE ARGUMENT

This appeal arises from Jason Kopp's combined sentence of 235 years' imprisonment for convictions related to his production, distribution, and possession of child pornography. On appeal, Kopp contends that this sentence is shockingly high and substantively unreasonable because the district court found Kopp was not deserving of any leniency, based solely on Kopp's offense conduct, and failed to consider other 18 U.S.C. § 3553(a) factors when selecting Kopp's 235 year sentence. Therefore, this Court should vacate Kopp's judgment and remand for resentencing.

ARGUMENT

## THE DISTRICT COURT'S IMPOSITION OF A 235-YEAR TERM OF IMPRISONMENT WAS SUBSTANTIVELY UNREASONABLE.

### A.    Standard of review

In the wake of *United States v. Booker*, 543 U.S. 220, 261 (2005), this Court reviews sentences for reasonableness, which has both substantive and procedural dimensions, and amounts to review for abuse of discretion. *See United States v. Whitley*, 503 F.3d 74, 76 (2d Cir. 2007); *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 45 (2007)).

In assessing procedural reasonableness, this Court examines whether the district court (1) identified the incorrect guideline range, (2) treated the guidelines as mandatory, (3) failed to consider the guidelines along with the factors listed in 18 U.S.C. § 3553(a), (4) selected a sentence based on clearly erroneous facts, or (5) failed to adequately explain the sentence. *Gall*, 552 U.S. at 50; *United States v. Rattoballi*, 452 F.3d 127, 131 (2d Cir. 2006).

When imposing a sentence, the court must adequately explain its sentence, including "any deviation from the Guidelines range." *Cavera*,

550 F.3d at 190. While sentencing courts are "generally free to impose sentences outside the recommended range," in doing so, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 189. "[S]entencing discretion is like an elevator in that it must run in both directions." *Id.,* at 194.

Assuming a sentence is procedurally sound, this Court then considers whether the sentence was substantively reasonable. In making that assessment, a reviewing court must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *Id.,* at 190. Accordingly, this Court will "set aside a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Id.,* at 189. However, "[a]t the substantive stage of reasonableness review, an appellate court may consider whether a factor relied on by a sentencing court can bear the weight assigned to it." *Id.,* at 191. Consequently, district courts may not impose "whatever

18

sentences suit their fancy." *United States v. Jones*, 531 F.3d 163, 174 (2d Cir. 2008).

## B.    Discussion

The district court's imposition of a 235-year term of imprisonment was substantively unreasonable.   As noted above, a sentence will be found substantively unreasonable when it cannot be located within the permissible range suggested by the factors listed in 18 U.S.C. § 3553(a). A sentence is substantively unreasonable if it would "damage the administration of justice because the sentence imposed was shockingly high." *United States v. Rigas,* 583 F.3d 108, 123 (2d Cir. 2009).  Such is the case here.

Upon imposing a sentence of 235 years' imprisonment, the district court focused on no other § 3553(a) factor than Kopp's offense conduct. In so doing, the district court declared Kopp was undeserving of "consideration of any type of leniency" finding "no reason to depart or vary from the applicable Guideline sentence" because Kopp's offense conduct proved he was a "danger to the community" and likely to recidivate.   JA.   235-236. It is true, Kopp's offense conduct was deplorable.  But, as was discussed in *United States v. Brown,* 843 F.3d

19

74 (2d Cir. 2016), objectivity at sentencing is still required. Notably, in his concurring opinion, Judge Sack cautioned:

> I dare say that none of my colleagues would disagree with the proposition that our review of all sentences should be careful and objective—it is the lives and welfare of human beings with which we are dealing. But when we review a sentence in a case involving the production, distribution, or possession of child pornography, or some combination thereof—and even more so when the offense conduct includes child molestation – we are confronted with behavior that generates an especially strong, visceral revulsion in most, or perhaps all, of us. It is our certain, intense sympathy for the victim of such offenses, I think, that requires special care to guard our own objectivity and to ensure that the sentencing judge has done the same.

*Brown,* 843 F.3d at 86 (Sack, J., concurring).

