# 16-3355-cr

---

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

Appellee,

-v-

Emily Oberst,

Defendant,

---

JASON KOPP,

Defendant-Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

## JOINT APPENDIX FOR GOVERNMENT AND DEFENDANT-APPELLANT JASON KOPP

---

LISA A. PEEBLES
Federal Public Defender
Melissa A. Tuohey, *on brief*
Assistant Federal Public Defender
Office of the Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
315-701-0080

RICHARD HARTUNIAN
United States Attorney
Steven D. Clymer
Assistant U.S. Attorney
100 South Clinton Street, 9th Fl.
Syracuse, New York 13261
315-448-0672

# TABLE OF CONTENTS[1]

DOCKET REPORT.................................................................. JA. 1

INDICTMENT...................................................................... JA. 16

GOVERNMENT'S OFFER OF PROOF
FILED MAY 2, 2016 ......................................................... JA. 23

GOVERNMENT'S SECOND OFFER OF PROOF
FILED MAY 2, 2016 ......................................................... JA. 35

TRANSCRIPT OF MAY 2, 2016,
CHANGE OF PLEA HEARING.......................................... JA. 48

MAY 6, 2016 LETTER OF RANDI J. BIANCO, ESQ.,
REGARDING GOVERNMENT'S OFFER OF PROOF
WITH ATTACHMENTS ..................................................... JA. 88

GOVERNMENT'S AMENDED OFFER OF PROOF FILED
MAY 19, 2016 ................................................................. JA. 98

GOVERNMENT'S SECOND AMENDED OFFER OF PROOF
FILED MAY 19, 2016 ....................................................... JA. 111

TRANSCRIPT OF MAY 20, 2016,
CHANGE OF PLEA HEARING.......................................... JA. 125

DEFENDANT'S SENTENCING MEMORANDUM .................... JA. 165

DEFENDANT'S LETTER TO COURT REGARDING
SENTENCING .................................................................. JA. 178

LETTER OF THOMAS A. LAZZARO, PH.D., ON BEHALF OF
DEFENDANT REGARDING SENTENCING............................. JA. 179

[1] The Presentence Report ("PSR") and the Statement of Reasons have been filed under seal in this Court.

LETTERS OF SUPPORT ON BEHALF OF DEFENDANT ......... JA. 181

GOVERNMENT'S SENTENCING MEMORANDUM ............... JA. 196

GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM ................................ JA. 207

TRANSCRIPT OF SEPTEMBER 13, 2016
SENTENCING HEARING ......................................... JA. 218

JUDGMENT IN A CRIMINAL CASE ......................... JA. 241

NOTICE OF APPEAL ................................................. JA. 248

CLERK'S CERTIFICATION OF THE RECORD ......................... JA. 249

Case 16-3355, Document 20, 02/15/2017, 1969549, Page4 of 252

APPEAL

# U.S. District Court
# Northern District of New York - Main Office (Syracuse) [LIVE - Version 6.1.1] (Syracuse)
# CRIMINAL DOCKET FOR CASE #: 5:16-cr-00108-GTS All Defendants

Case title: USA v. Kopp et al            Date Filed: 03/30/2016
Magistrate judge case number: 5:16-mj-00113-ATB

Assigned to: Chief Judge Glenn T.
Suddaby

**Defendant (1)**

| | | |
|---|---|---|
| **Jason Kopp** | represented by | **Randi Juda Bianco** |
| *TERMINATED: 09/14/2016* | | Office of the Federal Public Defender - Syracuse Office |
| | | Districts of Northern New York & Vermont |
| | | The Clinton Exchange, 3rd Floor |
| | | 4 Clinton Square |
| | | Syracuse, NY 13202 |
| | | 315-701-0080 |
| | | Fax: 315-701-0081 |
| | | Email: randi_bianco@fd.org |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Public Defender or Community Defender Appointment* |

**Lisa A. Peebles**
Office of the Federal Public Defender - Syracuse Office
Districts of Northern New York & Vermont
The Clinton Exchange, 3rd Floor
4 Clinton Square
Syracuse, NY 13202
315-701-0080
Fax: 315-701-0081
Email: lisa.peebles@fd.org
*TERMINATED: 03/24/2016*
*Designation: Public Defender or Community Defender Appointment*

**Pending Counts**                      **Disposition**

JA. 1

Case 16-3355, Document 20, 02/15/2017, 1969549, Page5 of 252

| | |
|---|---|
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (1) | Term of imprisonment: 2,820 months (235 years). This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28; all to run consecutively. Term of supervised release: LIFE. Special Assessment: $100 on each count for a total of $2,200. No fine. Restitution: $1,000. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (2-3) | Term of imprisonment: 2,820 months (235 years). This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28; all to run consecutively. Term of supervised release: LIFE. Special Assessment: $100 on each count for a total of $2,200. No fine. Restitution: $1,000. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (6-9) | Term of imprisonment: 2,820 months (235 years). This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28; all to run consecutively. Term of supervised release: LIFE. Special Assessment: $100 on each count for a total of $2,200. No fine. Restitution: $1,000. |
| 18:2251.F - SEXUAL EXPLOITATION OF CHILDREN (10-13) | Term of imprisonment: 2,820 months (235 years). This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28; all to run consecutively. Term of supervised release: LIFE. Special Assessment: $100 on each count for a total of $2,200. No fine. Restitution: $1,000. |
| 18:2252A.F - ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (14-22) | Term of imprisonment: 2,820 months (235 years). This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28; all to run |

JA. 2

Case 16-3355, Document 20, 02/15/2017, 1969549, Page6 of 252

|  |  |
|---|---|
|  | consecutively. Term of supervised release: LIFE. Special Assessment: $100 on each count for a total of $2,200. No fine. Restitution: $1,000. |
| 18:2252A.F - ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (27-28) | Term of imprisonment: 2,820 months (235 years). This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28; all to run consecutively. Term of supervised release: LIFE. Special Assessment: $100 on each count for a total of $2,200. No fine. Restitution: $1,000. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:2251.F Sexual Exploitation of Children, 18:2252A.F Activities re Material Constituting/Containing Child Pornography | |

---

Assigned to: Chief Judge Glenn T. Suddaby

**Defendant (2)**

| **Emily Oberst** | represented by | **Kimberly M. Zimmer** |
|---|---|---|
| | | Zimmer Law Office PLLC |
| | | The University Building |
| | | 120 E. Washington Street, Suite 815 |
| | | Syracuse, NY 13202 |
| | | 315-422-9909 |
| | | Fax: 315-422-9911 |
| | | Email: kimzimmerlaw@gmail.com |
| | | *LEAD ATTORNEY* |

JA. 3

*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |

18:2251.F - SEXUAL EXPLOITATION
OF CHILDREN
(1-5)

18:2251.F SEXUAL EXPLOITATION OF
CHILDREN
(1s-12s)

18:2252A.F ACTIVITIES RE MATERIAL
CONSTITUTING/CONTAINING CHILD
PORNO
(13s-19s)

18:2252A.F - ACTIVITIES RE
MATERIAL
CONSTITUTING/CONTAINING CHILD
PORNO
(23-26)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |

None

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |

18:2251.F Sexual Exploitation of Children,
18:2252A.F Activities re Material
Constituting/Containing Child
Pornography

---

**Plaintiff**

| **USA** | represented by | **Lisa M. Fletcher** |
| --- | --- | --- |

Office of the United States Attorney -
Syracuse
P.O. Box 7198
100 South Clinton Street

JA. 4

Case 16-3355, Document 20, 02/15/2017, 1969549, Page8 of 252

Syracuse, NY 13261-7198
315-448-0672
Fax: 315-448-0658
Email: lisa.fletcher@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Tamara Thomson**
Office of United States Attorney -
Syracuse Office
100 South Clinton Street
P.O. Box 7198
Syracuse, NY 13261
315-448-0672
Fax: 315-448-0658
Email: tamara.thomson@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2016 | 1 | CRIMINAL COMPLAINT as to Jason Kopp (1), Emily Oberst (2). (mae) [5:16-mj-00113-ATB] (Entered: 03/19/2016) |
| 03/19/2016 | | Text Minute Entry for initial appearance held before U.S. Magistrate Judge Andrew T. Baxter as to Jason Kopp and Emily Oberst on 3/19/2016: Copy of Complaint provided to defendants. Judge Baxter advises defendants of the charges and their constitutional rights. Formal reading of complaint is waived by each defendant. Defendants affirm that the information contained within the financial affidavits, which were executed prior to the proceeding, is true and Judge Baxter finds each defendant to be eligible for the appointment of counsel. OFPD appointed for Jason Kopp. Kimberly Zimmer appointed for Emily Oberst. Government states maximum potential penalties for the record and moves for detention as to each defendant. Both defendants waive their right to an immediate detention hearing which Judge Baxter finds to be knowing and voluntary. Preliminary hearing for Kopp and Oberst is scheduled for 4/1/2016 at 10:00 a.m. Defendants remanded to the custody of the U.S. Marshal (c/o FBI agents). Appearances: Lisa Fletcher, AUSA for the United States; Lisa Peebles, FPD for Jason Kopp; Kimberly Zimmer, Esq. for Emily Oberst. USPO: Ellen Phillips. (FTR Recorded) (mae) Modified on 3/21/2016 to correct typo. (mae) [5:16-mj-00113-ATB] (Entered: 03/19/2016) |
| 03/19/2016 | 2 | ORDER APPROVING WAIVER OF DETENTION HEARING as to Jason Kopp and Emily Oberst. Signed by U.S. Magistrate Judge Andrew T. Baxter on 3/19/2016. (mae) [5:16-mj-00113-ATB] (Entered: 03/19/2016) |
| 03/19/2016 | | TEXT NOTICE OF HEARING as to Jason Kopp and Emily Oberst: Preliminary Examination set for 4/1/2016 at 10:00 a.m. in Syracuse (courtroom 3) before U.S. |

JA. 5

| | | |
|---|---|---|
| | | Magistrate Judge Andrew T. Baxter. (mae) [5:16-mj-00113-ATB] (Entered: 03/19/2016) |
| 03/19/2016 | 4 | CJA 20: Appointment of Kimberly M. Zimmer, Esq. for Emily Oberst. Refer to the Court's website: http://www.nynd.uscourts.gov/cja.cfm for comprehensive information relating to court appointed representation. Attorneys are reminded that CJA vouchers are to be submitted to the court no later than 45 days after the final disposition of the case, unless good cause is shown. Please refer to Appendix II of the CJA Plan (Guidelines for Submitting Claims for Reimbursement Pursuant to the Criminal Justice Act of the Northern District of New York). Authorized by U.S. Magistrate Judge Andrew T. Baxter on 3/19/2016. (mae) [5:16-mj-00113-ATB] (Entered: 03/19/2016) |
| 03/19/2016 | 3 | TEXT ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Jason Kopp. Because the defendant has testified under oath or has otherwise satisfied this court that he (1) is financially unable to employ counsel and (2) does not wish to waive counsel, and because the interests of justice so require it is hereby ORDERED that: The Office of the Federal Public Defender for the Northern District of New York is assigned representation of the defendant and shall file a notice of appearance with the Clerk of Court. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 3/19/2016. (mae) [5:16-mj-00113-ATB] (Entered: 03/19/2016) |
| 03/23/2016 | 5 | NOTICE OF ATTORNEY APPEARANCE: Kimberly M. Zimmer appearing for Emily Oberst (Zimmer, Kimberly) [5:16-mj-00113-ATB] (Entered: 03/23/2016) |
| 03/23/2016 | 6 | WAIVER of Preliminary Hearing by Emily Oberst (Zimmer, Kimberly) [5:16-mj-00113-ATB] (Entered: 03/23/2016) |
| 03/23/2016 | 7 | WAIVER of Preliminary Hearing by Jason Kopp (Bianco, Randi) [5:16-mj-00113-ATB] (Entered: 03/23/2016) |
| 03/24/2016 | 9 | ORDER APPROVING 6 & 7 WAIVERS OF PRELIMINARY HEARING as to Jason Kopp and Emily Oberst. Signed by U.S. Magistrate Judge Andrew T. Baxter on 3/24/2016. (mae) [5:16-mj-00113-ATB] (Entered: 03/24/2016) |
| 03/24/2016 | 8 | NOTICE OF ATTORNEY APPEARANCE: Randi Juda Bianco appearing for Jason Kopp (Bianco, Randi) [5:16-mj-00113-ATB] (Entered: 03/24/2016) |
| 03/24/2016 | | Attorney update in case as to Jason Kopp: Attorney Lisa A. Peebles terminated as counsel of record in light of the appearance of AFPD Randi Juda Bianco. (The clerk confirmed that Ms. Bianco is replacing Ms. Peebles rather than appearing as co-counsel). (mae) [5:16-mj-00113-ATB] (Entered: 03/24/2016) |
| 03/30/2016 | | Text Minute Entry for proceedings held before U.S. Magistrate Judge Andrew T. Baxter on 3/30/2016: GRAND JURY makes a partial report and returns Indictment. Tally Sheet is ordered sealed. AUSA Fletcher's oral application for a sealing order is granted. Appearances: Lisa Fletcher, AUSA; Grand Jury Foreperson. (Steno: Sue Byrne. Time: 12:14 PM - 12:17 PM) (mae) (Entered: 03/30/2016) |
| 03/30/2016 | 10 | INDICTMENT as to Jason Kopp (1) Counts 1-3, 6-13, 14-22, 27-28 and Emily Oberst (2) Counts 1-5, 23-26. Forfeiture allegation as to defendants Kopp and Oberst. (mae) (Entered: 03/30/2016) |

JA. 6

Case 16-3355, Document 20, 02/15/2017, 1969549, Page10 of 252

| | | |
|---|---|---|
| 03/30/2016 | 11 | SEALING ORDER: The 10 Indictment is hereby SEALED until further order of the court, with the exception that a copy can be provided to the Onondaga County District Attorney's Office and the victims may be notified of the Indictment. Signed by U.S. Magistrate Judge Andrew T. Baxter on 3/30/2016. (Attachment: # 1 Public Sealing Order) (mae) (Entered: 03/30/2016) |
| 03/30/2016 | 12 | TEXT ORDER: Upon oral application of AUSA Lisa Fletcher, the 10 Indictment is hereby UNSEALED as to Jason Kopp and Emily Oberst. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 3/30/2016. (mae) (Entered: 03/30/2016) |
| 03/30/2016 | 13 | COURT NOTICE: Advising AFPD Bianco of the option for her client, Jason Kopp, to waive appearance at arraignment. If the attached form is not received by 4/11/2016 an arraignment will immediately be scheduled. (Attachment: # 1 Waiver of Arraignment Form) (mae) (Entered: 03/30/2016) |
| 03/30/2016 | 14 | COURT NOTICE: Advising Attorney Zimmer of the option for her client, Emily Oberst, to waive appearance at arraignment. If the attached form is not received by 4/11/2016 an arraignment will immediately be scheduled. (Attachments: # 1 Waiver of Arraignment Form) (mae) (Entered: 03/30/2016) |
| 04/01/2016 | 15 | NOTICE OF ATTORNEY APPEARANCE: Tamara Thomson appearing for USA as co-counsel with Attorney Lisa M. Fletcher *for the forfeiture aspects of the case.* (Thomson, Tamara) (Entered: 04/01/2016) |
| 04/04/2016 | 16 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Jason Kopp (Bianco, Randi) (Entered: 04/04/2016) |
| 04/04/2016 | 17 | ORDER APPROVING 16 WAIVER OF APPEARANCE AT ARRAIGNMENT as to Jason Kopp. The clerk is directed to enter a plea of not guilty to the 10 Indictment on behalf of Jason Kopp. Signed by U.S. Magistrate Judge Andrew T. Baxter on 4/4/2016. (mae) (Entered: 04/04/2016) |
| 04/11/2016 | 18 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Emily Oberst (Zimmer, Kimberly) (Entered: 04/11/2016) |
| 04/11/2016 | 19 | ORDER APPROVING 18 WAIVER OF APPEARANCE AT ARRAIGNMENT as to Emily Oberst. The clerk is directed to enter a plea of not guilty to the 10 Indictment on behalf of Emily Oberst. Signed by U.S. Magistrate Judge Andrew T. Baxter on 4/11/2016. (mae) (Entered: 04/11/2016) |
| 04/11/2016 | 20 | CRIMINAL PRETRIAL SCHEDULING ORDER as to Jason Kopp and Emily Oberst: Motions to be filed by 5/9/2016. Jury Trial set for 6/6/2016 at 9:30 a.m. in Syracuse before Chief Judge Glenn T. Suddaby. Signed by U.S. Magistrate Judge Andrew T. Baxter on 4/11/2016. (mae) (Entered: 04/11/2016) |
| 04/15/2016 | | TEXT NOTICE OF HEARING as to Jason Kopp: Change of Plea Hearing set for 5/2/2016 at 11:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. (lmw) (Entered: 04/15/2016) |
| 04/25/2016 | 21 | STIPULATION by USA to 60 Day Extension of Time (Fletcher, Lisa) (Entered: 04/25/2016) |

JA. 7

Case 16-3355, Document 20, 02/15/2017, 1969549, Page11 of 252

| 04/26/2016 | 22 | ORDER TO CONTINUE - Ends of Justice as to Jason Kopp and Emily Oberst: Time excluded from 4/26/16 until 6/24/16. Government discovery due by 6/7/16. Defendant discovery due by 6/14/16. Motions to be filed by 6/21/16 and shall be made returnable on 7/21/16 on submit before Judge Glenn T. Suddaby. Any change of plea shall be entered by 7/18/16. All pretrial submissions as set forth in the # 20 criminal pretrial scheduling order are due by 7/25/16. Jury Trial set for 8/8/2016 at 9:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. Signed by Chief Judge Glenn T. Suddaby on 4/26/16. (lmw) (Entered: 04/26/2016) |
| 04/29/2016 | 23 | STATUS REPORT *Bill of Particulars as to property subject to forfeiture* by USA as to Jason Kopp, Emily Oberst (Thomson, Tamara) (Entered: 04/29/2016) |
| 05/02/2016 | 24 | STATUS REPORT *OFFER OF PROOF* by USA as to Jason Kopp (Fletcher, Lisa) (Entered: 05/02/2016) |
| 05/02/2016 | 25 | Certificate of Service by USA as to Jason Kopp re 24 Status Report (Fletcher, Lisa) (Entered: 05/02/2016) |
| 05/02/2016 | 26 | STATUS REPORT *Amended Offer of Proof* by USA as to Jason Kopp (Attachments: # 1 Certificate of Service)(Fletcher, Lisa) (Entered: 05/02/2016) |
| 05/02/2016 | | TEXT MINUTE ENTRY for Change of Plea Hearing held on 5/2/16 before Judge Glenn T. Suddaby as to Jason Kopp (1): Defendant is advised of his constitutional rights and the consequences of pleading guilty. Defendant is sworn and questioned. Defendant pleads guilty to Counts 1 through 3, 6 through 22, and 27 through 28 of the Indictment and admits to forfeiture allegations. Indictment amended orally as to Count 28 - serial # ending in "GP" is corrected to end in "G9" and forfeiture allegations should include a 3rd Samsung Galaxy cell phone as set forth in Government's offer of proof. No objections from Defendant. Government states a factual basis for the plea. Defendant objects to the facts contained within the Governments Offer of Proof. Defense requests 10 minute adjournment. Defense requests permission to brief the issue as to what facts are required to be admitted. Judge denies request and advises defendant that he can either admit to the facts contained within the offer of proof or proceed with trial. Defense would like more time to determine which facts in the offer of proof the defendant will admit to and which facts he will not admit to. Change of plea rescheduled for 5/10/16 at 10:00 am. Defendant is remanded to USMS. APP: Lisa Fletcher, AUSA; Randi Bianco, Esq. and Courtenay McKeon for Defendant. CRD: L. Welch (Court Reporter: Eileen McDonough) (Time: 11:00 am - 12:05 pm) (lmw) (Entered: 05/02/2016) |
| 05/02/2016 | | TEXT NOTICE OF HEARING as to Jason Kopp: Change of Plea Hearing rescheduled for 5/10/2016 at 10:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. (lmw) (Entered: 05/02/2016) |
| 05/03/2016 | 27 | TRANSCRIPT REQUEST by Jason Kopp for proceedings held on 5/2/16 before Judge Suddaby. (Bianco, Randi) (Entered: 05/03/2016) |
| 05/04/2016 | 28 | TRANSCRIPT REQUEST by USA as to Jason Kopp for proceedings held on 5/2/2016 before Judge Hon. Glenn T. Suddaby. (Fletcher, Lisa) (Entered: 05/04/2016) |

JA. 8

Case 16-3355, Document 20, 02/15/2017, 1969549, Page12 of 252

| 05/06/2016 | 29 | Letter from Randi J. Bianco as to Jason Kopp requesting Letter Regarding Change of Plea Hearing (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B)(Bianco, Randi) (Entered: 05/06/2016) |
| --- | --- | --- |
| 05/06/2016 | 30 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Jason Kopp: Change of Plea held on 5/2/2106 before Judge Suddaby, Court Reporter/Transcriber: Eileen McDonough,Telephone number: 315-234-8546. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/27/2016. Redacted Transcript Deadline set for 6/6/2016. Release of Transcript Restriction set for 8/4/2016. Notice of Intent to Redact due by 5/11/2016 (etm, ) (Entered: 05/06/2016) |
| 05/09/2016 | | TEXT NOTICE adjourning the change of plea hearing for Jason Kopp scheduled for 5/10/16 until further notice of the court. Deadlines in the # 22 Order to Continue remain in effect as to Jason Kopp.(lmw) (Entered: 05/09/2016) |
| 05/19/2016 | 31 | STATUS REPORT *AMENDED OFFER OF PROOF* by USA as to Jason Kopp (Fletcher, Lisa) (Entered: 05/19/2016) |
| 05/19/2016 | 32 | STATUS REPORT *AMENDED OFFER OF PROOF* by USA as to Jason Kopp (Attachments: # 1 Certificate of Service)(Fletcher, Lisa) (Entered: 05/19/2016) |
| 05/20/2016 | | TEXT MINUTE ENTRY for Change of Plea Hearing held on 5/20/16 before Judge Glenn T. Suddaby as to Jason Kopp (1): Defendant is advised of his constitutional rights and the consequences of pleading guilty. Defendant is sworn and questioned. Defendant pleads guilty to Counts 1 through 3, 6 through 22 and 27 through 28 of the Indictment and admits to forfeiture allegations as amended by Government to include one additional Samsung Galaxy phone. Government states a factual basis for the plea. Maximum possible penalties are stated for the record. Court accepts plea of guilty to Counts 1 through 3, 6 through 22, and 27 through 28 of the Indictment. No plea agreement. Sentencing is scheduled for 9/14/16 at 10:00 a.m. in Syracuse, New York. Court orders a Presentence Report from Probation. Defendant is remanded to USMS. APP: Lisa Fletcher, AUSA; Randi Bianco, Esq. for Defendant. CRD: L. Welch (Court Reporter: Diane Martens) (Time: 9:00 am - 9:48 am) (lmw) (Entered: 05/20/2016) |
| 05/20/2016 | 33 | GUIDELINE ORDER as to Jason Kopp: Sentencing set for 9/14/2016 at 10:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. Government Sentencing Memo Deadline 8/24/2016. Defendant Sentencing Memo Deadline 8/24/2016. Signed by Chief Judge Glenn T. Suddaby on 5/20/16. (lmw) (Entered: 05/20/2016) |

Case 16-3355, Document 20, 02/15/2017, 1969549, Page13 of 252

| | | |
|---|---|---|
| 05/24/2016 | 34 | Letter from Tamara B. Thomson as to Jason Kopp requesting that the proposed Preliminary Order of Forfeiture be signed, and filed, with an electronically certified copy returned. (Attachments: # 1 Proposed Order/Judgment)(Thomson, Tamara) (Entered: 05/24/2016) |
| 05/25/2016 | 35 | SUPERSEDING INDICTMENT as to Emily Oberst (2) : count(s) 1s-12s, 13s-19s, with Forfeiture Allegation. (sg) (Entered: 05/26/2016) |
| 05/25/2016 | | TEXT Minute Entry for proceedings held before Magistrate Judge Therese Wiley Dancks on 5/25/2016: GRAND JURY makes a partial report and returns Superseding Indictment as to defendant Emily Oberst. No special requests. Tally Sheet is ordered sealed. (Court Reporter C. Darche) (sg) (Entered: 05/26/2016) |
| 05/26/2016 | 36 | TEXT NOTICE to Counsel for Defendant EMILY OBERST: A 35 Superseding Indictment dated 5/25/2016 has been filed with the Court. In the event the Defendant wishes to waive appearance for an arraignment, both the Defendant and Defendant's counsel must complete and electronically file with the Court the attached form by 6/2/2016. If the Court does not receive the form by that date the Court will IMMEDIATELY schedule the arraignment of your client. Because of Speedy Trial issues, the Court appearance for arraignment may be scheduled with very little advanced notice. If Defendant wishes to schedule an arraignment, please contact the Courtroom Deputy Clerk for Magistrate Judge Dancks. (sg) (Entered: 05/26/2016) |
| 06/02/2016 | 37 | Letter as to Emily Oberst requesting additional time to file the Waiver of Appearance at Arraignment (Zimmer, Kimberly) (Entered: 06/02/2016) |
| 06/02/2016 | 38 | TEXT ORDER granting # 37 Letter Request filed by Emily Oberst for an extension to file a waiver of personal appearance at arraignment until 6/9/16. SO ORDERED by Chief Judge Glenn T. Suddaby on 6/2/16. (lmw) (Entered: 06/02/2016) |
| 06/07/2016 | 39 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Emily Oberst (Zimmer, Kimberly) (Entered: 06/07/2016) |
| 06/08/2016 | 40 | ORDER APPROVING 39 Waiver of Presence at Arraignment and entry of plea of not guilty to 35 Superseding Indictment as to Defendant Emily Oberst. SO ORDERED by Magistrate Judge Therese Wiley Dancks on 6/8/2016. (sg) (Entered: 06/08/2016) |
| 06/08/2016 | 41 | TEXT ORDER as to Emily Oberst: All deadlines as set forth in the # 22 Order to Continue - Ends of Justice remain the same. Government discovery due by 6/7/16. Defendant discovery due by 6/14/16. Motions to be filed by 6/21/16 and shall be made returnable on 7/21/16 on submit before Judge Glenn T. Suddaby. Any change of plea shall be entered by 7/18/16. All pretrial submissions as set forth in the # 20 criminal pretrial scheduling order are due by 7/25/16. Jury Trial set for 8/8/2016 at 9:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. SO ORDERED by Chief Judge Glenn T. Suddaby on 6/8/16. (lmw) (Entered: 06/08/2016) |
| 06/10/2016 | 42 | PRELIMINARY ORDER OF FORFEITURE FOR SPECIFIC PROPERTY as to Jason Kopp. Signed by Chief Judge Glenn T. Suddaby on 6/10/2016. (lah) (Entered: 06/10/2016) |
| 06/22/2016 | 43 | PROCESS RECEIPT AND RETURN of USM 285 Returned executed on 6/21/2016. Forfeited property in custody of USMS and FBI as listed on attachment (lah) (Entered: |

JA. 10

| | | |
|---|---|---|
| | | 06/22/2016) |
| 06/23/2016 | [44](#) | STIPULATION by USA to 90 Day Extension of Time (Fletcher, Lisa) (Entered: 06/23/2016) |
| 06/23/2016 | [45](#) | ORDER TO CONTINUE - Ends of Justice as to Emily Oberst: Time excluded from 6/23/16 until 9/20/16. Government discovery due by 9/6/16. Defendant discovery due by 9/13/16. Motions to be filed by 9/20/16 and shall be made returnable on 10/20/16 on submit before Judge Glenn T. Suddaby. Any change of plea shall be entered by 10/17/16. All pretrial submissions as set forth in the # [20](#) criminal pretrial scheduling order are due by 10/24/16. Jury Trial set for 11/7/2016 at 9:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. Signed by Chief Judge Glenn T. Suddaby on 6/23/16. (lmw) (Entered: 06/23/2016) |
| 06/29/2016 | [46](#) | PROCESS RECEIPT AND RETURN of USM-285 Returned executed on 6/22/2016 . Notice of criminal forfeiture proceedings served by certified mail on Emily Oberst through counsel. (lah) (Entered: 06/29/2016) |
| 06/29/2016 | [47](#) | PROCESS RECEIPT AND RETURN of USM-285 Returned executed as to Nicole Stala on 6/29/2016. Notice of criminal forfeiture proceedings served by certified mail. (lah) (Entered: 06/29/2016) |
| 06/29/2016 | [48](#) | PROCESS RECEIPT AND RETURN of USM-285 Returned executed as to Janet Oberst on 6/20/2016. Notice of criminal forfeiture proceedings served by certified mail. (lah) (Entered: 06/29/2016) |
| 07/19/2016 | | TEXT NOTICE OF HEARING as to Jason Kopp: Due to a conflict with the Court's calendar, Sentencing is rescheduled for 9/13/2016 at 10:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. Sentencing memorandum remain due by 8/24/16.(lmw) (Entered: 07/19/2016) |
| 07/27/2016 | [49](#) | PRESENTENCE INVESTIGATION REPORT - INITIAL DISCLOSURE [LODGED] as to Jason Kopp. The Presentence Investigation Report in this matter is now available for review. Any objections to the report shall be served on the Probation Office within 14 days of this notice, by mailing a hard copy to the Probation Officer. Please contact the probation officer who prepared the report if you have any questions.**[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (bjw, ) (Entered: 07/27/2016) |
| 07/28/2016 | [50](#) | SERVICE by Publication of notice of criminal forfeiture proceedings; Last publication date July 21, 2016 in official government internet site www.forfeiture.gov. *The claim deadline is August 21, 2016;* filed by USA (Thomson, Tamara) (Entered: 07/28/2016) |
| 08/01/2016 | [51](#) | Letter from Randi J. Bianco, Esq. as to Jason Kopp requesting one week extension to file objections to PSR (Bianco, Randi) (Entered: 08/01/2016) |
| 08/01/2016 | 52 | TEXT ORDER granting # [51](#) Defendant Jason Kopp's Letter Request for an extension until 8/12/16 to file objections to Presentence Investigation Report. SO ORDERED by Chief Judge Glenn T. Suddaby on 8/1/16. (lmw) (Entered: 08/01/2016) |

## JA. 11

| 08/18/2016 | 53 | Letter from Randi J. Bianco, Esq. as to Jason Kopp requesting permission to file oversized Sentencing Memo (Bianco, Randi) (Entered: 08/18/2016) |
|---|---|---|
| 08/18/2016 | 54 | TEXT ORDER granting # 53 Letter Request filed by Jason Kopp to file an oversized sentencing memorandum not to exceed 14 pages in length. Signed by Chief Judge Glenn T. Suddaby on 8/18/16. (lmw) (Entered: 08/18/2016) |
| 08/24/2016 | 55 | SENTENCING MEMORANDUM by Jason Kopp (Bianco, Randi) (Entered: 08/24/2016) |
| 08/24/2016 | 56 | DEFT Jason Kopp: CHARACTER LETTER(S) RE: SENTENCING submitted by Jason Kopp (Bianco, Randi) (Entered: 08/24/2016) |
| 08/24/2016 | 57 | DEFT Jason Kopp: CHARACTER LETTER(S) RE: SENTENCING submitted by Dr.Thomas A. Lazzaro (Bianco, Randi) (Entered: 08/24/2016) |
| 08/24/2016 | 58 | DEFT Jason Kopp: CHARACTER LETTER(S) RE: SENTENCING submitted by several individuals (Bianco, Randi) (Entered: 08/24/2016) |
| 08/24/2016 | 59 | SENTENCING MEMORANDUM by USA as to Jason Kopp (Fletcher, Lisa) (Entered: 08/24/2016) |
| 08/26/2016 | 60 | PRESENTENCE INVESTIGATION REPORT - FINAL DISCLOSURE [LODGED] as to Jason Kopp. The final version of the Presentence Investigation Report, including all revisions and the most recent Addendum is now available for review. This version of the report will be used by the Court at the time of sentencing. **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. Any further distribution or dissemination is prohibited.]** (dct, ) (Entered: 08/26/2016) |
| 08/31/2016 | | TEXT NOTICE OF HEARING as to Jason Kopp: Pursuant to defense counsel's request, Sentencing is rescheduled in TIME ONLY for 9/13/2016 at 9:30 AM in Syracuse before Chief Judge Glenn T. Suddaby. (lmw) (Entered: 08/31/2016) |
| 08/31/2016 | 61 | SENTENCING MEMORANDUM by USA as to Jason Kopp (Fletcher, Lisa) (Entered: 08/31/2016) |
| 09/13/2016 | | TEXT Minute Entry for Sentencing held on 9/13/16 before Judge Glenn T. Suddaby for Jason Kopp (1). Defense has no further objections to facts, other than those stated in the addendum to the Presentence Report. Defense makes objections to the total offense level and criminal history category. No further objections to PSR. Defendant sentenced on to Counts 1, 2, 3, 6 through 22, 27, and 28 of the Indictment to a term of imprisonment of 2,820 months (235 years). This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28; all to run consecutively. Court recommends to BOP that he be placed at FCI Tucson where he can attend sex offender treatment. The Court does not anticipate the Defendant will ever be released from prison, however, in the event that the Defendant is released from prison for some unknown reasons, Defendant shall serve a term of LIFE on supervised release on each count to run concurrently with standard conditions. Restitution: $1,000. Special Assessment: $100 on each count for a total of $2,200; fine waived. Defendant advised of appeal rights. Defendant remanded. APP: Lisa Fletcher, AUSA; Randi Bianco, Esq., attorney for |

## JA. 12

| | | |
|---|---|---|
| | | Defendant; Janna Kulakowski, Probation. CRD: L. Welch (Court Reporter: Diane Martens) (Time: 9:30 am - 10:00 am) (lmw) (Entered: 09/13/2016) |
| 09/13/2016 | 62 | STATUS REPORT *notifying the Court that no ancillary claims have been filed and the Preliminary Order of Forfeiture is now final as to the defendant, and no separate final order will be presented* by USA as to Jason Kopp (Thomson, Tamara) (Entered: 09/13/2016) |
| 09/14/2016 | 63 | JUDGMENT as to Jason Kopp (1): Term of imprisonment: 2,820 months (235 years). This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28; all to run consecutively. Term of supervised release: LIFE. Special Assessment: $100 on each count for a total of $2,200. No fine. Restitution: $1,000. Signed by Chief Judge Glenn T. Suddaby on 9/14/16. (lmw) (Entered: 09/14/2016) |
| 09/14/2016 | 64 | STATEMENT OF REASONS [LODGED] as to Jason Kopp **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (dictamt) (Entered: 09/14/2016) |
| 09/14/2016 | 65 | VICTIM/RESTITUTION LIST [LODGED] as to Jason Kopp **[This document has been electronically lodged with the Court. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (dictamt) (Entered: 09/14/2016) |
| 09/20/2016 | 66 | STIPULATION by USA to 60 Day Extension of Time (Fletcher, Lisa) (Entered: 09/20/2016) |
| 09/20/2016 | 67 | ORDER TO CONTINUE - Ends of Justice as to Emily Oberst: Time excluded from 9/20/16 until 11/18/16. Government discovery due by 10/18/16. Defendant discovery due by 10/25/16. Motions to be filed by 11/1/16 and shall be made returnable on 12/1/16 on submit before Judge Glenn T. Suddaby. Any change of plea shall be entered by 12/12/16 All pretrial submissions as set forth in the # 20 criminal pretrial scheduling order are due by 12/19/16. Jury Trial set for 1/3/2017 at 9:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. Signed by Chief Judge Glenn T. Suddaby on 9/20/16. (lmw) (Entered: 09/20/2016) |
| 09/27/2016 | 68 | NOTICE OF APPEAL by Jason Kopp No fee paid. (Bianco, Randi) (Entered: 09/27/2016) |
| 09/30/2016 | 69 | ELECTRONIC NOTICE AND CERTIFICATION as to Jason Kopp sent to US Court of Appeals re 68 Notice of Appeal - Final Judgment. (mgh) (Entered: 09/30/2016) |
| 10/07/2016 | 70 | TRANSCRIPT REQUEST by Jason Kopp for proceedings held on 5/20/16 and 9/13/16 before Judge Suddaby. (Bianco, Randi) (Entered: 10/07/2016) |
| 11/16/2016 | 71 | STIPULATION by USA to 60 Day Extension of Time (Fletcher, Lisa) (Entered: 11/16/2016) |
| 11/18/2016 | 72 | ORDER TO CONTINUE - Ends of Justice as to Emily Oberst: Time excluded from 11/18/16 until 1/16/17. Government discovery due by 1/3/17. Defendant discovery due |

JA. 13

| | | |
|---|---|---|
| | | by 1/10/17. Motions to be filed by 1/16/17 and shall be made returnable on 2/16/17 on submit before Judge Glenn T. Suddaby. Any change of plea shall be entered by 2/13/17. All pretrial submissions as set forth in the # 20 criminal pretrial scheduling order are due by 2/20/17. Jury Trial set for 3/6/2017 at 9:00 AM in Syracuse before Chief Judge Glenn T. Suddaby. Signed by Chief Judge Glenn T. Suddaby on 11/18/16. (lmw) (Entered: 11/18/2016) |
| 11/18/2016 | 73 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Jason Kopp: Change of Plea Hearing held on May 20, 2016 before Judge Glenn T. Suddaby, Court Reporter: 315-234-8545,Telephone number: Diane S. Martens. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/9/2016. Redacted Transcript Deadline set for 12/19/2016. Release of Transcript Restriction set for 2/16/2017. Notice of Intent to Redact due by 11/23/2016 (dm2, ) (Entered: 11/18/2016) |
| 11/18/2016 | 74 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Jason Kopp: Sentencing held on September 13, 2016 before Judge Glenn T. Suddaby, Court Reporter/-: Diane S. Martens,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/9/2016. Redacted Transcript Deadline set for 12/19/2016. Release of Transcript Restriction set for 2/16/2017. Notice of Intent to Redact due by 11/23/2016 (dm2, ) (Entered: 11/18/2016) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/28/2016 11:12:08 | | |
| **PACER Login:** | randibianco:4372712:0 | **Client Code:** |

JA. 14

Case 16-3355, Document 20, 02/15/2017, 1969549, Page18 of 252

| Description: | Docket Report | Search Criteria: | 5:16-cr-00108-GTS |
|---|---|---|---|
| Billable Pages: | 15 | Cost: | 1.50 |

JA. 15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:16-CR-108 GTS |
| | ) | |
| **v.** | ) | **Indictment** |
| | ) | |
| **JASON KOPP and** | ) | Violations:    18 U.S.C. § 2251(a) &(e) |
| **EMILY OBERST,** | ) |        [Conspiracy to Sexually |
| | ) |        Exploit a Child] |
| | ) |        18 U.S.C. § 2251(a) |
| | ) |        [Sexual Exploitation of a |
| | ) |        Child] |
| | ) |        18 U.S.C. § 2252A(a)(2)(A) & |
| | ) |        (b)(1) [Distribution of Child |
| | ) |        Pornography] |
| | ) |        18 U.S.C. § 2252A(a)(5)(B) & |
| | ) |        (b)(2) [Possession of Child |
| | ) |        Pornography] |
| | ) | 28 Counts |
| | ) | |
| **Defendants.** | ) | County of Offense:    Onondaga |

## THE GRAND JURY CHARGES:

### COUNT 1
### [Conspiracy to Sexually Exploit a Child]

From in or about 2014 through on or about March 18, 2016, in Onondaga County in the

Northern District of New York, defendants **JASON KOPP and EMILY OBERST** conspired to

use V-1, a minor female child born in 2014, whose identity is known to the grand jury, to engage

in sexually explicit conduct for the purpose of producing visual depictions of such conduct,

knowing and having reason to know that such visual depictions would be transported and

transmitted using a means and facility of interstate and foreign commerce and in and affecting

such commerce, and where the visual depictions were produced using materials that had been

mailed, shipped, and transported in and affecting interstate and foreign commerce by any means,

including by computer, and where such visual depictions were actually transported and

JA. 16

transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, in violation of Title 18 United States Code, Sections 2251(a) & (e).