Here, the government referred to Kopp as an "inherently evil" person committing "heinous" crimes resulting in the loss of "his right to live anywhere but behind bars for the rest of his life." JA. 201-202, 204-205, 212-213, 228. The district court agreed. JA. 235-237. Because the government and the district court had such a "strong, visceral revulsion" toward Kopp's criminal conduct, they failed to pay any attention to the conduct of the undercover FBI Agent during his investigation. PSR ¶ 19. Before Kopp sent the undercover agent sexually explicit images of V-1 on March 7 and March 17, 2016, Kopp had described his prior sexual activity

20

with V-1 to the agent and told him he had images of this conduct. *Id.* Rather than ask for *those* images in order to make an arrest of Kopp, the undercover agent asked Kopp to produce new sexually explicit images of V-1. PSR ¶¶ 19-26. The agent wanted the image to include a sign stating, "Hi John" with a date the image was created. *Id.* When Kopp complied, the agent did not like how Kopp followed his instructions and sent him back to do it again. *Id.* In asking for a life sentence, the government argued it was necessary because, "[a]s human beings, we have no greater obligation than to protect our children from predators like Jason Kopp." JA. 226. The government told the district court that a life sentence "broadcasts to Jason Kopp, and others like him, that law enforcement is working tirelessly to find you and that the courts will not provide leniency of any sort where, like here, none is deserved." JA. 227. The district court agreed with the government stating a life sentence was necessary "to deter others from engaging in the same incomprehensible conduct." JA. 235. The district court's sole focus on the criminal acts of Kopp, without consideration of the government's participation in a portion of that conduct is problematic. Consequently, Kopp's sentence is substantively unreasonable because if fails to account for law

21

enforcement's encouragement of Kopp's "incomprehensible conduct" that is reflected in counts 2 and 3 of the indictment. PSR ¶¶ 23, 25.

The 235-year sentence also fails to account for Kopp's acceptance of responsibility and cooperative behavior with law enforcement when he was first confronted. Kopp did not try to run or destroy evidence. Instead, he admitted he was communicating with the undercover agent through Kik Messenger and had sent him the images of V-1. PSR ¶ 27. He identified his Kik user name to law enforcement along with the dates he transmitted the images of V-1. *Id.* Kopp then went on to identify additional criminal activity he had committed with other victims and other co-defendants. PSR ¶¶ 27-63. This led to the arrest of Emily Oberst on March 19, 2016 (PSR ¶ 30) and Kerry Smith on April 4, 2016 (PSR ¶ 61).

The district court gave this little consideration stating Kopp received a reduction for acceptance of responsibility to his offense level. JA. 233-234. However, Kopp could never receive the benefit of this reduction under the Guidelines used to calculate his guideline range. Just as with U.S.S.G. § 2G2.2, the Guideline discussed in *United States v. Dorvee,* 616 F.3d 174 (2d Cir. 2010), and *United States v. Tutty,* 612

22

F.3d 128 (2d Cir. 2010), § 2G2.1, an additional Guideline used in Kopp's case, is not the product of any careful study or empirical data. "Instead, the Commission has increased the base offense level and added enhancements for production offenses 'usually as a result of congressional directives.'" *Brown,* 843 F.3d at 89 (Pooler, J., dissenting)(quoting U.S. Sentencing Comm'n, Federal Child Pornography Offenses, 249 (2012), http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.).

Here, Kopp, after forgoing trial and pleading guilty to 22 counts of the indictment, started at a base offense level of 32 for the conspiracy count related to V-1. PSR ¶ 71. Like the defendant in *Brown,* Kopp begins in a guideline range of 10 to 13 years' imprisonment but after receiving four sentencing enhancements, his range is elevated to life imprisonment. *Brown,* 843 F.3d at 89-90(Pooler, J., dissenting); PSR ¶¶ 71-79. Ultimately Kopp, a first time offender, is "catapulted" to a range of 550 years' imprisonment, after application of § 3D1.4 and a stacking of maximum penalties of all the counts of conviction. *Id.* at 88, 90.