## COUNTS 2 & 3
### [Sexual Exploitation of a Child]

On or about the dates listed below, in Onondaga County, in the Northern District of New York, defendants **JASON KOPP** and **EMILY OBERST** did use V-1, a minor female child born in 2014, whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, and where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and where such visual depictions were actually transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, in violation of Title 18, United States Code, Sections 2251(a) & (e), and 2(a).

| Count | Date |
|-------|------|
| 2 | March 5- 6, 2016 |
| 3 | March 15 - 16, 2016 |

## COUNTS 4 & 5
### [Sexual Exploitation of a Child]

On or about the dates listed below, in Onondaga County, in the Northern District of New York, defendant **EMILY OBERST** did use the minors listed below, whose identities are known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign

2

commerce and in and affecting such commerce, and where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and where such visual depictions were actually transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, in violation of Title 18, United States Code, Sections 2251(a) & (e).

| Count | Date | Minor |
|-------|------|-------|
| 4 | November 28, 2014 | V- 1, a female child born in 2014 |
| 5 | July 2015 | V- 2, a female child born in 2011 |

## COUNTS 6 - 13
### [Sexual Exploitation of a Child]

On or about the dates listed below, in Onondaga County, in the Northern District of New York, defendant **JASON KOPP** did use the minors listed below, whose identities are known to the grand jury, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Sections 2251(a) & (e).

| Count | Date | Minor |
|-------|------|-------|
| 6 | November 28, 2014 | V- 1, a female child born in 2014 |
| 7 | February 19, 2015 | V-1, a female child born in 2014 |
| 8 | April 26, 2015 | V-1, a female child born in 2014 |
| 9 | June 20, 2015 | V-1, a female child born in 2014 |
| 10 | May 12, 2015 | V-3, a male child born in 2013 |
| 11 | November 8, 2015 | V-3, a male child born in 2013 |
| 12 | December 26, 2015 | V-3, a male child born in 2013 |
| 13 | January 30, 2016 | V-3, a male child born in 2013 |

3

JA. 18

## COUNTS 14 - 22
### [Distribution of Child Pornography]

On or about the following dates, in Onondaga County in the Northern District of New York, the defendant, **JASON KOPP**, did knowingly distribute child pornography using a means and facility of interstate and foreign commerce, shipped and transported in and affecting such commerce by any means, including by computer, in that, by use of the Internet, the defendant distributed graphic image files depicting one or more minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Sections 2252A(a)(2)(A) and (b)(1).

| Count | Date | Minor(s) Depicted | Distributed To |
|-------|------|-------------------|----------------|
| 14 | June 15, 2015 | V-3, a male child born in 2013 | Emily Oberst by mobile application |
| 15 | August 24, 2015 | V-3, a male child born in 2013 | Emily Oberst by mobile application |
| 16 | February 10, 2016 | V-3, a male child born in 2013 | jxxxxxxxxx0@yandex.com by email |
| 17 | February 15, 2016 | V-1, a female child born in 2014 & V-3, a male child born in 2013 | Kxxxxxxx.xxxxxe@yandex.com by email |
| 18 | March 4, 2016 | V-1, a female child born in 2014 | Undercover officer by mobile application |
| 19 | March 6, 2016 | V-1, a female child born in 2014 | Emily Oberst by mobile application |
| 20 | March 7, 2016 | V-1, a female child born in 2014 | Undercover officer by mobile application |
| 21 | March 17, 2016 | V-1, a female child born in 2014 | Undercover officer by mobile application |
| 22 | March 18, 2016 | V-1, a female child born in 2014 | Undercover officer by mobile application |

## COUNTS 23 - 26
### [Distribution of Child Pornography]

On or about the following dates, in Onondaga County in the Northern District of New York, the defendant, **EMILY OBERST**, did knowingly distribute child pornography using a means and facility of interstate and foreign commerce, shipped and transported in and affecting such commerce by any means, including by computer, in that, using the Internet, the defendant

4

JA. 19

distributed graphic image files depicting one or more minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Sections 2252A(a)(2)(A) and (b)(1).

| Count | Date | Minor Depicted | Distributed To |
|-------|------|----------------|----------------|
| 23 | November 28, 2014 | V-1, a female child born in 2014 | Jason Kopp by mobile application |
| 24 | July 2015 | V-2, a female child born in 2011 | Jason Kopp by mobile application |
| 25 | March 6, 2016 | V-1, a female child born in 2014 | Jason Kopp by mobile application |
| 26 | March 16, 2016 | V-1, a female child born in 2014 | Jason Kopp by mobile application |

## COUNTS 27 - 28
### [Possession of Child Pornography]

On or about March 18, 2016, in Onondaga County, in the Northern District of New York, defendant **JASON KOPP** did knowingly possess material that contained one or more images of child pornography that had been transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce by any means, including by computer, and that was produced using materials that had been shipped and transported in and affecting such commerce by any means, including by computer, that is, the electronic media described below, each of which contained numerous graphic image and video files of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2256(8)(A).

| Count | Material Containing Images of Child Pornography |
|-------|--------------------------------------------------|
| 27 | A 500GB Seagate external harddrive, serial #2GEX1XAM (Product of China) |
| 28 | An HP desktop, model #HPE210Y, serial #MXX0180KGP, containing a 1TB Western Digital harddrive s/n WCAV5A980350 (made in Thailand) |

5

JA. 20

Each violation involved images of child pornography involving prepubescent minors and minors who had not attained 12 years of age, in violation of Title 18, United States Code, Section 2252A(b)(2).

## FORFEITURE ALLEGATION

The allegations contained in Counts 1 – 28 of this Indictment are hereby realleged and incorporated by reference herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 2253(a)(3).

Pursuant to Title 18, United States Code, Section 2253(a)(3), upon conviction of the offenses alleged in Counts 1 – 28, defendants **JASON KOPP and EMILY OBERST** shall forfeit to the United States of America any property, real or personal, used or intended to be used to commit or to promote the commission of the offenses. The property subject to forfeiture includes, but is not limited to:

    (a)    one 500GB Seagate external harddrive, serial #2GEX1XAM;

    (b)    one HP desktop, model #HPE210Y, serial #MXX0180KGP, containing a 1TB Western Digital harddrive, serial #WCAV5A980350;

    (c)    one Samsung Galaxy S4, serial #RV8FB176TWE; and

    (d)    one Samsung Galaxy S5, IMEI #990004954246785.

If the property described above, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party,

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty,

6

JA. 21

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853 (p), as incorporated by Title 18, United States Code, Section 2253(b) and by Title 28, United States Code, Section 2461(c).

Dated:    March 30, 2016

**NAME REDACTED**

A TRUE BILL

Grand Jury Foreperson

RICHARD S. HARTUNIAN
United States Attorney

By: _____
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

7

JA. 22

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:16-CR-108 (GTS) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JASON KOPP,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**OFFER OF PROOF**

In anticipation of the defendant's scheduled change of plea, the United States submits this Offer of Proof to provide the Court with and advise the defendant concerning the potential maximum penalties, a non-exhaustive list of adverse consequences that may flow from conviction, the elements of the offenses, and a factual basis for the defendant's guilty plea. **The government respectfully requests that the Court ask the defendant to acknowledge the accuracy of the factual basis or to state with specificity any disagreement with any of the facts described in it.**

1)    **Potential Maximum Penalties:** The Court can impose the following maximum penalties for the offenses to which the defendant is pleading guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

   a)  **Maximum term of imprisonment:**

       Counts  :     30 years per count, pursuant to 18 U.S.C. § 2251(e).

       Counts  :     20 years per count, pursuant to 18 U.S.C. § 2252A(b)(1).

       Counts       20 years per count, pursuant to 18 U.S.C. § 2252A(b)(2).

   b)  **Mandatory minimum term of imprisonment:**

       Counts       15 years per count, pursuant to 18 U.S.C. § 2251(e).

JA. 23

c) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571.

d) **Supervised release term:** In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment. *See* 18 U.S.C. § 3583(k). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years.

e) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.

f) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student. For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction. A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment. Further, notwithstanding the description set out above of the consequences of a violation of the conditions of supervised release, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court will revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

JA. 24

g) **Restitution:** The Court will enter an order directing the defendant to pay restitution to any minor victims depicted in images encompassed in any counts to which the defendant is pleading guilty, pursuant to 18 U.S.C. § 2259(b). Restitution shall be determined by the Court in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," and shall be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S.Ct. 1710, 1727 (2014).

h) **Forfeiture:** Pursuant to 18 U.S.C. § 2253 and 21 U.S.C. § 853(p), the Court may enter an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the indictment, described above, and Bill of Particulars filed in this matter, or to any substitute assets, or to a money judgment, all as more fully set out below:

> 1. One Samsung Galaxy S3, model SCH-I535V, serial number 256691456907935328 (Asset ID # 16-FBI-002396);
>
> 2. One 500 GB Seagate external hard drive, serial number 2GEX1XAM (Asset ID # 16-FBI-002396);
>
> 3. One HP desktop, model number HPE210Y, serial number MXX0180KG9, containing a 1TB Western Digital hard drive, serial number WCAV5A980350 (Asset ID # 16-FBI-002396);
>
> 4. One Samsung Galaxy S4, serial number RV8FB176TWE (Asset ID # 16-FBI-002399); and
>
> 5. One Samsung Galaxy S5, IMEI number 990004954246785 (Asset ID # 16-FBI-002396).

i) **<u>Other Adverse Consequences:</u>**

(1)    Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

JA. 25

(2)     A felony conviction may adversely affect the defendant's ability to hold certain

professional licenses and may impair the defendant's ability to do business with

federal, state, and local governments or to receive benefits from such

governments.

2)     **Elements of Offenses:**

**Count 1:          Conspiracy to Sexually Exploit a Child**

<u>First</u>:                Two or more persons conspired to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

<u>Second</u>:          The defendant joined the conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed;

<u>Third</u>:              The visual depictions that were the object of the conspiracy were actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depictions would be transported or transmitted in or affecting interstate commerce, or the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 2 – 3, and 6 – 13:  Sexual Exploitation of Children**

<u>First</u>:                The victim was less than 18 years old;

<u>Second</u>:          The defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, or attempted to do so; and

<u>Third</u>:              The visual depiction was actually transported or transmitted in or affecting interstate commerce, or that the defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate commerce, or that the visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 14 – 22:  Distribution of Child Pornography**

<u>First</u>:                The defendant knowingly distributed a visual depiction;

4

JA. 26

<u>Second</u>:     The visual depiction was distributed or transported in interstate commerce using a means or facility of interstate or foreign commerce, or in or affecting such commerce by any means, including by computer;

<u>Third</u>:     The visual depiction was child pornography; and

<u>Fourth</u>:     The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct.

**Counts 27 – 28:     Possession of Child Pornography**

<u>First</u>:     The defendant knowingly possessed material that contains or more visual depictions which were child pornography;

<u>Second</u>:     The visual depiction had been mailed or shipped or transported using a means and facility of interstate commerce or foreign commerce, or in or affecting such commerce by any means including by computer, or was produced using materials that had been shipped or transported in and affecting such commerce by any means including by computer;

<u>Third</u>:     The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct; and

<u>Fourth</u>:     An image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age.

3)     **<u>Factual Basis for Guilty Plea:</u>**

Beginning in or about 2014 Jason Kopp and Emily Oberst entered into an agreement and understanding with one another relating to the sexual exploitation of V-1, a minor child born in 2014. As a part of their conspiracy, Oberst agreed to use the child in order to produce sexually explicit images of V-1 and distribute those images to Kopp. She also agreed to allow Kopp access to V-1 for the purpose of using the infant for sexually explicit conduct, and for producing images of that conduct, both alone and together with Oberst. (This conspiracy is charged in **Count 1**).

JA. 27

As set forth more particularly below, both Oberst and Kopp actually engaged in the agreed-upon exploitation of V-1, producing images and videos depicting the lascivious exhibition of the infant's genitals, as well images and videos depicting mouth to vagina contact, mouth to penis contact, and penis to vagina contact with the infant. The images and videos of V-1 were produced using Samsung Galaxy cellular telephones, each of which was manufactured outside the State of New York, and thus transported in interstate and foreign commerce. Further, images and videos of V-1 produced as a part of the conspiracy were also distributed between Oberst and Kopp, as well as with others, including via an online messaging application[1] and email, and as such were actually transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce.

On or about November 28, 2014, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict his penis pressed against the vagina of V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 6**).

On or about February 19, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict penis to mouth contact with V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 7**).

On or about April 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the

---

[1]  The on line messaging application used allows for text messaging, and the transmission of images and video files by way of wireless internet and/or a cellular network.

6

JA.  28

lascivious exhibition of V-1's vagina, penis to vagina contact with V-1, and penis to mouth contact with V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 8**).

On or about June 20, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-1's genitals, penis to vagina contact with V-1, and penis to mouth contact with V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 9**).


On or about May 12, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, a male child born in 2013, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, hand to penis to contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 10**).

On or about November 8, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, penis to penis to contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 11**).

7

JA. 29

On or about December 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals.  (The exploitation of V-3 for the purpose of producing these images is charged in **Count 12**).

On or about January 30, 2016, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals.  (The exploitation of V-3 for the purpose of producing these images is charged in **Count 13**).

 On or about June 15, 2015 Kopp distributed to Emily Oberst, via messaging application, a means and facility of interstate and foreign commerce, a video file depicting the lewd and lascivious exhibition of V-3's genitals.  (This distribution is charged in **Count 14**).

On or about August 24, 2015 Kopp distributed to Emily Oberst, via messaging application, video files depicting the lewd and lascivious exhibition of V-3's genitals.  (This distribution is charged in **Count 15**).

On or about February 10, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address jxxxxxxxxx0@yandex.com. The email sent by Kopp contained three attached image files, all depicting the lewd and lascivious exhibition of V-3's genitals.   By return email, user jxxxxxxxxx0@yandex.com acknowledged receipt of the images of V-3.  (This distribution is charged in **Count 16**).

8

JA. 30

On or about February 15, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address Kxxxxxxx.xxxxxx@yandex.com. The email sent by Kopp contained seven attached image files. Three of the image files depict the lewd and lascivious exhibition of V-3's genitals, three depict the lewd and lascivious exhibition of V-1's genitals, and one depicts V-1' face. By return email, user Kxxxxxxx.xxxxxx@yandex.com acknowledged receipt of the images. (This distribution is charged in **Count 17**).

On or about March 4, 2016 Kopp distributed to an undercover law enforcement officer, via messaging application, image files depicting the lewd and lascivious exhibition of V-1's genitals. (This distribution is charged in **Count 18**).

On or about March 5, 2016, Jason Kopp counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him. When Kopp asked for images of V-1, Oberst knew he meant sexually explicit images, and that is in fact what Kopp intended. At Kopp's request, sometime between March 5 and March 6, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on March 6, 2016, distributed the produced images to Kopp via messaging application. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 2**).

After receiving the explicit images of V-1 on March 6, 2016, Kopp re-distributed one of the sexually explicit images back to Oberst via messaging application, with a comment on what he liked about the image. (This distribution is charged as **Count 19**). On March 7, 2016, Kopp

JA. 31

distributed one of these sexually explicit images of V-1, produced at his request by Oberst, to an undercover law enforcement officer through messaging application.  (This distribution is charged as **Count 20**).

On or about March 15, 2016, Jason Kopp again counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him.  At Kopp's request, sometime between March 15 and March 16, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on March 16, 2016, distributed the produced images to Kopp via messaging application. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 3**).  On March 17, 2016, Kopp distributed two of these sexually explicit images of V-1, produced at his request by Oberst, to an undercover law enforcement officer through messaging.  (This distribution is charged as **Count 21**).

On March 18, 2016, Kopp distributed eleven sexually explicit images of V-1 to the undercover law enforcement officer through messaging application.  These images depict the lewd and lascivious exhibition of V-1's vagina, and a depiction of the infant naked, straddling Kopp's penis.  (This distribution is charged as **Count 22**).

On March 18, 2016, Jason Kopp knowingly possessed the following items of electronic media that contained image and video files of child pornography known to be series widely traded on the Internet, and obtained by him from the Internet:

On a 500GB Seagate external hard drive, serial #2GEX1XAM (Product of China), Kopp possessed 793 images of child pornography, exclusive of the images of the victims charged in

JA. 32

the Counts 1 – 26 of the Indictment. Two of the files contained on this material are described as follows:

1.      An image file with a name that contains a long string of letters and numbers, and depicts a female child approximately 2 – 3 years old with an adult penis in her mouth.

2.      A video file named "8 year old duct taped and raped24.(1).wmv," which depicts a female child whose age appears consistent with the age stated in title of the file. The child's wrists and ankles are bound together with duct tape, while an adult male has sexual intercourse with her.

(The possession of this material is charged in **Count 27**).

On an HP desktop, model #HPE210Y, serial #MXX0180KGP, containing a 1TB Western Digital hard drive s/n WCAV5A980350 (made in Thailand), Kopp possessed 78 images and 125 videos of child pornography, exclusive of images and videos of the victims charged in Counts 1 – 26 of the Indictment. Two of the files contained on this material are described as follows:

1.      untitled37.bmp, an image file depicting an adult's penis pressed against the bare vagina of an infant/toddler with semen on the child's vagina.

2.      untitled24.bmp, an image file depicting a female child who appears to be 4 or 5 years old holding an adult penis with her hands, and putting it in her mouth.

(The possession of this material is charged in **Count 28**).


Respectfully submitted,

RICHARD S. HARTUNIAN
United States Attorney

_____                         5/2/2016

JA.  33

Lisa M. Fletcher                                                    Date
Assistant United States Attorney
Bar Roll No. 510187

JA. 34

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:16-CR-108 (GTS) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JASON KOPP,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OFFER OF PROOF

In anticipation of the defendant's scheduled change of plea, the United States submits this Offer of Proof to provide the Court with and advise the defendant concerning the potential maximum penalties, a non-exhaustive list of adverse consequences that may flow from conviction, the elements of the offenses, and a factual basis for the defendant's guilty plea. **The government respectfully requests that the Court ask the defendant to acknowledge the accuracy of the factual basis or to state with specificity any disagreement with any of the facts described in it.**

1)     **Potential Maximum Penalties:** The Court can impose the following maximum penalties for the offenses to which the defendant is pleading guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

    a)   **Maximum term of imprisonment:**

        Counts 1-3; 6-13:      30 years per count, pursuant to 18 U.S.C. § 2251(e).

        Counts  14-22:         20 years per count, pursuant to 18 U.S.C. § 2252A(b)(1).

        Counts  27-28:         20 years per count, pursuant to 18 U.S.C. § 2252A(b)(2).

    b)   **Mandatory minimum term of imprisonment:**

        Counts 1-3; 6-13:      15 years per count, pursuant to 18 U.S.C. § 2251(e).

Counts 14 – 22:      5 years per count, pursuant to 18 U.S.C. § 2252A(b)(1).

c) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571.

d) **Supervised release term:**  In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment.  *See* 18 U.S.C. § 3583(k).  A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years.

e) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.

f) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction.  A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment. Further, notwithstanding the description set out above of the consequences of a violation of the conditions of supervised release, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court will revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

JA.  36

g) **Restitution:** The Court will enter an order directing the defendant to pay restitution to any minor victims depicted in images encompassed in any counts to which the defendant is pleading guilty, pursuant to 18 U.S.C. § 2259(b). Restitution shall be determined by the Court in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," and shall be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S.Ct. 1710, 1727 (2014).

h) **Forfeiture:** Pursuant to 18 U.S.C. § 2253 and 21 U.S.C. § 853(p), the Court may enter an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the indictment, described above, and Bill of Particulars filed in this matter, or to any substitute assets, or to a money judgment, all as more fully set out below:

> 1. One Samsung Galaxy S3, model SCH-I535V, serial number 256691456907935328 (Asset ID # 16-FBI-002396);
>
> 2. One 500 GB Seagate external hard drive, serial number 2GEX1XAM (Asset ID # 16-FBI-002396);
>
> 3. One HP desktop, model number HPE210Y, serial number MXX0180KG9, containing a 1TB Western Digital hard drive, serial number WCAV5A980350 (Asset ID # 16-FBI-002396);
>
> 4. One Samsung Galaxy S4, serial number RV8FB176TWE (Asset ID # 16-FBI-002399); and
>
> 5. One Samsung Galaxy S5, IMEI number 990004954246785 (Asset ID # 16-FBI-002396).

i) **Other Adverse Consequences:**

(1) Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

JA. 37

(2)      A felony conviction may adversely affect the defendant's ability to hold certain

professional licenses and may impair the defendant's ability to do business with

federal, state, and local governments or to receive benefits from such

governments.

2)    **Elements of Offenses:**

**Count 1:         Conspiracy to Sexually Exploit a Child**

First:              Two or more persons conspired to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

Second:         The defendant joined the conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed;

Third:            The visual depictions that were the object of the conspiracy were actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depictions would be transported or transmitted in or affecting interstate commerce, or the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 2 – 3, and 6 – 13:  Sexual Exploitation of Children**

First:              The victim was less than 18 years old;

Second:         The defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, or attempted to do so; and

Third:            The visual depiction was actually transported or transmitted in or affecting interstate commerce, or that the defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate commerce, or that the visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 14 – 22:  Distribution of Child Pornography**

First:              The defendant knowingly distributed a visual depiction;

JA.  38

Second:        The visual depiction was distributed or transported in interstate commerce using a means or facility of interstate or foreign commerce, or in or affecting such commerce by any means, including by computer;

Third:        The visual depiction was child pornography; and

Fourth:        The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct.

**Counts 27 – 28:        Possession of Child Pornography**

First:        The defendant knowingly possessed material that contains or more visual depictions which were child pornography;

Second:        The visual depiction had been mailed or shipped or transported using a means and facility of interstate commerce or foreign commerce, or in or affecting such commerce by any means including by computer, or was produced using materials that had been shipped or transported in and affecting such commerce by any means including by computer;

Third:        The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct; and

Fourth:        An image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age.

3)        **Factual Basis for Guilty Plea:**

Beginning in or about 2014 Jason Kopp and Emily Oberst entered into an agreement and understanding with one another relating to the sexual exploitation of V-1, a minor child born in 2014.  As a part of their conspiracy, Oberst agreed to use the child in order to produce sexually explicit images of V-1 and distribute those images to Kopp.  She also agreed to allow Kopp access to V-1 for the purpose of using the infant for sexually explicit conduct, and for producing images of that conduct, both alone and together with Oberst.   (This conspiracy is charged in **Count 1**).

5

JA. 39

As set forth more particularly below, both Oberst and Kopp actually engaged in the agreed-upon exploitation of V-1, producing images and videos depicting the lascivious exhibition of the infant's genitals, as well images and videos depicting mouth to vagina contact, mouth to penis contact, and penis to vagina contact with the infant. The images and videos of V-1 were produced using Samsung Galaxy cellular telephones, each of which was manufactured outside the State of New York, and thus transported in interstate and foreign commerce. Further, images and videos of V-1 produced as a part of the conspiracy were also distributed between Oberst and Kopp, as well as with others, including via an online messaging application[1] and email, and as such were actually transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce.

On or about November 28, 2014, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict his penis pressed against the vagina of V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 6**).

On or about February 19, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict penis to mouth contact with V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 7**).

On or about April 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the

---

[1]    The on line messaging application used allows for text messaging, and the transmission of images and video files by way of wireless internet and/or a cellular network.

JA. 40

lascivious exhibition of V-1's vagina, penis to vagina contact with V-1, and penis to mouth contact with V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 8**).

On or about June 20, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-1's genitals, penis to vagina contact with V-1, and penis to mouth contact with V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 9**).

On or about May 12, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, a male child born in 2013, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, hand to penis to contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 10**).

On or about November 8, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, penis to penis to contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 11**).

On or about December 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 12**).

On or about January 30, 2016, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 13**).

On or about June 15, 2015 Kopp distributed to Emily Oberst, via messaging application, a means and facility of interstate and foreign commerce, a video file depicting the lewd and lascivious exhibition of V-3's genitals. (This distribution is charged in **Count 14**).

On or about August 24, 2015 Kopp distributed to Emily Oberst, via messaging application, video files depicting the lewd and lascivious exhibition of V-3's genitals. (This distribution is charged in **Count 15**).

On or about February 10, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address jxxxxxxxxx0@yandex.com. The email sent by Kopp contained three attached image files, all depicting the lewd and lascivious exhibition of V-3's genitals. By return email, user jxxxxxxxxx0@yandex.com acknowledged receipt of the images of V-3. (This distribution is charged in **Count 16**).

8

JA. 42

On or about February 15, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address Kxxxxxxx.xxxxxx@yandex.com.  The email sent by Kopp contained seven attached image files. Three of the image files depict the lewd and lascivious exhibition of V-3's genitals, three depict the lewd and lascivious exhibition of V-1's genitals, and one depicts V-1' face.  By return email, user Kxxxxxxx.xxxxxx@yandex.com acknowledged receipt of the images.  (This distribution is charged in **Count 17**).

On or about March 4, 2016 Kopp distributed to an undercover law enforcement officer, via messaging application, image files depicting the lewd and lascivious exhibition of V-1's genitals.  (This distribution is charged in **Count 18**).


On or about March 5, 2016, Jason Kopp counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him.  When Kopp asked for images of V-1, Oberst knew he meant sexually explicit images, and that is in fact what Kopp intended.   At Kopp's request, sometime between March 5 and March 6, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on March 6, 2016, distributed the produced images to Kopp via messaging application. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 2**).

After receiving the explicit images of V-1 on March 6, 2016, Kopp re-distributed one of the sexually explicit images back to Oberst via messaging application, with a comment on what he liked about the image.  (This distribution is charged as **Count 19**).  On March 7, 2016, Kopp

JA.  43

distributed one of these sexually explicit images of V-1, produced at his request by Oberst, to an undercover law enforcement officer through messaging application. (This distribution is charged as **Count 20**).

On or about March 15, 2016, Jason Kopp again counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him. At Kopp's request, sometime between March 15 and March 16, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on March 16, 2016, distributed the produced images to Kopp via messaging application. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 3**). On March 17, 2016, Kopp distributed two of these sexually explicit images of V-1, produced at his request by Oberst, to an undercover law enforcement officer through messaging. (This distribution is charged as **Count 21**).

On March 18, 2016, Kopp distributed eleven sexually explicit images of V-1 to the undercover law enforcement officer through messaging application. These images depict the lewd and lascivious exhibition of V-1's vagina, and a depiction of the infant naked, straddling Kopp's penis. (This distribution is charged as **Count 22**).

On March 18, 2016, Jason Kopp knowingly possessed the following items of electronic media that contained image and video files of child pornography known to be series widely traded on the Internet, and obtained by him from the Internet:

On a 500GB Seagate external hard drive, serial #2GEX1XAM (Product of China), Kopp possessed 793 images of child pornography, exclusive of the images of the victims charged in

JA. 44

the Counts 1 – 26 of the Indictment.  Two of the files contained on this material are described as follows:

1.      An image file with a name that contains a long string of letters and numbers, and depicts a female child approximately 2 – 3 years old with an adult penis in her mouth.

2.      A video file named "8 year old duct taped and raped24.(1).wmv," which depicts a female child whose age appears consistent with the age stated in title of the file.  The child's wrists and ankles are bound together with duct tape, while an adult male has sexual intercourse with her.

(The possession of this material is charged in **Count 27**).

On an HP desktop, model #HPE210Y, serial #MXX0180KGP, containing a 1TB Western Digital hard drive s/n WCAV5A980350 (made in Thailand), Kopp possessed 78 images and 125 videos of child pornography, exclusive of images and videos of the victims charged in Counts 1 – 26 of the Indictment.  Two of the files contained on this material are described as follows:

1.      untitled37.bmp, an image file depicting an adult's penis pressed against the bare vagina of an infant/toddler with semen on the child's vagina.

2.      untitled24.bmp, an image file depicting a female child who appears to be 4 or 5 years old holding an adult penis with her hands, and putting it in her mouth.

(The possession of this material is charged in **Count 28**).


Respectfully submitted,

RICHARD S. HARTUNIAN
United States Attorney
*/s/ Lisa M. Fletcher*
_____              5/2/2016
Lisa M. Fletcher                                                    _____
Assistant United States Attorney                            Date
Bar Roll No. 510187

JA. 45

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA                    Criminal Action No.

                                            5:16-CR-108 (GTS)

            v.

**JASON KOPP,**

            Defendant.

_____


CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2016 I electronically filed the Amended Offer of Proof

with the Clerk of the District Court using the CM/ECF system, which sent notification of such

filing to counsel of record for the defendant.


Randi Bianco, Esq.


_____/s/_____
Paula Briggs
Lead Legal Assistant


JA. 47

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
UNITED STATES OF AMERICA

vs.                              5:16-cr-108

JASON KOPP,

                         Defendant.
-------------------------------------------x

*Change of Plea* – May 2, 2016

James Hanley Federal Building, Syracuse, New York

HONORABLE GLENN T. SUDDABY

United States District Judge, Presiding


A P P E A R A N C E S

For Government:      OFFICE OF THE UNITED STATES ATTORNEY
                     P.O. Box 7198
                     100 South Clinton Street
                     Syracuse, New York  13261-7198
                        BY:  LISA M. FLETCHER,
                             Assistant U.S. Attorney

For Defendant:       FEDERAL PUBLIC DEFENDER'S OFFICE
                     NORTHERN DISTRICT OF NEW YORK
                     4 Clinton Square
                     Syracuse, New York  13202
                        BY:  RANDI J. BIANCO, ESQ.
                             COURTENAY McKEON, ESQ.


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

JA. 48

Case 16-3355, Document 20, 02/15/2017, 19695/0, Page53 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 2 of 40

2
*USA v. Jason Kopp – Change of Plea – 5/2/2016*

 1          (11:07 a.m.)

 2          THE CLERK:  Case 5:16-cr-108; United States of

 3    versus Jason Kopp.  Counsel, please note your appearance for

 4    the record.

 5          MS. FLETCHER:  Lisa Fletcher for the United States.

 6    Good morning, Judge.

 7          THE COURT:  Good morning.

 8          MS. BIANCO:  Good morning, Your Honor.  Randi

 9    Bianco for Jason Kopp.  Also seated with me at counsel table

10    is Courtenay McKeon, one of our appellate counsel.

11          THE COURT:  Okay.  We're going to do a guilty plea

12    this morning?

13          MS. BIANCO:  Yes, Your Honor.

14          THE COURT:  Ms. Fletcher, you've filed an offer of

15    proof with the Court.  Do you intend to read that?

16          MS. FLETCHER:  Yes, Your Honor.

17          THE COURT:  Into the record?

18          MS. FLETCHER:  Yes, Your Honor.

19          THE COURT:  Do you prefer to do that or do you want

20    to stipulate to having it become part of the Court's record?

21    I'll make it a Court exhibit.

22          MS. FLETCHER:  That's okay with me as long as the

23    defendant admits that he has read and understands and admits

24    to all of the facts contained therein.

25          THE COURT:  What would you prefer to do?

1          MS. BIANCO:  Your Honor, we're not agreeing to

2     their offer of proof.  The only thing we're required to do is

3     admit to the elements and plead to a factual basis.  So the

4     offer of proof is not required, we're not admitting to it.

5          THE COURT:  Fine.  She's going to read it then.

6     Okay.  I was trying to save everybody some time, that's all.

7          Okay.  Mr. Kopp, it's my understanding that you

8     want to enter a guilty plea today, is that correct?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Okay, sir.  Before I accept your plea,

11    I'm going to explain to you the rights you'll be giving up by

12    pleading guilty, the consequences of pleading guilty, and I'm

13    going to ask you some questions.

14         THE DEFENDANT:  Okay.

15         THE COURT:  And if I'm satisfied that your plea is

16    knowing and intentional, then I'll accept it.

17         Before we go any further, can you tell me, have you

18    had an opportunity to review the indictment containing the

19    charges that have been filed against you?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  And have you had adequate time and

22    opportunity to review those charges and all aspects of your

23    case with your attorney?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Since you're pleading guilty, you're

Case 16-3355, Document 20, 02/15/2017, 1969548, Page54 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 4 of 40

USA v. Jason Kopp - Change of Plea - 5/2/2016                    4

1   really giving up your right to a trial, and I want to review

2   with you some of those rights that you'll be giving up.  You

3   have the right to continue to plead not guilty.

4           You have the right to be represented by an attorney

5   at trial and at every other stage of the proceedings, and if

6   you cannot afford one, one will be appointed for you by the

7   Court.

8           You have the right to a speedy and public trial

9   before an impartial jury or a trial before this Court without

10  a jury if you so consented and waived a jury trial.  At such

11  a trial you would be presumed to be innocent under the law

12  and the burden would be upon the government to establish your

13  guilt beyond a reasonable doubt to the satisfaction of a jury

14  or to the satisfaction of this Court if you waived a jury

15  trial.

16          At such a trial you would have the right to

17  confront any witnesses against you, the right to see and hear

18  those witnesses and cross-examine them.  You would have the

19  right to remain silent or to testify in your own behalf, but

20  you could not be compelled to incriminate yourself or to

21  testify at all and your silence could not be held against you

22  in any way and no inference of guilt could be drawn from your

23  failure to testify.  You would have the right to use a

24  subpoena or other processes of this Court to compel witnesses

25  to attend the trial and to testify.  You would also have the

Case 16-3356, Document 20, 02/15/2017, 1960549, Page55 of 252

1   ability to obtain other evidence which you might wish to

2   offer in your defense.

3           Mr. Kopp, if I accept your plea of guilty, you

4   waive, that is you give up, each of these rights I've just

5   listed, there will be no trial, and I will have the same

6   power to sentence you as if you had been found guilty after a

7   trial on the counts that you admit to today.

8           Sir, do you understand that if your plea is

9   accepted, you will be adjudged guilty of those offenses just

10  as though there was a jury trial and the jury after hearing

11  all the evidence found you guilty?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  You understand that?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  Now, Mr. Kopp, after my Clerk takes

16  your plea, I'm going to ask you some questions.

17          THE DEFENDANT:  Okay.

18          THE COURT:  I'm going to review some of those

19  questions with you now so that if you want to discuss any of

20  them with your attorneys, I'll give you an opportunity to do

21  that.

22          THE DEFENDANT:  Okay.  Thank you.

23          THE COURT:  All you need to do now is just listen.

24  These are the questions I'm going to ask you after your

25  guilty plea.

Case 16-3355, Document 20, 02/15/2017, 1969549, Page56 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 6 of 40
USA v. Jason Kopp - Change of Plea - 5/2/2016                6

1        I'm going to ask you whether you're pleading guilty
2   freely and voluntarily.  I'm going to ask you whether any
3   promises of leniency have been made to induce you to plead
4   guilty.  I'm going to ask you whether any threats or force
5   have been used to induce you to plead guilty.  I'm going to
6   ask you whether as you stand here today you're under the
7   influence of any narcotics, drugs, pills, or medicine which
8   would in any way impair your ability to understand the nature
9   of the charges and the consequences of pleading guilty.  I'm
10  going to ask you whether you did, in fact, commit the crimes
11  charged so that I can determine whether there is a factual
12  basis for your plea.
13        And you're going to answer my questions under oath,
14  on the record, in the presence of your attorney, and it's
15  important that you understand that your answers need to be
16  truthful.  If you're not truthful in any of your responses,
17  the government can charge you with perjury for making a false
18  statement.  The last thing you want to do now is expose
19  yourself to any further criminal liability.  So if you're
20  confused about anything at all, just take your time, discuss
21  it with your attorney before you answer because it is
22  important that you answer truthfully.  Do you understand?
23        THE DEFENDANT:  Yes, Your Honor.
24        THE COURT:  As I've already asked you about, I'm
25  going to assure myself that you've been furnished with a copy

1   of these charges, the indictment, that you've read them and

2   you understand them.  I'm going to assure myself that you've

3   had an opportunity to discuss this case with your attorney

4   and that your attorney has advised you of the nature of the

5   charges, your rights, the factual basis for the plea and the

6   consequences of pleading guilty, and that you and your

7   attorney have discussed any potential defenses you feel you

8   may have had.  And I'm going to question your attorney

9   separately.

10          You must also be informed that your guilty plea

11  constitutes a waiver of your right against

12  self-incrimination.  Mr. Kopp, I want to warn you, sir, do

13  not plead guilty unless you are, in fact, guilty of the

14  charges that you plan to admit to today.

15          Do you have any questions of me, sir?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Do you want to discuss anything with

18  your attorney before we have you stand up to be sworn in?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  If you're ready, please stand up, we're

21  going to swear you in and then take your plea.

22          THE CLERK:  State your full name for the record,

23  please.

24          THE DEFENDANT:  Jason Edward Kopp.

25          THE CLERK:  Please raise your right hand.

1               (The defendant was duly sworn to tell the truth.)

2               THE COURT:  Sir, do you understand all the rights

3    that you have?

4               THE DEFENDANT:  Yes.

5               THE COURT:  And do you still wish to plead guilty?

6               THE DEFENDANT:  Yes, Your Honor.

7               THE COURT:  Go ahead and take his plea.

8               THE CLERK:  Counsel, do you want me to read every

9    count or just the abbreviated version, or how would you like

10   me to handle that?

11              MS. BIANCO:  You could read the abbreviated

12   version.  If the Court wants the factual basis that is

13   contained within the indictment, and that's what he would be

14   admitting to, he would not be admitting to all of the

15   allegations contained in the offer of proof.  So I'll leave

16   it up to the Court whether the Court wants it all read or

17   not, but this contains a factual basis.

18              THE COURT:  We're going to read the whole thing.

19   We're going to make a record.

20              MS. BIANCO:  Thank you.

21              THE CLERK:  Count 1 of the indictment states that

22   from in or about 2014 through on or about March 18, 2016, in

23   Onondaga County, in the Northern District of New York,

24   defendants Jason Kopp and Emily Oberst conspired to use V-1,

25   a minor female child born in 2014, whose identity is known to

Case 16-3355, Document 20, 02/15/2017, 1960548, Page59 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 9 of 40

1  the Grand Jury, to engage in sexually explicit conduct for

2  the purpose of producing visual depictions of such conduct,

3  knowing and having reason to know that such visual depictions

4  would be transported and transmitted using a means and

5  facility of interstate and foreign commerce and in and

6  affecting such commerce, and where the visual depictions were

7  produced using materials that had been mailed, shipped, and

8  transported in and affecting interstate and foreign commerce

9  by any means, including by computer, and where such visual

10  depictions were actually transported and transmitted using a

11  means and facility of interstate and foreign commerce and in

12  and affecting such commerce, in violation of Title 18, United

13  States Code, Sections 2251(a) and (e).

14          As to Count 1 of the indictment, how do you plead?

15          THE DEFENDANT:  Guilty.

16          THE CLERK:  Counts 2 and 3 of the indictment,

17  sexual exploitation of a child.  On or about the dates listed

18  below, in Onondaga County, in the Northern District of New

19  York, defendants Jason Kopp and Emily Oberst did use V-1, a

20  minor female child born in 2014, whose identity is known to

21  the Grand Jury, to engage in sexually explicit conduct for

22  the purpose of producing visual depictions of such conduct,

23  knowing and having reason to know that such visual depictions

24  would be transported and transmitted using a means and

25  facility of interstate and foreign commerce and in and

Case 16-3357, Document 20, 02/15/2017, 1968549, Page60 of 252
Case 5:16-cr-00108-GTS Document 36 Filed 05/06/16 Page 10 of 40

1 affecting such commerce, and where the visual depictions were

2 produced using materials that had been mailed, shipped, and

3 transported in and affecting interstate and foreign commerce

4 by any means, including by computer, and where such visual

5 depictions were actually transported and transmitted using a

6 means and facility of interstate and foreign commerce and in

7 and affecting such commerce, in violation of Title 18, United

8 States Code, Sections 2251(a) and (e), and 2(a).  Count 2 was

9 from March 5th through March 6, 2016, and Count 3 was from

10 March 15 through March 16, 2016.

11          As to Counts 2 and 3 of the indictment, how do you

12 plead?