23

Count 1 of the indictment charged Kopp and Oberst with entering into an agreement whereby they would produce and distribute sexually explicit images of V-1. JA. 16-17. The time period for this count started in 2014 and continued through March 18, 2016. *Id.* Counts 2, 3, 6-9, and 17-22 of the indictment are the substantive counts connected to the conspiracy count. JA. 17-20. Kopp received guideline calculations for three pseudo counts involving V-1 during the time period of the charged conspiracy. PSR ¶¶ 87, 94, 102. Kopp also received separate guideline calculations for the sexual exploitation of V-1 and the distribution of those images. PSR ¶¶ 110, 125, 133, 141, 149. Kopp's sexual exploitation of V-3 created additional separate guideline calculations. PSR ¶¶ 157, 164, 170, 177. Each of these guideline calculations included several enhancements based on the victim(s) being under the age of 12; distribution of the images; the commission of a sexual act or contact; and some of the images containing sadistic or masochistic conduct. PSR ¶¶ 81-83, 89-90, 96-98, 104-106, 112-114, 120-121, 127-129, 135-137, 143-145, 151-153, 159-160, 166, 172-173. Additionally, a guideline was calculated for Kopp's possession of child pornography, which included enhancements based on Kopp's use of a computer; the victim being under

24

the age of 12; the material portraying sadistic or masochistic conduct; the number of images; and a pattern of activity enhancement. PSR ¶¶ 178-183. Finally, Kopp received a 5-level enhancement for qualifying as a repeat and dangerous sex offender. PSR ¶ 195. Many of these enhancements create repeat punishment for Kopp's criminal acts. Because of the abnormalities contained within the child pornography sentencing guidelines, reviewing courts should "be especially careful in reviewing substantive reasonableness of sentences assigned for these offenses." *Cavera,* 550 F.3d at 191.

Indeed, Kopp would not have received a harsher sentence if he had murdered his victims. *See Brown,* 843 F.3d at 88 (Pooler, J., dissenting)("The district court's 60-year sentence all but ensures that Nathan Brown, a first-time offender who was 32 when arrested, will die in prison. Brown could have murdered his victims, and he would not have received a harsher sentence."). Kopp argued against a life sentence prior to sentencing because punishing him "as severely as a murderer disrupts the goal of marginal deterrence, the idea that 'the harshest sentences should be reserved for the most culpable behavior.'" *United States v. Newsom,* 402 F.3d 780, 785-786 (7th Cir. 2005). JA. 176.

25

Moreover, while discussing Brown's *60-year* sentence, Judge Pooler in her dissent pointed to other defendants who had committed acts that were more egregious than Brown and received a sentence below 60-years. *Brown,* 843 F.3d at 92 (Pooler, J., dissenting)(citing *United States v. Gilmore,* 599 F.3d 160, 162 (2d Cir. 2010)(30-year sentence for defendant who repeatedly raped his eight-year old daughter for two years); *United States v. Swackhammer,* 400 Fed.Appx. 615, 616 (2d Cir. 2010)(summary order)(168-month sentence for defendant who repeatedly molested his children); *see also United States v. Irey,* 612 F.3d 1160 (11th Cir. 2010)(en banc)(30-year sentence reasonable for one count of production where defendant "raped, sodomized, and sexually tortured fifty or more little girls, some as young as four years of age, on many occasions over a four- or five- year period," and "scripted, cast, starred in, produced, and distributed worldwide some of the  most graphic and disturbing child pornography that has ever turned up on the internet"); *United States v. Castro-Valenzuela,* 304 Fed.Appx. 986, 988 (3d Cir. 2008) (summary order) (220-month sentence for defendant who videotaped himself violently sexually assaulting  his girlfriend's seven-year-old niece)).

26

Kopp's offense conduct is no doubt appalling, but the majority of his victims, unlike those discussed above, will hopefully have no memory of the abuse, given their young age (PSR ¶¶ 19, 20, 25, 34-39, 58-59) or because they were sleeping (PSR ¶56). Kopp is not saying the young age of his victims exonerates him, but a sentence should "reflect the depth of emotional harm, both present and future, that a defendant has inflicted upon a victim and his or her family and friends." *Brown,* 843 F.3d at 86 (Sack, J., concurring).