13          THE DEFENDANT:  Guilty.

14          THE CLERK:  Counts 6 through 13, sexual

15 exploitation of a child.  On or about the dates listed below,

16 in Onondaga County, in the Northern District of New York,

17 defendant Jason Kopp did use the minors listed below, whose

18 identities are known to the Grand Jury, to engage in sexually

19 explicit conduct for the purpose of producing visual

20 depictions of such conduct, where the visual depictions were

21 produced using materials that had been mailed, shipped, and

22 transported in and affecting interstate and foreign commerce

23 by any means, including by computer, in violation of Title

24 18, United States Code, Sections 2251(a) and (e).

25          Count 6 was on November 28th, 2014, Victim 1, a

1   female child born in 2014.  Count 7, February 19th, 2015,

2   Victim 1, a female child born in 2014.  Count 8, April 26,

3   2015, Victim 1, a female child born in 2014.  Count 9,

4   June 20, 2015, Victim 1, a female child born in 2014.  Count

5   10, May 12, 2015, Victim 3, a male child born in 2013.  Count

6   11, November 8th, 2015, Victim 3, a male child born in 2013.

7   Count 12, December 26, 2015, Victim 3, a male child born in

8   2013.  Count 13, January 30th, 2016, Victim 3, a male child

9   born in 2013.

10         As to Counts 6 through 13, how do you plead to each

11   count?

12         THE DEFENDANT:  Guilty.

13         THE CLERK:  Counts 14 through 22, distribution of

14   child pornography.  On or about the following dates, in

15   Onondaga County, in the Northern District of New York, the

16   defendant, Jason Kopp, did knowingly distribute child

17   pornography using a means and facility of interstate and

18   foreign commerce, shipped and transported in and affecting

19   such commerce by any means, including by computer, in that,

20   by use of the Internet, the defendant distributed graphic

21   image files depicting one or more minors engaged in sexually

22   explicit conduct, in violation of Title 18, United States

23   Code, Sections 2252A(a)(2)(A) and (b)(1).

24         Count 14, June 15, 2015, Victim 3, a male child

25   born in 2013, distributed to Emily Oberst by mobile

Case 16-3357, Document 20, 02/15/2017, 19685(?), Page62 of 252
Case 5:16-cr-00108-GTS   Document 30   Filed 05/06/16   Page 12 of 40

*USA v. Jason Kopp - Change of Plea - 5/2/2016*                    12

1  application.

2          Count 15, August 24th, 2015, Victim 3, a male child

3  born in 2013, distributed to Emily Oberst by mobile

4  application.

5          Count 16, on February 10th, 2016, Victim 3, a male

6  child born in 2013, distributed to e-mail address

7  jxxxxxxxx0@yandex.com by e-mail.

8          Count 17, February 15, 2016, Victim 1, a female

9  child born in 2014, and Victim 3, a male child born in 2013,

10  distributed to e-mail Kxxxxxxx.xxxxxe@yandex.com by e-mail.

11          Count 18, on March 4th, 2016, Victim 1, a female

12  child born in 2014, distributed to undercover officer by

13  mobile application.

14          Count 19, on March 6, 2016, Victim 1, a female

15  child born in 2014, distributed to Emily Oberst by mobile

16  application.

17          Count 20, on March 7, 2016, Victim 1, a female

18  child born in 2014, distributed to undercover officer by

19  mobile application.

20          Count 21, on March 17, 2016, Victim 1, a female

21  child born in 2014, distributed to undercover officer by

22  mobile application.

23          And Count 22, on March 18th, 2016, Victim 1, a

24  female child born in 2014, distributed to undercover officer

25  by mobile application.

Case 16-3375, Document 20, 02/15/2017, 1969549, Page63 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 13 of 40

*USA v. Jason Kopp – Change of Plea – 5/2/2016*                13

1          As to Counts 14 through 22, how do you plead to

2    each count?

3          THE DEFENDANT:  Guilty.

4          THE CLERK:  Counts 27 and 28, possession of child

5    pornography.  On March 18, 2016, in Onondaga County, in the

6    Northern District of New York, defendant Jason Kopp did

7    knowingly possess material that contained one or more images

8    of child pornography that had been transported using a means

9    and facility of interstate and foreign commerce, and in and

10   affecting such commerce by any means, including by computer,

11   and that was produced using materials that had been shipped

12   and transported in and affecting such commerce by any means,

13   including by computer, that is, the electronic media

14   described below, each of which contained numerous graphic

15   image and video files of minors engaged in sexually explicit

16   conduct, in violation of Title 18, United States Code,

17   Sections 2252A(a)(5)(B) and 2256(a)(A).

18         Count 27, material containing images of child

19   pornography, a 500GB Seagate external hard drive, serial

20   number 2GEXIXAM, product of China.

21         Count 28, an HP desktop, model number HPE210Y,

22   serial number MXX0180KGP, containing a 1TB Western Digital

23   hard drive s/n WCAV5A980350, made in Thailand.

24         Each violation involved images of child pornography

25   involving prepubescent minors and minors who had not attained

*USA v. Jason Kopp – Change of Plea – 5/2/2016*          14

1   12 years of age, in violation of Title 18, Section

2   2252A(b)(2).

3              As to Counts 27 and 28 of the indictment, how do

4   you plead to each of the counts?

5              THE DEFENDANT:  Guilty.

6              THE CLERK:  With regard to the forfeiture

7   allegations, specifically there is a Seagate external hard

8   drive, an HP desktop, Samsung Galaxy S4 and S5, do you admit

9   to those forfeitures?

10             THE DEFENDANT:  Yes, I do.

11             MS. FLETCHER:  Your Honor, if I may.  In regard to

12  Count 28 there is a typographical error that I would like to

13  correct on the record that's been corrected in a filed Bill

14  of Particulars in the case.  The serial number of the desktop

15  that ends in GP should end in G9.

16             THE COURT:  G9?

17             MS. FLETCHER:  Yes.  And in regard to the

18  forfeiture, there is one additional item of forfeiture which

19  is an additional Samsung Galaxy phone that was also filed in

20  our Bill of Particulars which corrected the typographical

21  error in the other serial number.

22             THE COURT:  Ms. Bianco, do you have any dispute

23  with those corrections?

24             MS. BIANCO:  No, we don't, Your Honor.

25             THE COURT:  And you received notification of them?

JA. 61

Case 16-3357, Document 30, 02/15/2017, 19685/0, Page65 of 252

1           MS. BIANCO:  Well, the notification I received --
2    the last item, I did not receive notification of the last
3    item.  I apologize, maybe I overlooked them.
4           MS. FLETCHER:  There was a Bill of Particulars that
5    was filed last week.
6           THE COURT:  Okay.  But you don't have any dispute
7    with regard to his admission to these forfeiture items and
8    the appropriate serial numbers?
9           MS. BIANCO:  No, Your Honor.
10          THE COURT:  Thank you.
11          Mr. Kopp, we're going to go through a series of
12   questions now, as I indicated to you previously.  First of
13   all, you've indicated you're full name on the record.  Is
14   that your correct legal name?
15          THE DEFENDANT:  Yes, Your Honor.
16          THE COURT:  How old are you?
17          THE DEFENDANT:  Forty years old, Your Honor.
18          THE COURT:  You're a U.S. citizen?
19          THE DEFENDANT:  Yes, Your Honor.
20          THE COURT:  Any citizenships in any other
21   countries?
22          THE DEFENDANT:  No, Your Honor.
23          THE COURT:  What's the highest grade of school you
24   completed?
25          THE DEFENDANT:  I graduated high school, Your

1    Honor.

2              THE COURT:  Where were you living prior to being

3    arrested?

4              THE DEFENDANT:  In Liverpool, New York.

5              THE COURT:  Liverpool, New York?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Are you married, sir?

8              THE DEFENDANT:  No, sir.

9              THE COURT:  Do you have any children?

10             THE DEFENDANT:  Yes, I do, Your Honor.

11             THE COURT:  How many children?

12             THE DEFENDANT:  A total of three, Your Honor.

13             THE COURT:  And what type of work do you ordinarily

14   do?

15             THE DEFENDANT:  I was working for Third Party

16   Logistics doing deliveries of medical supplies to facilities.

17             THE COURT:  Okay.  And you were employed at the

18   time you were arrested?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Can you tell me, do you use narcotics

21   or illegal drugs?

22             THE DEFENDANT:  No, Your Honor, I don't.

23             THE COURT:  Have you ever used them?

24             THE DEFENDANT:  I've used -- I've drank about ten

25   years ago, Your Honor.

Case 16-3356, Document 20, 02/15/2017, 1969549, Page67 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 17 of 40

17

*USA v. Jason Kopp – Change of Plea – 5/2/2016*

1          THE COURT:  Okay.

2          THE DEFENDANT:  That's --

3          THE COURT:  Have you taken any narcotics or alcohol

4   within the last 24 hours?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Are you taking any kind of pills,

7   drugs --

8          MS. BIANCO:  Your Honor, he wants to clarify one

9   thing.  He did use marijuana in the past.

10          THE DEFENDANT:  Ten years ago.

11          THE COURT:  Approximately ten years ago?

12          THE DEFENDANT:  Ten years plus, Your Honor.

13          THE COURT:  Nothing in your recent history?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Okay, that's what I'm concerned about.

16   Are you taking any kind of pills, drugs or medicine?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  Are you currently under the care or

19   have you recently been under the care of a doctor or

20   psychiatrist?

21          THE DEFENDANT:  No, Your Honor.

22          THE COURT:  Is there any reason why your ability to

23   understand our discussion here today is impaired in any way?

24          THE DEFENDANT:  No, Your Honor.

25          THE COURT:  Can you tell me your lawyer's name,

Case 16-3355, Document 20, 02/15/2017, 1969549, Page68 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 18 of 40

1    please?

2              THE DEFENDANT:  Yeah.  I forgot.  Ms. Bianco,

3    Randi.

4              THE COURT:  Okay.  And was she appointed by the

5    Court our hired by you?

6              THE DEFENDANT:  Appointed by the Court.

7              THE COURT:  Are you satisfied with her

8    representation of you?

9              THE DEFENDANT:  Yes, I am, Your Honor.

10             THE COURT:  Has she advised you of your rights?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Mr. Kopp, do you have any questions

13   about these proceedings and what's going on today?

14             THE DEFENDANT:  No, I don't, Your Honor.

15             THE COURT:  Okay.  If you do at any time, please

16   discuss it with your attorney, Ms. Bianco.  If you have

17   questions for the Court, I'll do my best to try and answer

18   them.

19             Can you tell me, has your lawyer, any Assistant

20   United States Attorney, any government agent, or anyone else

21   made any promise that you would be treated leniently or any

22   other kind of promise to induce you to plead guilty?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  Has any force or any threat been used

25   against you to induce you to plead guilty?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Are you pleading guilty freely and

3     voluntarily?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Mr. Kopp, are you currently on

6     probation from any other court or on parole from any

7     institution?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Have you ever been arrested before?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Approximately how long ago?

12         THE DEFENDANT:  I would say probably about 13 years

13    ago, Your Honor.

14         THE COURT:  What was that for?

15         THE DEFENDANT:  Second degree assault with a deadly

16    weapon, but it got reduced to a misdemeanor.

17         THE COURT:  Misdemeanor plea?

18         THE DEFENDANT:  I think a misdemeanor A.

19         THE COURT:  But there is nothing else pending other

20    than these charges in the courts?

21         THE DEFENDANT:  Correct, no.

22         THE COURT:  Thank you.

23         THE DEFENDANT:  You're welcome, Your Honor.

24         THE COURT:  Ms. Fletcher, does the government have

25    sufficient evidence to prove this defendant guilty beyond a

Case 16-3357, Document 20, 02/15/2017, 1968549, Page70 of 252
Case 5:16-cr-00108-GTS   Document 36   Filed 05/06/16   Page 20 of 40

*USA v. Jason Kopp - Change of Plea - 5/2/2016*                    20

 1  reasonable doubt?

 2          MS. FLETCHER:  Yes, Your Honor.

 3          THE COURT:  Would you please state what the

 4  government's proof would have been had this case gone to

 5  trial?

 6          MS. FLETCHER:  The government would prove the

 7  following elements of the offenses to which the defendant has

 8  pled guilty.

 9          In relation to Count 1, the conspiracy to sexually

10  exploit a child, we would prove that two or more persons

11  conspired to employ, use, persuade, induce, entice or coerce

12  a minor to engage in sexually explicit conduct for the

13  purpose of producing a visual depiction of such conduct; that

14  the defendant joined the conspiracy, either at its inception

15  or sometime during its existence, knowing the purpose of the

16  conspiracy and intending to help it succeed; and that the

17  visual depictions that were the object of the conspiracy were

18  actually transported or transmitted in or affecting

19  interstate commerce, or the defendant knew or had reason to

20  know the visual depictions would be transported or

21  transmitted in or affecting interstate commerce, or that the

22  visual depictions were produced using materials that had been

23  mailed, shipped or transported in or affecting interstate

24  commerce.

25          As to Counts 2 through 3 and 6 through 13, the

 1    sexual exploitation of children, we would prove the following
 2    elements.  First, that the victims involved in each of the
 3    counts were less than 18 years old.  Second, that the
 4    defendant used, employed, persuaded, induced, enticed or
 5    coerced a minor to take part in sexually explicit conduct for
 6    the purpose of producing a visual depiction of that conduct,
 7    or attempted to do so.  Third, that the visual depiction was
 8    actually transported or transmitted in or affecting
 9    interstate commerce.  Four, that the defendant knew or had
10    reason to know that the visual depiction would be transported
11    or transmitted in or affecting interstate commerce, or that
12    the visual depiction was produced using materials that had
13    been mailed, shipped, or transported in or affecting
14    interstate commerce.
15              As to the distribution of child pornography in
16    Counts 14 through 22, we would prove the following elements.
17    First, the defendant knowingly distributed a visual
18    depiction.  Second, that the visual depiction was distributed
19    or transported in interstate commerce using a means or
20    facility of interstate or foreign commerce, or in and
21    affecting such commerce by any means, including by computer.
22    Third, that the visual depiction was child pornography.  And
23    fourth, that the defendant knew of the sexually explicit
24    nature of the visual depiction and that the visual depiction
25    was of an actual minor engaged in sexually explicit conduct.

Case 16-3357, Document 20, 02/15/2017, 1968549, Page72 of 252
Case 5:16-cr-00108-GTS   Document 30   Filed 05/06/16   Page 22 of 40

1         In regards to Counts 27 and 28, the possession of

2    child pornography, we would prove that the defendant

3    knowingly possessed material that contains one or more visual

4    depictions which were child pornography.  Second, that the

5    visual depictions had been mailed, shipped or transported

6    using a means and facility of interstate or foreign commerce,

7    or in and affecting such commerce by any means, including by

8    computer, or were produced using materials that had been

9    shipped or transported in and affecting such commerce by any

10   means, including by computer.  Third, that the defendant knew

11   of the sexually explicit nature of the visual depiction, and

12   that the visual depiction was of an actual minor engaged in

13   sexually explicit conduct.  And fourth, that an image of

14   child pornography involved in each of the two offenses

15   involved a prepubescent minor or a minor who had not attained

16   the age of 12.

17         The factual -- the facts that we would prove in

18   support of these elements are that beginning in or about

19   2014, Jason Kopp and Emily Oberst entered into an agreement

20   and understanding with one another relating to the sexual

21   exploitation of Victim 1, a minor child born in 2014.  As a

22   part of their conspiracy, Oberst agreed to use the child in

23   order to produce sexually explicit images of Victim 1 and

24   distribute those images to Kopp.  She also agreed to allow

25   Kopp access to V-1 for the purpose of using the infant for

Case 16-3355, Document 20, 02/15/2017, 1969549, Page73 of 252

1   sexually explicit conduct, and for producing images of that

2   conduct, both alone and together with Oberst.  This

3   conspiracy is what is charged in Count 1.

4        Both Oberst and Kopp actually engaged in the

5   agreed-upon exploitation of Victim 1, producing images and

6   videos depicting the lascivious exhibition of the infant's

7   genitals, as well as images and videos depicting mouth to

8   vagina contact, mouth to penis contact, and penis to vagina

9   contact with the infant.  The images and videos of Victim 1

10  were produced using Samsung Galaxy cellular telephones, each

11  of which were manufactured outside the State of New York and

12  transported in and affecting interstate and foreign commerce.

13       Further, images and videos of Victim 1 produced as

14  a part of the conspiracy were also distributed between Oberst

15  and Kopp, as well as with others, including via online

16  messaging application and e-mail, and as such were actually

17  transported using a means and facility of interstate and

18  foreign commerce, and in and affecting such commerce.

19       We would prove that on or about November 28th,

20  2014, Jason Kopp engaged in sexually explicit conduct with

21  Victim 1 for the purpose of producing visual depictions of

22  that conduct, and that using his Samsung cellular telephone

23  he produced images that depict his penis pressed against the

24  vagina of Victim 1.  The exploitation of the victim for this

25  purpose in producing these images is charged in Count 6.

1          On or about February 19 of 2015, we would prove

2    that Jason Kopp engaged in sexually explicit conduct with

3    Victim 1 for the purpose of producing visual depictions of

4    that conduct and that using his Samsung cellular telephone he

5    produced images that depict penis to mouth contact with

6    Victim 1.  And that this exploitation for the purpose of

7    producing these images is charged in Count 7.

8          We would prove that on or about April 26 of 2015,

9    Jason Kopp engaged in sexually explicit conduct with Victim 1

10   for the purpose of producing visual depictions of that

11   conduct, and using his Samsung cellular telephone he produced

12   image and video files depicting that sexually explicit

13   conduct, including the lascivious exhibition of Victim 1's

14   vagina, penis to vagina contact with Victim 1, and penis to

15   mouth contact with Victim 1.  The exploitation of the victim

16   for purposes of producing these images is charged in Count 8.

17         We would prove that on or about June 20 of 2015,

18   Jason Kopp engaged in sexually explicit conduct with Victim 1

19   for the purpose of producing visual depictions of that

20   conduct, and that using his Samsung cellular telephone Kopp

21   produced image and video files depicting that sexually

22   explicit conduct, including the lewd and lascivious

23   exhibition of the victim's genitals, penis to vagina contact

24   with Victim 1, and penis to mouth contact with Victim 1.  The

25   exploitation of the victim for the purpose of producing these

1    images is charged in Count 9.

2         We would further prove that on or about May 12,

3    2015, Jason Kopp engaged in sexually explicit conduct with

4    Victim 3, a male child born in 2013, for the purpose of

5    producing visual depictions of that conduct, and that using

6    his Samsung cellular telephone the defendant produced images

7    depicting that sexually explicit conduct, including the lewd

8    and lascivious exhibition of Victim 3's genitals, hand to

9    penis contact with Victim 3, and the depiction of V-3 naked

10   and straddling Kopp's penis.  The exploitation of Victim 3

11   for the purpose of producing these images is charged in

12   Count 10.

13        We would prove that on or about November 8, 2015,

14   Jason Kopp engaged in sexually explicit conduct with V-3 for

15   the purpose of producing visual depictions of that conduct,

16   and using his Samsung cellular telephone he produced image

17   and video files depicting that sexually explicit conduct,

18   including the lewd and lascivious exhibition of V-3's

19   genitals, penis to penis contact with Victim 3, and a

20   depiction of Victim 3 naked, straddling Kopp's penis.  The

21   exploitation of Victim 3 for the purpose of producing these

22   images is charged in Count 11.

23        We would prove that on or about December 26, 2015,

24   Jason Kopp engaged in sexually explicit conduct with Victim 3

25   for the purpose of producing visual depictions of that

1    conduct, and using his Samsung cellular telephone produced

2    images depicting that sexually explicit conduct, including

3    the lewd and lascivious exhibition of Victim 3's genitals.

4    The exploitation of V-3 for the purposes of producing these

5    images is charged in Count 12.

6              We would prove that on or about January 30th of

7    2016, Jason Kopp engaged in sexually explicit conduct with

8    V-3 for the purpose of producing visual depictions of that

9    conduct, and using his Samsung cellular telephone produced

10   images depicting that sexually explicit conduct, including

11   the lewd and lascivious exhibition of V-3's genitals.  This

12   exploitation of V-3 for the purpose of producing these images

13   is charged in Count 13.

14             We would also prove that on or about June 15, 2015,

15   Kopp distributed to Emily Oberst, via messaging application,

16   a means and facility of interstate and foreign commerce, a

17   video file depicting the lewd and lascivious exhibition of

18   V-3's genitals.  This distribution is charged in Count 14.

19             We will prove that on or about August 24, 2015,

20   Kopp distributed to Emily Oberst, via message application

21   video files depicting the lewd and lascivious exhibition of

22   V-3's genitals.  This distribution is charged in Count 15.

23             We would prove that on or about February 10th of

24   2016 Jason Kopp sent an e-mail via the Internet, a means and

25   facility of interstate and foreign commerce, to another user

1    at e-mail address J, interior part of the address redacted,

2    0@yandex.com.  The e-mail sent by Kopp contained three

3    attached image files all depicting the lewd and lascivious

4    exhibition of Victim 3's genitals.  By return e-mail that

5    user acknowledged receipt of the images of Victim 3.  And

6    this distribution is charged in Count 16.

7         We would prove that on or about February 15th,

8    2016, Jason Kopp sent an e-mail, via the Internet, a means

9    and facility of interstate and foreign commerce, to another

10   user at e-mail address starting with a K, the interior part

11   being redacted, @yandex.com.  The e-mail sent by Kopp

12   contained seven attached image files.  Three of the image

13   files depict the lewd and lascivious exhibition of Victim 3's

14   genitals, three depict the lewd and lascivious exhibition of

15   Victim 1's genitals, and one depicted Victim 1's face.  By

16   return e-mail that user acknowledged receipt of the images.

17   And that distribution is charged in Count 17.

18        We would prove that on or about March 4, 2016, Kopp

19   distributed to an undercover law enforcement officer, via

20   messaging application, image files depicting the lewd and

21   lascivious exhibition of Victim 1's genitals.  And that

22   distribution is charged in Count 18.

23        We would prove that on or about March 5th of 2016

24   Jason Kopp counseled, commanded, induced or procured the

25   sexual exploitation of Victim 1 by texting Emily Oberst and

Case 16-3357, Document 20, 02/15/2017, 1968519, Page78 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 28 of 40

*USA v. Jason Kopp – Change of Plea – 5/2/2016*                    28

1   asking her to produce images of Victim 1 and send them to

2   him.  When Kopp asked for images of Victim 1, Oberst knew he

3   meant sexually explicit images, and that is in fact what Kopp

4   intended.  At Kopp's request, sometime between March 5th and

5   March 6th of 2016, Oberst used Victim 1 for the purpose of

6   producing sexually explicit images depicting the lewd and

7   lascivious exhibition of the infant's vagina.  She actually

8   produced such images, and on March 6 of 2016 distributed the

9   produced images to Kopp via messaging application.  The

10  exploitation of Victim 1 for the purpose of producing these

11  images is charged in Count 2.

12          After receiving the explicit images of Victim 1 on

13  March 6, 2016, Kopp redistributed one of the sexually

14  explicit images back to Oberst, via messaging application,

15  with a comment on what he liked about the image.  This

16  distribution is charged as Count 19.

17          On March 7th of 2016, Kopp distributed one of these

18  sexually explicit images of V-1, produced at his request by

19  Oberst, to an undercover law enforcement officer through a

20  messaging application, and that distribution is charged as

21  Count 20.

22          We would prove that on or about March 15th of 2016

23  Jason Kopp again counseled, commanded, induced or procured

24  the sexual exploitation of Victim 1 by texting Emily Oberst

25  and asking her to produce images to Victim 1 and send them to

1  him.  At Kopp's request, sometime between March 15 and

2  March 16th of 2016, Oberst used Victim 1 for the purpose of

3  producing sexually explicit images depicting the lewd and

4  lascivious exhibition of the infant's vagina, actually

5  produced such images, and on March 16 of 2016, she

6  distributed the produced images to Kopp via messaging

7  application.  The exploitation of this child for the purpose

8  of producing these images is charged as Count 3.

9          On March 17, 2016, Jason Kopp distributed two of

10  the sexually explicit images of Victim 1, produced at his

11  request by Oberst, to an undercover law enforcement officer

12  through a messaging application.  This distribution is

13  charged as Count 21.

14          We would further prove that on March 18 of 2016,

15  Jason Kopp distributed eleven sexually explicit images of

16  Victim 1 to the undercover law enforcement officer through a

17  messaging application.  These images depict the lewd and

18  lascivious exhibition of Victim 1's vagina, and a depiction

19  of the infant naked, straddling Kopp's penis.  This

20  distribution is charged in Count 22.

21          On March 18 of 2016, we would prove that Jason Kopp

22  knowingly possessed the following items of electronic media

23  that contained image and video files of child pornography

24  known to be a series widely traded on the Internet, and

25  obtained by him from the Internet.  On a 500 gigabyte Seagate

Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 30 of 40
Case 16-3355, Document 20, 02/15/2017, 1968549, Page80 of 252

USA v. Jason Kopp – Change of Plea – 5/2/2016

30

1   external hard drive, a product of China, Kopp possessed 793

2   images of child pornography, exclusive of the images of the

3   victims charged in Counts 1 through 26 of the indictment.

4         Two of the files contained on this item are

5   described as follows.  First, an image file with a name that

6   contains a very long string of letters and numbers which

7   depicts a female child approximately two to three years old

8   with an adult penis in her mouth.  And second, a video file

9   named "eight year old duct taped and raped24.(1).wmv," which

10  depicts a female child whose age appears consistent with the

11  eight-year-old age in the title of the file.  The child's

12  wrists and ankles are bound together with duct tape and an

13  adult male is having sexual intercourse with her.  The

14  possession of this material is charged in Count 27.

15        We would also prove that on an HP desktop computer,

16  containing a Western Digital hard drive, made in Thailand,

17  Jason Kopp possessed 78 images and 125 videos of child

18  pornography, exclusive of the images and videos of the

19  victims charged in Counts 1 through 26 of the indictment.

20        Two of the files contained on this piece of media

21  are described as follows.  First, untitled37.bmp is an image

22  filed depicting an adult's penis pressed against the bare

23  vagina of an infant or toddler with semen on the child's

24  vagina.  The second imaged, untitled24.bmp, is an image file

25  depicting a female child who appears to be four or five years

Case 16-3355, Document 30, 02/15/2017, 1969510, Page81 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 31 of 40

1   old holding an adult penis with her hands, putting it in her

2   mouth.  The possession of this material is charged as Count

3   28.

4           THE COURT:  Mr. Kopp, you heard what the government

5   just said they could prove had this case gone to trial.  Sir,

6   is that what you did?  Is that what occurred in this case?

7           MS. BIANCO:  Your Honor, we object to the offer of

8   proof completely.  He has already admitted to the allegations

9   in the indictment, along with the names of the victims, the

10  dates of the victims.  We do not agree with what's contained

11  in the offer of proof, per se.  It's not required for him to

12  admit to those things.

13          THE COURT:  It is required in this Court that he is

14  going to admit to what was just alleged by the government.

15  He either did it or he didn't, or you can set a trial.  We'll

16  set a trial date.

17          MS. BIANCO:  Judge, with all due respect, Rule 11

18  does not require us to admit to the details that Ms. Fletcher

19  has set forth.  Additionally, Your Honor, we did not have a

20  plea agreement for the very reason that we wouldn't agree

21  necessarily on all of the facts, and the government is

22  attempting to have him admit to enhancements by way of this

23  offer of proof because we wouldn't sign a plea agreement.

24          THE COURT:  Ms. Bianco, if you don't agree with it,

25  that's why you go to trial.  All right?  They're laying out

1    what their proof is.  I need to have a factual admission to

2    what this defendant did.  He has admitted to the indictment.

3    Here are the factual allegations that have been put on the

4    record by the government.  He is either going to admit to

5    them or he is not going to admit to them.  And if he does not

6    admit to them, we'll schedule a trial date.

7                MS. BIANCO:  Your Honor, may we have a ten-minute

8    recess, please?

9                THE COURT:  You may.

10               THE CLERK:  Court's in recess.

11               (Recess at 11:46.)

12               (Reconvene at 11:55.)

13               THE COURT:  Ms. Bianco, have you had an opportunity

14   to discuss with Mr. Kopp what he would like to do this

15   morning?

16               MS. BIANCO:  I have, Your Honor.  We would like the

17   opportunity to brief this argument about why we shouldn't

18   have to admit to the facts contained in the government's

19   offer.

20               THE COURT:  Where is this coming from, Ms. Bianco?

21   You know you have to have a factual admission on the record

22   and it's something that we've always done and we're going to

23   do, and if you have a disagreement with the government about

24   their offer of proof, that's why you work it out in the plea

25   agreement, and, you know, you come to an agreement about

Case 16-3355, Document 20, 02/15/2017, 1969519, Page83 of 252

1  whether there is admissions about enhancements or not.  You

2  don't do this.

3          MS. BIANCO:  Well, Judge, these offer of proofs are

4  relatively new where they're attempting, in my opinion, and I

5  would like to just put this on the record --

6          THE COURT:  Relatively new?

7          MS. BIANCO:  The offer of proof, asking him to

8  admit to all of the things that we --

9          THE COURT:  Ms. Bianco, every time you've taken a

10  plea in this court there has been a factual allegation read

11  by the government or put into the record by the government

12  that a defendant has to either admit to or not admit to, and

13  that is up to you and your representation of your client.

14  But don't come here and, you know, propose to enter into a

15  plea agreement and say you're not going to make a factual

16  admission.

17          MS. BIANCO:  Well, we've already made a factual

18  admission by admitting to everything in the --

19          THE COURT:  No, you have not.  You have not to the

20  substance of what those allegations are.  There has to be a

21  record of this.

22          MS. BIANCO:  Judge, I'm not trying to argue with

23  you.  I can give you -- I would ask you to give us the

24  opportunity to at least brief this to make a record, and then

25  whatever this Court decides, we will go from there.

Case 16-3355, Document 20, 02/15/2017, 1969519, Page84 of 252
Case 5:16-cr-00108-GTS   Document 36   Filed 05/06/16   Page 34 of 40

*USA v. Jason Kopp - Change of Plea - 5/2/2016*                    34

1          THE COURT:  Ms. Fletcher, what would you like to

2    do?

3          MS. FLETCHER:  I don't know, Judge.  This is news

4    to me as well.  I guess I don't think we can take the plea if

5    the defendant is not willing to admit to the facts underlying

6    the indictment.

7          THE COURT:  There is not going to be any plea

8    without a factual admission, it's not going to happen.

9          MS. BIANCO:  Well, Judge, the question is how much

10   facts are necessary.  The indictment contains all of the

11   facts necessary.  It states who the victims are, what their

12   ages are and what he did.

13         THE COURT:  Ms. Bianco, it's the government's

14   obligation to present to the Court the factual allegations

15   and the facts of what the defendant did.  They've done that,

16   they put it on the record.  Mr. Kopp can admit to them or

17   cannot admit to them.  If he doesn't want to admit to them,

18   and that's your advice, then what you're asking for is a

19   trial.

20         MS. BIANCO:  Judge, just by way of an example,

21   inside --

22         THE COURT:  Ms. Bianco, it doesn't matter, okay.

23   He can either admit or not admit.  You know, your office has

24   taken this position not to do plea agreements in these cases,

25   that's your decision along with your client's, that's fine.

1   But then don't come here when the government says here's our

2   factual allegations, this is what we're going to prove at

3   trial, and say we don't want to admit to them, because what

4   you're telling me then is my client doesn't want to plead

5   guilty, that's what you're saying to me.

6          MS. BIANCO:  Absolutely not, Judge.

7          THE COURT:  Yes, absolutely.  Absolutely.  Because

8   he is either going to admit to the factual allegations or

9   there isn't going to be a plea.  So you decide.  I've given

10  you more than ten minutes to talk to your client.  Do you

11  want to schedule a trial date or does he want to continue

12  with his plea?

13         MS. BIANCO:  Judge, are you denying me the

14  opportunity to at least submit a written memo as to why this

15  offer of proof is not necessary?  Would you give me that

16  opportunity?

17         THE COURT:  Ms. Bianco, it doesn't matter because

18  there is no plea agreement.  It is either he admits to what

19  the government says he did or he does not.  It's not up to

20  you to decide or brief this Court as to whether it's

21  necessary as to an appropriate plea.  That's my job to decide

22  whether it's an appropriate plea.

23         MS. BIANCO:  But, Judge, with all due respect, as

24  an example, there is some facts in here about what Emily

25  Oberst did that you're asking him to admit to.  They're not

1    appropriate in an offer of proof for him to admit what Emily

2    Oberst is doing.  In essence, they're asking him to give

3    testimony about Emily Oberst without the benefit of a 5K or

4    any kind of a reduction.  Part of this in here is about what

5    Emily Oberst did.

6              THE COURT:  That he sent material to her.

7              MS. BIANCO:  Oberst knew he meant sexually explicit

8    images, and this is in fact what Kopp intended.

9              THE COURT:  Okay.  Then, Ms. Bianco, why didn't you

10   sit down with the government ahead of time and work these

11   things out if you didn't agree with that, just read on the

12   record?  Or why didn't you go through it and then say we

13   admit to everything except for these examples which he

14   chooses not to admit to?  Don't stand here and tell me that

15   he is not going to make a factual allocution to the facts of

16   what he allegedly did or did not do, because I'm not going to

17   do that.

18             MS. BIANCO:  I'm not asking you to have him not

19   admit to the facts.  And, Judge, I just -- we've had this

20   situation with some of the other courts who have agreed with

21   us that admitting to all of the allegations in the

22   government's offer of proof is not necessary as long as they

23   admit to the elements of the offense and the facts behind it.

24   All of these additional facts, I disagree respectfully with

25   the Court, are not necessary.  For example, the idea of him

Case 16-3355, Document 30, 02/15/2017, 1963549, Page87 of 252
Case 5:16-cr-00108-GTS Document 30 Filed 05/06/16 Page 37 of 40

USA v. Jason Kopp − Change of Plea − 5/2/2016

37

1 having to admit to what pictures contain what.  They are

2 minors.  We agree they're child pornography.  We agree

3 they're under 12.  But the details and the descriptions just

4 help to give the government enhancements that we didn't

5 necessarily agree to.

6 　　　　　THE COURT:  Well, the pictures, they either depict

7 what they're saying they depict or they don't.

8 　　　　　MS. BIANCO:  That's exactly right, Judge.  That's

9 when he pled guilty, he doesn't have to go into the details

10 that the offer of proof asks him for.  He doesn't.

11 　　　　　THE COURT:  No.  If the offer of proof describes or

12 the government describes what a particular photograph

13 depicts, that's certainly within the factual allocution, the

14 basis for a plea, there is nothing wrong with that.  Some of

15 your other examples that you just −− there is one example

16 that you pointed out to me with regard to the co-defendant,

17 your point is well-taken, he doesn't have to admit to that.

18 But that's what I'm saying to you, you sit down ahead of time

19 and you work these things out, or you come here prepared to

20 say, you know, he is not going to admit to what his

21 co-defendant knew, unless there is some indication in the

22 proof that the government has that they had a conversation

23 about it and that's how he knows that she knew, those sort of

24 things.  But to say we're not going to admit to the factual

25 allocution on a plea is just absurd.

Case 16-3355, Document 20, 02/15/2017, 1969549, Page88 of 252
Case 5:16-cr-00108-GTS  Document 30  Filed 05/06/16  Page 38 of 40

*USA v. Jason Kopp - Change of Plea - 5/2/2016*          38

1            MS. BIANCO:  I'm not saying we're not going to make

2    a factual allocution.  That's not at all what I'm saying.

3    Please forgive me if I portrayed that.  That's not what I'm

4    saying.  I'm saying the government has a bunch of extraneous

5    facts inside its offer of proof which are not necessary in

6    order for him to plead guilty to every single count of the

7    indictment.  He does not want to go to trial.  He wants to

8    accept responsibility.  He has admitted his conduct.  He

9    admitted who the victims were.

10            THE COURT:  Then you need to sit down and work out

11   with the government what he is going to factually admit to.

12   And if they don't agree with it, you have a trial date.

13   That's what we do, okay.

14            MS. BIANCO:  That would be fine, Judge.

15            THE COURT:  Thank you.  How long do you need?

16            MS. BIANCO:  Can we have a week, please?

17            THE COURT:  You may.  You can have as long as you

18   like or we can schedule a trial, it's one or the other.

19            THE CLERK:  I'm looking.

20            THE COURT:  We're very busy in May and I'm gone

21   part of June, so it's a little tight.  We will try to

22   accommodate you.  I'll ask you to please get it worked out.

23   Don't come here and tell me he is not going to admit to that

24   factual allegation.

25            THE CLERK:  May 10th at 10 a.m.

Case 16-3355, Document 20, 02/15/2017, 1969549, Page89 of 252

*USA v. Jason Kopp – Change of Plea – 5/2/2016*

1           THE COURT:  May 10th, 10 a.m.

2           MS. BIANCO:  Thank you, Your Honor.

3           THE COURT:  All right.  Good luck.

4           THE CLERK:  Court is adjourned.

5                    *              *              *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.


_____

EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter

# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# NORTHERN DISTRICT OF NEW YORK

Albany Office
39 NORTH PEARL ST.
5TH FLOOR
ALBANY, NY 12207
(518) 436-1850
(518) 436-1780 FAX

Syracuse Office
4 CLINTON SQUARE
3RD FLOOR
SYRACUSE, NY 13202
(315) 701-0080
(315) 701-0081 FAX

**Lisa Peebles
Federal Public Defender**

**RESPOND TO SYRACUSE
OFFICE**

May 6, 2016

Hon. Glenn T. Suddaby, Chief U.S. District Judge
Federal Building and U.S. Courthouse
P.O. Box 7367
Syracuse, New York 13261-7367

**RE:   UNITED STATES V. JASON KOPP**
**CASE NO. 16-CR-108 (GTS)**

Dear Judge Suddaby:

On May 2, 2016, a Change of Plea Hearing was held before this Court. Prior to the plea, the government had filed a 12 page written offer of proof (Dkt. No. 26). Prior to the taking of the defendant's plea counsel advised the Court and the government that it would not agree to the facts contained in the offer of proof and suggested that the entire indictment be read so a factual basis for the plea was stated on the record. Thereafter the entire indictment was read aloud in open court and Jason Kopp pled guilty to all 22 counts. Following the defendant's admissions, the government read the offer of proof on the record and the defendant was asked to admit to the offer of proof or proceed to trial. It was the position of the defense that Rule 11(b)(3) had already been satisfied by the defendant's admissions which support a factual basis for his guilty plea. The Court adjourned the Change of Plea Hearing for the parties to determine which facts in the offer of proof the defendant will admit to and which facts he was not willing to admit to. The attached correspondence between the parties outlines our respective positions. *See* Exhibit A, May 3, 2016, Letter of Randi J. Bianco; Exhibit B, May 5, 2016, Letter of Lisa M. Fletcher.