Also, the district court over-exaggerated the threat Kopp poses to the community. The district court erroneously found that "only a life sentence can insure the safety of the community, reflect the seriousness of your offenses against children, provide just punishment for your crimes and afford adequate deterrence." JA. 237. The district court failed to consider factors that eliminate any risk Kopp posed to children in the community.

One such factor is treatment. Kopp had never before received mental health or sex offender treatment and he asked the district court to consider his need for "educational or vocational training, medical care, or other correctional treatment" when imposing his sentence. 18 U.S.C.

27

§ 3553(a)(2)(D).   The district court could not conclude, on the basis of Kopp's offense conduct alone, that Kopp would not be amendable to sex offender treatment.

This is especially true in light of the nature of Kopp's offense. Because Kopp's offense conduct included the receipt, possession, distribution, and production of child pornography, the district court, in order to protect the public, was merely required to fashion conditions of supervised release to restrict and monitor his access to minors and his use of computer and other electronic devices.[5]  Upon release, Kopp would be required to register as a sex offender in New York State and standard conditions of supervision for these offenses would prohibit Kopp's computer use unless he participates in a Computer and Internet Monitoring Program.  That same condition grants the Probation Office authority to search his computer and internet activity at any time.  A now standard condition of supervision also requires Kopp to submit his property and residence to search upon reasonable suspicion.  Additional

---

[5] Because the district court imposed a sentence of 235-years' imprisonment, no conditions of supervised release were imposed at sentencing.  The district court noted that if Kopp were released standard and special conditions of supervised release would be imposed.  JA.  237.

28

special conditions forbid his contact with anyone under 18, require him to participate in a mental health program, and subject him to polygraph and voice stress analyzer examinations.

Finally, the district court's sentence failed to include any analysis with regard to Kopp's likelihood or non-likelihood to recidivate. JA. 172-173. Kopp argued that because he was 40 years old at the time of sentencing, a sentence of 15 years' imprisonment would not allow his release before the age of 55. *Id.* Kopp argued, based on a study by the United States Sentencing Commission, *Measuring Recidivism: the Criminal History Computation of Federal Sentencing Guidelines,* (May 2004), that his advanced age made it less likely for him to recidivate upon his release from prison. *Id.* This, coupled with the district court's ability to closely supervise Kopp while on federal supervised release, proved a sentence of 235-years was not the only available sentence for the district court to impose.

Since the district court imposed a shockingly high sentence, based solely on Kopp's offense conduct and no other § 3553(a) factor, the sentence is substantively unreasonable. Accordingly, this Court should vacate the sentence imposed on Kopp.

29

## CONCLUSION

Based on the foregoing reasons, Kopp respectfully requests that this Court vacate his sentence and remand for resentencing.

February 15, 2017

Respectfully submitted,
LISA A. PEEBLES
Federal Public Defender

By:   */s/*
Melissa A. Tuohey
Assistant Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
(315) 701-0080

30

## CERTIFICATE OF COMPLIANCE

Pursuant to 2ND CIR. R. 32 (a)(7), undersigned counsel certifies that this brief complies with the type-volume limitations of FED. R. APP. P. 32 (a)(7).

1.    Exclusive of the portions exempted by FED R. APP. P. 32(a)(7)(B)(iii), this brief contains 5, 621 words.

2.    This brief has been prepared in proportionally spaced typeface using Microsoft Word 2013 software in Century 14 point font in text and Century 12 point font in footnotes.

3.    Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in FED. R. APP. P. 32 (a)(7), may result in the Court's striking this brief and imposing sanctions against the person using the brief.

*/s/*

MELISSA A. TUOHEY
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I, Valarie Bruni, certify that today, February 15, 2017, one copy of the Appellant's Brief and Joint Appendix, was served upon Mr. Richard Hartunian, United States Attorney, through Steven D. Clymer, AUSA, 100 South Clinton Street, Syracuse, New York 13261, by hand delivery and CM/ECF filing.

*/s/*
Valarie Bruni