With respect to each count of the Indictment, the defendant admitted to the facts contained therein to prove the legal elements of the offense. Each count of the indictment lists the facts establishing the offense including the dates of the criminal activity and the minor status of each victim. The government's letter to the defense agrees that Second Circuit case law holds Rule 11(b)(3) is satisfied by a reading of the indictment coupled with defendant's admission of the acts described therein. *See* Exhibit B. However the government's concerns center on the factual insufficiencies in their Indictment. *Id.*

As our attached letter explains, the Court may separately consider the government's offer of proof in addition to the defendant's admitted conduct. In this regard, the defendant maintains he does not separately have to affirm to the facts in the government's offer of proof when he has already satisfied the requirements of Rule 11.

The defendant objects to certain statements in the government's offer of proof. Page 9 of the government's offer of proof does not pertain to Kopp, specifically the following language:

"When Kopp asked for images of V-1, Oberst knew he meant sexually explicit images, and that is in fact what Kopp intended."

Rule 11 does not require Kopp to admit to what Oberst may or may not have known.

Again, on page 9 of the government's offer of proof, extraneous language is present which does not pertain to any elements of the offense described in Count 19, specifically "with a comment on what he liked about the image."

On page 11, with respect to Counts 27 and 28, the language pertains to sentencing enhancements and not any facts supporting the elements of the offense such as:

2. A video file named "8 year old duct taped and raped24.(1).wmv," which depicts a female child whose age appears consistent with the age stated in title of the file. The child's wrists and ankles are bound together with duct tape, while an adult male has sexual intercourse with her.

This need only state: A video file named "8 year old duct taped and raped24.(1).wmv," which depicts a female child whose age appears consistent with the age stated in title of the file and the adult male has sexual intercourse with her.

1. untitled37.bmp, an image file depicting an adult's penis pressed against the bare vagina of an infant/toddler with semen on the child's vagina.

This need only state: untitled37.bmp, an image file depicting an adult's penis pressed against the vagina of a minor under the age of 12.

Defendant has agreed to plead guilty to all twenty-two counts alleged against him in the indictment. He chose not to enter a plea agreement and not to stipulate to certain enhancements. He continues his willingness to admit to the acts described in the indictment which are in and of themselves detailed and specific and his plea meets all of the requirement contained in Rule 11.

Very truly yours,
OFFICE OF THE FEDERAL PUBLIC DEFENDER

By:

*S/Randi J. Bianco, Esq.*
Assistant Federal Public Defender

# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# NORTHERN DISTRICT OF NEW YORK

Albany Office
39 NORTH PEARL ST.
5TH FLOOR
ALBANY, NY 12207
(518) 436-1850
(518) 436-1780 FAX

Syracuse Office
4 CLINTON SQUARE
3RD FLOOR
SYRACUSE, NY 13202
(315) 701-0080
(315) 701-0081 FAX

**Lisa Peebles
Federal Public Defender**

**RESPOND TO SYRACUSE
OFFICE**

May 3, 2016

Lisa Fletcher, AUSA
Office of the United States Attorney
100 South Clinton Street, P.O Box 7198
Syracuse, New York 13261-7198

**RE:     UNITED STATES V. JASON KOPP
            CASE NO. 16-CR-108 (GTS)**

Dear Lisa:

After reviewing the Government's proposed offer of proof and the indictment, it is our position that Mr. Kopp has satisfied all of the requirements under Rule 11 by entering a plea to all of the counts and factual allegations contained in the indictment. A defendant is not required to admit to the facts in the government's offer of proof in order to plead guilty. Under Rule 11(b)(3), the court is simply required to "determine that there is a factual basis for the plea." In order to do so, the court must simply "'match the facts to the legal elements of the charged crime.'" *United States v. Calderon*, 243 F.3d 587, 589-90 (2d Cir. 2001) (quoting *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998)).  It is black letter law in this circuit that "'a reading of the indictment to the defendant coupled with his admission of the acts described in it is a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal.'" *United States v. Andrades*, 169 F.3d 131, 136 (2d Cir. 1999) (quoting *United States v. O'Hara*, 960 F.2d 11, 13 (2d Cir. 1992)). In this case, the charge is uncomplicated, the indictment is detailed and specific, and the admission is unequivocal. *Cf. Andrades*, 169 F.3d at 136 (admitting to facts alleged in conspiracy indictment factually insufficient where the indictment did not identify the defendant's co-conspirators). The following chart illustrates the factual sufficiency of admitting the conduct alleged in the indictment:

| Elements of Offenses | Conduct Alleged in Indictment |
|---|---|
| *Conspiracy, First* Element: "Two or more persons conspired to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." (Dkt. No. 24 at 4.) | "Jason Kopp and Emily Oberst conspired to use V-1, a minor child born in 2014 . . . to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." (Dkt. No. 10 at 1.) |
| *Conspiracy, Second Element*: "The defendant joined the conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed." (Dkt. No. 24 at 4.) | "Jason Kopp and Emily Oberst conspired to use V-1, a minor child born in 2014 . . . to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct[.]" (Dkt. No. 10 at 1.) |
| *Conspiracy, Third Element*: "The visual depictions that were the object of the conspiracy were actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depictions would be transported or transmitted in or affecting interstate commerce, or the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce." (Dkt. No. 24 at 4.) | "Jason Kopp and Emily Oberst  conspired . . .  knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, and where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer." (Dkt. No. 10 at 1.) |
| *Conspiracy, Third Element*: "The visual depictions that were the object of the conspiracy were actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depictions would be transported or transmitted in or affecting interstate commerce, or the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce." (Dkt. No. 24 at 4.) | "[S]uch visual depictions were actually transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce[.]" (Dkt. No. 10 at 1-2.) |
| *Sexual Exploitation of Children, First Element*: "The victim was less than 18 years old." (Dkt. No. 24 at 4.) | *Count 2 and 3*: "V-1, a minor child born in 2014." (Dkt. No. 10 at 2.)<br><br>*Counts 6-9*: "V-1, a female child born in 2014." (Dkt. No. 10 at 3.) |

JA.  91

|  | *Counts 10-13*: "V-3, a male child born in 2013." (Dkt. No. 10 at 3.) |
|---|---|
| *Sexual Exploitation of Children, Second Element*: "The defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, or attempted to do so." (Dkt. No. 24 at 4.) | *Counts 2 and 3*: "Jason Kopp . . . did use V-1 . . . to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." (Dkt. No. 10 at 2.)<br><br>*Counts 6-13*: "Jason Kopp . . . did use the minors listed below . . . to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." (Dkt. No. 10 at 3.) |
| *Sexual Exploitation of Children, Third Element*: "The visual depiction was actually transported or transmitted in or affecting interstate commerce, or that the defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate commerce, or that the visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce." (Dkt. No. 24 at 4.) | *Counts 2 and 3*: "Jason Kopp . . . did use V-1 . . . knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility interstate and foreign commerce and affecting such commerce, and where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and where such visual depictions were actually transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce." (Dkt. No. 10 at 2.)<br><br><br><br>*Counts 6-13*: "Jason Kopp did use the minors listed below . . . where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer." (Dkt. No. 10 at 3.) |
| *Distribution of Child Pornography, First Element*: "The defendant knowingly distributed a visual depiction." (Dkt. No. 10 at 4.) | "Jason Kopp did knowingly distribute[.]" (Dkt. No. 10 at 4.) |

| | |
|---|---|
| *Distribution of Child Pornography, Second Element*: "The visual depiction was distributed or transported in interstate commerce using a means or facility of interstate or foreign commerce, or in or affecting such commerce by any means, including by computer." (Dkt. No. 24 at 5.) | "Jason Kopp did knowingly distribute . . . using a means and facility of interstate and foreign commerce, shipped and transported in and affecting such commerce by any means, including by computer, in that, by use of the Internet, the defendant distributed . . . image files." (Dkt. No. 10 at 4.) |
| *Distribution of Child Pornography, Third Element*: "The visual depiction was child pornography." (Dkt. No. 24 at 5.) | "Jason Kopp did knowingly distribute child pornography . . . . [T]he defendant distributed graphic image files depicting one or more minors engaged in sexually explicit conduct." (Dkt. No. 10 at 4.) |
| *Distribution of Child Pornography, Fourth Element*: "The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct." (Dkt. No. 24 at 5.) | "Jason Kopp did *knowingly* distribute child pornography." (Dkt. No. 10 at 4, emphasis added.) |
| *Further Information Regarding Counts 14-22* | Defendant has admitted the dates of distribution, the identity of the minors depicted, and the identity of the individual to whom the images were distributed. (Dkt. No. 10 at 4.) |
| *Possession of Child Pornography, First Element*: "The defendant knowingly possessed material that contains [one] or more visual depictions which were child pornography." (Dkt. No. 24 at 5.) | "Jason Kopp did knowingly possess material that contained one or more images of child pornography." (Dkt. No. 10 at 5.) The indictment further specifies the exact devices in which the defendant possessed child pornography. *Id.* |
| *Possession of Child Pornography, Second Element*: "The visual depiction had been mailed or shipped or transported using a means and facility of interstate commerce or foreign commerce, or in or affecting such commerce by any means including by computer, or was produced using materials that had been shipped or transported in and affecting such commerce by any means including by computer." (Dkt. No. 24 at 5.) | ". . . that had been transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce by any means, including by computer, and that was produced using materials that had been shipped and transported in and affecting such commerce by any means, including by computer, that is, the electronic media described below." (Dkt. No. 10 at 5.) |
| *Possession of Child Pornography, Third* | "Jason Kopp did *knowingly* possess |

| | |
|---|---|
| *Element*: "The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct." (Dkt. No. 24 at 5.) | material that contained one or more images of child pornography . . . which contained graphic image and video files of minors engaged in sexually explicit conduct." (Dkt. No. 10 at 5.) |
| *Possession of Child Pornography, Fourth Element*: "An image of child pornography involved in the offense involved a prepubescent minor who had not attained 12 years of age." (Dkt. No. 24 at 5.) | "Each violation involved images of child pornography involving prepubescent minors and minors who had not attained 12 years of age." (Dkt. No. 10 at 6.) |

It should be noted that Defendant's refusal to admit the facts alleged in the government's offer of proof does not prevent the Court from considering those facts when determining whether there is a factual basis for the plea. In determining whether there is a factual basis for the plea, the Court may consider information from the government, such as an offer of proof. *Andrades*, 169 F.3d at 136. A defendant is not required to admit to the facts contained in the offer of proof in order for the court to consider it. *See, e.g.*, *United States v. Pescatore*, 400 F. App'x 596, 597-98 (2d Cir. 2010) (factual basis existed where defendant admitted to conduct detailed in indictment and government separately explained what it would have proven at trial).

Defendant has agreed to plead guilty to all twenty-two counts alleged against him in the indictment. He chose not to enter a plea agreement and not to stipulate to certain enhancements. He continues his willingness to admit to the acts described in the indictment which are in and of themselves detailed and specific and his plea meets all of the requirement contained in Rule 11. If the Government believes that the indictment fails to contain a factual basis for the plea, please specify where those deficits exist and we can attempt to remedy them.

Very truly yours,
OFFICE OF THE FEDERAL PUBLIC DEFENDER

By:

*S/Randi J. Bianco, Esq.*
Assistant Federal Public Defender

JA. 94



**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

| | |
|---|---|
| *100 South Clinton Street, P.O. Box 7198* | *Tel.: (315) 448-0672* |
| *James M. Hanley Federal Building* | *Fax: (315) 448-0658* |
| *Syracuse, New York 13261-7198* | |

May 5, 2016

Randi J. Bianco, Esq.
Assistant Federal Public Defender
Office of the Federal Public Defender
Northern District of New York
4 Clinton Square, 3rd Floor
Syracuse, NY 13202

Re:     ***United States v. Jason Kopp***
         **Case No. 16-CR-00108 (GTS)**

Dear Randi,

     We are writing in response to your May 3, 2016 letter concerning what facts defendant Jason Kopp will admit to at his change-of-plea hearing in order to establish a factual basis for the Court to accept his plea. The court has broad discretion to determine what it will rely on to decide whether a factual basis for each crime has been established. Thus, the court can conclude that the indictment does not contain sufficient facts to assure the court that Kopp is admitting to conduct that amounts to an offense under the statutory provisions charged. Further, while the court can rely on information other than Kopp's admissions to the allegations in the indictment to find the required factual basis, it is well within its discretion to reject Kopp's guilty plea if he refuses to admit facts other than what is contained in the indictment.

     Under Rule 11(b)(3), the court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997). The rule is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within that charge." *Id.* To comply with Rule 11(b)(3), the district court must find a factual basis for "each element of the offense to which the defendant pleads guilty." *United States v. Ponce-Cruz*, 293 F. App'x 96, 98 (2d Cir. 2008). While the Second Circuit has "accepted a reading of the indictment to the defendant coupled with his admission of the acts described in it as a factual basis for a guilty plea," *Montgomery v. United States*, 853 F.2d 83, 85 (2d Cir. 1988), it has held that reading an indictment that does not contain "detailed and specific" information to support each element of each charge is insufficient. *See United States v. Adams*, 448 F.3d 492, 499-502 (2d Cir. 2006) (holding that reading of the indictment did not provide a factual basis where

*United States v. Jason Kopp*
May 5, 2016
Page 2

defendant refused to admit to facts to establish an element necessary for conviction); *United States v. Andrades*, 169 F.3d 131, 136 (2d Cir. 1999) (holding that court failed to establish a factual basis for guilty plea where court "merely read the bare bones conspiracy charge from the indictment"); *United States v. Gonzalez*, 62 F. App'x 374, 375 (2d Cir. 2003) (holding that plea colloquy that consisted of a summary of the indictment and questioning as to defendant's understanding of the indictment and nothing else failed to establish factual basis for defendant's guilty plea). While the court may rely on a combination of factors in assessing whether a defendant's conduct satisfies the elements of the charged offenses, it is free to take actions it believes are necessary to assure that there is a factual basis for a guilty plea. *See Mitchell v. United States*, 526 U.S. 314, 324 (1999) ("We do not question the authority of a district court to make whatever inquiry it deems necessary in its sound discretion to assure itself the defendant is not being pressured to offer a plea for which there is no factual basis."); *Maher*, 108 F.3d at 1524-25.

As your letter makes clear, the indictment in this case simply tracks the language of the various statutes at issue, and does not contain "detailed and specific" factual allegations that could establish each element of each count. Specific facts, however, are necessary to match Kopp's conduct to the elements of the offenses charged. *See United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998) (requiring district court to "match[] the facts to the legal elements of the charged crime"). Thus, in determining whether there is a factual basis for Kopp's plea, the court is well within its authority to ask whether Kopp admits to the facts contained in the Government's Offer of Proof, which conservatively sets forth facts sufficient to prove each of the crimes alleged in the indictment.[1]

Similarly, Kopp is well within his rights to deny certain facts contained within the Offer of Proof or to refuse to answer the court's questions about the underlying facts altogether. But, as the Supreme Court stated, "[a] defendant who withholds information by invoking the privilege against self-incrimination at a plea colloquy runs the risk the district court will find the factual basis inadequate." *Mitchell*, 526 U.S. at 324. Accordingly, if a defendant chooses not to admit facts that provide the basis for each count in the indictment, the court may, in its discretion, reject his plea and move the case to trial.

---

[1]     Additionally, it would not be unreasonable for the court to find that a reading of an indictment does not provide a sufficient factual basis here because the charges in the indictment are too complicated. *See United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir. 1986) ("Because the charge in the indictment is complex and the Court failed to determine that defendant understood it, the reading of the indictment and defendant's response that he had no further questions do not establish a factual basis for the plea."); *see also Andrades*, 169 F.3d at 136. In this case, the defendant is pleading to twenty-two counts and admitting that he committed four different crimes. Each crime has different elements that require, among other things, the establishment of an interstate nexus and a determination that defendant either engaged in conduct or distributed or possessed material that met a specific definition provided by the Title 18 of the United States Code.

*United States v. Jason Kopp*
May 5, 2016
Page 3


Here, Judge Suddaby has already indicated that he will not accept a plea without admissions to facts that go beyond a recitation of the statutory language set forth in the indictment. The purpose for adjournment was not to justify your client's position against making additional admissions, but to discern what admissions he will make.[2] If you believe that certain facts in the Government's Offer of Proof are not necessary to establish a factual basis for an element of a specific count, I am happy to discuss that with you further in advance of the May 10, 2016 hearing. This is clearly what the Court intended for us to do.


Sincerely,

RICHARD S. HARTUNIAN
United States Attorney

*/s/ Lisa M. Fletcher*
Lisa M. Fletcher
Assistant United States Attorney

*/s/ Robert Levine*
Robert Levine
Assistant United States Attorney

---

[2]     For example, you assert that Kopp would be admitting to conduct that establishes an element of a crime by admitting that he used a minor to engage in "sexually explicit conduct" or that he distributed or possessed "child pornography."   However, the terms "sexually explicit conduct" and "child pornography" have very specific definitions, and are intertwined with one another.   *See* 18 U.S.C. § 2256(2) & (8).   Indeed, for a visual depiction to be "child pornography," it must involve, depict or appear to depict "sexually explicit conduct." *Id*.   In that regard, details about what the images and videos at issue depict are relevant to whether those images and videos meet one of the many definitions of sexually explicit conduct. *See* 18 U.S.C. § 2256(2)(A).   Simply admitting that Kopp engaged in "sexually explicit conduct" or distributed and possessed "child pornography" may reasonably be viewed as a conclusion, not a fact.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:16-CR-108 (GTS) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JASON KOPP,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## **AMENDED OFFER OF PROOF**

In anticipation of the defendant's scheduled change of plea, the United States submits this Offer of Proof to provide the Court with and advise the defendant concerning the potential maximum penalties, a non-exhaustive list of adverse consequences that may flow from conviction, the elements of the offenses, and a factual basis for the defendant's guilty plea. **The government respectfully requests that the Court ask the defendant to acknowledge the accuracy of the factual basis or to state with specificity any disagreement with any of the facts described in it.**

1)    **Potential Maximum Penalties:** The Court can impose the following maximum penalties for the offenses to which the defendant is pleading guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

   a)  **Maximum term of imprisonment:**

          Counts 1-3; 6-13:     30 years per count, pursuant to 18 U.S.C. § 2251(e).

          Counts  14-22:       20 years per count, pursuant to 18 U.S.C. § 2252A(b)(1).

          Counts  27-28:       20 years per count, pursuant to 18 U.S.C. § 2252A(b)(2).

   b)  **Mandatory minimum term of imprisonment:**

          Counts 1-3; 6-13:     15 years per count, pursuant to 18 U.S.C. § 2251(e).

Counts 14 – 22:       5 years per count, pursuant to 18 U.S.C. § 2252A(b)(1).

c) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571.

d) **Supervised release term:**  In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment.  *See* 18 U.S.C. § 3583(k).  A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years.

e) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.

f) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction.  A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment. Further, notwithstanding the description set out above of the consequences of a violation of the conditions of supervised release, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court will revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

JA.  99

g) **Restitution:** The Court will enter an order directing the defendant to pay restitution to any minor victims depicted in images encompassed in any counts to which the defendant is pleading guilty, pursuant to 18 U.S.C. § 2259(b). Restitution shall be determined by the Court in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," and shall be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S.Ct. 1710, 1727 (2014).

h) **Forfeiture:** Pursuant to 18 U.S.C. § 2253 and 21 U.S.C. § 853(p), the Court may enter an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the indictment, described above, and Bill of Particulars filed in this matter, or to any substitute assets, or to a money judgment, all as more fully set out below:

> 1. One Samsung Galaxy S3, model SCH-I535V, serial number 256691456907935328 (Asset ID # 16-FBI-002396);

> 2. One 500 GB Seagate external hard drive, serial number 2GEX1XAM (Asset ID # 16-FBI-002396);

> 3. One HP desktop, model number HPE210Y, serial number MXX0180KG9, containing a 1TB Western Digital hard drive, serial number WCAV5A980350 (Asset ID # 16-FBI-002396);

> 4. One Samsung Galaxy S4, serial number RV8FB176TWE (Asset ID # 16-FBI-002399); and

> 5. One Samsung Galaxy S5, IMEI number 990004954246785 (Asset ID # 16-FBI-002396).

i) **<u>Other Adverse Consequences:</u>**

(1)  Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

JA. 100

(2)    A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

2)  **Elements of Offenses:**

**Count 1:      Conspiracy to Sexually Exploit a Child**

<u>First</u>:         Two or more persons conspired to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

<u>Second</u>:      The defendant joined the conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed;

<u>Third</u>:         The visual depictions that were the object of the conspiracy were actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depictions would be transported or transmitted in or affecting interstate commerce, or the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 2 – 3, and 6 – 13:  Sexual Exploitation of Children**

<u>First</u>:         The victim was less than 18 years old;

<u>Second</u>:      The defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, or attempted to do so; and

<u>Third</u>:         The visual depiction was actually transported or transmitted in or affecting interstate commerce, or that the defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate commerce, or that the visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 14 – 22: Distribution of Child Pornography**

<u>First</u>:         The defendant knowingly distributed a visual depiction;

4

JA. 101

Second:    The visual depiction was distributed or transported in interstate commerce using a means or facility of interstate or foreign commerce, or in or affecting such commerce by any means, including by computer;

Third:    The visual depiction was child pornography; and

Fourth:    The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct.

**Counts 27 – 28:        Possession of Child Pornography**

First:    The defendant knowingly possessed material that contains or more visual depictions which were child pornography;

Second:    The visual depiction had been mailed or shipped or transported using a means and facility of interstate commerce or foreign commerce, or in or affecting such commerce by any means including by computer, or was produced using materials that had been shipped or transported in and affecting such commerce by any means including by computer;

Third:    The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct; and

Fourth:    An image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age.

3)    **Factual Basis for Guilty Plea:**

Beginning in or about 2014 Jason Kopp and Emily Oberst entered into an agreement and understanding with one another relating to the sexual exploitation of V-1, a minor child born in 2014. As a part of their conspiracy, Oberst agreed to use the child in order to produce sexually explicit images of V-1 and distribute those images to Kopp. She also agreed to allow Kopp access to V-1 for the purpose of using the infant for sexually explicit conduct, and for producing images of that conduct, both alone and together with Oberst. (This conspiracy is charged in **Count 1**).

JA. 102

As set forth more particularly below, both Oberst and Kopp actually engaged in the agreed-upon exploitation of V-1, producing images and videos depicting the lascivious exhibition of the infant's genitals, as well as images and videos depicting mouth to vagina contact, mouth to penis contact, and penis to vagina contact with the infant.  The images and videos of V-1 were produced using Samsung Galaxy cellular telephones, each of which was manufactured outside the State of New York, and thus transported in interstate and foreign commerce. Further, images and videos of V-1 produced as a part of the conspiracy were also distributed between Oberst and Kopp, as well as with others, including via an online messaging application[1] and email, and as such were actually transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce.

On or about November 28, 2014, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict his penis pressed against the vagina of V-1.  (The exploitation of V-1 for the purpose of producing these images is charged in **Count 6**).

On or about February 19, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict penis to mouth contact with V-1.  (The exploitation of V-1 for the purpose of producing these images is charged in **Count 7**).

On or about April 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the

---

[1]  The on-line messaging application used allows for text messaging, and the transmission of images and video files by way of wireless internet and/or a cellular network.

JA. 103

lascivious exhibition of V-1's vagina, penis to vagina contact with V-1, and penis to mouth contact with V-1.  (The exploitation of V-1 for the purpose of producing these images is charged in **Count 8**).

On or about June 20, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-1's genitals, penis to vagina contact with V-1, and penis to mouth contact with V-1.    (The exploitation of V-1 for the purpose of producing these images is charged in **Count 9**).

On or about May 12, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, a male child born in 2013, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, hand to penis to contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis.  (The exploitation of V-3 for the purpose of producing these images is charged in **Count 10**).

On or about November 8, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, penis to penis contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis.  (The exploitation of V-3 for the purpose of producing these images is charged in **Count 11**).

JA.  104

On or about December 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 12**).

On or about January 30, 2016, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 13**).

On or about June 15, 2015 Kopp distributed to Emily Oberst, via messaging application, a means and facility of interstate and foreign commerce, a video file depicting the lewd and lascivious exhibition of V-3's genitals. (This distribution is charged in **Count 14**).

On or about August 24, 2015 Kopp distributed to Emily Oberst, via messaging application, video files depicting the lewd and lascivious exhibition of V-3's genitals. (This distribution is charged in **Count 15**).

On or about February 10, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address jxxxxxxxxx0@yandex.com. The email sent by Kopp contained three attached image files, all depicting the lewd and lascivious exhibition of V-3's genitals. By return email, user jxxxxxxxxx0@yandex.com acknowledged receipt of the images of V-3. (This distribution is charged in **Count 16**).

JA. 105

On or about February 15, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address Kxxxxxxx.xxxxxx@yandex.com. The email sent by Kopp contained seven attached image files. Three of the image files depict the lewd and lascivious exhibition of V-3's genitals, three depict the lewd and lascivious exhibition of V-1's genitals, and one depicts V-1's face. By return email, user Kxxxxxxx.xxxxxx@yandex.com acknowledged receipt of the images. (This distribution is charged in **Count 17**).

On or about March 4, 2016 Kopp distributed to an undercover law enforcement officer, via messaging application, image files depicting the lewd and lascivious exhibition of V-1's genitals. (This distribution is charged in **Count 18**).

On or about March 5, 2016, Jason Kopp counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him. When Kopp asked for images of V-1, Oberst knew he meant sexually explicit images, and that is in fact what Kopp intended.[2] At Kopp's request, sometime between March 5

---

[2]     Kopp objects to this sentence, and instead admits: "When Kopp asked for images of V-1, he meant sexually explicit images."

To prove that Kopp "counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him," for the crimes charged in both Counts 1 and 2, the Government's evidence includes his videotaped statements to law enforcement, including the following statements, transcribed below. (Kopp does not admit these recorded statements for purposes of his guilty plea).

| | |
|---|---|
| **SA Skelton** | When you… You said you asked Emily for pictures… |
| **Jason Kopp** | Mmhmm. |
| **SA Skelton** | What did you ask her… what kind of pictures? |
| **Jason Kopp** | I just said can you send me pictures of [V-1], and she knows, you know, what, to send nude pictures. |
| **SA Skelton** | OK, how, and so, how did, did she just know that's what you mean? I mean, Im a little confused about that. |

and March 6, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on March 6, 2016, distributed the produced images to Kopp via messaging application. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 2**).

After receiving the explicit images of V-1 on March 6, 2016, Kopp re-distributed one of the sexually explicit images back to Oberst via messaging application, with a comment on what

| | |
|---|---|
| **Jason Kopp** | Well yeah, she knows, I mean, she, she's sent them before in the past and when so when I so when I was like, hey, can I have pictures of [V-1], or I wouldn't say [V-1], I was like, can I have pictures of [redacted]? |
| **SA Skelton** | Ok. |
| **Jason Kopp** | And she would just send them. |
| **Inv. Costello** | But how, can I, how does it get to those pictures as opposed to if I asked you hey could you send me pictures, I might get… |
| **Jason Kopp** | Well because that's what she knows when I ask, she knows that's what I meant when… |

*     *     *

| | |
|---|---|
| **SA Skelton** | You said before that if you texted Emily and said you know, can I have some pictures she knew what that meant. |
| **Jason Kopp** | Mmhmm. |
| **SA Skelton** | So tell me about how the sort of picture taking thing got started. |
| **Jason Kopp** | What do you mean? |
| **SA Skelton** | So it sounds like, you told me about how the, the contact with [V-1] started, [unintelligible]. |
| **Jason Kopp** | Well I mean, she knew, um, when the contact, she knew what I liked, and I'd, in the past I'd ask her hey can you send me pictures of this, this, and this, and she'd do it |
| **SA Skelton** | OK. |
| **Jason Kopp** | So now its just like hey can you send me some pictures. |
| **SA Skelton** | Ok, so when you, when it first started you'd say pictures of this, this, and this. |
| **Jason Kopp** | Mmhmm. |
| **SA Skelton** | What's is [unintelligible]. |
| **Jason Kopp** | Well, can, can you, you know, send me pictures of her private parts spread open or, you know, pretty much that's all you can do so, that, or pictures of her butt and stuff like that. |

he liked about the image.[3]  (This distribution is charged as **Count 19**).  On March 7, 2016, Kopp

distributed one of these sexually explicit images of V-1, produced at his request by Oberst, to an

undercover law enforcement officer through messaging application.  (This distribution is charged

as **Count 20**).

On or about March 15, 2016, Jason Kopp again counseled, commanded, induced, or

procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce

images of V-1 and send them to him.  At Kopp's request, sometime between March 15 and

March 16, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting

the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on

March 16, 2016, distributed the produced images to Kopp via messaging application.  (The

exploitation of V-1 for the purpose of producing these images is charged in **Count 3**).  On March

17, 2016, Kopp distributed two of these sexually explicit images of V-1, produced at his request

by Oberst, to an undercover law enforcement officer through messaging.  (This distribution is

charged as **Count 21**).

On March 18, 2016, Kopp distributed eleven sexually explicit images of V-1 to the

undercover law enforcement officer through messaging application.  These images depict the

lewd and lascivious exhibition of V-1's vagina, and a depiction of the infant naked, straddling

Kopp's penis.  (This distribution is charged as **Count 22**).

---

[3]       Kopp does not admit the statement "with a comment on what he liked about the image."

To prove that he knowingly distributed child pornography to Emily Oberst on this occasion, the
Government's evidence includes a text message sent from Kopp to Oberst in which he re-distributed two
images of V-1 back to Oberst, one that depicted the child's buttocks, and one that depicted the lewd and
lascivious exhibition of her vagina, accompanied by the following text: "I love these two pics the first one
is because her pussy sticks out in the second one because she has a nice little asshole."  Kopp does not
admit the content of the text portion of the transmission for purposes of his guilty plea.

On March 18, 2016, Jason Kopp knowingly possessed the following items of electronic media that contained image and video files of child pornography known to be a series widely traded on the Internet, and obtained by him from the Internet:

On a 500GB Seagate external hard drive, serial #2GEX1XAM (Product of China), Kopp possessed 793 images of child pornography, exclusive of the images of the victims charged in the Counts 1 – 26 of the Indictment.  Two of the files contained on this material are described as follows:

1.      An image file with a name that contains a long string of letters and numbers, and depicts a female child approximately 2 – 3 years old with an adult penis in her mouth.

2.      A video file named "8 year old duct taped and raped24.(1).wmv," which depicts a female child whose age appears consistent with the age stated in title of the file.  The child's wrists and ankles are bound together with duct tape, while an adult male has sexual intercourse with her.[4]

(The possession of this material is charged in **Count 27**).

On an HP desktop, model #HPE210Y, serial #MXX0180KGP, containing a 1TB Western Digital hard drive s/n WCAV5A980350 (made in Thailand), Kopp possessed 78 images and 125 videos of child pornography, exclusive of images and videos of the victims charged in Counts 1 – 26 of the Indictment.  Two of the files contained on this material are described as follows:

1.      untitled37.bmp, an image file depicting an adult's penis pressed against the bare vagina of an infant/toddler with semen on the child's vagina.[5]

---

[4]      For purposes of his guilty plea, Kopp does not admit this description of the video file, but instead admits that it "depicts a female child whose age appears consistent with the age stated in title of the file and the adult male has sexual intercourse with her."

[5]      For purposes of his guilty plea, Kopp does not admit this description of this image file, but instead admits that it depicts "an adult's penis pressed against the vagina of a minor under the age of 12."

12

2.      untitled24.bmp, an image file depicting a female child who appears to be 4 or 5 years old holding an adult penis with her hands, and putting it in her mouth.

(The possession of this material is charged in **Count 28**).

3)      **Non-prosecution for other offenses:** The Government will not seek other federal criminal charges against the defendant based on conduct described in the indictment in Case No 5:16-CR-108 (GTS), in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," and/or any other child exploitation crimes that are specifically known to the Government before the date on which the defendant enters his plea of guilty, but only for so long as the defendant's guilty plea and sentence to the 22 counts of this indictment remain in effect.

Respectfully submitted,

RICHARD S. HARTUNIAN
United States Attorney
*/s/ Lisa M. Fletcher*
_____

Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

5/19/2016
_____
Date

JA. 110

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:16-CR-108 (GTS) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JASON KOPP,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**AMENDED OFFER OF PROOF**</u>

In anticipation of the defendant's scheduled change of plea, the United States submits this Offer of Proof to provide the Court with and advise the defendant concerning the potential maximum penalties, a non-exhaustive list of adverse consequences that may flow from conviction, the elements of the offenses, and a factual basis for the defendant's guilty plea. **The government respectfully requests that the Court ask the defendant to acknowledge the accuracy of the factual basis or to state with specificity any disagreement with any of the facts described in it.**

1) <u>**Potential Maximum Penalties:**</u> The Court can impose the following maximum penalties for the offenses to which the defendant is pleading guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

   a) **Maximum term of imprisonment:**

   | | |
   |---|---|
   | Counts 1-3; 6-13: | 30 years per count, pursuant to 18 U.S.C. § 2251(e). |
   | Counts  14-22: | 20 years per count, pursuant to 18 U.S.C. § 2252A(b)(1). |
   | Counts  27-28: | 20 years per count, pursuant to 18 U.S.C. § 2252A(b)(2). |

   b) **Mandatory minimum term of imprisonment:**

   | | |
   |---|---|
   | Counts 1-3; 6-13: | 15 years per count, pursuant to 18 U.S.C. § 2251(e). |

Counts 14 – 22:      5 years per count, pursuant to 18 U.S.C. § 2252A(b)(1).

c) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571.

d) **Supervised release term:**  In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment.  *See* 18 U.S.C. § 3583(k).  A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years.

e) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.

f) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction.  A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment. Further, notwithstanding the description set out above of the consequences of a violation of the conditions of supervised release, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court will revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

JA. 112

g) **Restitution:** The Court will enter an order directing the defendant to pay restitution to any minor victims depicted in images encompassed in any counts to which the defendant is pleading guilty, pursuant to 18 U.S.C. § 2259(b). Restitution shall be determined by the Court in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," and shall be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S.Ct. 1710, 1727 (2014).

h) **Forfeiture:** Pursuant to 18 U.S.C. § 2253 and 21 U.S.C. § 853(p), the Court may enter an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the indictment, described above, and Bill of Particulars filed in this matter, or to any substitute assets, or to a money judgment, all as more fully set out below:

   1. One Samsung Galaxy S3, model SCH-I535V, serial number 256691456907935328 (Asset ID # 16-FBI-002396);

   2. One 500 GB Seagate external hard drive, serial number 2GEX1XAM (Asset ID # 16-FBI-002396);

   3. One HP desktop, model number HPE210Y, serial number MXX0180KG9, containing a 1TB Western Digital hard drive, serial number WCAV5A980350 (Asset ID # 16-FBI-002396);

   4. One Samsung Galaxy S4, serial number RV8FB176TWE (Asset ID # 16-FBI-002399); and

   5. One Samsung Galaxy S5, IMEI number 990004954246785 (Asset ID # 16-FBI-002396).

i) <u>**Other Adverse Consequences:**</u>

   (1)    Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

JA. 113

(2)     A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

2)   **Elements of Offenses:**

**Count 1:        Conspiracy to Sexually Exploit a Child**

<u>First</u>:            Two or more persons conspired to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

<u>Second</u>:        The defendant joined the conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed;

<u>Third</u>:            The visual depictions that were the object of the conspiracy were actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depictions would be transported or transmitted in or affecting interstate commerce, or the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 2 – 3, and 6 – 13:  Sexual Exploitation of Children**

<u>First</u>:            The victim was less than 18 years old;

Second:        The defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, or attempted to do so; and

<u>Third</u>:            The visual depiction was actually transported or transmitted in or affecting interstate commerce, or that the defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate commerce, or that the visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 14 – 22:  Distribution of Child Pornography**

<u>First</u>:            The defendant knowingly distributed a visual depiction;

4

JA. 114

<u>Second</u>: The visual depiction was distributed or transported in interstate commerce using a means or facility of interstate or foreign commerce, or in or affecting such commerce by any means, including by computer;

<u>Third</u>: The visual depiction was child pornography; and

<u>Fourth</u>: The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct.

**Counts 27 – 28:**     **Possession of Child Pornography**

<u>First</u>: The defendant knowingly possessed material that contains or more visual depictions which were child pornography;

<u>Second</u>: The visual depiction had been mailed or shipped or transported using a means and facility of interstate commerce or foreign commerce, or in or affecting such commerce by any means including by computer, or was produced using materials that had been shipped or transported in and affecting such commerce by any means including by computer;

<u>Third</u>: The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct; and

<u>Fourth</u>: An image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age.

3)     **<u>Factual Basis for Guilty Plea:</u>**

Beginning in or about 2014 Jason Kopp and Emily Oberst entered into an agreement and understanding with one another relating to the sexual exploitation of V-1, a minor child born in 2014. As a part of their conspiracy, Oberst agreed to use the child in order to produce sexually explicit images of V-1 and distribute those images to Kopp. She also agreed to allow Kopp access to V-1 for the purpose of using the infant for sexually explicit conduct, and for producing images of that conduct, both alone and together with Oberst. (This conspiracy is charged in **Count 1**).

5

As set forth more particularly below, both Oberst and Kopp actually engaged in the agreed-upon exploitation of V-1, producing images and videos depicting the lascivious exhibition of the infant's genitals, as well as images and videos depicting mouth to vagina contact, mouth to penis contact, and penis to vagina contact with the infant.  The images and videos of V-1 were produced using Samsung Galaxy cellular telephones, each of which was manufactured outside the State of New York, and thus transported in interstate and foreign commerce. Further, images and videos of V-1 produced as a part of the conspiracy were also distributed between Oberst and Kopp, as well as with others, including via an online messaging application[1] and email, and as such were actually transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce.

On or about November 28, 2014, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict his penis pressed against the vagina of V-1.  (The exploitation of V-1 for the purpose of producing these images is charged in **Count 6**).

On or about February 19, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict penis to mouth contact with V-1.  (The exploitation of V-1 for the purpose of producing these images is charged in **Count 7**).

On or about April 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the

---

[1]  The on-line messaging application used allows for text messaging, and the transmission of images and video files by way of wireless internet and/or a cellular network.

lascivious exhibition of V-1's vagina, penis to vagina contact with V-1, and penis to mouth contact with V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 8**).

On or about June 20, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-1's genitals, penis to vagina contact with V-1, and penis to mouth contact with V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 9**).

On or about May 12, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, a male child born in 2013, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, hand to penis to contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 10**).

On or about November 8, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, penis to penis contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 11**).

JA. 117

On or about December 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 12**).

On or about January 30, 2016, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals. (The exploitation of V-3 for the purpose of producing these images is charged in **Count 13**).

On or about June 15, 2015 Kopp distributed to Emily Oberst, via messaging application, a means and facility of interstate and foreign commerce, a video file depicting the lewd and lascivious exhibition of V-3's genitals. (This distribution is charged in **Count 14**).

On or about August 24, 2015 Kopp distributed to Emily Oberst, via messaging application, video files depicting the lewd and lascivious exhibition of V-3's genitals. (This distribution is charged in **Count 15**).

On or about February 10, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address jxxxxxxxxx0@yandex.com. The email sent by Kopp contained three attached image files, all depicting the lewd and lascivious exhibition of V-3's genitals. By return email, user jxxxxxxxxx0@yandex.com acknowledged receipt of the images of V-3. (This distribution is charged in **Count 16**).

JA. 118

On or about February 15, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address Kxxxxxxx.xxxxxx@yandex.com. The email sent by Kopp contained seven attached image files. Three of the image files depict the lewd and lascivious exhibition of V-3's genitals, three depict the lewd and lascivious exhibition of V-1's genitals, and one depicts V-1's face. By return email, user Kxxxxxxx.xxxxxx@yandex.com acknowledged receipt of the images. (This distribution is charged in **Count 17**).

On or about March 4, 2016 Kopp distributed to an undercover law enforcement officer, via messaging application, image files depicting the lewd and lascivious exhibition of V-1's genitals. (This distribution is charged in **Count 18**).

On or about March 5, 2016, Jason Kopp counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him. When Kopp asked for images of V-1, Oberst knew he meant sexually explicit images, and that is in fact what Kopp intended.[2]  At Kopp's request, sometime between March 5

---

[2]     Kopp objects to this sentence, and instead admits: "When Kopp asked for images of V-1, he meant sexually explicit images."

To prove that Kopp "counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him," for the crimes charged in both Counts 2 and 3, the Government's evidence includes his videotaped statements to law enforcement, including the following statements, transcribed below. (Kopp does not admit these recorded statements for purposes of his guilty plea).

| | |
|---|---|
| **SA Skelton** | When you… You said you asked Emily for pictures… |
| **Jason Kopp** | Mmhmm. |
| **SA Skelton** | What did you ask her… what kind of pictures? |
| **Jason Kopp** | I just said can you send me pictures of [V-1], and she knows, you know, what, to send nude pictures. |
| **SA Skelton** | OK, how, and so, how did, did she just know that's what you mean? I mean, Im a little confused about that. |

9

JA. 119

and March 6, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on March 6, 2016, distributed the produced images to Kopp via messaging application. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 2**).

After receiving the explicit images of V-1 on March 6, 2016, Kopp re-distributed one of the sexually explicit images back to Oberst via messaging application, with a comment on what

| | |
|---|---|
| **Jason Kopp** | Well yeah, she knows, I mean, she, she's sent them before in the past and when so when I so when I was like, hey, can I have pictures of [V-1], or I wouldn't say [V-1], I was like, can I have pictures of [redacted]? |
| **SA Skelton** | Ok. |
| **Jason Kopp** | And she would just send them. |
| **Inv. Costello** | But how, can I, how does it get to those pictures as opposed to if I asked you hey could you send me pictures, I might get… |
| **Jason Kopp** | Well because that's what she knows when I ask, she knows that's what I meant when… |

*     *     *

| | |
|---|---|
| **SA Skelton** | You said before that if you texted Emily and said you know, can I have some pictures she knew what that meant. |
| **Jason Kopp** | Mmhmm. |
| **SA Skelton** | So tell me about how the sort of picture taking thing got started. |
| **Jason Kopp** | What do you mean? |
| **SA Skelton** | So it sounds like, you told me about how the, the contact with [V-1] started, [unintelligible]. |
| **Jason Kopp** | Well I mean, she knew, um, when the contact, she knew what I liked, and I'd, in the past I'd ask her hey can you send me pictures of this, this, and this, and she'd do it |
| **SA Skelton** | OK. |
| **Jason Kopp** | So now its just like hey can you send me some pictures. |
| **SA Skelton** | Ok, so when you, when it first started you'd say pictures of this, this, and this. |
| **Jason Kopp** | Mmhmm. |
| **SA Skelton** | What's is [unintelligible]. |
| **Jason Kopp** | Well, can, can you, you know, send me pictures of her private parts spread open or, you know, pretty much that's all you can do so, that, or pictures of her butt and stuff like that. |

he liked about the image.[3]  (This distribution is charged as **Count 19**).  On March 7, 2016, Kopp distributed one of these sexually explicit images of V-1, produced at his request by Oberst, to an undercover law enforcement officer through messaging application.  (This distribution is charged as **Count 20**).

On or about March 15, 2016, Jason Kopp again counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him.  At Kopp's request, sometime between March 15 and March 16, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on March 16, 2016, distributed the produced images to Kopp via messaging application. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 3**).  On March 17, 2016, Kopp distributed two of these sexually explicit images of V-1, produced at his request by Oberst, to an undercover law enforcement officer through messaging.  (This distribution is charged as **Count 21**).

On March 18, 2016, Kopp distributed eleven sexually explicit images of V-1 to the undercover law enforcement officer through messaging application.  These images depict the lewd and lascivious exhibition of V-1's vagina, and a depiction of the infant naked, straddling Kopp's penis.  (This distribution is charged as **Count 22**).

---

[3]      Kopp does not admit the statement "with a comment on what he liked about the image."

To prove that he knowingly distributed child pornography to Emily Oberst on this occasion, the Government's evidence includes a text message sent from Kopp to Oberst in which he re-distributed two images of V-1 back to Oberst, one that depicted the child's buttocks, and one that depicted the lewd and lascivious exhibition of her vagina, accompanied by the following text: "I love these two pics the first one is because her pussy sticks out in the second one because she has a nice little asshole."  Kopp does not admit the content of the text portion of the transmission for purposes of his guilty plea.

JA. 121

On March 18, 2016, Jason Kopp knowingly possessed the following items of electronic media that contained image and video files of child pornography known to be a series widely traded on the Internet, and obtained by him from the Internet:

On a 500GB Seagate external hard drive, serial #2GEX1XAM (Product of China), Kopp possessed 793 images of child pornography, exclusive of the images of the victims charged in the Counts 1 – 26 of the Indictment.  Two of the files contained on this material are described as follows:

1.      An image file with a name that contains a long string of letters and numbers, and depicts a female child approximately 2 – 3 years old with an adult penis in her mouth.

2.      A video file named "8 year old duct taped and raped24.(1).wmv," which depicts a female child whose age appears consistent with the age stated in title of the file.  The child's wrists and ankles are bound together with duct tape, while an adult male has sexual intercourse with her.[4]

(The possession of this material is charged in **Count 27**).

On an HP desktop, model #HPE210Y, serial #MXX0180KGP, containing a 1TB Western Digital hard drive s/n WCAV5A980350 (made in Thailand), Kopp possessed 78 images and 125 videos of child pornography, exclusive of images and videos of the victims charged in Counts 1 – 26 of the Indictment.  Two of the files contained on this material are described as follows:

1.      untitled37.bmp, an image file depicting an adult's penis pressed against the bare vagina of an infant/toddler with semen on the child's vagina.[5]

---

[4]      For purposes of his guilty plea, Kopp does not admit this description of the video file, but instead admits that it "depicts a female child whose age appears consistent with the age stated in title of the file and the adult male has sexual intercourse with her."

[5]      For purposes of his guilty plea, Kopp does not admit this description of this image file, but instead admits that it depicts "an adult's penis pressed against the vagina of a minor under the age of 12."

2.      untitled24.bmp, an image file depicting a female child who appears to be 4 or 5 years old holding an adult penis with her hands, and putting it in her mouth.

(The possession of this material is charged in **Count 28**).

3)      **Non-prosecution for other offenses:** The Government will not seek other federal criminal charges against the defendant based on conduct described in the indictment in Case No 5:16-CR-108 (GTS), in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," and/or any other child exploitation crimes that are specifically known to the Government before the date on which the defendant enters his plea of guilty, but only for so long as the defendant's guilty plea and sentence to the 22 counts of this indictment remain in effect.

Respectfully submitted,

RICHARD S. HARTUNIAN
United States Attorney
*/s/ Lisa M. Fletcher*
_____                    5/19/2016
Lisa M. Fletcher                                    _____
Assistant United States Attorney                    Date
Bar Roll No. 510187

13

JA.  123

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA                                    Criminal Action No.

                                                            5:16-CR-108 (GTS)

                        v.

**JASON KOPP,**

                        Defendant.
_____

CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2016 I electronically filed the Amended Offer of Proof with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel of record for the defendant.

Randi Bianco, Esq.

_____/s/_____
Paula Briggs
Lead Legal Assistant

JA. 124

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
UNITED STATES OF AMERICA,

                    Plaintiff,

vs.                                   16-CR-108

JASON KOPP, et al.,

                    Defendant.
-------------------------------------------------x

     Transcript of *CHANGE OF PLEA* held on May 20, 2016, at

the James Hanley Federal Building, 100 South Clinton Street,

Syracuse, New York, the HONORABLE GLENN T. SUDDABY,

Presiding.

                  A P P E A R A N C E S

For Plaintiff:        OFFICE OF THE UNITED STATES ATTORNEY
                      100 South Clinton Street
                      Syracuse, New York 13261
                        BY:  LISA M. FLETCHER, Esq.
                             Assistant United States Attorney

For Defendant:        OFFICE OF THE FEDERAL PUBLIC DEFENDER
                      The Clinton Exchange, 3rd Floor
                      4 Clinton Square
                      Syracuse, New York 13202
                        BY:  RANDI JUDA BIANCO, ESQ.


                *Diane S. Martens, RPR, FCRR*
              *Official United States Court Reporter*
                   *100 South Clinton Street*
                   *Syracuse, New York 13261*
                       *(315)234-854*5

1              (Open court, 9:05 a.m.:)

2              THE CLERK:  Case number 5:16-CR-108, United States

3    of America versus Jason Kopp.

4              Counsel, please note your appearance for the

5    record.

6              MS. FLETCHER:  Lisa Fletcher and Robert Levine for

7    the government.  Good morning, your Honor.

8              THE COURT:  Good morning.

9              MS. BIANCO:  Good morning, your Honor, Randi Bianco

10   for Jason Kopp who's seated at my right.

11             MS. FLETCHER:  Good morning.

12             THE DEFENDANT:  Good morning.

13             THE COURT:  Can I see counsel at the bench, please.

14             (Off-the-record discussion held at side bar.)

15             THE COURT:  Okay, Mr. Kopp, it's my understanding

16   that you want to enter a guilty plea this morning.  I

17   apologize but we're going to have to go through this all over

18   again.

19             THE DEFENDANT:  That's okay, your Honor.

20             THE COURT:  It's nothing we want to do.

21             THE DEFENDANT:  It's nothing I want to do, either.

22             THE COURT:  I understand but it's important that we

23   have a record --

24             THE DEFENDANT:  Okay, I understand.

25             THE COURT:  -- so that everything can be reviewed.

1  You're looking at a significant amount of time.

2          THE DEFENDANT:  Right.

3          THE COURT:  And I'm sure that, you know, there's

4  some things that you may want to challenge at some point.

5          THE DEFENDANT:  Okay.

6          THE COURT:  So it's important that I have a

7  complete record for review.

8          THE DEFENDANT:  I understand.

9          THE COURT:  So we're going to go through it, okay?

10         THE DEFENDANT:  Okay.

11         THE COURT:  All right.

12         Now, before I accept your plea, I'm going to

13  explain to you the rights you'll be giving up by pleading

14  guilty, the consequences of pleading guilty and I'm going to

15  ask you some questions.

16         THE DEFENDANT:  Okay.

17         THE COURT:  If I'm satisfied that your plea is

18  knowing and intentional, then I'll accept it.

19         Before we go any further, have you had an

20  opportunity to read a copy of the indictment that's been

21  filed against you?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And did you have adequate time and

24  opportunity to review that indictment containing the charges

25  and all aspects of your case with your attorney, Ms. Bianco?

US v. Kopp – 16-CR-108

1      THE DEFENDANT:  Yes, your Honor.

2      THE COURT:  Now, since you're pleading guilty,

3  you're really giving up your right to a trial and I want to

4  review with you some of those rights.

5      You have the right to continue to plead not guilty.

6  You have the right to be represented by an attorney at trial

7  and at every other stage of the proceeding.  And if you

8  cannot afford an attorney, one will be appointed for you by

9  the court.

10      You have the right to a speedy and public trial

11  before an impartial jury or trial before this Court without a

12  jury, if you so consented and waived a jury trial.  At such a

13  trial, you would be presumed to be innocent under the law and

14  the burden would be upon the government to establish your

15  guilt beyond a reasonable doubt to the satisfaction of a jury

16  or to the satisfaction of this court, if you waived a jury

17  trial.

18      At such a trial, you would have the right to

19  confront any witnesses against you, the right to see and hear

20  those witnesses and cross-examine them.  You would have the

21  right to remain silent or to testify in your own behalf.  But

22  you could not be compelled to incriminate yourself or to

23  testify at all and your silence could not be held against you

24  in any way and no inference of guilt could be drawn from your

25  failure to testify.

US v. Kopp - 16-CR-108

1     You would have the right to use a subpoena or other

2  processes of this court to compel witnesses to attend a trial

3  and to testify.  You would, also, have the ability to obtain

4  other evidence which you might wish to offer in your defense.

5     Sir, if I accept your plea of guilty, you waive;

6  that is, you give up each of these rights I've just listed.

7  There will be no trial and I will have the same power to

8  sentence you as if you had been found guilty after a trial on

9  the charges or counts that you admit to today.

10    Do you understand that if your plea is accepted,

11  you will be adjudged guilty of those offenses the same as if

12  there was a jury trial and the jury, after hearing all the

13  evidence, found you guilty; you understand that?

14    THE DEFENDANT:  Yes, your Honor.

15    THE COURT:  Now, after my clerk takes your plea,

16  I'm going to ask you several questions.  I'm going to run

17  through some of those questions with you now so if you want

18  to discuss any of them with Ms. Bianco before we get to that

19  part, I'll give you an opportunity to do that.

20    THE DEFENDANT:  Thank you, your Honor.

21    THE COURT:  First of all -- well, here's the list

22  of questions.

23    I'm going to ask you whether you're pleading guilty

24  freely and voluntarily.  I'm going to ask you whether any

25  promises of leniency have been made to induce you to plead

1    guilty.  I'm going to ask you whether any threats or force

2    have been used to induce you to plead guilty.  I'm going to

3    ask you whether, as you stand here today, you're under the

4    influence of any narcotics, drugs, pills or medicine which

5    would in any way impair your ability to understand the nature

6    of the charges and the consequences of pleading guilty.

7              I'm going to ask you whether you did, in fact,

8    commit the crimes charged so that I can determine whether

9    there's a factual basis for your plea.  You're going to

10   answer my questions under oath on the record in the presence

11   of your attorney and it's important that you understand:  You

12   need to answer truthfully.  Should you fail to be honest in

13   any of your responses, the government could charge you with

14   perjury or making a false statement.  Last thing you want to

15   do now is expose yourself --

16             THE DEFENDANT:  Correct.

17             THE COURT:  -- to any further criminal liability.

18   So, if you're confused about anything at all, you want to

19   consult with your counsel, please take the time to do that

20   because it is important that you answer truthfully.

21             THE DEFENDANT:  I will, your Honor.

22             THE COURT:  Okay.  You must, also, be informed that

23   your guilty plea constitutes a waiver of your right against

24   self-incrimination.  And, Mr. Kopp, I want to warn you:  Do

25   not plead guilty, unless you are, in fact, guilty of the

Case 16-3355, Document 20, 02/15/2017, 1060540, Page134 of 252

1    charges that you plan to admit to today.

2             Do you have any questions, sir?

3             THE DEFENDANT:  No, I don't, your Honor.

4             THE COURT:  You want any time to discuss anything

5    with Ms. Bianco before we have you stand up to be sworn in?

6             THE DEFENDANT:  No, I'm all set, your Honor.

7             THE COURT:  You're all set.  Then please stand up

8    and we'll swear you in.

9             THE CLERK:  Can you state your full name for the

10   record, please.

11            THE DEFENDANT:  Jason Edward Kopp.

12            THE CLERK:  Please raise your right hand.

13            (Defendant duly sworn.)

14            THE COURT:  Do you understand all the rights that

15   you have?

16            THE DEFENDANT:  Yes, I do, your Honor.

17            THE COURT:  And do you still wish to plead guilty?

18            THE DEFENDANT:  Yes, I do, your Honor.

19            THE COURT:  Go ahead and take his plea.

20            THE CLERK:  Count 1 of the indictment states that

21   from in or about 2014 through on or about March 18th, 2016,

22   in Onondaga County in the Northern District of New York,

23   defendants Jason Kopp and Emily Oberst conspired to use V-1,

24   a minor female child born in 2014, whose identity is known to

25   the grand jury, to engage in sexually explicit conduct for

Case 16-3355, Document 20, 02/15/2017, 1060540, Page135 of 252

1    the purpose of producing visual depictions of such conduct,

2    knowing and having reason to know that such visual depictions

3    would be transported and transmitted using a means and

4    facility of interstate and foreign commerce and in and

5    affecting such commerce, and where the visual depictions were

6    produced using materials that had been mailed, shipped and

7    transported in and affecting interstate and foreign commerce

8    by any means, including by computer, and where such visual

9    depictions were actually transported and transmitted using a

10   means and facility of interstate and foreign commerce and in

11   and affecting such commerce, in violation of Title 18 United

12   States Code Sections 2251(a) and (e).

13              As to Count 1 of the indictment, how do you plead?

14              THE DEFENDANT:  Guilty.

15              THE CLERK:  Count 2 of the indictment states that

16   on or about the dates listed below, in Onondaga County, in

17   the Northern District of New York, defendants Jason Kopp and

18   Emily Oberst did use V-1, a minor female child born in 2014,

19   whose identity is known to the grand jury, to engage in

20   sexually explicit conduct for the purpose of producing visual

21   depictions of such conduct, knowing and having reason to know

22   that such visual depictions would be transported and

23   transmitted using a means and facility of interstate and

24   foreign commerce and in and effecting such commerce, and

25   where the visual depictions were produced using materials

1   that had been mailed, shipped and transported in and

2   affecting interstate and foreign commerce by any means,

3   including by computer, and where such visual depictions were

4   actually transported and transmitted using a means and

5   facility of interstate and foreign commerce and in and

6   effecting such commerce, in violation of Title 18, United

7   States Code, Sections 2251(a) and (e) and 2(a).

8          As to Count 2, the dates were March 5th and 6th,

9   2016, how do you plead to Count 2?

10          THE DEFENDANT:  Guilty.

11          THE CLERK:  As to Count 3, the dates were

12   March 15th and 16th, 2016.  How do you plead to Count 3?

13          THE DEFENDANT:  Guilty.

14          THE CLERK:  Count 6 states that on or about the

15   dates listed below, in Onondaga County, in the Northern

16   District of New York, defendant Jason Kopp did use the

17   minors listed below, whose identities are known to the

18   grand jury, to engage in sexually explicit conduct for the

19   purpose of producing visual depictions of such conduct, where

20   the visual depictions were produced using materials that had

21   been mailed, shipped and transported in and affecting

22   interstate and foreign commerce by any means, including by

23   computer, in violation of Title 18 United States Code

24   Sections 2251(a) and (e).

25          As to Count 6 on November 28th, 2014, minor V-1, a

Case 16-3355, Document 20, 02/15/2017, 1060540, Page137 of 252

1    female child born in 2014, as to Count 6, how do you plead?

2            THE DEFENDANT:  Guilty.

3            THE CLERK:  Count 7 was on February 19th, 2015,

4    minor V-1, a female child born in 2014.  As to Count 7, how

5    do you plead?

6            THE DEFENDANT:  Guilty.

7            THE CLERK:  Count 8 on April 26th, 2015, minor V-1,

8    a female child born in 2014.  As to Count 8, how do you

9    plead?

10           THE DEFENDANT:  Guilty.

11           THE CLERK:  Count 9 on June 20th, 2015, minor V-1,

12   a female child born in 2014.  As to Count 9, how do you

13   plead?

14           THE DEFENDANT:  Guilty.

15           THE CLERK:  Count 10 on May 12th, 2015, minor V-3,

16   a male child born in 2013.  As to Count 10, how do you plead?

17           THE DEFENDANT:  Guilty.

18           THE CLERK:  Count 11 on November 8th, 2015, minor

19   V-3, a male child born in 2013.  As to Count 11, how do you

20   plead?

21           THE DEFENDANT:  Guilty.

22           THE CLERK:  Count 12 on December 26th, 2015, minor

23   V-3, a male child born in 2013.  As to Count 12, how do you

24   plead?

25           THE DEFENDANT:  Guilty.

Case 16-3355, Document 20, 02/15/2017, 1060540, Page138 of 252

1          THE CLERK:  Count 13 on January 30th, 2016, minor

2    V-3, a male child born in 2013.  As to Count 13, how do you

3    plead?

4          THE DEFENDANT:  Guilty.

5          THE CLERK:  Count 14, states that on or about the

6    following dates, in Onondaga County in the Northern District

7    of New York, the defendant, Jason Kopp, did knowingly

8    distribute child pornography using a means and facility of

9    interstate and foreign commerce, shipped and transported in

10   and affecting such commerce by any means, including by

11   computer, in that, by use of the internet, the defendant

12   distributed graphic image files depicting one or more minors

13   engaged in sexually explicit conduct, in violation of Title

14   18, United States Code, Sections 2252A(a)(2)(A) and (b)(1).

15          As to Count 14 was on June 15th, 2015, minor V-3, a

16   male child born in 2013, distributed to Emily Oberst by

17   mobile application.  As to Count 14, how do you plead?

18          THE DEFENDANT:  Guilty.

19          THE CLERK:  Count 15 on August 24th, 2015, minor

20   V-3, a child born in 2013, distributed to Emily Oberst by

21   mobile application.  As to Count 15, how do you plead?

22          THE DEFENDANT:  Guilty.

23          THE CLERK:  Count 16 on February 10th, 2016, minor

24   V-3, a male child born in 2013, distributed to

25   jxxxxxxxxx@yandex.com by email.  As to Count 16, how do you

JA. 135

US v. Kopp - 16-CR-108

1  plead?

2           THE DEFENDANT:  Guilty.

3           THE CLERK:  Count 17 on February 15th, 2016, minors

4  depicted, V-1, a female child born in 2014, and V-3, a male

5  child born in 2013, distributed to kxxxxxxx@yandex.com by

6  email.  As to Count 17, how do you plead?

7           THE DEFENDANT:  Guilty.

8           THE CLERK:  Count 18 on March 4th, 2016, minor V-1

9  a female child born in 2014, distributed to undercover

10  officer by mobile application.  As to Count 18, how do you

11  plead?

12           THE DEFENDANT:  Guilty.

13           THE CLERK:  Count 19, on March 6th, 2016, minor

14  V-1, a female child born in 2014, distributed to Emily Oberst

15  by mobile application.  As to Count 19, how do you plead?

16           THE DEFENDANT:  Guilty.

17           THE CLERK:  Count 20 on March 17, 2016, minor V-1,

18  a female child born in 2014, distributed to undercover

19  officer by mobile application.  As to Count 20, how do you

20  plead?

21           THE DEFENDANT:  Guilty.

22           THE CLERK:  Count 21 on March 17th, 2016, minor

23  V-1, a female child born in 2014, distributed to undercover

24  officer by mobile application.  As to Count 21, how do you

25  plead?

Case 16-3355, Document 20, 02/15/2017, 1060540, Page140 of 252

1          THE DEFENDANT:  Guilty.

2          THE CLERK:  Count 22 on March 18th, 2016, minor

3    V-1, a female child born in 2014, distributed to undercover

4    officer by mobile application.  As to Count 22, how do you

5    plead?

6          THE DEFENDANT:  Guilty.

7          THE CLERK:  Count 27, on or about March 18th, 2016,

8    in Onondaga County, in the Northern District of New York,

9    defendant, Jason Kopp, did knowingly possess material that

10   contained one or more images of child pornography that had

11   been transported using a means and facility of interstate and

12   foreign commerce and in and affecting such commerce by any

13   means, including by computer, and that was produced using

14   materials that had been shipped and transported in and

15   affecting such commerce by any means, including by computer;

16   that is, the electronic media described below, each of which

17   contained numerous graphic image and video files of minors

18   engaged in sexually explicit conduct, in violation of

19   Title 18, United States Code, Section 2252A(a)(5)(B) and

20   2256(8)(A).

21         As to Count 27, material containing images of child

22   pornography, a 500GB Seagate external hard drive, serial

23   number 2GEX1XAM, product of China.  As to Count 27, how do

24   you plead?

25         THE DEFENDANT:  Guilty.

US v. Kopp - 16-CR-108

1  THE CLERK:  Count 28, an HP desktop, model number

2  HPE210Y, serial number as modified by the government, number

3  MXX0180KGP contained a 1TB Western Digital hard drive, serial

4  number WCAV5A980350, made in Thailand.  As to Count 28, how

5  do you plead?

6  THE DEFENDANT:  Guilty.

7  THE CLERK:  And with regard to the forfeiture

8  allegations, specifically a one 500GB Seagate external hard

9  drive, one HP desktop, one Samsung Galaxy S4, one Samsung

10  Galaxy S5, and as modified by the government, a Samsung

11  Galaxy -- another Samsung Galaxy phone, do you admit to those

12  forfeitures?

13  THE DEFENDANT:  Yes, I do.

14  THE CLERK:  Thank you.  You may be seated.

15  THE COURT:  Okay, Mr. Kopp, you told us your full

16  name.  Is that your correct, legal name?

17  THE DEFENDANT:  Yes, it is, your Honor.

18  THE COURT:  How old are you?

19  THE DEFENDANT:  40 years old.

20  THE COURT:  U.S. citizen?

21  THE DEFENDANT:  Yes, your Honor.

22  THE COURT:  No citizenship in any other countries?

23  THE DEFENDANT:  No, your Honor.

24  THE COURT:  The highest grade of school you

25  completed?

1              THE DEFENDANT:  I graduated high school, your
2     Honor.
3              THE COURT:  You were living where prior to being
4     arrested?
5              THE DEFENDANT:  Liverpool.
6              THE COURT:  Are you married?
7              THE DEFENDANT:  No, your Honor.
8              THE COURT:  Any children?
9              THE DEFENDANT:  Yes, your Honor.
10             THE COURT:  How many children?
11             THE DEFENDANT:  I have three total, your Honor.
12             THE COURT:  And what type of work do you ordinarily
13     do.
14             THE DEFENDANT:  I was a medical transport -- I
15     worked for Third Party Logistics delivering medical supplies.
16             THE COURT:  And were you employed at the time you
17     were arrested?
18             THE DEFENDANT:  Yes, I was.
19             THE COURT:  Do you use narcotics or illegal drugs?
20             THE DEFENDANT:  No, I don't, your Honor.
21             THE COURT:  Have you ever used them?
22             THE DEFENDANT:  Yes, I have, your Honor.
23             THE COURT:  Approximately how long was the last
24     time and what was the substance?
25             THE DEFENDANT:  Ten years plus.  It was marijuana

JA. 139

Case 16-3355, Document 29, 02/15/2017, 1060540, Page143 of 252

1   and alcohol.

2           THE COURT:  Have you taken any narcotics or alcohol

3   within the last 24 hours?

4           THE DEFENDANT:  No, I have not, your Honor.

5           THE COURT:  Are you taking any kind of pills, drugs

6   or medicine?

7           THE DEFENDANT:  No, your Honor.

8           THE COURT:  Are you currently under the care of a

9   doctor or psychiatrist?

10          THE DEFENDANT:  No, I'm not, your Honor.

11          THE COURT:  Is there any reason why your ability to

12  understand our discussion here today is impaired in any way?

13          THE DEFENDANT:  No, it's not, your Honor.

14          THE COURT:  Can you tell me your lawyer's name,

15  please.

16          THE DEFENDANT:  Yeah, it's Randi Bianco.

17          THE COURT:  Was she appointed by the Court or hired

18  by you?

19          THE DEFENDANT:  She was appointed by the court.

20          THE COURT:  Are you satisfied with her

21  representation of you?

22          THE DEFENDANT:  Yes, I am, your Honor.

23          THE COURT:  Has she advised you of your rights?

24          THE DEFENDANT:  Yes, she has.

25          THE COURT:  Has your lawyer, any Assistant United

US v. Kopp - 16-CR-108

1    States attorney, any government agent or anyone else made any
2    promise that you would be treated leniently or any other kind
3    of promise to induce you to plead guilty?
4              THE DEFENDANT:  No, your Honor.
5              THE COURT:  Has any force or any threat been used
6    against you to induce you to plead guilty?
7              THE DEFENDANT:  No, your Honor.
8              THE COURT:  Are you pleading guilty freely and
9    voluntarily?
10             THE DEFENDANT:  Yes, your Honor.
11             THE COURT:  Are you currently on probation from any
12   other court or on parole from any institution?
13             THE DEFENDANT:  No, I'm not, your Honor.
14             THE COURT:  Have you ever been arrested before?
15             THE DEFENDANT:  I have, your Honor.
16             THE COURT:  How long ago?
17             THE DEFENDANT:  Approximately 13 years, 13, 14
18   years ago, your Honor.
19             THE COURT:  Was it a felony, misdemeanor?
20             THE DEFENDANT:  It was second degree assault with a
21   deadly weapon.  I pled self-defense and it got dropped down
22   to a class A misdemeanor.
23             THE COURT:  Misdemeanor?
24             THE DEFENDANT:  Yes.
25             THE COURT:  Thank you, sir.

Case 16-3355, Document 20, 02/15/2017, 1060540, Page145 of 252

1          THE DEFENDANT:  You're welcome, your Honor.

2          THE COURT:  Ms. Fletcher, does the government have

3     sufficient evidence to prove this defendant guilty beyond a

4     reasonable doubt?

5          MS. FLETCHER:  Yes, we do.

6          THE COURT:  Would you state what the government's

7     proof would have been, had this case gone to trial, please.

8          MS. FLETCHER:  The government would prove the

9     following elements of the offenses charged in the indictment.

10    As to Count 1, the conspiracy to sexually exploit a child, we

11    would prove the following elements:  First, that two or more

12    persons conspired to employ, use, persuade, induce, entice or

13    coerce a minor to engage in sexually explicit conduct for the

14    purpose of producing a visual depiction of such conduct;

15         Second, that the defendant joined the conspiracy

16    either at its inception or some time during its existence,

17    knowing the purpose of the conspiracy and intending to help

18    it succeed;

19         Third, that the visual depictions that were the

20    object of the conspiracy were actually transported or

21    transmitted in or affecting interstate commerce or that the

22    defendant knew or had reason to know that the visual

23    depictions would be transported or transmitted in or

24    affecting interstate commerce or that the visual depictions

25    were produced using materials that had been mailed, shipped

Case 16-3355, Document 20, 02/15/2017, 1060540, Page146 of 252

1 | or transported in or affecting interstate commerce.

2 | As to Counts 2 through 3 and 6 through 13, the

3 | sexual exploitation of children, the government would prove

4 | the following elements:

5 | First, that the victim of each count was less than

6 | 18 years old;

7 | Second, that the defendant used, employed,

8 | persuaded, induced, enticed or coerced a minor to take part

9 | in sexually-explicit conduct for the purpose of producing a

10 | visual depiction of that conduct or attempted to do so;

11 | And, third, the visual depiction was actually

12 | transported or transmitted in or affecting interstate

13 | commerce or that the defendant knew or had reason to know

14 | that the visual depiction would be transported or transmitted

15 | in or affecting interstate commerce or that the visual

16 | depiction was produced using materials that had been mailed,

17 | shipped or transported in or affecting interstate commerce.

18 | As to Counts 14 through 22, the distribution of

19 | child pornography, we would prove the following elements:

20 | First, that the defendant knowingly distributed a

21 | visual depiction;

22 | Second, that the visual depiction was distributed

23 | or transported in interstate commerce using a means or

24 | facility of interstate or foreign commerce or in and

25 | affecting such commerce by any means, including by computer;

JA. 143

Case 16-3355, Document 20, 02/15/2017, 1060540, Page147 of 252

1          Third, that the visual depiction was child

2    pornography;

3          And, fourth, that the defendant knew of the

4    sexually explicit nature of the visual depiction and that the

5    visual depiction was of an actual minor engaged in sexually

6    explicit conduct.

7          As to the possession of child pornography Counts 27

8    and 28, we would prove the following elements:

9          First, that the defendant knowingly possessed

10   material that contains one or more visual depictions which

11   were child pornography;

12         Second, the visual depiction had been mailed or

13   shipped or transported using a means and facility of

14   interstate or foreign commerce or in and affecting such

15   commerce by any means, including by computer, or was produced

16   using materials that had been shipped or transported in and

17   affecting such commerce by any means including by computer;

18         Third, that the defendant knew of the sexually

19   explicit nature of the visual depictions and that they were

20   of an actual minor engaged in sexually explicit conduct;

21         And, fourth, that an image of child pornography

22   involved in the offense involved a prepubescent minor or a

23   minor who had not attained the age of 12.

24         The facts that we would prove to substantiate each

25   of the counts that Mr. Kopp is charged with in the indictment

Case 16-3355, Document 20, 02/15/2017, 1060540, Page148 of 252

1   are as follows.

2           Beginning in or about 2014, we would prove that

3   Jason Kopp and Emily Oberst entered into an agreement and

4   understanding with one another relating to the sexual

5   exploitation of Victim-1, a minor child born in 2014.  As a

6   part of their conspiracy, Oberst agreed to use the child in

7   order to produce sexually explicit images of V-1 and

8   distribute those images to Kopp.  She also agreed to allow

9   Kopp access to V-1 for the purpose of using the infant for

10  sexually explicit conduct, and for producing images of that

11  conduct, both alone and together with Oberst.  This

12  conspiracy is charged in Count 1.

13          As set forth more particularly throughout this

14  offer of proof, both Oberst and Kopp actually engaged in the

15  agreed-upon exploitation of V-1, producing images and videos

16  depicting the lascivious exhibition of the infant's genitals,

17  as well as images and videos depicting mouth-to-vagina

18  contact, mouth-to-penis contact, and penis-to-vagina contact

19  with the infant.  The images and videos of Victim-1 were

20  produced using Samsung Galaxy cellular telephones, each of

21  which was manufactured outside the State of New York and,

22  thus, transported in interstate and foreign commerce.

23  Further, images and videos of V-1 produced as a part of the

24  conspiracy were also distributed between Oberst and Kopp, as

25  well as with others, including via an online messaging

1  application and email, and, as such, were actually

2  transported using a means and facility of interstate and

3  foreign commerce and in and affecting such commerce.

4       We would prove that on or about November 28 of

5  2014, Jason Kopp engaged in sexually explicit conduct with

6  V-1 for the purpose of producing visual depictions of that

7  conduct, and using his Samsung cellular telephone, he

8  produced images that depict his penis pressed against the

9  vagina of V-1.  The exploitation of V-1 for the purpose of

10 producing these images is charged in Count 6.

11      We would prove that on or about February 19th of

12 2015, Jason Kopp engaged in sexually explicit conduct with

13 V-1 for the purpose of producing visual depictions of that

14 conduct, and, using his Samsung cellular telephone, produced

15 images that depict penis-to-mouth contact with V-1.  The

16 exploitation of V-1 for the purpose of producing these images

17 is charged in Count 7.

18      We would prove that on or about April 26th of 2015,

19 Jason Kopp engaged in sexually explicit conduct with V-1 for

20 the purpose of producing visual depictions of that conduct

21 and, using his Samsung cellular telephone, produced image and

22 video files depicting that sexually explicit conduct,

23 including the lascivious exhibition of V-1's vagina,

24 penis-and-vagina contact with V-1, and penis-and-mouth

25 contact with V-1.  The exploitation of V-1 for the purpose of

Case 16-3355, Document 20, 02/15/2017, 1060540, Page150 of 252

1  producing these images is charged in Count 8.

2          We would prove that on or about June 20th of 2015,

3  Jason Kopp engaged in sexually explicit conduct with Victim-1

4  for the purpose of producing visual depictions of that

5  conduct, and, using a Samsung cellular telephone, produced

6  image and video files depicting that sexually explicit

7  conduct, including the lewd and lascivious exhibition of

8  V-1's genitals, penis-to-vagina contact with V-1, and

9  penis-to-mouth contact with V-1.  This exploitation is

10 charged in Count 9.

11         We would prove that on or about May 12 of 2015,

12 Jason Kopp engaged in sexually explicit conduct with V-3, a

13 male child born in 2013 for the purpose of producing visual

14 depictions of that conduct, and, using his Samsung cellular

15 telephone, the defendant produced images depicting that

16 sexually explicit conduct, including the lewd and lascivious

17 exhibition of Victim-3's genitals, hand-to-penis contact with

18 Victim-3, and a depiction of Victim-3 naked straddling Kopp's

19 penis.  The exploitation of V-3 for the purpose of producing

20 these images is charged in Count 10.

21         We would prove that on or about November 8th of

22 2015, Jason Kopp engaged in sexually explicit conduct with

23 V-3 for the purpose of producing visual depictions of that

24 conduct, and, using his Samsung cellular telephone, produced

25 image and video files depicting that sexually explicit

Case 16-3355, Document 20, 02/15/2017, 1060540, Page151 of 252

1   conduct, including the lewd and lascivious exhibition of

2   V-3's genitals, penis-to-penis contact with V-3, and a

3   depiction of V-3 naked straddling Kopp's penis.  The

4   exploitation of Victim-3 for the purpose of producing these

5   images is charged in Count 11.

6          We would prove that on or about December 26, 2015,

7   Jason Kopp engaged in sexually explicit conduct with V-3 for

8   the purpose of producing visual depictions of that contact,

9   and, using a Samsung cellular telephone, produced images

10  depicting that sexually explicit conduct, including the lewd

11  and lascivious exhibition of V-3's genitals.  This

12  exploitation for the purpose of producing these images is

13  charged in Count 12.

14         We would prove that on or about January 30th of

15  2016, Jason Kopp engaged in sexually explicit conduct with

16  V-3 for the purpose of producing visual depictions of that

17  conduct, and, using his Samsung cellular telephone, produced

18  images depicting that sexually explicit conduct, including

19  the lewd and lascivious exhibition of V-3's genitals.  This

20  exploitation of V-3 for the purpose of producing these images

21  is charged in Count 13.

22         We would prove that on or about June 15 of 2015,

23  Kopp distributed to Emily Oberst via messaging application, a

24  means and facility of interstate and foreign commerce, a

25  video file depicting the lewd and lascivious exhibition of

Case 16-3355, Document 20, 02/15/2017, 1060540, Page152 of 252

1  V-3's genitals.  This distribution is charged in Count 14.

2           We would prove that on or about August 24th of

3  2015, the defendant distributed to Emily Oberst, via

4  messaging application, video files depicting the lewd and

5  lascivious exhibition of V-3's genitals.  This distribution

6  is charged in Count 15.

7           We would charge that on or about February 10th of

8  2016, Kopp sent an email via the internet, a means and

9  facility of interstate and foreign commerce, to another user

10  at email address jxxxxxxxxxo@yandex.com.  The email sent by

11  Kopp contained three attached image files, all depicting the

12  lewd and lascivious exhibition of V-3's genitals.  By return

13  email, the user to whom Kopp sent the images, acknowledged

14  receipt of the images of V-3.  And this distribution is

15  charged in Count 16.

16           We would prove that on or about February 15th of

17  2016, Kopp sent an email via the internet, a means and

18  facility of interstate and foreign commerce, to another user

19  at an email address starting with the letter k, and the rest

20  redacted, at yandex.com.  The email sent by Kopp contained

21  seven attached image files.  Three of the image files depict

22  the lewd and lascivious exhibition of V-3's genitals.  Three

23  depict the lewd and lascivious exhibition of V-1's genitals.

24  And one depicts V-1's face.  By return email, this user

25  acknowledged receipt of the images.  And this distribution is

Case 16-3355, Document 29, 02/15/2017, 1060540, Page153 of 252

1    charged in Count 17.

2            We would prove that on or about March 4th of 2016,

3    Mr. Kopp distributed to an undercover law enforcement

4    officer, via messaging application, image files depicting the

5    lewd and lascivious exhibition of V-1 genitals.  And this

6    distribution is charged in Count 18.

7            We would prove that on or about March 5th, 2016,

8    Jason Kopp counseled, commanded, induced, or procured the

9    sexual exploitation of V-1 by texting Emily Oberst and asking

10   her to produce images of V-1 and send them to him.  We would

11   prove that when Kopp asked for images of V-1, Oberst knew he

12   meant sexually explicit images and that that is, in fact,

13   what Kopp intended.

14           In proving that statement, as elicited in

15   Footnote 2 of the amended offer of proof, the government

16   would -- our proof would include the recorded statements of

17   the defendant to Special Agent Alex Skelton of the FBI, which

18   are excerpted in Footnote 2.

19           At Kopp's request, we would prove some time between

20   March 5th and 6th of 2016, Oberst used V-1 for the purpose of

21   producing sexually explicit images depicting the lewd and

22   lascivious exhibition of the infant's vagina and she actually

23   produced such images and then on March 6th of 2016,

24   distributed the produced images to Kopp via messaging

25   application.  The exploitation of Victim-1 for the purpose of

1   producing these images is charged in Count 2.

2           We would prove that after receiving the explicit

3   images of Victim-1 on March 6 of 2016, Kopp redistributed one

4   of the sexually explicit images back to Oberst via messaging

5   application, with a comment on what he liked about the image.

6   Specifically, as delineated in Footnote 3 of the amended

7   offer of proof, we would present a text message sent from

8   Kopp to Oberst where he redistributes to her two images of

9   V-1, one that depicts the child's buttocks and one that

10  depicts the lewd and lascivious exhibition of her vagina.

11  These images were accompanied by a text that read, "I love

12  these two pics the first one is because her pussy sticks out

13  in the second one is because she has a nice little asshole".

14  This distribution is charged as Count 19.  We would prove

15  that on March 7th of 2016, Kopp distributed one of these

16  sexually explicit images of V-1 produced at his request by

17  Oberst to an undercover law enforcement officer through

18  messaging application.  And this distribution is charged as

19  Count 20.

20          We would prove that on or about March 15th of 2016,

21  Jason Kopp again counseled, commanded, induced, or procured

22  the sexual exploitation of V-1 by texting Emily Oberst and

23  asking her to produce images of V-1 and send them to him.  At

24  Kopp's request, sometime between March 15th and March 16th,

25  we would prove that Oberst used V-1 for the purpose of

Case 16-3355, Document 20, 02/15/2017, 1060540, Page155 of 252

1　producing sexually explicit images depicting the lewd and

2　lascivious exhibition of the infant's vagina, that she

3　actually produced such images and that on March 16th of 2016,

4　she distributed the produced images to Kopp via a messaging

5　application.　The exploitation of Victim-1 for the purpose of

6　producing these images is charged in Count 3.

7　　　　　We would further prove that on March 17th of 2016,

8　the defendant distributed two of these sexually explicit

9　images of V-1, produced at his request by Oberst, to an

10　undercover law enforcement officer through messaging.　And

11　this distribution is charged as Count 21.

12　　　　　We would prove that on March 18th of 2016, the

13　defendant distributed 11 sexually explicit images of V-1 to

14　the undercover law enforcement officer through a messaging

15　application.　These images depict the lewd and lascivious

16　exhibition of V-1's vagina and a depiction of the infant

17　naked straddling Kopp's penis.　This distribution is charged

18　as Count 22.

19　　　　　We would prove that on March 18th of 2016, Jason

20　Kopp knowingly possessed the following items of electronic

21　media that contained image and video files of child

22　pornography known to be a series widely traded on the

23　internet, and obtained by him from the internet:

24　　　　　On a 500 GB Seagate external hard drive, a product

25　of China, Kopp possessed 793 images of child pornography,

Case 16-3355, Document 29, 02/15/2017, 1060540, Page156 of 252

1    exclusive of the images of the victims charged in Counts 1

2    through 26 of the indictment.  These files will be made

3    available to the probation office and to the Court prior to

4    sentencing.

5          And they include the two images described or the

6    two files described in the offer of proof; specifically, an

7    image file with a name that contains a long string of letters

8    and numbers that depicts a female child approximately 2 to 3

9    years old with an adult penis in her mouth and a video file

10   named "8 year old duct taped and raped24.(1).wmv", which

11   depicts a female child whose age appears consistent with the

12   age stated in the title of the file.  The child's wrists and

13   ankles are bound together with duct tape, with an adult male

14   having sexual intercourse with her.  This possession is

15   charged in Count 27.

16         We would prove that on an HP desktop, containing a

17   1 TB Western Digital hard drive made in Thailand, the

18   defendant possessed 78 images and 125 videos of child

19   pornography, exclusive of the images and the videos of the

20   victims charged in Counts 1 through 26 of the indictment.

21   These files will also be made available to probation and the

22   Court prior to sentencing and they include the two files

23   described in the offer of proof including:

24         Untitled37.bmp, an image file depicting an adult's

25   penis pressed against the bare vagina of an infant or toddler

Case 16-3355, Document 20, 02/15/2017, 1060540, Page157 of 252

1   with semen on the child's vagina, and;

2           Untitled24.bmp, an image file depicting a female

3   child who appears to be 4 or 5 years old holding an adult

4   penis with her hands and putting it in her mouth.  The

5   possession of this material is charged in Count 28.

6           THE COURT:  Okay, Mr. Kopp, you heard the

7   government's offer of proof as to what they believe they

8   could prove, had this case gone to trial.

9           Sir, is that what you did, is that what occurred in

10  this case?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  And you had an opportunity to review

13  this offer of proof which was just read by the government

14  with your attorney prior to entering your guilty plea here

15  today?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Okay.  Ms. Bianco, is that, also, your

18  understanding of what occurred here?

19          MS. BIANCO:  Yes, your Honor.

20          THE COURT:  Ms. Fletcher, would you, please, inform

21  the defendant of the sentencing possibilities in this case.

22          MS. FLETCHER:  Yes, your Honor.

23          Counts 1 through 3 and 6 through 13 carry maximum

24  terms of imprisonment of 30 years per count and 15-year

25  mandatory minimums per count.

1    Counts 14 through 22 carry 20-year maximum terms of
2  imprisonment per count with 5-year mandatory minimums per
3  count.
4    Counts 27 and 28 do not have mandatory minimums and
5  they carry a maximum term of imprisonment of 20 years per
6  count.
7    The maximum fine for each count is $250,000.
8    In addition, the Court must require the defendant
9  to serve a term of supervised release of between 5 years and
10  life to begin after imprisonment.  A violation of the
11  conditions of supervised release during that time period may
12  result in the defendant being sentenced to an additional term
13  of imprisonment of up to 3 years, except as provided below.
14    There is a special assessment of $100 per count of
15  conviction.  And the defendant, under the Sex Offender
16  Registration and Notification Act, as a result of his
17  conviction in this case, must register as a sex offender and
18  keep that registration current in each jurisdiction where he
19  resides, where he is an employee, and where he is a student.
20    For initial registration purposes, the defendant
21  must, also, register in New York as a result of this
22  conviction, even if he resides in a different jurisdiction.
23    A sex offender who knowingly fails to register or
24  update a required registration may be subject to prosecution
25  under 18, U.S.C., section 2250 and face a penalty of up to

Case 16-3355, Document 28, 02/15/2017, 1060540, Page159 of 252

1   10 years imprisonment.

2           Further, notwithstanding the description previously

3   set forth about the consequences of a violation of the

4   conditions of supervised release, if the defendant, as a

5   registered sex offender, or when required to register as a

6   sex offender, while on supervised release commits any

7   criminal offense under Chapter 109A, 110 or 117 or

8   Section 1201 or 1591 of Title 18, for which imprisonment

9   for a term of longer than 1 year can be imposed, the Court

10  must revoke his term of supervised release and require him

11  to serve an additional term of imprisonment of not less than

12  5 years on the violation.

13          Furthermore, the Court shall enter an order

14  directing the defendant to pay restitution to any minor

15  victims depicted in the images encompassed in any counts to

16  which the defendant has pled guilty pursuant to 18, U.S.C.,

17  Section 2259(b).  Restitution shall be determined by the

18  Court in an amount that comports with the defendant's

19  relative role in the causal process that underlies the

20  victim's general losses and shall be a reasonable and

21  circumscribed award imposed in recognition of the

22  indisputable role of the defendant in the causal process

23  underlying the victim's losses and suited to the relative

24  size of that causal role.

25          Furthermore, there's a forfeiture provision that

Case 16-3355, Document 20, 02/15/2017, 1060540, Page160 of 252

1    we've previously discussed and the other adverse consequences

2    that go along with a felony conviction, including the loss of

3    certain civil rights, including, but not limited to, his

4    right to vote, right to possess a firearm, or to hold certain

5    professional licenses.

6           THE COURT:  Mr. Kopp, do you understand the

7    potential sentencing Guidelines or sentencing possibilities

8    just recited by the government?

9           THE DEFENDANT:  Yes, I do, your Honor.

10          THE COURT:  And you understand there's mandatory

11   minimums with regard to some of these counts --

12          THE DEFENDANT:  Yes, I do, your Honor.

13          THE COURT:  -- as recited?  Okay.

14          Projected sentencing Guideline range.

15          MS. FLETCHER:  Yes, your Honor.

16          The defendant is projected to score a level 43,

17   which is life, and, given the statutory maximums involved in

18   the counts of conviction, that would equate to a Guidelines

19   level of 550 years.

20          THE COURT:  Mr. Kopp, has your attorney discussed

21   with you the Sentencing Guidelines and how they apply to your

22   case?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  And you understand that I'm required to

25   consider those Guidelines in determining what your sentence

Case 16-3355, Document 20, 02/15/2017, 1060540, Page161 of 252

1    will be?

2                THE DEFENDANT:  Yes, your Honor.

3                THE COURT:  We get that, along with a lot of other

4    information submitted by your attorney and submitted by the

5    government and probation's presentence report to determine an

6    appropriate sentence; you understand?

7                THE DEFENDANT:  Yes, your Honor.

8                THE COURT:  Okay.  We won't be able to determine

9    exactly what the Guidelines are in your case until after

10   probation has completed a presentence report; you understand

11   that?

12               THE DEFENDANT:  Yes, your Honor.

13               THE COURT:  An adjudication of guilty may deprive

14   you of certain valuable civil rights, such as the right to

15   vote, the right to hold public office, the right to serve on

16   a jury, and the right to possess a firearm; do you understand

17   that?

18               THE DEFENDANT:  Yes, your Honor.

19               THE COURT:  Furthermore, after it's been determined

20   how the Guidelines apply to your case, the Court has to

21   consider other factors under Section 3553(a) Title 18, such

22   as the following:

23               The nature and circumstances of the offense and

24   your history and characteristics as a defendant; the

25   seriousness of the offense; the need to promote respect for

Case 16-3355, Document 20, 02/15/2017, 1060540, Page162 of 252

1   the law and provide just punishment for the offense; the need

2   to afford adequate deterrence of criminal conduct; the need

3   to protect the public from further crimes; the need to

4   provide you with appropriate education, vocational, medical

5   or other treatment in an effective manner; any pertinent

6   policy issues issued by the Sentencing Commission; the need

7   to avoid unwarranted sentencing disparities; and the need to

8   provide restitution to the victims of the offense.

9           Mr. Kopp, now that you've been informed of the

10  penalties, to the extent that we know them now, the

11  Sentencing Guidelines and my role under the Guidelines, do

12  you still wish to plead guilty, sir?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And are you pleading guilty because you

15  are guilty and for no other reason?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  You advised me that you had an

18  opportunity to review the indictment containing the charges

19  with your attorney, that you did review them and your

20  attorney explained those charges to you.

21          Can you assure me you understand these charges that

22  have been --

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  -- that have been filed against you?

25          THE DEFENDANT:  Yes, I do, your Honor.

US v. Kopp – 16–CR–108

1     THE COURT:  And do you realize the potential

2   penalties that can be imposed upon you after pleading guilty?

3     THE DEFENDANT:  Yes, I do, your Honor.

4     THE COURT:  Have any promises been made to you as

5   to what the sentence might be?

6     THE DEFENDANT:  No, no, your Honor.

7     THE COURT:  Thank you.

8     THE DEFENDANT:  You're welcome.

9     THE COURT:  Ms. Bianco, if you could, just briefly

10   for the record, background and experience.

11     MS. BIANCO:  Certainly, your Honor.

12     I was admitted to the New York State bar in 1989.

13   I was admitted to the Northern District of New York in 1995.

14   My entire career has been in criminal defense work and I've

15   been with the office of the public defender since 2012.

16     THE COURT:  And you understand and agree that, once

17   the client or defendant pleads guilty, the only advocacy that

18   remains is with regard to the Sentencing Guidelines and the

19   ultimate sentence your client will receive?

20     MS. BIANCO:  Yes.

21     THE COURT:  Would you state for the record

22   approximately how much time you spent with Mr. Kopp on this

23   matter.

24     MS. BIANCO:  I've had several in-person visits with

25   him.  We've spoken on the phone.  We've communicated in

Case 16-3356, Document 20, 02/15/2017, 1060540, Page164 of 252

1    writing and I have at least, my office including, 75 hours in

2    this case.

3            THE COURT:  And have you advised Mr. Kopp of his

4    rights, the nature of the charges against him; and the

5    consequences of pleading guilty?

6            MS. BIANCO:  Yes.

7            THE COURT:  How about discovery from the

8    government, either formally or informally?

9            MS. BIANCO:  Yes, your Honor.

10           THE COURT:  What?

11           MS. BIANCO:  We had formal discovery and we've,

12   also, had informal discovery.

13           THE COURT:  And do you believe that you received

14   adequate information to appropriately advise Mr. Kopp of a

15   disposition?

16           MS. BIANCO:  Yes.

17           THE COURT:  Have you made any promises or threats

18   to induce him to plead guilty?

19           MS. BIANCO:  No.

20           THE COURT:  Are you satisfied he's pleading guilty

21   freely and voluntarily, with an understanding of the nature

22   of the charges and the consequences?

23           MS. BIANCO:  Yes.

24           THE COURT:  Do you know of any defenses he may

25   have?

Case 16-3355, Document 20, 02/15/2017, 1060540, Page165 of 252

1           MS. BIANCO:  No, I do not.

2           THE COURT:  Do you know of any other reason why he

3    should not plead guilty?

4           MS. BIANCO:  No, your Honor.

5           THE COURT:  Thank you, Ms. Bianco.

6           Mr. Kopp, I've taken into consideration the

7    statements made to me by you, as well as the statements made

8    to me by your attorney and the Assistant United States

9    Attorney.  And, based on those discussions, it is the finding

10   of this Court that you have pled guilty knowingly and

11   voluntarily; that you are competent and capable of entering

12   an informed plea; that you understand the charges against you

13   and the consequences of pleading guilty; that there was a

14   basis in fact for the Court accepting your plea into the

15   record.

16          I accept your plea and you are now adjudged guilty

17   of those offenses.

18          I'm going to direct the probation department to

19   prepare and submit a presentence report.

20          And I'm going to schedule sentencing for

21   September 14th, 2016, at 10 a.m. here in Syracuse.

22          Counsel, the clerk will electronically file the

23   Northern District Uniform Presentence Order.

24          Once the presentence report is prepared, it will be

25   lodged with the clerk's office and you will receive it

1    electronically through ECF.  Any objections to the report

2    must be submitted in writing to probation within 14 days of

3    receipt of that report.

4              Anything further on behalf of the government?

5              MS. FLETCHER:  Nothing further.

6              THE COURT:  Ms. Bianco, anything further on behalf

7    of Mr. Kopp?

8              MS. BIANCO:  I just wanted the record to reflect on

9    Page 13 of the offer of proof that there's an agreement for

10   non-prosecution for other offenses and I think that's already

11   in the record.  It's already been filed.

12             THE COURT:  Did you file the offer of proof on the

13   docket?

14             MS. FLETCHER:  Yes.

15             THE COURT:  Okay.  So, it's on the Court's docket.

16   It's in the record.  It's there.

17             MS. BIANCO:  Thank you.

18             THE COURT:  So, and, certainly, I think the offer

19   of proof, it should be on the record and it will be.  It's

20   part of the Court's record.  Okay.

21             Mr. Kopp, we'll see you at sentencing.

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Okay.

24             THE CLERK:  Court is adjourned.

25             (Proceedings adjourned at 9:48 a.m.)

Case 16-3255, Document 20, 02/15/2017, 1060540, Page167 of 252

US v. Kopp – 16-CR-108

1

2                    C E R T I F I C A T I O N

3

4

5            I, DIANE S. MARTENS, Registered Professional

6    Reporter, DO HEREBY CERTIFY that I attended the foregoing

7    proceedings, took stenographic notes of the same, that

8    the foregoing is a true and correct copy of same and the

9    whole thereof.

10

11

12

13

14

15

16

17

18                                   _____

19                                   DIANE S. MARTENS, FCRR

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   -v-                         CASE NO: 5:16-CR-00108-GTS

JASON KOPP,
                       Defendant.

---

# SENTENCING MEMORANDUM

DATED: August 24, 2016            Respectfully submitted,

                                 LISA A. PEEBLES
                                 Federal Public Defender

         By:    Randi J. Bianco, Esq.
                  Assistant Federal Public Defender
                  Bar Roll No. 507514
                  Clinton Exchange, 3rd Floor
                  4 Clinton Square
                  Syracuse, New York   13202
                  (315) 701-0080

## I. PRELIMINARY STATEMENT

On May 20, 2016, Jason Kopp [hereinafter "Jason] pled guilty to 22 counts of a 28-count Indictment. Count 1 charges Conspiracy to Sexually Exploit a Child, in violation of 18 U.S.C. § 2251(a); Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13 charge Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a); Counts 14, 15, 16, 17, 18, 19, 20, 21, and 22 charge Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); and Counts 27 and 28 charge Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). PSR ¶ 1. Jason's sentencing is scheduled for September 13, 2016. The United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on July 27, 2016, in anticipation of Jason's sentencing. The PSR sets forth a total advisory Offense Level of forty-three (after acceptance) and a Criminal History Category of I. PSR ¶ 197, 204. Jason has raised his objections to the factual contents contained in the PSR with probation.

The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) excised the provisions in the Sentencing Statute which made the guidelines mandatory, thus holding the guidelines are merely advisory. Therefore, in determining a sentence, a court must equally consider the guideline calculations, the unique characteristics of the defendant, as well as other statutory concerns listed in 18 U.S.C. § 3553(a), specifically:

(1)     The nature and circumstances of the offense and the history and characteristics of the defendant;
(2)     The need for the sentence imposed
    (A)     To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)     To afford adequate deterrence to criminal conduct;
    (C)     To protect the public from further crimes of the defendant; and
    (D)     To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a).

1

JA. 166

Jason respectfully submits this memorandum in support of a sentence "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a)(2). In light of the objectives of sentencing and Jason's steady employment history, supportive family, and mental condition resulting from traumatic experiences, Jason requests a sentence at the statutory mandatory minimum term of fifteen years' imprisonment on each count imposed to run concurrently to be followed by lifetime supervision.

## II. 18 U.S.C. § 3553(a) FACTORS

### 1. History and Characteristics of the Offender

#### A. Traumatic Experiences and Mental Health

Jason's background involves events that gravely affected the person he is today. As a child, Jason was physically abused by his step-father. PSR ¶ 207. His step-father pushed, hit, and spanked Jason, as well as his sister and mother. *Id.* This abuse continued until Jason's mother divorced his step-father when he was twelve years old. *Id.*

While the physical abuse was occurring, Jason began to be sexually abused by a teenage boy in his neighborhood starting at age ten. PSR ¶ 208. This sexual abuse continued for approximately five years until Jason was fifteen. *Id.* Embarrassed and traumatized, Jason never disclosed the abuse and never received counseling. This type of non-disclosure is not surprising and tends to be very common among victims of sexual abuse. In fact, empirical research demonstrates that a majority of child sexual abuse victims do not disclose during childhood. *See* K. London et al., *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways That Children Tell?* (2005). Furthermore, male victims are even less likely to disclose their abuse than their female counterparts. *See* S.E. Ullman et al., *Gender Differences in Social Reactions to Abuse Disclosures, Post-Abuse Coping, and PTSD of Child Sexual Abuse Survivors* (2005).

2

JA. 167

The sexual abuse Jason suffered seriously affected his long-term well-being. The combination of the physical and sexual abuse during Jason's formative years led him to be held back in elementary school. As is well-documented in psychological research, there are numerous consequences associated with being a victim of child sexual abuse. Specifically, child sexual abuse has been strongly correlated with depression, suicide, sexual promiscuity, and poor academic achievement. *See* E.O. Paolucci et al., *A Meta-Analysis of the Published Research on the Effects of Child Sexual Abuse* (2001). Being a victim of child sexual abuse is also correlated with becoming an offender later in life. *Id.* Unfortunately, Jason became part of this cycle of sexual abuse.

In the more recent past, Jason has had to handle his father's early dementia, depression and attempted suicides. Jason and his father were very close and lived together in an apartment from Jason's early twenties to his late thirties. Jason's father was diagnosed with depression in 1996 and has been on medications since his diagnosis. His father has attempted to commit suicide several times, often leaving suicide notes for Jason to find. The last suicide attempt was five years ago. At that time Jason was sharing an apartment with his father and he came home on a lunch break from work. Jason's father confessed that he tried to kill himself by cutting his wrist and trying to electrocute himself. Jason had to call 911 for his father's safety and his father was taken to a psychiatric hospital. He later found several suicide notes that his father had planned to leave behind for him. The notes stated that he was sorry, not to come into this room because he would be dead and to call 911. After the attempted suicide, Jason became his father's caregiver for more than two years. In order to assure his father's safety, Jason would take his father to therapy and make sure he took his medication. Jason was very shaken up and constantly worried about his father's well-being. He was never entirely sure whether his father was going to take his life, as there were times that his father would stop taking his medication, causing Jason

3

incredible stress. Per his mother, all three of Jason's paternal uncles have tried to commit suicide as well, putting Jason at risk for this behavior. As this incident occurred approximately five years ago, it contributed to Jason's mental state preceding the occurrence of the instant offenses.

An attempted suicide by a parent can have extremely adverse effects on offspring. Specifically, empirical research has demonstrated that offspring of a parent that has attempted suicide are six times more likely to attempt suicide themselves. *See* D.A. Brent et al., *Familial Pathways to Early-Onset Suicide Attempt: Risk for Suicidal Behavior in Offspring of Mood-Disordered Suicide Attempters* (2002). Significantly, this probability increases to an even greater likelihood in the event that the offspring has experienced sexual abuse. *Id.* Jason is a prime example of the category of offspring that this research outlines. After having experienced sexual abuse as a child, Jason had to endure his father's suicide attempt as an adult. These experiences were the perfect storm to create Jason's altered mental state and, in turn, led to the instant offenses.

Jason suffers from a Depressive Disorder NOS with Schizoid and Avoidant Personality Features, a determination made by psychologist, Dr. Thomas Lazzaro. Dr. Lazzaro determined that Jason's mental state is in great part due to the sexual abuse that he experienced as a child. Jason began experiencing feelings of depression at fifteen years old, which was the same age his sexual abuse ended. PSR ¶ 208, 215. Dr. Lazzaro contends that this altered mental state played a large role in the commission of his crimes and that Jason committed the instant offenses as a means of coping with his depression. Jason's mother reports that this depression has continued into his adulthood, as Jason was taken to St. Joseph's Hospital's Comprehensive Psychiatric Emergency Program (CPEP) about six years ago after trying to commit suicide himself. After Jason's father attempted suicide and his former girlfriend abandoned him, Jason attempted to purchase a gun to end his own life. PSR ¶ 213, 215

4

JA. 169

**B. Employment**

Despite his multiple negative experiences, Jason has a lengthy work history with consistent employment dating back fifteen years. During a five-year period from approximately 2002 to 2007, Jason worked at *both* Petco and TJ Maxx. PSR ¶ 222. At Petco, he served as an animal and reptile specialist, and at TJ Maxx, he began as a custodian and became a back room coordinator. In 2009, Jason obtained a full-time position at Speedy Medical Transport as a driver. PSR ¶ 221. Jason worked at Speedy Medical Transport for five years, having to leave when he wanted to work more hours than were available. *Id.* In 2013, Jason worked for Sysco for approximately five months and then worked stocking at Walmart for approximately four months. PSR ¶ 220. In 2014, he found a more stable position at Third Party Logistics, working there until the time of his arrest. PSR ¶ 219. At Third Party Logistics, Jason delivered medical supplies and medications to facilities, working seven days per week.

This Circuit has held that a downward variance based on a defendant's employment history is merited where there are exceptional or extraordinary circumstances. *United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir. 1990) (holding that the defendant's nine-year employment history was an indicator of his "stable background" and one of two factors warranting a downward variance in sentencing); *see also United States v. Big Crow*, 898 F.2d 1326 (8th Cir. 1991) (affirming a district court's decision to grant a downward variance given the defendant's "excellent employment record" for six years). Jason's case is one that meets the level of extraordinary and warrants a downward variance in his sentence.

**C. Education**

To assist in furthering his employment opportunities, Jason has also taken vocational classes. In addition to his high school diploma, Jason has a commercial driving certificate and

Class A CDL license. PSR ¶ 217. Jason attended the National Tractor Trailer School in 2010, completed the program and earned a certificate. *Id.*

### D. Military History

Before his steady employment endeavors, Jason served in the military from February 1996 to October 1997. PSR ¶ 218. He served with the mortar platoon being deployed out of airplanes. Jason's service ended when his wife continued to have Jason pulled from the field for alleged emergencies. Jason was then given the choice between staying in the military and having his wife leave the base, or leaving the military. Jason chose to continue to live with his wife so he left the military.

### E. Family Support

Jason is an important member of his family, who will assist in his rehabilitation. [1] Many of Jason supporters, including his fiancé, have asked the court for leniency for Jason and have described his many good qualities. Jason has served a particularly important role in the life of his sister, Kimberly. (See Support Letters) Kimberly has a learning disorder and Jason has always been a helpful and protective brother towards her. Jason has also served as a caregiver for his father, being there 100% while his father suffered from depression and suicidal ideation. Jason's fiancé, Nicole, his mother, father, sister, aunt, and cousin will assist in his rehabilitation for him after his release in any way possible. With a supportive family encouraging his progress and treatment, Jason will be able to reintegrate into society smoothly and remain a law-abiding member of society.

## 2. Need for Treatment

Section 3553(a)(2)(D) requires the Court to look at the defendant's need for "educational or vocational training, medical care, or other correctional treatment in the most effective manner" when imposing a sentence. Furthermore, the Second Circuit has held that a court may

---

[1] See support letters from family submitted under separate cover.

JA. 171

grant a downward variance where "extreme childhood abuse caused mental and emotional
conditions that contributed to the defendant's commission of the offense." *United States v.
Rivera*, 192 F.3d 81, 85 (2d Cir. 1999). Jason's background and history clearly illustrate he has
suffered severe childhood trauma that unquestionably played a role in his commission of the
instant offenses.

Significantly, Jason has never received counseling or treatment for his condition. This is
likely a result, in part, of the manner in which men handle depression. Research demonstrates
that men are significantly less likely than women to report or get help with their depression.
*See* K.A. Wilhelm, *Men and Depression* (2009). Additionally, men are more likely than women
to deal with their feelings of depression through risky actions, such as drug or alcohol abuse,
road rage, and suicide. *Id.* In Jason's case, unfortunately, his risky actions took the form of the
conduct that led to the instant offense. Since his arrest, however, Jason has realized that he needs
treatment to better himself and reenter society. He is extremely amenable to treatment in order to
deal with the mental and emotional conditions that led him to commit the present offenses. PSR
¶ 67. If Jason was able to receive counseling and treatment, he could benefit immensely.
Sentencing Jason to receive treatment during his sentence and continue to do so after his release
would be the best course toward Jason's rehabilitation.

**3. Jason's Age and Low Risk of Recidivism**

Jason is presently 40 years old and, should the Court sentence him to the mandatory
minimum sentence of 15 years, he will be 55 when released. The Sentencing Commission has
found that advanced age should be considered at sentencing and that there is an inverse
correlation between recidivism rates and age.  United States Sentencing Commission, *Measuring
Recidivism: the Criminal History Computation of Federal Sentencing Guidelines*, (May 2004).
The Sentencing Commission found that less than 10% of defendants over fifty years of age

committed another crime. *Id.* at 28. Controlling for criminal history category, only 6.2% of the defendants over age fifty that were in a Criminal History Category of I committed another offense. *Id.* at 28.

While there is some evidence that sex offenders pose a higher risk of recidivism than other criminal defendants, *see, e.g.*, *United States v. Hayes*, 445 F.3d 536, 537 (2d Cir. 2006) (citing H.R. Rep. No. 107-527, at 2 (2002)), other studies focusing on sexual offenders found results similar to those found by the Sentencing Commission: recidivism decreases with age for all offender types. *See, e.g.*, R. Karl Hanson, *Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters* (2001).

Even if the recidivism rates of the entire population of sex offenders are generally higher than the population of other criminal defendants, a point Jason does not concede, studies have demonstrated that sex offenders receiving treatment are less likely to recidivate than sex offenders who remain untreated. *See*, *e.g.*, Karen Kersting, *New Hope for Sex Offender Treatment,* MONITOR ON PSYCHOLOGY (Aug. 2003); John Q. LaFond & Bruce J. Winnick, *Sex Offender Reentry Courts: A Proposal for Managing the Risk of Returning Sex Offenders to the Community*, 34 Seton Hall L. Rev. 1173, 1180-84 (2004).

Here, Jason will participate in sex offender treatment while incarcerated and when released to supervision. As demonstrated by his psychological evaluation, Jason is very amenable to this treatment and will likely gain much from participating. Thus, his age, treatment opportunities, and post-release supervision indicate that the likelihood of his recidivism will significantly diminish. Therefore, 15 years, plus life supervision, would be a sentence sufficient, but not greater than necessary, to satisfy the remaining federal interests involved in this case.

**4. Remorse and Acceptance of Responsibility**

JA. 173

Jason has accepted responsibility for his actions and is extremely remorseful for what he has done. After his arrest, Jason confessed to his crimes and admitted wrongdoing. He did not want anyone involved to have to testify or put anyone else through any more pain by going through with a trial. Jason feels horrible about what he has done to the victims and what they will have to endure. Additionally, he feels incredible remorse for the impact that his actions will have on his family, particularly Nicole and his children. He understands the seriousness of his offense and sincerely wants to change his life for the better.

**5. The PSR's Advisory Guideline Sentence is Miscalculated**

First, the PSR miscalculated the "total punishment." Under Guideline § 5G1.2(b), "the court shall determine the total punishment and shall impose that total punishment on each count." U.S. Sentencing Guidelines Manual § 5G1.2(b) (U.S. Sentencing Comm'n 2014). The Guidelines define "total punishment" as the total "determined by the court after determining the adjusted combined offense level and the Criminal History Category and determining the defendant's guidelines range on the Sentencing Table in Chapter 5, Part A." U.S. Sentencing Guidelines Manual § 5G1.2 cmt. n.1 (U.S. Sentencing Comm'n 2014). Here, the adjusted combined offense level was 43 (PSR ¶197) and the Criminal History Category was I (PSR ¶204), resulting in a Sentencing Table range of life. Thus, the "total punishment" for the purposes of Guideline § 5G1.2(b) was life. The PSR, however, characterized the "total punishment" for the purposes of Guideline § 5G1.2(b) as 550 years (PSR ¶ 226)- a sum reached by adding together the statutory maximum term for each count. The PSR erred in that characterization.

Second, the PSR compounded its error when it applied its erroneous "total punishment" calculation to the Guideline governing whether to impose concurrent or consecutive sentences. Guideline § 5G1.2(d) states that:

> [i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentences imposed on one or more of the other

> counts shall run consecutively, but only to the extent necessary to produce a
> combined sentence equal to the total punishment. In all other respects, sentences on
> all counts shall run concurrently.

Sentencing Guidelines Manual § 5G1.2(d) (U.S. Sentencing Comm'n 2014) (emphasis added). The emphasized language expresses the long-standing preference in American courts for concurrent sentences rather than consecutive sentences. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."); *United States v. Martinez*, 274 F.3d 897, 903 n.5 (5th Cir. 2001) (characterizing § 5G1.2 as "labeling concurrent sentences as the default"; *United States v. Hardrich*, 707 F.2d 992, 993 n.1 (8th Cir. 1983) (noting that the National Advisory Commission on Criminal Justice Standards and Goals "recommends a presumption in favor of concurrent sentences for multiple offenses"). Here, having have erroneously determined that the "total punishment was 550 years, the PSR concluded that, under § 5G1.2(d), imposing the maximum statutory sentence on every count to be served consecutively would impose "a Guideline sentence." What the PSR was actually required to calculate was to impose consecutive sentences *but only to the extent necessary* to produce a combined sentence of *life*. The United States Sentencing Commission defines a life sentence as 470 months (39.2 years). United States Sentencing Commission, *Life Sentences in the Federal System*, (Feb. 2015). The Social Security Administration calculates that a man born on October 9, 1975 can expect to live, on average, until age 82. SOCIAL SECURITY ADMINISTRATION, CALCULATORS: LIFE EXPECTANCY, https://www.ssa.gov/OACT/population/longevity.html. Under the Social Security standard, a life sentence for Jason would be 41.2 years. Thus, in order to impose a guideline sentence, the Court would impose consecutive sentences amounting to 41.2 years.

**6. A Life Sentence is Excessive and "Greater Than Necessary"**

Sentencing a defendant to likely die in prison is a decision that courts have taken with great scrutiny. As the Seventh Circuit has stated, "there is a worthy tradition that death in prison is not to be ordered lightly, and the probability that a convict will not live out his sentence should certainly give pause to a sentencing court. " *United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006). A life sentence would deprive Jason the opportunity to rehabilitate himself and rejoin society.

In addition to the clear impact that a sentence amounting to life imprisonment would have on Jason, there is a larger-scale sentencing issue present as well. Namely, by imposing such a harsh sentence in this case, there would be virtually no greater sentence available for harsher crimes, namely, murder. Punishing Jason as severely as a murderer disrupts the goal of marginal deterrence, the idea that "the harshest sentences should be reserved for the most culpable behavior." *United States v. Newsom*, 402 F.3d 780, 785–786 (7th Cir. 2005). As discussed by the United States Supreme Court, "there is a line between homicide and other serious violent offenses against the individual" and "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." *Graham v. Florida,* 560 U.S. 48, 69 (2010). Taking into account this spectrum of crimes and their varying degrees of severity, the United States Sentencing Commission has strived to "preserve proportionality" regarding child pornography offenses. United States Sentencing Commission, *The History of the Child Pornography Guidelines* 48 (2009). A sentence amounting to life imprisonment is clearly incongruent with this goal.

## III. CONCLUSION

Jason Kopp has a history of abuse and psychological impairment that ultimately led to the instant offense. Given the history behind the legislation concerning sexual exploitation of children, the guideline sentence of essentially life imprisonment is unnecessarily excessive. Such

a sentence would be incongruent with his offense and the overall goals of sentencing outlined in 18 U.S.C. § 3553(a). It would unfair and inaccurate to determine that Jason cannot be rehabilitated. With 15 years' imprisonment and treatment, Jason can be capable of reentering society. Based upon the foregoing, a sentence at the statutory mandatory minimum term of 15 years' imprisonment on each count, imposed to run concurrently and followed by lifetime supervision, would comply with the statutory goals of punishment.

## REQUEST FOR JUDICIAL RECOMMENDATION

The defense requests that the Court recommend that Bureau of Prisons designate Jason be placed in FCC Tucson as that facility has a sex offender treatment program which he would like to participate in.


DATED: August 24, 2016                  LISA A. PEEBLES
                                        FEDERAL PUBLIC DEFENDER
                          By:    */s/ Randi J. Bianco, Esq.*
                                          Assistant Federal Public Defender
                                          Bar Roll No. 507514
                                          Clinton Exchange, 3rd Floor
                                          4 Clinton Street
                                          Syracuse, New York  13202
                                          (315) 701-0080


To:  Lisa Fletcher, Esq., AUSA
      United States Probation Department
      Jason Kopp

12

JA. 177

Case 16-3355, Document 20, 02/15/2017, 1969549, Page181 of 252

To Whom It May Concern:

I Jason E Kopp take full responsibility for my actions that have affected so many lives. I also regret my actions more than anyone will ever know. I feel horrible about what I did to the victims and how I have changed their lives forever. I do not know y I did the things/actions that I did. I have regretted them for a very long time and I wish I could go back in time and change the actions that have affected so many lives. Ever sense I have been arrested I sit here and cry through out the day about what I have done and the ones it has affected. It kills me knowing I will not see either of my 2 boys grow up or see their smiles and laughs and that they will grow up without a father. The memories we can't make as a family. The holidays birthdays family events. I can't teach my boys how to fish go bowling ride a bike teach them to catch a ball and hit a baseball or be able to go to a park and see the smiles and laughs on their face. or just kick a ball around outside or hear them call daddy be there for them when they fall down or have a problem. My children will not have these experiences because of what I did. I just hope some day everyone will forgive me. I also see the hurt and pain in my fiances eyes. I know I hurt her by my actions and it hurt me breaks my heart everyday. It breaks my heart that I failed my sons as a father and dad. Its not only them that kills me. Its my fiance Nicole. she tells me how there doing and what things they are doing how much they have grown. I see the hurt and pain in her eyes the man she loves did the things I did. It also hurts seeing her struggle with everything that I use to take care of when I was working and home. I feel like a worthless man because Im not there to take care of my family like I should be. Its also my fault they lost the apt we had that she moved in with her family. Seeing her struggle kills me. my family shouldn't be struggling I should be there taking care of them like a man should be. I hate myself everyday I wake up because of what I did. I can't believe this is my life or the life my family has to live. This shouldn't be our lives. I shouldn't have done this to them. I see the hurt and pain in my fathers eyes and letter and the hurt and pain in my mother eyes. I can't believe I hurt the ones that I love and are closest to me. I will never forgive myself. My parents didn't raise me to do what I did. I don't know y I did the things I did. seeing my mother and fiance cry they come to see me breaks my heart more n more. Hearing my boys in the background knowing I cant talk to them breaks my heart. I sit here everyday allday wish I was home with my family doing the right things I should have done and I never should have done what I did that put me in this position. I regret I didn't get help. My family is everything to me and I am so sorry I changed their lives forever.

I ruined the name Kopp Im ashamed. It hurts knowing I lost many friends and some relatives due to my actions. I hurt Nicole and members of her family that mean the world to me. I hurt members of my family that mean the world to me. I hope you give me a 2nd chance. I want to get help while I am in prison.

I have remorse for what I have done. I regret everything. I wanna be a better man father role model. I wanna right some wrongs. I beg you from the bottom of my heart to have mercy on my soul and life. I regret my actions everyday that caused so many people hurt pain anger depression etc. I would love more than anything to have a 2nd chance at life and prove everyone wrong that I am a good man  and I can do whats right.

I would also like to ~~say~~ apologise to the victims . I'm sorry I hurt and caused you pain and suffering none of this was your fault and never should have happened. I hope and pray that they all heal and will be ok and someday they all can forgive me if not I understand.

JA. 178

**THOMAS A. LAZZARO, PH.D.**
**COMSTOCK COMMONS**
**4 DAYBREAK LANE**
**SYRACUSE, NEW YORK 13210**
**(315) 471-4757**
**FAX: (315) 471-1642**

June 10, 2016

Rando Bianco, Esq.
Assistant Federal Public Defender
Federal Public Defender's Office
4 Clinton Square
Syracuse, New York 13202

   **RE: KOPP, Jason**

Dear Attorney Bianco:

Thank you for your kind referral of Jason Kopp, a 43 year old man who is currently incarcerated at the Cayuga County Jail awaiting sentencing after pleading guilty to federal charges involving sexual exploitation of children and possession and distribution of child pornography. You requested that I conduct a Personality/Psychodiagnostic Evaluation of Mr. Kopp in order to ascertain whether any emotional issues contributed to his crimes.

I conducted my evaluation of Mr. Kopp on June 9, 2016 at the Cayuga County Jail. I conducted a clinical interview of Mr. Kopp and administered to him the Mini-Mental State Exam and the Millon Clinical Multiaxial Inventory-III.

Mr. Kopp was cooperative, motivated for the evaluation, and his affect and demeanor were appropriate. He was oriented in all three spheres, he had no trouble following directions, and there was no evidence of any hallucinations, delusions, or other psychotic process.

Mr. Kopp received a score of 30 on the Mini-Mental State Exam, the highest score possible. Thus he functions in at least the Average range of intelligence and there was no evidence of any organically-based neuropsychological deficits.

Mr. Kopp was administered the Millon Clinical Multiaxial Inventory-III (MCMI-III) as an objective measure to better understand his current and more long-standing personality features. The MCMI-III focuses on a person's habitual and maladaptive strategies for behaving, thinking, feeling, and relating to the world. Mr. Kopp's MCMI-III profile was consistent with the interview in portraying the picture of a chronically depressed man, likely in part due to the sexual abuse he experienced as a child. He also exhibits Schizoid and Avoidant Personality Features, again in part due to the sexual abuse he experienced as a child. Mr. Kopp has no history of mental health treatment or substance abuse.

In summary, based on his history, these testing data, and on clinical impressions, in this examiner's opinion, with a reasonable degree of psychological and professional certainty, Mr. Kopp suffers from a Depressive Disorder NOS with Schizoid and Avoidant Personality Features. It is also this examiner's opinion, again with a reasonable degree of

1

psychological and professional certainty, that Mr. Kopp's emotional issues played a significant role in his crimes as a means of coping with his depression.

Please contact me for any further information that you may need.

Sincerely yours,

Thomas A. Lazzaro, Ph.D.
Licensed Psychologist
N.Y.S. License PSY 003867-1

2

JA. 180

Case 16-3355, Document 20, 02/15/2017, 1969549, Page184 of 252

8-3-16

Dear Honorable Judge Glenn
                    Suddaby


My name is Patricia Squi
I am Nicole Stala's grandmoth.
who is the girlfriend of Jason
Kopp. & mother of Their 2
Sons Daymen 3 years old &
Gage 3 months old. I have
known Jason for 5 years. The
Jason That I knew was a
good father & a good partner
for Nicole. He had a good
job & Took care of Them financly
while Nicole was a nurse. They
were saving for Their 1st house.
He got along with every one & always
there to help out any way he
could. I was shocked I
would never Thought That of him
& has the betrayed his

JA. 181

Case 16-3355, Document 20, 02/15/2017, 1969549, Page185 of 252

family & Left Nicole To
Bring up the 2 Boys alone
I heard That he is going
To receive a Long sentence
& he should recieve some Time
But above all he needs
help, and I hope he
gets That where ever he
goes.

Catherine A Sg wr

Case 16-3355, Document 20, 02/15/2017, 1969549, Page186 of 252

7-25-16

"Dear Judge Glenn Suddaby"

Jason is my cousin. We have always had a good relationship. He's always been there for me. He's helped me out with paying rent, giving me a ride when I needed it. They might seem like small things, but it's the thought behind it that really counted.

He has always been a decent person for as long as I have known him. It would be a great thing to see him get help for the issues that he has. I still love him and want to see him get help.

Phone # 315-378-5622

JA.  183

Case 16-3355, Document 20, 02/15/2017, 1969549, Page187 of 252

7-27-16                    315-288-4651

"Dear Judge Glenn Suddaby"

I would like to talk to you about my Son Jason Kopp. I am his father Chris Kopp.

Jason is funny, thoughtful, caring and a loving and loved Son.

He is loved and respected by family members and friends that he sees. When we have big family get togethers, Jason shows caring and concern when he talks to others about their well being and how they are doing.

Jason cares about his family and friends and will do anything he can for them. He helped his cousin Kevin financially when he was going through some rough times, and also let a friend of his stay with him for a time because of trouble at home. Jason's family and friends are a strong bond to him.

I love my son very much and I would like to see him have a second chance at life.  Chris Kopp.
THOUGHTFUL, Strong Ties with Family + Friends
Caring, Loving + Loved

JA.  184

8/2/16

Case 16-3355, Document 20, 02/15/2017, 1969549, Page188 of 252

Dear Judge Glenn Suddaby,

I have witnessed Jason's respect for elders including myself, including a time he literally ran a couple blocks to take chairs from my hands that I was carrying to a family party.

I don't believe he's even had a parking ticket before.

His parents divorced when he was young + that appeared to be tough on him.

Jason's father has suffered from depression for years. His father even attempted suicide + Jason found him. At that time was when Jason had already shared an apartment to help ~~~~ care for him

His father now has his own apartment, but Jason was still helping when he could.

JA. 185

Case 16-3355, Document 20, 02/15/2017, 1969549, Page189 of 252

tough life.

I have a lot of love for him.
He is a very good kid.

Dianne Kopp
Dianne S. Kopp

Case 16-3355, Document 20, 02/15/2017, 1969549, Page190 of 252

7-25-16

"Dear Judge Glenn Suddaby",

I am writing this letter off on behalf of Jason Kopp.

I am Jason's Aunt. I have spent all of my life around Jason.

Jason has always been fun-loving, caring of family and friends and willing to help someone if they needed help.
On many occasions he helped out my son when he was financially down and out so he could get through some hard time. He was there 100% when his father tried to commit suicide, being at the hospital with him and supporting his father through his most difficult times.
Our family has a history of depression and alcoholism. I myself have suffered from depression on and off most of my life.
Jason has never drank alcohol or been involved with drugs. He has always loved his family very much.
A few years back Jason went to truck driving school and received his CDL licence. He started doing long distance driving and

JA. 187

Case 16-3355, Document 20, 02/15/2017, 1969549, Page191 of 252

found it wasn't for him as he missed being away from home from family + friends. He gave it up for that reason.

He then took a local job driving for persons with disabilities. He got along teriffic with the people he served and had a great rapport with those he provided service for.

Jason has had his share of difficulties over the years as we all have.

I believe that Jason deserves a second chance and I pray every day that he can get the help he needs to become a well person again.

I love my nephew very much.

Linda Hill

315-458-0503

JA. 188

Case 16-3355, Document 20, 02/15/2017, 1969549, Page192 of 252



Dear Judge Glenn Suddaby,
   My name is Kayleigh. I've known Jason Kopp for about 6 years now. He is dating my sister and the father of my nephews. I've always known him to be nice, hardworking and a provider to his family. He was always willing to help when needed. I think he has realized what he's done is wrong and is willing to get any help he can. He deserves a second chance to get the help he needs with the support of his family.

                    Thank You
                       Kayleigh Stata

Case 16-3355, Document 20, 02/15/2017, 1969549, Page193 of 252

Wendy Tiffin

Judge Glenn Suddaby

This has to be one of the hardest
letters I ever had to write. I am
Jason Ropp mom. He was a great
kid growing up. Never in trouble
with the law, drinking or drugs.
He was always there for me and
his sister. Always. I believe
every one deserves a second chance
in life. Jason needs help this is
a person who has heart. I don't
believe the son I know would do
what everyone is saying. So
please help him. I love and
miss him.

MARY FAULTER

Case 16-3355, Document 20, 02/15/2017, 1969549, Page194 of 252

Wendy Tiffin

Judge Glenn Suddaby

Dear Judge Glenn Suddaby

My name is Kimberly Faulter
Jason Kopp is my brother I have a
learning disability he has
always been protective of me,
he was a great brother, We
were close, I miss him a
lot, We did a lot of
things together, he lives This
whole in New York City he
matter always there for me, No
deserves a second chance,
So please give him one.

Kimberly
Faulter

JA. 191

Case 16-3355, Document 20, 02/15/2017, 1969549, Page195 of 252



Dear Honorable Judge Glenn Suddaby,

My name is Nicole Stala, I am an LPN and have been working at a nursing home for five and a half years. I am writing to you regarding Jason Kopp. I have been dating and living with Jason for six years, engaged for two years.

Jason was always willing to help family, co-workers, neighbors, myself and anyone else in need. He was extremely hard-working and worked seven days a week to help provide for our family. He was also very generous and caring. He helped with the support of his father after he had attempted suicide until he was able to recover and move into his own apartment. He was always supportive to me and continues to be now.

I believe Jason deserves a second chance. He is willing to participate in treatment programs or anything else to give him the opportunity to receive the help he wants and needs. I am willing to help him do this by driving him, giving him a place to live, and supporting him in any way that I can. Jason is sorry for what he has done and shows remorse in every letter, phone call, and visit that I have with him. I have forgiven Jason for what he has done and hope that he is given the opportunity

Case 16-3355, Document 20, 02/15/2017, 1969549, Page196 of 252

to right some wrong-doings and
also to be with his family again.
I believe the minimum sentence will
be the most beneficial to him and
our family and I know he would
never do this again.
        Thank you for your
           consideration,

Nicole Stella

Case 16-3355, Document 20, 02/15/2017, 1969549, Page197 of 252

July 20, 2016

Dear Judge Suddaby,

I am writing to you in support of Jason Kopp. I have known Jason for six years. He was my daughter's fiance and father to my grandson.

I know Jason to be a hardworking family man. He worked hard at his job and he took care of his family. He was always there to help if anyone needed anything. Jason understands that he has done wrong and deeply regrets it. He wants to get help and move forward with his life. I believe an extended prison sentence will serve no purpose in helping him and will be a hardship on his family. I am respectfully seeking the mercy of the court when he is sentenced. I believe a reduced sentence, probation, community service and therapy will help him to become a more responsible and productive citizen.

Thank you for your time and consideration.

Respectfully,

Kimberly Stala

JA. 194

Case 16-3355, Document 20, 02/15/2017, 1969549, Page198 of 252

7/3/16

Dear Judge Glenn Suddaby,

I am Jason's paternal aunt.

Although we are close in age, me being 44 yrs. old, I baby sat him when he was a pre-teen.

As an adult, I've seen a gentle & caring heart in Jason, in his adulthood.

During some family "get-togethers", he would share stories from his employment where he was transporting people with disabilities. The stories were always positive. I could see that he took pride in this position, and that he felt good about helping people.

I have also seen his behavior with his paternal grandmother, which is warm-hearted & caring.

Thank you,

Jennifer Wolfe

Jennifer Wolfe

JA. 195

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

************************************

UNITED STATES OF AMERICA

             v.

JASON KOPP,

              Defendant.

************************************

Case No.   5:16-CR-108 (GTS)

GOVERNMENT'S SENTENCING
MEMORANDUM

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting, for the reasons set forth below, that the Court impose a Guidelines sentence of 550 years imprisonment and lifetime supervised release.

## INTRODUCTION

On May 20, 2016, defendant Jason Kopp entered a plea of guilty to twenty-two counts of a twenty-eight count Indictment charging him with one count of conspiracy to sexually exploit a child in violation of Title 18, United States Code, Sections 2251(a) and (e) (Count 1); ten counts of sexually exploiting two different minors, in violation of Title 18, United States Code, Section 2251(a) (Counts 2, 3 and 6 - 13); nine counts of distribution of child pornography (Counts 14 – 22) and two counts of possessing material that contains one or more images of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Counts 27 and 28).

Kopp is scheduled to be sentenced by this Court on September 13, 2015.

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

1.      **Statutory Maximum and Minimum Sentences**

The defendant's convictions on Counts 1 – 3 and 6 - 13 of the Indictment subject him to a mandatory minimum of 15 years, and a maximum sentence of 30 years imprisonment, per count. 18 U.S.C. § 2251(e); PSR ¶ 225.   His convictions on Counts 14 – 22, carry a mandatory minimum of 5 years, and a maximum term of 20 years, per count. 18 U.S.C. § 2252A(b)(1); PSR ¶ 225. His convictions on Counts 27 and 28 carry a maximum term of 20 years imprisonment per count. 18 U.S.C. § 2252A(b)(2); PSR ¶ 225.

In addition, each count of conviction carries with it a mandatory term of supervised release of at least 5 years, and up to life, 18 U.S.C. § 3583(k), PSR ¶ 229, and a fine of up to $250,000. 18 U.S.C. § 3571; PSR ¶ 234.[1]

2.      **Guidelines Provisions**

a.      **Offense Level**

The Government agrees with the Guidelines computations of the Probation Officer, and that the defendant's Total Offense Level is 43.   PSR ¶¶ 68 – 197.[2]

---

[1]      The Government agrees with the assessment of the Probation Officer that the defendant does not have the ability to pay a fine or to pay the additional special assessment provided for in 18 U.S.C. § 3014.   PSR ¶¶ 223 - 24.

[2]      It is significant to note that Kopp's Guidelines score of 43 is the result of the instruction in U.S.S.G. Chapter 5, Part A (comment, n. 2), which provides that any score higher than 43 resolves down to that maximum offense level. PSR ¶ 197.   Here, Kopp actually scored 51, eight levels above a 43, and scored that low only because the 12 units he scored on the multiple count adjustment allows only for the addition of a maximum of five levels, regardless of the number of countable offenses.   PSR ¶ 188.

2

JA. 197

### b.    Acceptance of Responsibility

The Government moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b) to credit the defendant for having "timely notified authorities of his intention to enter a plea of guilty, thereby permitting the U.S. Attorney's Office to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."   PSR ¶ 193.

### c.    Criminal History Category

According to the presentence report, the defendant's criminal history category is I.   PSR ¶ 204.   The Government agrees with the Probation Officer's determination of the defendant's criminal history category.   While this designation "does not adequately reflect the seriousness of the defendant's past conduct or the likelihood of recidivism," because the Guidelines call for a life sentence regardless of criminal history score, the Government is not seeking an upward departure from this criminal history category.   *See* U.S.S.G. § 4A1.3.

### d.    Guidelines Range and Sentence

As described above, the defendant's total offense level is 43 and his criminal history category is I.   As a result, the Sentencing Guidelines advise that the defendant receive a sentence of life.   PSR ¶ 226.   However, since no count of conviction carries a potential life sentence, U.S.S.G. § 5G1.2(d) provides that the sentences imposed on each count of conviction shall run consecutively "to the extent necessary to produce a combined sentence equal to the total punishment."   Here, the total punishment available to the defendant is 550 years, representing consecutive maximum sentences on each count of conviction.   PSR ¶¶ 226 – 27; *see United States v. Hamilton,* 548 Fed. App'x 728 (2d Cir. 2013) (summary order); *United States v. Ketcham*, 507 Fed. App'x. 42, 44 (2d Cir. 2013) (summary order); *United States v. Petrie*, 542 Fed. App'x. 746,

3

JA. 198

747-48 (2d Cir. 2013) (summary order).   Additionally, the Guidelines term of supervised release for each count of conviction is no less than 5 years and up to life, PSR ¶ 231.   The Guidelines recommend lifetime supervision.   *Id*.; U.S.S.G. § 5D1.2(b)(2).

For all of the reasons set forth below, the Government maintains that this Guidelines sentence is fair, just, and warranted.

**3.     Forfeiture**

As set forth in the Forfeiture Allegation of the Indictment, and the Bill of Particulars filed in this matter, the defendant shall forfeit to the United States all of his right, title and interest of any nature in any and all assets that are subject to forfeiture, pursuant to 18 U.S.C. § 2253.   That forfeiture includes the following:

(a)     one Samsung Galaxy S3, model SCH-I535V, serial number 256691456907935328;

(b)     one 500GB Seagate external hard drive, serial #2GEX1XAM;

(c)     one HP desktop, model #HPE210Y, serial #MXX0180KG9, containing a 1TB Western Digital hard drive, serial #WCAV5A980350;

(d)     one Samsung Galaxy S4, serial #RV8FB176TWE; and

(e)     one Samsung Galaxy S5, IMEI #990004954246785.

**4.     Restitution**

In addition to the minor victims involved in Counts 1 – 3 and 6 - 13, the minors depicted in the images and videos involved in the defendant's child pornography possession crimes, Counts 27 and 28, are victims of his offenses.   Restitution to the victims is mandatory, and the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source.   18 U.S.C. § § 2259(b)(3) and (c).

4

While there have been no restitution requests from the minors charged in Counts 1 – 3 and 6 - 13, as it applies to the victims of the defendant's possession offenses, he is responsible for restitution in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," which shall be calculated by the Court to be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S.Ct. 1710, 1727 (2014).   To date, one of those victims has filed a request for restitution, as Kopp's crimes involve her images.   The parties will work together to determine whether there is an amount of restitution that can be agreed upon to satisfy the restitution claim. Should negotiations fail, the Government will brief the issue of restitution and what amounts should be awarded to the victim as a result of Kopp's crimes.

### GOVERNMENT'S SENTENCING RECOMMENDATION[3]

A sentence should be reasonably designed to achieve the total punishment, taking into account the nature and seriousness of the defendant's crimes, the harm done to the victims, and each of the relevant considerations required under 18 U.S.C. § 3553(a).   Here, that sentence is 550 years imprisonment and lifetime supervised release.

---

[3]       The Government reserves the right to respond to defense arguments.   Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond.   *See* Fed R. Crim. P. 32(i)(1)(c), 32 (h).

       Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

JA. 200

Thwarted only by the swift and sure work of the FBI, Jason Kopp is a dangerous and repeat sex offender whose crimes continued to escalate in severity just as the ages of his victims continued to become shockingly younger.   Although Kopp's sexual abuse and exploitation of V-1 and V-3 do not stand alone in his history of crimes against children, even were they his only offenses, they are the type of heinous crimes that themselves demand a life sentence.

While it is hard to imagine what would lead a person to sexually abuse any child, it is inconceivable that a person could be so inherently evil as to prey upon infants.   Jason Kopp, however, is the personification of that very evil.   Because he memorialized it in images, we know that Kopp's sexual abuse of V-3 dates back, at least, to when the child was just a year old.   PSR ¶ 36.   But more shockingly, with V-1 we know that the hands-on abuse began just days after the baby was born.   PSR ¶¶ 7 – 9 (detailing the evidence that Kopp had a sexual encounter with V-1 when she was 6 days old, including mouth to penis and penis to vagina contact with the newborn). We also know that V-1 was sexually exploited up to the time of Kopp's arrest, when she was only 16 months old.   PSR ¶¶ 8 – 26.   There is really nothing more that need be said.   The image Kopp produced of the baby looking into the camera with his penis under her chin, and his semen on her face, says it all.   PSR ¶ 17.   The type of person who could conceive of, and commit, these acts must be separated from the rest of society, and children, forever.

Even so, there is much more that justifies a life sentence for Jason Kopp.   While his crimes with V-1 and V-3 are vile enough, his texts with co-defendant and co-conspirator Emily Oberst, almost too horrible to read, often referring to newborn V-1 as Kopp's "slut," "bitch," and "sex toy," reveal an alarming mindset that proves, unequivocally, that he lacks a conscience, or any moral compass, and poses a real and certain danger to children.   *See*, e.g. PSR ¶ 7, p. 10 (Kopp:

JA. 201

"Always dreamed about molesting baby's and keep doing it as the grow and become older and doing after that," … "N sucking on there lil buds and taking there virginity."); PSR ¶ 9 (Kopp, commenting, after having sexually abused 6-day old V-1: "That was so f****** amazing … I just can't believe it happened … I can't wait for it to happen again … ty for making my dreams come true.   Just hope it continues for years n years.")[4]

But while Kopp's arrest in 2016 marked the end of his freedom to abuse children, the investigation into his history and background revealed a pattern of abuse dating back 16 years, when, in 2000, 24 year-old Kopp[5] produced images of his penis next to the mouth of his then-17 year-old sleeping girlfriend (a violation of 18 U.S.C. § 2251(a)).   While these images were taken with a Polaroid camera at the time, they were meaningful enough to Kopp that he produced and maintained digital copies of them for 16 years.[6]   The ex-girlfriend, identified as V-8 in the PSR, was 16 years old when she began dating Kopp.   That relationship ended three years later, because, as she put it: "he liked little girls."   PSR ¶¶ 62 – 63.

In or about March and November of 2004, at ages 28 and 29, Kopp produced sexually explicit images of V-4 and three of her friends as they slept.   PSR ¶¶ 55 – 57.   At the time he produced the March images, V-4 was 10 years old; at the time of the November images, she was 11.   PSR ¶ 55.   Kopp's activity with these sleeping children included, among other things,

---

[4]     Misspellings and grammar errors are as in the original texts.

[5]     Kopp's ages at the times of some of his offenses are approximate.   Where the exact dates of the offenses are unknown, the ages are estimated to be before his birthdate in the year of the offense, as he was born in the latter part of 1975.

[6]     The digital copies of these images were recovered from Kopp's computer subsequent to his arrest.

taking a Polaroid picture of his penis in the hand of sleeping V-4, and on the buttocks of one of her sleeping friends. PSR ¶¶ 55, 56. Now an adult, V-4 recalls waking up as a child "to find Kopp putting her hand on his penis." PSR ¶ 57. Again, the Polaroids Kopp took of his abuse and exploitation of V-4 and her friends were meaningful to him. He labeled them, took digital pictures of them, and kept them, for 12 years, on his computer. PSR ¶ 55.

In or about 2006, 31 year-old Kopp befriended a woman with two young daughters, ages 1 and 2. He offered to take the children overnight to give their mother "a break." While entrusted to his care, in both October and November of 2006, Kopp sexually abused and exploited the children. Identified in the PSR as V-5 and V-6, Kopp produced close-up images of their vaginas, as well as images of himself licking and pressing his penis against the babies' vaginas, and licking their nipples. PSR ¶¶ 58 – 59. Again, Kopp prized these images enough that he maintained them on his computer for 10 years, until they were found by law enforcement following his arrest.

In or about 2014, 38 year-old Kopp met the mother of 10 year-old V-7 through a Craigslist post. As a part of her relationship with Kopp, the child's mother sexually abused V-7, produced images of the abuse, and sent those images to Kopp, who maintained them on his computer from 2014 to the date of his arrest in 2016. The images were produced in the summer to fall of 2014. PSR ¶ 60. The abuse of V-1 began that fall as well – after she was born in November, 2014. PSR ¶¶ 7 – 9.

Based upon the evidence recovered in the case, again from the collection of images and videos he maintained, we know that Kopp's exploitation of children continued to escalate in 2015 and 2016, with the abuse and exploitation of V-1, V-3, and with his receipt of images of V-2,

produced and sent to him by co-defendant Emily Oberst.   PSR ¶¶ 7-18, 33, 34 – 39, 50.   Not only that, Kopp also shared the images of the exploitation of V-1 with the undercover police officer, and the images of the exploitation of both V-1 and V-3 by email with at least two other like-minded individuals.   PSR ¶¶ 42 – 44, 46 – 48.

With all of this, it cannot be overlooked that Kopp additionally victimized children whose images are widely traded on the Internet.   He maintained, on two devices, a total of 871 images and 125 video files depicting the sexual exploitation of these children.   PSR ¶¶ 53-54.   Sixty-two known child victims have been identified within his collection. PSR ¶ 65.   They, and the children who have yet to be identified in the other images and videos he possessed, are also victims of Jason Kopp's crimes.

We will never know the full extent of Jason Kopp's crimes against children, only those which he took care to document in images and videos, and save.   Even so, with that documentation Jason Kopp has proven, time and again, that he is a dangerous predator with an insatiable appetite for abusing and exploiting children.   His crimes include infants and toddlers, the most defenseless of an already vulnerable set of victims.   He simply cannot be allowed to ever be at liberty again, as any potential release would be to gamble with the lives and well-being of children.   That is too high a price.

In regard to the remainder of the § 3553(a) factors: the only kind of sentence available is incarceration, and the sentencing range as established by the Guidelines is 550 years; the policy statement issued by the Sentencing Commission at U.S.S.G. § 5K2.0(b) advises against a departure from the Guidelines in child crimes and sexual offenses except in explicitly numerated circumstances, none of which are present here; and adherence to the Guideline sentence is the best

9

JA. 204

way to ensure against sentencing disparity "among defendants with similar records who have been found guilty of similar conduct."   18 U.S.C. §§ 3553(a)(3)(4)(5)(6), and (7).   Simply put, all of the § 3553(a) factors lead to one conclusion: the sentence imposed must ensure that Jason Kopp will spend the remainder of his life in prison, never again to have access to another child.

## CONCLUSION

The record reveals no mitigating factor at all, much less one that would support a deviation from the recommended Guideline sentence.   In fact, this case involves only aggravating factors that support the imposition of a life sentence.   Such a sentence is reasonably designed to achieve the total punishment, and takes into account the nature and seriousness of the defendant's crimes, the harm done to the many child victims whose exploitation came directly at the hands of and/or at the request of the defendant, as well as the child victims whose images he collected from the Internet - and each of the relevant considerations required under 18 U.S.C. § 3553(a).   As such, the Government maintains that consecutive sentences totaling the maximum available sentence of 550 years, designed to ensure that the defendant spends the rest of his life in prison, is the outcome warranted by his crimes.   Such a sentence is *not* greater than necessary, and both complies with and accomplishes the many goals of sentencing.   18 U.S.C. § 3553(a).

Respectfully submitted this 24th day of August, 2016,

RICHARD S. HARTUNIAN
United States Attorney

By:  /s/  *Lisa M. Fletcher*

Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

10

JA. 205

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

********************************
UNITED STATES OF AMERICA

                                                    Case No.: 5:16-CR-108 (GTS)

        v.

JASON KOPP,

            Defendant.
********************************

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2016 I filed the **Government's Sentencing Memorandum** with the Clerk of the District Court and sent copies of said documents via ECF to the following:


Randi Juda Bianco, Esq.




/s/

Paula Briggs




**11**

JA. 206

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA

v.                                                    Case No. 5:15-CR-108 (GTS)

JASON KOPP                                 GOVERNMENT'S RESPONSE TO
                                                       DEFENDANT'S SENTENCING
                                                       MEMORANDUM
                            Defendant.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On August 24, 2016, pursuant to the Uniform Presentence Order issued by the Court, the United States filed a sentencing memorandum in the above-captioned matter. The Sentencing Memorandum of the United States addressed the Presentence Investigation Report (PSR) only, as we had not yet received the defendant's sentencing submissions. That same day, the defendant filed a sentencing memorandum, and this response is filed in answer to the arguments raised therein.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

**1.      The Guidelines Sentence is Correctly Scored.**

Based upon a flawed reading of U.S.S.G. § 5G1.2, the defendant maintains that where, as here, no count of conviction carries a maximum penalty of life (the sentence called for by the defendant's Guidelines score), the Guidelines sentence should be the number of years resulting from some generalized calculation of his *life expectancy*, apparently regardless of whether the Court deems a life sentence to be appropriate. Defendant's Sentencing Memorandum, pp. 9 – 10. Specifically, the defendant argues that in his case, "in order to impose a guideline sentence, the Court would impose consecutive sentences amounting to 41.2 years." *Id*. at 10. This theory lacks both legal merit and common sense.

First, as to common sense, a Guidelines sentence of life is not a gamble; it is not designed to allow liberty to defendants who are able to outlive some actuarial estimate of how long they will live. Instead, when a Court determines that a Guidelines sentence of life is the total punishment that should be imposed, the sentence should be a term of years that ensures that result. U.S.S.G. § 5G1.2(d). Whether that term is 100 years, or 550 years, the intended result is accomplished – the defendant will never again be at liberty. With the proposed sentence of 41.2 years, the defendant would be eligible for approximately 6 years of good time credit, and as such eligible for release in approximately 35.2 years, or when he is 75. In this way, there is every likelihood that he would avoid an intended life sentence, a fact he cannot dispute given that he maintains his life expectancy is 82. *Id.* There is no reading of the law that would require such an absurd result. Thus, in a case like this one, where there are multiple counts of conviction, each of which can bear a consecutive sentence, the sentencing court can, and should, best ensure the defendant will serve a full life sentence by stacking the statutory maximum sentences for each count rather than by employing some artificial limitation on the total term of imprisonment that will not guarantee the intended result.

More fundamentally, however, the defendant's theory has no legal merit, and not surprisingly, Kopp offers no legal support for his proposed approach. Indeed, the Court of Appeals rejected a similar contention in *United States v. Hamilton*, 548 F. App'x 728 (2d Cir. 2013) (summary order). Hamilton was convicted of five counts of production of child pornography, each of which carried a statutory maximum thirty-year term of imprisonment; one count of receipt of child pornography, which has a twenty-year statutory maximum; and one count of possession of child pornography, which has a ten-year statutory maximum. The district court

2

imposed consecutive maximum terms on the five production counts and concurrent maximum terms on the receipt and possession counts, for a combined 1,800-month (150-year) term of imprisonment to achieve the guidelines sentence of life.  *Id*. at 729.

On appeal, Hamilton argued "that a cumulative sentence of 1,800 months is substantively unreasonable because given his age and life expectancy, the sentence amounts to 'multiple life sentences.'"  The Court disagreed.  "But of course, no prisoner can serve more than a life sentence. Any sentence that extends beyond Hamilton's maximum conceivable life expectancy has no practical effect on him. Thus, the sentence imposed on Hamilton (like any sentence a third its length) is simply equivalent to a life sentence."  *Id*. at 730.

Similarly, other federal appellate courts have equated a guidelines sentence of life imprisonment with a term of years consisting of consecutive maximum terms of imprisonment on each count of conviction, even when the resulting total term of years well exceeds a defendant's life expectancy.  *See, e.g., United States v. Ivory*, 532 F.3d 1095, 1107 (10th Cir. 2008) (rejecting challenge to imposition of sixty-year term of imprisonment consisting of consecutive twenty-year maximum statutory terms of imprisonment on three counts of conviction when the guidelines sentence was life); *United States v. Thompson*, 523 F.3d 806, 809, 814 (7th Cir. 2008) (upholding a 190-year term of imprisonment resulting from stacking the maximum statutory terms of imprisonment for multiple counts of conviction to best achieve a guidelines sentence of life); *United States v. Veysey*, 334 F.3d 600, 602 (7th Cir. 2003) (upholding a 110-year term of imprisonment consisting of the stacking of the maximum statutory terms on 16 counts of mail and wire fraud, arson, and using fire to commit a felony when guidelines sentence was life); *United States v. Lott*, 310 F.3d 1231, 1244 (10th Cir. 2002) (explaining that a 125-year sentence resulting

3

JA. 209

from stacking of multiple drug convictions under U.S.S.G. § 5G1.2(d) was "the effective equivalent of a life sentence").

## 2.    A Life Sentence is Not Excessive nor "Greater than Necessary"

The Government has no quarrel with the defendant's argument that life sentences should be "reserved for the most culpable behavior." Defendant's Sentencing Memorandum, p. 11, quoting *United States v. Newsom*, 402 F.3d 780, 785 – 86 (7th Cir. 2005).   Where we disagree is with the definition of "the most culpable behavior."   Where the defendant would limit life sentences to murder, *id*., neither Congress, nor the Courts, have imposed such a limitation.   *See United States v. Metzger*, 411 Fed. App'x 1, (7th Cir. 2010) (upholding a 235 year sentence for a 54 year old defendant convicted of producing child pornography of 7 victims, and possessing one million images of internet child pornography and erotica, specifically rejecting the argument that "his sentence is substantively unreasonable because it leaves no room for a higher penalty to deter worse offenders," the very same argument proffered here by Kopp).   Moreover, if life sentences were intended to be as limited as the defendant suggests, there would be no reason for the Guidelines provide for and recommend such a sentence in any other case.

In fact, there are many non-homicide statutes that allow for life sentences, and some that *require* it for repeat offenders.   *See, e.g.* 18 U.S.C. § 2241(c) (mandatory minimum 30 year, and maximum life sentence for crossing a state line with the intent to engage in a sexual act with a child under 12, regardless of whether the abuse actually occurs; with *mandatory life* for a second offense); 18 U.S.C. § 2423(a) (mandatory minimum 10 year, and maximum life sentence for transporting a minor under 18 across a state line with the intent that the child engage in unlawful sexual activity, regardless of whether the activity actually occurs); *United States v. Jansen*, 431

4

Fed. App'x 51 (2d Cir. 2011) (upholding life sentence imposed by Judge Hurd on a 26 year old woman with no criminal history convicted of one count of conspiracy to violate 18 U.S.C. § 2423(a), and two counts of aiding and abetting another to violate18 U.S.C. § 2241(c)); and 18 U.S.C. § 3559(e) (*mandatory life* sentence for second offense against a child). Of course, potential and mandatory life sentences are not limited to child exploitation offenses. *See, e.g.* 21 U.S.C. § 841(b)(1)(A) (mandatory minimum 10 years, and maximum life sentence for first time drug offender responsible for a particular quantity of drugs; and *mandatory life* sentence for third drug offense.); 18 U.S.C. § 1201 (any term of years, *up to life*, for kidnapping).

Moreover, while the defendant argues that life imprisonment is so severe a sentence that it should be reserved for murder cases, life is not the greatest sentence available for all cases where a victim is killed; first degree murder and a number of other federal crimes where death results (including, for example, kidnapping and carjacking) carry the death penalty. *See* 18 U.S.C. § 3591.

The inquiry here is whether Jason Kopp's crimes are the type of "culpable behavior" that merits life imprisonment. In our Sentencing Memorandum the Government answered that question in the affirmative, outlining the long list of heinous offenses Kopp has committed against children, unchecked, over the course of 16 years. What could be more deserving of a life sentence; who could be more culpable? That he used children at will for his own sexual gratification with no concern for their well-being, leaving them to live with the scars of their abuse as he moved on to his next victim, makes Jason Kopp one of the most culpable offenders to stand before this Court. To argue otherwise ignores the nature and severity of the crimes Kopp committed, and turns a blind eye to the pain and life-long horrors he has left in his wake.

5

JA. 211

3. **There is Nothing in the Defendant's Background That Explains, or Mitigates, His Offenses**

Like many sex offenders facing federal criminal sentencing, in an effort to explain his actions Jason Kopp has made a post-arrest disclosure of childhood sexual abuse at the hand of an unnamed peer. There is no evidence of this abuse, and the telling of the event has morphed over time, yet the Court is asked to accept the allegation as fact, and consider it as an explanation or reason for his conduct, and apparently in mitigation thereof.

In a recorded statement the night he was arrested, and after he was told he was being charged with federal offenses, Kopp recounted to a New York State Police Investigator a singular incident with "a buddy" when they were "15, 16, or 17," where the defendant wanted to play G.I. Joes, but was told he couldn't, "until I did whatever." Following that statement, the defendant immediately offered: "I'm not going to blame him for this" (the crimes for which he was being arrested), and specifically stated: "He didn't force me either. . . and it's not his fault I'm sitting here today. I just should have been a better person."

In contrast, the defendant today alleges years-long abuse by an older peer beginning when he was 10 years old, and now points to this abuse as a factor contributing to his offenses. Defendant's Sentencing Memorandum, pp. 2 - 3. The Government submits that the Court should view the unverified, and evolving, disclosure with skepticism, for over-disclosure of childhood abuse is not uncommon with offenders facing criminal prosecution. In a study first conducted in 1988, more than two-thirds of non-polygraphed offenders claimed to have been sexually abused as a child, but when subjected to polygraph verification, "that number dropped to 29 percent— far more in keeping with studies of the prevalence of sexual abuse in the community generally." Hindman, J. and Peters, J., *Polygraph Testing Leads to Better Understanding Adult and Juvenile*

6

JA. 212

*Sex Offenders*, Federal Probation, Volume 65, Number 3, (2001), at 10.[1] Similar results were reported when the study was repeated both in 1994 and again in 1999. *Id.* at 11, 12. Not insignificantly, the reported number of victims also increased precipitously when the offenders were subjected to polygraph verification. *Id.* at 10 – 12. *See also* Hall, R.C.W.*, A Profile of Pedophilia: Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues* in Mayo Clinic Proceedings 82(4) (2007) at 464 ("There is also legitimate concern regarding the validity of many of the self-reports of pedophiles who claim to have been abused as children themselves. These statements are often made in a legal or group treatment setting, in which pedophiles may be trying to mitigate their sentence or gain sympathy for their behavior.")

While counsel suggests that the defendant's stepfather's acts of spanking, pushing, and hitting, amount to childhood abuse that also led to and explains the defendant's many offenses against multiple child victims, Defendant's Sentencing Memorandum, pp. 2 – 3, nothing about this, even if true, (Kopp's mother reports that "[s]he does not believe the defendant was abused as a child, physically or otherwise." PSR ¶ 208) merits a sentencing departure. *United States v. Vela*, 927 F.2d 197, 199 (5th Cir. 1991) ("Childhood abuse and neglect are often present in the lives of criminals. They always affect their mental and emotional condition. 'We simply cannot agree, therefore, that these are the kinds of considerations which warrant substantial reductions in guidelines sentences.'") quoting *United States v. Daly*, 883 F.2d 313, 319 (4th Cir. 1989)(internal citation omitted); *see also United States v. Reinoso*, 350 F.3d 51, 58 (2d Cir. 2003) (Circuit law

---

[1] This article is available from many internet sites, including:
https://ccoso.org/sites/default/files/import/Polygraph-and-Better-Understanding-of-Sex-Offenders--Hindman-and-Peters.pdf, last visited August 31, 2016.

"explicitly limits the situations in which a departure based on abuse is warranted to those in which the abuse creates to a mental condition that in turn leads to or causes the criminal conduct.")

In an apparent attempt to link his self-reported and evolving history of sexual and physical abuse to his offense, the defendant offers a 6-paragraph letter from Thomas Lazzaro, Ph.D. The letter does not represent the type of fully-reported psychological evaluation normally submitted in criminal cases, and the Government submits it is of no value whatsoever. There is no description of what information was provided to or considered by the examiner, but for the scores of a few administered tests. The examiner then accepts without qualification the defendant's unverified post-arrest report of childhood sexual abuse, and summarily concludes that Kopp's "emotional issues played a significant role in his crimes as a means of coping with his depression." Lazzaro Letter, pp. 1 - 2. There is *no* information about what period of time the examiner considered in his evaluation, which of Kopp's many crimes he believes resulted from this depression, which of Kopp's many victims he was made aware of, or whether he reviewed the many disturbing text messages between Kopp and Oberst, or between Kopp and the undercover, or the email correspondence in which he traded images of V-1 and V-3. The examiner certainly did not view any of the images or videos depicting Kopp's sexual abuse of children, toddlers, and infants, which are in the custody and control of the FBI. There is also no evidence that the examiner fully explored all of the diagnoses applicable to Kopp. For example, there is no explanation why Pedophilic Disorder was not listed as a possible contributing factor, much less any explanation of whether it was ever considered or explored, despite the fact that, even to a lay person, Kopp meets all of the diagnostic criteria:

     A.     Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent

child or children (generally age 13 years or younger).

B.     The individual has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.

C.     The individual is at least age 16 years and at least 5 years older than the child or children in Criterion A.

American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* (DSM-V) (2013), Diagnostic Criteria 302.2.

"If [a] psychologist's report cannot be squared with the court's own judgment of the defendant's culpability and the danger he poses to society, the court is free, in its discretion, to decline to rely on the psychologist's findings, so long as the court explains its basis for doing so. *United States v. DeSilva*, 613 F.3d 352 (2d Cir. 2010); *United States v. Cossey*, 476 Fed. App'x. 931, 933 (2d Cir.), *cert. denied* 133 S. Ct. 335 (2012).   Such is most clearly the case here. For even if the conclusion is correct – that for 16 years Kopp's depression caused him to engage in the sexual exploitation of multiple children, increasingly younger in age, with increasing severity in the type of abuse employed, this is an "emotional issue" that hardly mitigates his heinous crimes, or ameliorates his danger to society in general, and to extremely young children in particular.

Finally, while the defense also argues that Kopp's remorse weighs in favor of a non-Guidelines sentence, that remorse is too little, and 16 years too late.   It is not insignificant that Kopp's remorse, for a very long history of abusing multiple children, comes only after his arrest for some of the most shocking of his many crimes, and while facing a life sentence.   It is not a leap to know that Jason Kopp would still be abusing children today were it not for the good work of the FBI.

9

JA. 215

**CONCLUSION**

The Government maintains that the defendant has raised no meaningful fact or reason to depart or vary from the sentence recommended by the Guidelines. Every one of the reasons raised by the defendant in favor of a minimum sentence (including those not specifically addressed herein) falls far short of mitigation for his horrific crimes. Accordingly, for the reasons outlined above, and as set forth in our original sentencing memorandum, the Government maintains that a Guidelines sentence of 550 years is fair, just, and warranted.


Respectfully submitted this 31st day of August, 2016


RICHARD S. HARTUNIAN
United States Attorney

*/s/ Lisa M. Fletcher*
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

10

JA. 216

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************************

UNITED STATES OF AMERICA,                    Criminal Action No.
                                             5:16-CR-108 (GTS)

            v.

JASON KOPP,

            Defendant.

*******************************************

CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2016, I electronically filed the GOVERNMENT'S

RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM with the Clerk of the

District Court using the CM/ECF system.


Randi Juda Bianco, Esq.


                              /s/
                              Paula Briggs


11

JA. 217

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------x
UNITED STATES OF AMERICA,

                         Plaintiff,

vs.                                        16-CR-108

JASON KOPP, et al.,

                         Defendant.
--------------------------------------------------x

        Transcript of *SENTENCING* held on September 13, 2016, at

the James Hanley Federal Building, 100 South Clinton Street,

Syracuse, New York, the HONORABLE GLENN T. SUDDABY,

Presiding.

                    A P P E A R A N C E S

For Plaintiff:        OFFICE OF THE UNITED STATES ATTORNEY
                      100 South Clinton Street
                      Syracuse, New York 13261
                        BY:  LISA M. FLETCHER, Esq.
                             Assistant United States Attorney

For Defendant:        OFFICE OF THE FEDERAL PUBLIC DEFENDER
                      The Clinton Exchange, 3rd Floor
                      4 Clinton Square
                      Syracuse, New York 13202
                        BY:  RANDI JUDA BIANCO, ESQ.


                *Diane S. Martens, RPR, FCRR*
             *Official United States Court Reporter*
                  *100 South Clinton Street*
                  *Syracuse, New York 13261*
                      *(315)234-854*5

Case 16-3355, Document 29, 02/15/2017, 1060540, Page222 of 252

1         (Open court:)

2         THE CLERK:  Case number 5:16-CR-108, United States

3  of America versus Jason Kopp.

4         Counsel, please note your appearance for the

5  record.

6         MS. FLETCHER:  Lisa Fletcher for the United States,

7  good morning, your Honor.

8         THE COURT:  Good morning.

9         MS. BIANCO:  Good morning, your Honor, Randi Bianco

10  for Jason Kopp.  Also present are members of his family.

11         THE COURT:  Okay.  Good morning.

12         We're here for sentencing this morning.

13         Are both parties prepared to proceed?

14         MS. FLETCHER:  Yes, your Honor.

15         MS. BIANCO:  Yes, your Honor.

16         THE COURT:  Very well.

17         Counsel, have you received the presentence report,

18  which was dated July 27th, 2016, and the addendum, which was

19  dated August 26th, 2016?

20         Government receive those?

21         MS. FLETCHER:  Yes, your Honor.

22         THE COURT:  Ms. Bianco?

23         MS. BIANCO:  Yes, your Honor.

24         THE COURT:  And did you have an opportunity to

25  review those reports with your client?

1        MS. BIANCO:  Yes, your Honor.

2        THE COURT:  The Court notes that there were a

3   number of letters that were received by the Court on behalf

4   of Mr. Kopp.  I'm assuming the government received those.

5   There were some that were submitted yesterday.

6        MS. FLETCHER:  Yes.  The ones that were submitted

7   yesterday, your Honor, were victim impact statements that we

8   received yesterday and we provided copies to the Court and

9   counsel.

10        THE COURT:  Ms. Bianco, did you receive those?

11        MS. BIANCO:  I did, your Honor.

12        THE COURT:  Counsel, any objections to the facts as

13   stated in the presentence report?

14        For the government?

15        MS. FLETCHER:  No objection.

16        THE COURT:  Ms. Bianco, you listed, on behalf of

17   your client, several objections which were responded to in

18   the addendum.  Anything further beyond that?

19        MS. BIANCO:  No other factual objections, your

20   Honor.

21        THE COURT:  Very well.

22        Counsel, any objections to the offense level

23   calculations in the presentence report?

24        For the government?

25        MS. FLETCHER:  No objection.

1          MS. BIANCO:  Your Honor, we do have an objection

2    and we're contending there's an incorrect application of

3    Guideline 5G1.2(b) and (d).

4          Is this the time you'd like me to address it?

5          THE COURT:  Sure.  Go ahead.

6          And I'll give the government an opportunity to

7    respond, if you like.

8          MS. BIANCO:  The PSR has calculated the Guideline

9    sentence in this case as 550 years.  As the defense argued in

10   its sentencing memorandum, that calculation is based on an

11   incorrect application of United States Sentencing Guidelines

12   5G1.2(b) and (d).

13         The PSR characterized the total punishment, for

14   purposes of Guideline 5G1.2(b), as 550 years, a sum reached

15   by adding together the statutory maximum term for each count.

16   We contend that the PSR erred in this characterization.

17         Second, the PSR compounded its error when it

18   applied its erroneous total punishment calculation to the

19   Guideline governing whether to impose concurrent or

20   consecutive sentences under Guideline 5G1.2(d).

21         The government cites five cases for the proposition

22   that the PSR correctly calculates the Guideline sentence.

23   None of those cases so hold.  The government, chiefly, relies

24   on *United States versus Hamilton*, an unpublished summary

25   order in which the sentence was reviewed under a plain error

Case 16-3355, Document 20, 02/15/2017, 1060540, Page225 of 252

1   standard because the issue had not been preserved for appeal.

2   The government characterizes this decision as rejecting the

3   argument that Mr. Kopp is making in this case.

4           However, the unpublished summary order does not

5   squarely address the issue that Mr. Kopp raises here -- the

6   interplay between Guidelines 5G1.2(b) and (d), where the

7   total punishment resulting from the offense level and the

8   Criminal History Category is life.

9           To the extent that the *Hamilton* case addresses

10  similar issues, it is distinguishable for two reasons.  One,

11  the district court in *Hamilton* did not calculate the

12  Guideline sentence as the statutory maximum of each count

13  imposed consecutively, as the PSR does in this case.

14          As the Appellate Court noted, that method would

15  have resulted in a sentence of 2,160 months.  Instead, the

16  District Court imposed a sentence of 1,800 months.  And, two,

17  the Appellate Court did not state that the District Court's

18  imposition of the 1800-month sentence -- excuse me, 1,800

19  months of consecutive sentence was the correct Guideline

20  sentence.  Rather, it stated, while it could be argued that

21  consecutive sentences on two counts would be sufficient to

22  guarantee an effective life sentence, any potential error in

23  imposing consecutive sentences is necessarily harmless.

24          Similarly, the four cases that the government

25  cites, *United States versus Ivory*, *United States versus*

Case 16-3355, Document 20, 02/15/2017, 1060540, Page226 of 252

1   *Thompson*, *United States versus Veysey*, and *United States*
2   *versus Lott* are cited with the argument that did not directly
3   address the interplay between 5G1(b) and (d); but, instead,
4   merely note, in passing and without any analysis, that long
5   sentences are the equivalent of life sentences.

6           Significantly, two of the four cases were decided
7   before the Supreme Court issued its decision in *United States*
8   *versus Booker*.  The other cases either cite no authority for
9   their conclusions or cite pre-*Booker* authority.  *Booker*, as
10  this Court is well aware, changed the sentencing landscape in
11  federal court.

12          In the pre-*Booker* world, it made sense to equate a
13  sentence of hundreds of years with a life sentence because
14  the judge had no discretion -- no discretion -- to impose
15  anything other than the Guideline sentence.  In the absence
16  of discretion, there was, practically speaking, no difference
17  between a guideline of 550 years and a guideline of life.

18          In the post-Booker world, the Guidelines are merely
19  the starting point for the judge's exercise of sentencing
20  discretion.  Under this system of sentencing, post-*Booker*,
21  the sentencing court must first calculate the Guidelines and
22  then weigh the sentencing factors to determine whether to
23  sentence within, above, or below the guideline.

24          It, therefore, makes an enormous difference whether
25  the Guideline is life or 550 years.  It would make an

Case 16-3355, Document 20, 02/15/2017, 1060540, Page227 of 252

1   enormous difference because the Court would have to remove

2   hundreds of years under a wrongly-calculated Guideline to

3   impose a meaningful below-Guideline sentence, if the sentence

4   factors warranted it.  And if the Guideline is the statutory

5   maximum of all counts imposed consecutively, there's no room

6   for the court to move upward, if it weighs the factors in

7   determining that a higher guideline sentence is warranted.

8        In light of *Booker* and the plain language of the

9   Sentencing Guidelines, the Court should begin its sentencing

10  analysis by finding the Guideline sentence in this case as

11  life, rather than 550 years.  And the United States

12  Sentencing Commission defines life as 470 months or 39.2

13  years.

14       We would, also, contend that a sentence of 550

15  years would violate the Eighth Amendment and would be

16  unreasonable pursuant to 18, U.S.C., 3553(a).

17       Thank you.

18       THE COURT:  Would you like to be heard?

19       MS. FLETCHER:  The Eighth Amendment argument hasn't

20  been made before this very minute.  So, it is the

21  government's position that there is no Eighth Amendment

22  violation in this case.

23       The argument made by counsel here was made

24  previously and answered by the probation officer in the PSR

25  and the government in our sentencing reply and we rely on

Case 16-3355, Document 20, 02/15/2017, 1060540, Page228 of 252

1    that briefing.

2              It is not life expectancy but a life sentence that

3    is called for by the Guidelines.  Whether the Court achieves

4    that at 100 years or 500 years, there is no, as the Court of

5    Appeals said, practical effect.

6              We believe that the probation office has correctly

7    scored the case and that the Guidelines sentence is 550

8    years.

9              THE COURT:  Okay.  Ms. Bianco, you essentially

10   repeated your arguments that you made in your submissions to

11   the Court.  I've reviewed them.  I've looked at the case law.

12   And the Court finds that the probation department has

13   accurately scored this case, with regard to the appropriate

14   application of the Guideline score where the Court has to

15   start and then move from there and use discretion, based on

16   the factors of this case.

17             So, the Guideline sentence in this case would be

18   6,600 months or 550 years and that's the starting point for

19   the Court, as you know.  All of your submissions have been

20   considered and the Court goes from there so that you're

21   aware.  Okay.

22             Moving on.  Do counsel agree with the Criminal

23   History computation as set forth in the presentence report?

24             The government?

25             MS. FLETCHER:  Yes, your Honor.

Case 16-3355, Document 20, 02/15/2017, 1060540, Page229 of 252

1          THE COURT:  Ms. Bianco?

2          MS. BIANCO:  Yes, your Honor.

3          THE COURT:  Okay.  Ms. Fletcher, on behalf of the

4     government, go ahead.

5          MS. FLETCHER:  Thank you, your Honor.

6          Your Honor, it is not without thought or care that

7     the government stands here requesting a sentence of 550

8     years.  It is Jason Kopp's own actions, his crimes, his

9     history, his victims that simply demand that particular

10    sentence.

11         As a court system, we are sworn to administer

12    justice and protect the public.  As human beings, we have no

13    greater obligation than to protect our children from

14    predators like Jason Kopp.

15         It was with careful consideration of the evidence

16    that the indictment in this case was drafted:  22 counts

17    representing a fraction of the offenses committed by this

18    defendant against children over 16 years.

19         The resulting Guideline sentence for those crimes

20    is life or 550 years.

21         THE COURT:  When you say children over 16 years,

22    you're meaning over a 16-year period --

23         MS. FLETCHER:  Over a 16-year period --

24         THE COURT:  -- correct?

25         MS. FLETCHER:  -- yes, your Honor.

US v. Kopp - 16-CR-108

1          THE COURT:  I just want to clarify that for the

2     record.

3          MS. FLETCHER:  The children were much younger.

4          While the Court of Appeals has recognized that any

5     sentence that exceeds a defendant's conceivable life

6     expectancy has no practical effect on him, and, as a life

7     sentence, however achieved, accomplishes the goals of

8     sentencing, why 550 years?  What is the practical effect of

9     that sentence?

10         Well, the practical effect is a sure, fast and true

11    testament to the victims of Jason Kopp's crimes and to the

12    public, that the criminal justice system views the serial

13    exploitation of the youngest members of our society as among

14    the worst of crimes and those who commit such heinous acts as

15    among the most culpable of offenders.

16         It emphasizes to those like-minded individuals who

17    similarly skulk around believing that their abuse of the most

18    vulnerable victims is a silent crime for which there are no

19    repercussions.  It broadcasts to Jason Kopp, and others like

20    him, that law enforcement is working tirelessly to find you

21    and that the courts will not provide leniency of any sort

22    where, like here, none is deserved.

23         The unscalable horror of the defendant's crimes is

24    detailed in the PSR and in the government's sentencing

25    memorandum.  But the full depth of his depravity cannot be

Case 16-3355, Document 20, 02/15/2017, 1060540, Page231 of 252

1  fully appreciated until one views the images Jason Kopp

2  produced of his abuse of these children:  The pictures and

3  videos he took, solicited, cataloged, traded and kept as

4  trophies; pictures and videos of more than 18 -- excuse me,

5  more than 8 children, abuse that only continued to escalate

6  as time went on; victims whose ages became younger and

7  younger, culminating with the memorialization of his sexual

8  abuse of a six-day-old newborn child, a child he would

9  continue to abuse and photograph and solicit photographs of

10  until the day of his arrest.  This was Jason Kopp's dream:

11  To begin the abuse of his victims as babies.  Those are his

12  own words.

13       His remorse comes 16 years too late and is brought

14  about only by his arrest.  His excuses?  Nothing about the

15  defendant's background provides reason or excuse for his

16  actions, a background that became progressively more abusive

17  as his legal predicament became increasingly more dire.

18       No one but Jason Kopp is to blame for what Jason

19  Kopp did to these children.  As he said to the state police

20  investigator in his recorded statement, it is not his fault

21  I'm sitting here.  I just should have been a better person.

22  He should have been.  But he wasn't and he isn't.  He's a

23  dangerous sex offender who takes pleasure in the degradation

24  of babies.  And in doing so, he has forfeited his right to

25  live anywhere but behind bars for the rest of his life.

Case 16-3355, Document 20, 02/15/2017, 1960540, Page232 of 252

1  Justice requires it and the protection of our children

2  demands it.

3          Your Honor, again, for all of these reasons and the

4  reasons set forth in our sentencing submissions, the

5  government submits that a Guideline sentence of 550 years is

6  not greater than necessary and is justified and warranted by

7  this defendant's crimes.  Thank you.

8          THE COURT:  Thank you, Ms. Fletcher.

9          Ms. Bianco, on behalf of Mr. Kopp, go ahead.

10         MS. BIANCO:  Thank you, your Honor.

11         What Jason did was terrible.  No one is disputing

12  this and we're not trying to minimize his conduct.

13         But he did do certain things right after he was

14  arrested, after he was confronted by law enforcement.  After

15  his arrest or after he was confronted by law enforcement and

16  before his arrest, he immediately confessed to his

17  wrongdoing.  He pled to every count in the indictment and has

18  continued to accept responsibility for his actions.

19  Significantly and most importantly, Jason did not want anyone

20  involved to have to testify or put anyone through any more

21  pain by going through the process of a trial.

22         Now, while the prosecutor talks about broadcasting

23  to others, what would broadcast to others is if he received a

24  550-year sentence after he accepted responsibility, pled to

25  every count in the indictment, avoided a trial all together

Case 16-3355, Document 20, 02/15/2017, 1060540, Page233 of 252

1    is:  That that's meaningless, that he doesn't have to do that

2    because you're not going to get any worse after trial.  And

3    I'm not minimizing his conduct at all.  I'm simply talking

4    about what he did after the fact, in order to prevent further

5    harm to the people that he did harm.

6         Now, Jason feels horrible for what he has done to

7    the victims and all that they have to endure.  He feels

8    incredible remorse for the impact that his actions will have

9    on his family.  He understands the seriousness of his offense

10   and, sincerely, wants to change his life for the better.  He

11   wants to get help.  He wants to get treatment and, for this

12   reason, the defense is requesting that the Court recommend

13   that the Bureau of Prisons designate FCC Tucson as the

14   facility for him to attend to, as they have a sex offender

15   program that is very well-known and he wants to participate

16   in it.  He wants to be involved in it and he wants to change

17   his ways.

18        We'd ask the Court for a below-Guideline sentence

19   as outlined in our sentencing memo.

20        THE COURT:  Thank you, Ms. Bianco.

21        Mr. Kopp, would you like to be heard before I

22   impose sentence?

23        MS. BIANCO:  I'm going to have to read it for him,

24   if that's all right.

25        THE COURT:  That's fine.

US v. Kopp – 16-CR-108

1          Mr. Kopp, you've prepared some remarks?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And I can see you're emotional so you

4     can certainly have your attorney read it for you.

5          Is that acceptable to you, sir?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  Go ahead.

8          MS. BIANCO:  I would like to apologize to everyone

9     on why we are here, especially to my family, to my fiancee,

10    and to our two boys.  I'm truly sorry for my actions, more

11    than anyone will ever know.  I would, also, like to thank my

12    family and my fiancee's family for all the support and love.

13    That means more than you know.  I love you all so much from

14    the bottom of my heart.

15         I would also like to thank my lawyer, Randi Bianco,

16    and other persons at the public defender office, including

17    Grace, Terry and Wendy for doing the best that they could for

18    me.

19         I would also like to apologize to the victims.  I

20    am sorry I hurt and caused you pain and suffering.  None of

21    this was your fault and should never have happened.  I hope

22    and pray that you all can heal and be okay some day and that

23    you all can forgive me.  If not, I understand.

24         And I hope my family, my fiancee and our boys will

25    heal from the hurt and pain I caused them.  I'm truly sorry I

Case 16-3355, Document 20, 02/15/2017, 1060540, Page235 of 252

1  caused all of this.  I don't know why I did the things I did.

2  That wasn't me.  I'm not that person.  If I could turn back

3  time, I would in a heartbeat.  I hope and pray everyone

4  involved will forgive me some day.  If not, I completely

5  understand.

6       I sit and think about what I have done and all the

7  people I have hurt and it makes me sick to my stomach.  I

8  also sit and cry every day and night about who I hurt and

9  what I have done.  I am sorry more than you will ever know.

10  I am not a bad person, man.  I made bad choices and I regret

11  them more than anything in this world.  I will never forgive

12  myself for my actions and all the people I hurt and affected

13  through all this.  I'm truly sorry from the bottom of my

14  heart.  I just wish everyone could see inside of my heart and

15  see how truly sorry I am.

16       I beg your Honor from the bottom of my heart for my

17  life and a second chance at life to do what's right and right

18  some wrongs and get the help I need.  I wish you all could

19  see in my heart and soul and you all would know how sorry and

20  sincere I am and that I am a good man.  I need and want my

21  family and I would never do wrong again.  Every day has been

22  a living hell, talking with my fiancee and hearing my son

23  wanting to talk to me and saying, sorry, I can't talk -- and

24  say, sorry, I can't talk and my fiancee says you can't right

25  now and hearing him cry causes -- because he can't talk to

Case 16-3355, Document 20, 02/15/2017, 1060540, Page236 of 252

1   me, causes me tremendous pain.  There's no greater hurt and

2   pain in the world knowing that I have hurt my children and

3   the ones I've loved, as well as all of the victims.

4           Thank you, Judge.

5           THE COURT:  Thank you, Ms. Bianco.

6           Thank you on behalf of Mr. Kopp.  Okay.

7           The Court is prepared to impose sentence.

8           The Court has reviewed and considered all the

9   pertinent information, including, but not limited to, the

10   presentence investigation report, the addendum, submissions

11   by counsel, the Sentencing Guidelines manual, as well as the

12   factors outlined in 18 U.S.C. Section 3553(a).

13           The Court adopts the factual information and the

14   Guideline applications contained in the presentence

15   investigation report.

16           The Court finds the Total Offense Level is 43,

17   Criminal History Category of I and the Guideline imprisonment

18   range is life.

19           However, since no count of conviction carries a

20   potential life sentence, the Guideline sentence is 6,600

21   months, 550 years, which is the combined length of the

22   authorized maximum sentences for the counts of conviction.

23           Ms. Bianco, the Court would note that in your

24   sentencing argument here this morning, you indicated that the

25   defendant did things right after being arrested.  He

Case 16-3355, Document 20, 02/15/2017, 1060540, Page237 of 252

1    cooperated with law enforcement.  He didn't force a trial in

2    this case.  And the Court would note:  Acceptance of

3    responsibility recognizes that in every case where defendants

4    do that and he's given credit for that by the consideration

5    that was given in the offense level, as appropriate, by the

6    government.

7            Upon your plea of guilty to Counts 1, 2, 3, 6

8    through 22, 27 and 28 of the indictment, it is the judgment

9    of the Court that you are hereby committed to the custody of

10   the Bureau of Prisons to be imprisoned for a term of 2,820

11   months.  This term consists of 360 months on Count 1; 180

12   months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12 and 13;

13   and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20,

14   21, 22, 27 and 28 all to run consecutively.

15           The Court believes a consecutive sentence is

16   warranted in this case because each count of conviction

17   constitutes a separate and distinct criminal act, which calls

18   for a Guidelines sentence that is equivalent to a life of

19   imprisonment.

20           The sentence just imposed represents the maximum

21   sentence on Count 1 and the mandatory minimum sentence on

22   each of the remaining counts, with the exception of Counts 27

23   and 28.  These counts do not have a mandatory minimum

24   sentence.  However, I find a 60-month sentence is warranted

25   for these counts, as well.

1          Now, let me further explain.  The Court finds that

2     this defendant's behavior, criminal acts, which were separate

3     and distinct as charged in the indictment, warrant no

4     consideration of any type of leniency and the Court would be

5     justified in giving the 6,600 months or 550 years, as the

6     government has requested.  But the Court is, also, mindful of

7     the case law in this area, which indicates that the Court

8     should try and achieve a lifetime sentence, based on the

9     Guidelines.

10          And after careful consideration of the record and

11    the arguments presented by the parties, I find no reason to

12    depart or vary from the applicable Guideline sentence, given

13    this Court's responsibility to impose a sentence that is

14    sufficient, but not greater than necessary, to comply

15    with the purposes of sentencing set forth in 18 U.S.C.

16    Section 3553(a).  In fact, I find the Guideline sentence is

17    necessary to reflect the seriousness of this defendant's

18    numerous crimes against children, to provide just punishment

19    for the extent of these crimes against children, and to deter

20    others from engaging in the same incomprehensible conduct,

21    that being the sexual exploitation of children as young as

22    toddlers and a newborn baby.  I do not find one mitigating

23    factor for your behavior which spanned over a decade and

24    involved the sexual exploitation of at least nine children,

25    including your own two children.

US v. Kopp - 16-CR-108

1          Your attorney has made arguments in her submissions

2     and, again, here today and your letter reflects, you know,

3     the loss that your children will suffer as a result of not

4     having you there as a father and, certainly, the Court

5     recognizes that and considers that.  But, under the

6     circumstances, it's the Court's responsibility and,

7     certainly, the Court believes, based on over a decade and a

8     half of exploitation of children which included your own, the

9     best thing this Court could do is to protect your children

10    from you, as well.

11         The escalation of your behavior over these years,

12    your sickening conversations about your dream of molesting a

13    baby, and the fact that you carried out this dream for

14    Victim-1 from the time she was six days old until authorities

15    rescued her at 16 months all underscore your danger to the

16    community and your likelihood of recidivism.  This is not a

17    case where there were single acts but repeated acts against

18    your own children, friends of your children and strangers who

19    you sought out on the internet and then molested their

20    children.  This all underscores your danger to the community

21    and, again, your likelihood of recidivism.

22         Your conduct, also, included the online

23    distribution of produced images depicting two of your victims

24    and your possession of internet pornography involving at

25    least 62 identified victims who continue to be victimized by

1   you and others who collect images of their abuse.

2              I find the sentence imposed today which guarantees

3   a life sentence, which is what this Court is trying to

4   accomplish, is justified and reasonable because you are a

5   repeat and dangerous sex offender who preys on the most

6   vulnerable in our society and because only a life sentence

7   can insure the safety of the community, reflect the

8   seriousness of your offenses against children, provide just

9   punishment for your crimes and afford adequate deterrence.

10             I request and recommend that you be placed as FCI

11  Tucson where you can attend sex offender treatment.

12             The Court has imposed a sentence, with the

13  understanding that you will not be released from prison.

14  However, in the event that you are released for some unknown

15  reasons to this Court, you shall be placed on supervised

16  release for a term of life on each count to run concurrently.

17             If applicable, you shall not commit another

18  federal, state or local crime and you shall comply with the

19  standard conditions that have been adopted by this court.

20             Due to the unlikeliness of your release, no special

21  conditions have been imposed at this time.  Should there be

22  some change in sentencing Guidelines or some other reason

23  that you would be released, the Court will impose special

24  conditions at that time.

25             It is the Court's understanding that you have

Case 16-3355, Document 20, 02/15/2017, 1060540, Page241 of 252

1   agreed to pay restitution in the amount of $1,000 to the

2   victim identified in the Cindy series.  Accordingly, it is

3   hereby ordered that you shall pay restitution in the amount

4   of $1,000 to this identified victim and that restitution must

5   be paid in minimum monthly payments of at least 25 percent of

6   your gross monthly income while you are incarcerated.

7          You shall, also, pay to the clerk of the court a

8   special assessment of $2,200 which is due immediately.  I

9   find you do not have the ability to pay a fine or additional

10  special assessment; and, therefore, both are waived.

11         You shall forfeit to the United States all right,

12  title and interest in the items listed in the preliminary

13  order of forfeiture which was signed by this Court on

14  June 10th, 2016.

15         Both parties have a right to appeal this sentence

16  in certain limited circumstances.  You are advised to consult

17  with your attorney to determine whether or not an appeal is

18  warranted.  Any appeal must be filed within 14 days of the

19  date of the judgment being filed in this case.

20         The defendant will be remanded to the custody of

21  the United States Marshals in accordance with the terms of

22  this sentence.

23         Ms. Fletcher, anything further on behalf of the

24  government?

25         MS. FLETCHER:  Nothing further.  Thank you, your

Case 16-3355, Document 20, 02/15/2017, 1060540, Page242 of 252

1    Honor.

2            THE COURT:  Ms. Bianco, anything further on behalf

3    of Mr. Kopp?

4            MS. BIANCO:  No, your Honor.

5            THE COURT:  Okay.  Very well.

6            THE CLERK:  Court is adjourned.

7            (Proceedings adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 16-3355, Document 20, 02/15/2017, 1060540, Page243 of 252

1

2         C E R T I F I C A T I O N

3

4

5           I, DIANE S. MARTENS, Registered Professional

6 Reporter, DO HEREBY CERTIFY that I attended the foregoing

7 proceedings, took stenographic notes of the same, that

8 the foregoing is a true and correct copy of same and the

9 whole thereof.

10

11

12

13

14

15

16

17

18                     _____

19                    DIANE S. MARTENS, FCRR

20

21

22

23

24

25

# UNITED STATES DISTRICT COURT

## Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| | Case Number:    DNYN516CR000108-001 |
| **JASON KOPP** | USM Number:    24099-052 |
| | Randi Juda Bianco, OFPD |
| | 4 Clinton Exchange, Third Floor |
| | Syracuse, NY 13202 |
| | 315-701-0080 |
| | Defendant's Attorney |

**THE DEFENDANT:**

☒ pleaded guilty to count(s)    1,2,3,6,7,8,9,10,11,12,13,14,15,16,17,18,19,20,21,22,27 & 28    of the Indictment on May 20, 2016.

☐ pleaded nolo contendere to count(s)  which was accepted by the court.

☐ was found guilty on count(s) of the  on  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2251(a) | Conspiracy to Sexually Exploit a Child | 03/18/2016 | 1 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 03/06/2016 | 2 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 03/16/2016 | 3 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 11/28/2014 | 6 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment.  The sentence is imposed in accordance with 18 U.S.C. § 3553 and the Sentencing Guidelines.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)  ☐ is  ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

September 13, 2016
Date of Imposition of Judgment

Hon. Glenn T. Suddaby
Chief U.S. District Judge

September 14, 2016
Date

DEFENDANT:      Jason Kopp
CASE NUMBER:   DNYN516CR000108-001

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 02/19/2015 | 7 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 04/26/2015 | 8 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 06/20/2015 | 9 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 05/12/2015 | 10 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 11/08/2015 | 11 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 12/26/2015 | 12 |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child | 01/30/2016 | 13 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution of Child Pornography | 06/15/2015 | 14 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution of Child Pornography | 08/24/2015 | 15 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution of Child Pornography | 02/10/2016 | 16 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution of Child Pornography | 02/15/2016 | 17 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution of Child Pornography | 03/04/2016 | 18 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution of Child Pornography | 03/06/2016 | 19 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution of Child Pornography | 03/07/2016 | 20 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution of Child Pornography | 03/17/2016 | 21 |
| 18 U.S.C. § 2252A(a)(2)(A) | Distribution of Child Pornography | 03/18/2016 | 22 |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography | 03/18/2016 | 27 |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography | 03/18/2016 | 28 |

Case 5:16-cr-00108-GTS   Document 63   Filed 09/14/16   Page 3 of 7

DEFENDANT:       Jason Kopp
CASE NUMBER:   DNYN516CR000108-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**2,820 months.  This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13; and 60 months on each of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27, and 28; all to run consecutively.**

☒   The court makes the following recommendations to the Bureau of Prisons:

**As requested, the Court recommends the defendant be placed at FCI Tucson, where he can attend sex offender treatment.**

☒   The defendant is remanded to the custody of the United States Marshal.
☐   The defendant shall surrender to the United States Marshal for this district:
    ☐   at   ☐ a.m.  ☐ p.m. on.
    ☐   as notified by the United States Marshal.
☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
    ☐   before 2 p.m. on.
    ☐   as notified by the United States Marshal.
    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

**I have executed this judgment as follows:**

    Defendant delivered on _____ to _____
at _____ with a certified copy of this judgment.

_____
UNIITED STATES MARSHAL

_____
BY DEPUTY UNITED STATES MARSHAL

JA.  243

DEFENDANT:  Jason Kopp
CASE NUMBER:  DNYN516CR000108-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:  **The Court has imposed a sentence with the understanding the defendant will not be released from prison.  However, in the event he is released, he shall be placed on supervised release for a term of LIFE on each count to run concurrently.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check, if applicable.)*

☒  The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

☒  The defendant shall cooperate in the collection of DNA as directed by the probation officer.  *(Deselect, if inapplicable.)*

☒  The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  *(Check, if applicable.)*

☐  The defendant shall participate in an approved program for domestic violence.  *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without permission of the court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment; or if such prior notification is not possible, then within five days after such change;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, import, or manufacture any and all controlled substance and all controlled substance analogues, as defined in 21 U.S.C. § 802, and any paraphernalia related to any controlled substances, except that possession and use of a controlled substance properly prescribed by a licensed medical practitioner is permitted;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement;
14) the defendant shall not possess a firearm, destructive device, or any other dangerous weapon;
15) the defendant shall provide the probation officer with access to any requested financial information; and
16) the defendant shall submit his or her person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by the defendant.  Any items seized may be removed to the Probation Office or to the office of its designee for a more thorough examination.

JA. 244

Case 16-3355, Document 30, 02/15/2017, 1969549, Page248 of 252

AO 245B  NNY (Rev. 12/15) Judgment in a Criminal Case
Sheet 3C – Supervised Release

DEFENDANT:      Jason Kopp
CASE NUMBER:   DNYN516CR000108-001

## SPECIAL CONDITIONS OF SUPERVISION

**The Court has imposed a sentence with the understanding the defendant will not be released from prison.  Accordingly, no special conditions have been imposed.**

## DEFENDANT'S ACKNOWLEDGMENT OF APPLICABLE CONDITIONS OF SUPERVISION

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

The conditions of supervision have been read to me.  I fully understand the conditions and have been provided a copy of them.

_____          _____
Defendant                                                                          Date


_____          _____
U.S. Probation Officer/Designated Witness                              Date

JA.  245

Case 16-3355, Document 20, 02/15/2017, 1969549, Page349 of 252

AO 245B  NNY (Rev. 12/15) Judgment in a Criminal Case
    Sheet 5 – Criminal Monetary Penalties

DEFENDANT:    Jason Kopp
CASE NUMBER:   DNYN516CR000108-001

# CRIMINAL MONETARY PENALTIES

    The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 2,200 | $ Waived | $ 1,000 |

☐   The determination of restitution is deferred until.  An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Victim in the Cindy series | $ | $ 1,000 | |
| **Totals** | $ | $ 1,000 | |

☐   Restitution amount ordered pursuant to plea agreement   $

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

       ☐  the interest requirement is waived for the   ☐ fine   ☐  restitution.

       ☐  the interest requirement for the   ☐  fine   ☐ restitution is modified as follows:

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B  NNY (Rev. 12/15) Judgment in a Criminal Case
     Sheet 6 – Schedule of Payments

DEFENDANT:    Jason Kopp
CASE NUMBER:   DNYN516CR000108-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☐   In full immediately; or

B   ☒   Lump sum payment of $ <u>2,200</u> due immediately; balance due

        ☐   not later than, or

        ☒   in accordance with   ☐ D,   ☐ E,   ☐ F,   or   ☒ G below; or

C   ☐   Payment to begin immediately (may be combined with   ☐ D,   ☐ E, or   ☐ G below); or

D   ☐   Payment in equal  installments of $  over a period of, to commence  after the date of this judgment; or

E   ☐   Payment in equal  installments of $  over a period of, to commence  after release from imprisonment to a term of supervision; or

F   ☐   Payment during the term of supervised release will commence within  after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

G   ☒   Special instructions regarding the payment of criminal monetary penalties:

     **Restitution shall be paid in minimum monthly payments of at least 25% of the defendant's gross monthly income while he is incarcerated.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to **Clerk, U.S. District Court, Federal Bldg., 100 S. Clinton Street, P.O. Box 7367, Syracuse, N.Y. 13261-7367,** unless otherwise directed by the court, the probation officer, or the United States attorney.  If a victim cannot be located, the restitution paid to the Clerk of the Court for that victim shall be sent to the Treasury, to be retrieved when the victim is located.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

     ☐   Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

     ☐   The Court gives notice that this case involves other defendants who may be held jointly and severally liable for payment of all or part of the restitution ordered herein and may order such payment in the future.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☒   The defendant shall forfeit the defendant's interest in the following property to the United States:

     **The property outlined in the Preliminary Order of Forfeiture.**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**Local Criminal Notice of Appeal Form.**

## NOTICE OF APPEAL
**United States District Court**

**Northern District of New York**

UNITED STATES OF AMERICA

-v.-

JASON KOPP

Docket No.: _____ 16-CR-108 (GTS) _____

HON. GLENN T. SUDDABY

(District Court Judge)

Notice is hereby given that _____ JASON KOPP _____ appeals to the United States Court of Appeals for the Second

Circuit from the judgment [ X ], other [ _____ ] _____

(specify)

entered in this action on _____ 9/14/2016 _____          (date)

Offense occurred after November 1, 1987     Yes | ☒ |     No | ☐ |

This appeal concerns: Conviction only | ☐ |     Sentence only | ☒ |     No | ☐ |

Date _____ 9/27/2016 _____

TO _____ Lisa M. Fletcher, Esq. _____

Address _____ United States Attorney Office _____

_____ 100 South Clinton Street, 9th Floor _____

_____ Syracuse, New York  13261 _____

ADD ADDITIONAL PAGE (IF NECESSARY)

Randi J. Bianco , Esq.

(Counsel for Appellant)

Address _____ Office of the Federal Public Defender _____

_____ 4 Clinton Square, 3rd Floor _____

_____ Syracuse, New York 13202 _____

Telephone Number: _____ 315-701-0080 _____

| TO BE COMPLETED BY ATTORNEY | TRANSCRIPT INFORMATION -FORM B |
|---|---|
| ▶ **QUESTIONNAIRE** | ▶ **TRANSCRIPT ORDER** ▶ DESCRIPTION OF PROCEEDINGS FOR WHICH TRANSCRIPT IS REQUIRED (INCLUDE DATE) |

[ ☐ ] I am ordering a transcript
[ ☒ ] I am not ordering a transcript
Reason
  [ ☐ ] Daily copy is available
  [ ☐ ] U.S. Attorney has placed order
  [ ☐ ] Other. Attach explanation

Prepare transcript of                                    Dates
| ☐ | Prepare proceedings _____
| ☐ | Trial _____
| ☐ | Sentencing _____
| ☐ | Post-trial proceedings _____

The attorney certifies that he/she will make satisfactory arrangements with the court reporter for payment of the cost of the transcript. (FRAP 10(b)). ▶
Method of payment |_____| Funds

| ATTORNEY'S SIGNATURE | DATE |
|---|---|
| S/Randi J. Bianco, Esq. | 9/27/16 |

| ▶ **COURT REPORTER ACKNOWLEDGMENT** | To be completed by Court Reporter and forwarded to Court of Appeals, |
|---|---|

| Date order received | Estimated completion date | Estimated number of pages |
|---|---|---|
| | Date _____    Signature _____ (Court Reporter) | |

**DISTRIBUTE COPIES TO THE FOLLOWING:**

1. Original to U.S. District Court (Appeals Clerk).
2. Copy U.S. Attorney's Office.
3. Copy to Defendant's Attorney

4.   U.S. Court of Appeals
5.   Court Reporter (District Court)

USCA-2
FORM A Rev. 10-02

JA. 248

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

## ELECTRONIC NOTICE OF CRIMINAL APPEAL & CLERK'S CERTIFICATION

Dear Clerk of the Court,

Please take notice that on September 27, 2016 the court received a notice of appeal. This notice serves to inform you of the pending appeal and provides you with the information needed to process the appeal.

I, LAWRENCE K. BAERMAN, CLERK, U.S. District Court for the Northern District of New York, DO, HEREBY CERTIFY that the foregoing docket entries, with the exception of the documents listed below, are maintained electronically on the court's CM/ECF system and constitute the Record on Appeal in the below listed action.

The following documents *are not* available electronically. Please notify the Albany Clerk's Office if you need any of the following documents:

Docket No.(s): ____

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of said Court to be hereto affixed at the City of Albany, New York, this 30th day of September, 2016.

Lawrence K. Baerman, Clerk
U.S. District Court

By:      s/ M. Gallup-Hughes
         Deputy Clerk

## Case Information

Case Name & Case No.     USA v. Jason Kopp     5:16-cr-108
Docket No. of Appeal:     #68
Document Appealed:     #63-  Judgment

Fee Status:   Paid ___          Due ___          Waived (IFP/CJA) X

Counsel:   CJA X          Retained ___          Pro Se ___

Time Status:   Timely X          Untimely ___

JA. 249