# 16-3355

*To be Argued by:* STEVEN D. CLYMER

## United States Court of Appeals
### FOR THE SECOND CIRCUIT
### Docket No. 16-3355

UNITED STATES OF AMERICA,

*Appellee,*

v.

EMILY OBERST,

*Defendant*,

JASON KOPP,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE UNITED STATES OF AMERICA

GRANT C. JAQUITH
*Acting United States Attorney for the*
*Northern District of New York*
100 South Clinton Street
Syracuse, NY 13261-7198
Tele: 315-448-0672
Email: Steven.D.Clymer@usdoj.gov

LISA M. FLETCHER
STEVEN D. CLYMER
*Assistant United States Attorneys*
*of Counsel*

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES PRESENTED .......1

STATEMENT OF THE CASE ..................................2

    A.  Introduction...............................................2

    B.  Procedural History .....................................3

STATEMENT OF FACTS .......................................5

    A.  Offense Conduct .......................................5

        1.  The Conspiracy to Sexually
            Abuse V-1 from Birth and to
            Produce Images of that Abuse..............5

        2.  The Investigation of Kopp and
            Oberst and the Sexual Abuse of
            V-3 .......................................................8

        3.  Kopp's Distribution and
            Possession of Child Pornography........11

        4.  Kopp's Other Known Victims.............12

    B.  Sentencing Guidelines
       Calculations ............................................14

        1.  "Grouping" Analysis ..........................14

        2.  Offense Level Computation ................15

        3.  Advisory Guidelines Sentence ............17

ii

C. Sentencing................................................18

    1. The Parties' Sentencing
       Memoranda............................................18

    2. The Sentencing Hearing......................20

SUMMARY OF ARGUMENT ...............................26

ARGUMENT .........................................................28

POINT I:
Kopp's 235-Year Term of Imprisonment is
Substantively Reasonable Whether
Reviewed for Plain Error or an Abuse
of Discretion. ..................................................28

A. Governing Law .........................................28

B. Standard of Review...................................29

C. Discussion.................................................31

POINT II:
Whether Reviewed for Plain Error or
Otherwise, Kopp's *Pro Se* Claim that His
Term of Imprisonment Violates the Eighth
Amendment is Meritless..................................39

A. Governing Law .........................................39

B. Standard of Review...................................40

C. Discussion.................................................41

iii

Point III:

Kopp's *Pro Se* Due Process and Eighth
Amendment Challenges to Supervised
Release and Sex Offender Registration are
Non-Justiciable and Meritless. ........................42

A. Background................................................42

B. Discussion................................................43

1. Kopp's Challenges to Supervised
Release and Sex Offender
Registration Are Not Justiciable..........43

2. Kopp's Due Process and Eighth
Amendment Challenges to
Supervised Release and Sex
Offender Registration Are
Meritless. ............................................44

Point IV:

Kopp's *Pro Se* "Interstate Commerce"
Claim Was Waived by His Guilty Plea and,
in Any Event, Lacks Merit. ............................46

A. Background................................................46

B. Discussion................................................47

iv

1. By Pleading Guilty, Kopp Waived His Claims That There Was Insufficient Evidence and That the Interstate Commerce Requirements in the Statutes Under Which He Was Convicted Were Unconstitutionally Vague. .........47

2. The Commerce Requirements in Kopp's Offenses of Conviction Were Satisfied by His Admissions and Are Not Unconstitutionally Vague. ...................49

    a. The Commerce Requirements Charged in the Indictment .....................................49

    b. Kopp's Admissions Concerning the Commerce Nexus to His Production, Distribution, and Possession of Child Pornography....................51

    c. The Charged and Admitted Commerce Requirements Were Not Plainly Unconstitutionally Vague. ............54

CONCLUSION ......................................................56

v

TABLE OF AUTHORITIES

CASES:

*Beckles v. United States*,
 137 S. Ct. 886 (2017) ...........................................54

*Dickerson v. Napolitano*,
 604 F.3d 732 (2d Cir. 2010)................................49

*Doe v. Cuomo*,
 755 F.3d 105 (2d Cir. 2014)................................43

*Gall v. United States*,
 552 U.S. 38 (2007)..............................................29

*Harmelin v. Michigan*,
 501 U.S. 957 (1991)............................................40

*Hayle v. United States*,
 815 F.2d 879 (2d Cir. 1987)................................47

*Puckett v. United States*,
 556 U.S. 129 (2009)............................................41

*Smith v. Doe*,
 538 U.S. 84 (2003)..............................................44

*Steel Co. v. Citizens for Better Environment*,
 523 U.S. 83 (1998)..............................................47

*United States v. Adams*,
 768 F.3d 219 (2d Cir. 2014),
 *cert. denied*, 135 S. Ct. 1726 (2015) ...................40

vi

*United States v. Brown*,
　843 F.3d 74 (2d Cir. 2016)..................................38

*United States v. Broxmeyer*,
　699 F.3d 265 (2d Cir. 2012)................................29

*United States v. Bullock*,
　550 F.3d 247 (2d Cir. 2008)..........................39, 40

*United States v. Carter*,
　110 F. App'x 165 (2d Cir. 2004) ........................40

*United States v. Cavera*,
　550 F.3d 180 (2d Cir. 2008)....................28, 29, 30

*United States v. Cioffi*,
　487 F.2d 492 (2d Cir. 1973)................................50

*United States v. Coffin*,
　76 F.3d 494 (1996)..............................................47

*United States v. Cotton*,
　535 U.S. 625 (2002) ...........................................47

*United States v. Dominguez Benitez*,
　542 U.S. 74 (2004) .............................................41

*United States v. Fernandez*,
　443 F.3d 19 (2d Cir. 2006)..................................30

*United States v. Florez*,
　447 F.3d 145 (2d Cir. 2006)................................36

*United States v. Frady*,
　456 U.S. 152 (1982)............................................41

vii

*United States v. Gonzalez*,
   529 F.3d 94 (2d Cir. 2008)...................................28

*United States v. Hamilton*,
   548 F. App'x 728 (2d Cir. 2013) ........................32

*United States v. Hester*,
   589 F.3d 86 (2d Cir. 2009)..................................44

*United States v. Holston*,
   343 F.3d 83 (2d Cir. 2003)..................................53

*United States v. Howells*,
   676 F. App'x 55 (2d Cir. 2017) ..........................32

*United States v. Kumar*,
   617 F.3d 612 (2d Cir. 2010)................................47

*United States v. Lasaga*,
   328 F.3d 61 (2d Cir. 2003)..................................47

*United States v. MacEwan*,
   445 F.3d 237 (3d Cir. 2006)................................53

*United States v. Maher*,
   108 F.3d 1513 (2d Cir. 1997)..............................48

*United States v. Marcus*,
   560 U.S. 258 (2010) ............................................41

*United States v. Martinez-Martinez*,
   69 F.3d 1215 (1st Cir. 1995) ...............................48

*United States v. Matera*,
   489 F.3d 115 (2d Cir. 2007)................................29

viii

*United States v. Matta*,
    777 F.3d 116 (2d Cir. 2015)..................................28

*United States v. McLaurin*,
    731 F.3d 258 (2d Cir. 2013)..................................45

*United States v. McLean*,
    287 F.3d 127 (2d Cir. 2002)..................................32

*United States v. McLeod*,
    251 F.3d 78 (2d Cir. 2001)..................................32

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008)..................................50

*United States v. Ochoa-Colchado*,
    521 F.3d 1292 (10th Cir. 2008)..........................48

*United States v. Phillips*,
    645 F.3d 859 (7th Cir. 2011)...............................48

*United States v. Ramos*,
    685 F.3d 120 (2d Cir. 2012)..................................53

*United States v. Rigas*,
    490 F.3d 208 (2d Cir. 2007)..................................30

*United States v. Rigas*,
    583 F.3d 108 (2d Cir. 2009)..................................29

*United States v. Rivera*,
    546 F.3d 245 (2d Cir. 2008)..................................40

*United States v. Rodriguez*,
    360 F.3d 949 (9th Cir. 2004)..................................55

ix

*United States v. Runyan*,
  290 F.3d 223 (5th Cir. 2002).................................53

*United States v. Sriram*,
  482 F.3d 956 (7th Cir. 2007),
  *cert. granted, judgment vacated on
  other grounds*, 552 U.S. 1163 (2008),
  *opinion reinstated in*
  274 F. App'x 493 (7th Cir. 2008).........................35

*United States v. Stokes*,
  726 F.3d 880 (7th Cir. 2013).................................55

*United States v. Thavaraja*,
  740 F.3d 253 (2d Cir. 2014).................................30

*United States v. Thomas*,
  198 F.3d 1063 (8th Cir. 1999).............................43

*United States v. Turner*,
  720 F.3d 411 (2d Cir. 2013).................................41

*United States v. Under Seal*,
  709 F.3d 257 (4th Cir. 2013).................................45

*United States v. Villafuerte*,
  502 F.3d 204 (2d Cir. 2007).................................41

*United States v. W.B.H.*,
  664 F.3d 848 (11th Cir. 2011).............................45

*United States v. Wheeler*,
  857 F.3d 742 (7th Cir. 2017).................................48

x

*United States v. Yousef,*
    327 F.3d 56 (2d Cir. 2003) .............................40, 42


FEDERAL STATUTES, RULES AND OTHER AUTHORITIES:

18 U.S.C. § 1111(b) .................................................37

18 U.S.C. § 2250(a).................................................44

18 U.S.C. § 2251(a)..................................3, 49, 50, 53

18 U.S.C. § 2251(e)...........................................3, 18

18 U.S.C. § 2252A ............................................53, 54

18 U.S.C. § 2252A(a)(2)(A) ................................3, 51

18 U.S.C. § 2252A(a)(5)(B)..........................3, 51, 53

18 U.S.C. § 2252A(b)(1)......................................3, 18

18 U.S.C. § 2252A(b)(2)......................................3, 18

18 U.S.C. § 2256(8)(A)............................................3

18 U.S.C. § 2423(b) ...............................................55

18 U.S.C. § 3553(a)..........................................passim

18 U.S.C. § 3553(a)(1)............................................33

18 U.S.C. § 3553(a)(2)(A) .......................................34

18 U.S.C. § 3553(a)(2)(B)........................................34

18 U.S.C. § 3553(a)(2)(C).................................33, 34

xi

18 U.S.C. § 3583(k) ...................................................45

18 U.S.C. § 3584(a) ..................................................28

18 U.S.C. § 3584(b) ..................................................28

21 U.S.C. § 841 .........................................................48

21 U.S.C. § 846 .........................................................48

Fed. R. Crim. P. 52(b) ..............................................30

U.S.S.G. § 2G2.1 ..............................................15, 37

U.S.S.G. § 2G2.1(b)(1)(A) ......................................15

U.S.S.G. § 2G2.1(b)(2)(A) ......................................15

U.S.S.G. § 2G2.1(b)(3) ............................................15

U.S.S.G. § 2G2.1(b)(4) ............................................15

U.S.S.G. § 2G2.2 ......................................................16

U.S.S.G. § 2G2.2(b)(2) ............................................16

U.S.S.G. § 2G2.2(b)(4) ............................................16

U.S.S.G. § 2G2.2(b)(5) ............................................16

U.S.S.G. § 2G2.2(b)(6) ............................................16

U.S.S.G. § 2G2.2(b)(7)(D) .......................................16

U.S.S.G. Chap. 3, Part D, intro. cmt. ......................37

U.S.S.G. § 3D1.2 .....................................................14

U.S.S.G. § 3D1.4.......................................................16

xii

U.S.S.G. § 3E1.1(a)..................................................16

U.S.S.G. § 3E1.1(6)..................................................17

U.S.S.G. § 4B1.5(b) ...........................................17, 37

U.S.S.G. § 4B1.5(b) cmt. n.4(B)(i). ........................37

U.S.S.G. § 5D1.2(b) .................................................45

U.S.S.G. § 5G1.2.........................................17, 19, 31

# 𝔘nited 𝔖tates 𝔆ourt of 𝔄ppeals
## FOR THE SECOND CIRCUIT
## Docket No. 16-3355

---

UNITED STATES OF AMERICA,
*Appellee,*

v.

EMILY OBERST,
*Defendant,*

JASON KOPP,
*Defendant-Appellant.*

---

## BRIEF FOR THE UNITED STATES OF AMERICA

---

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether the district court abused its discretion by imposing a 235-year (2,820-month) term of imprisonment where the defendant began conspiring to sexually molest an infant before she was born and started to abuse her almost immediately after birth; sexually abused other minor victims for over a decade, including some who were very young and his own children; produced and retained images and videos of this abuse; distributed some of these images and videos to others; and possessed pornographic images and videos of his own victims and other sexually-abused minor victims.

2

2.     Whether the district court's imposition of a 235-year term of imprisonment was plain error under the "Cruel and Unusual Punishments Clause" of the Eighth Amendment.

3.     Whether the defendant's *pro se* claims that legally-required supervised release and sex offender registration violate the Due Process Clause and the Eighth Amendment are justiciable and, if so, whether he has established plain error.

4.     Whether, by pleading guilty to multiple child exploitation offenses, the defendant waived his *pro se* claims that the interstate commerce requirement in federal child exploitation offenses is unconstitutionally vague or was unproven here and, in any event, whether these claims have merit under the plain error standard of review.

## STATEMENT OF THE CASE

### A. Introduction

Defendant-appellant Jason Kopp appeals from his sentence, imposed by the United States District Court for the Northern District of New York (Suddaby, *C.J.*) following Kopp's conviction by guilty plea for various crimes related to his sexual molestation of children and his distribution and possession of child pornography, including images that Kopp produced and caused to be produced.   Kopp claims in a

3

counseled brief that his 235-year term of imprisonment is substantively unreasonable. In a *pro se* supplemental brief, Kopp argues that his term of imprisonment violates the Eighth Amendment, that supervised release and sex offender registration are unconstitutional, and that the interstate commerce element in federal child exploitation offenses is unconstitutionally vague and was unproven here.

## B. Procedural History

On March 30, 2016, a federal grand jury in the Northern District of New York returned an indictment charging Kopp and co-defendant Emily Oberst with numerous child exploitation offenses. Kopp was charged with the following: conspiracy to sexually exploit a child for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(a) & (e) [Count One]; ten counts of sexual exploitation of a child for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(a) & (e) [Counts Two, Three, and Six through Thirteen]; nine counts of distribution of child pornography involving prepubescent minors and minors who had not attained the age of 12 years old, in violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(1) [Counts Fourteen though Twenty-Two]; and two counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2) and 2256(8)(A) [Counts

4

Twenty-Seven and Twenty-Eight]. A: 16-21; Dkt. #10.[1]

On May 2, 2016, Kopp was scheduled to plead guilty but the plea proceeding was interrupted when Kopp, through counsel, refused to admit facts set out in an "offer of proof" that the government filed with the district court. A: 78-86; Dkt. #26. On May 19, 2016, the government filed an amended offer of proof, A: 111-23; Dkt. #32, and, on May 20, 2016, Kopp pled guilty without a plea agreement to all counts in the indictment in which he was charged, and admitted the facts set out in the amended offer of proof. A: 145-54.

On September 13, 2016, the district court sentenced Kopp principally to a 360-month term of imprisonment for the conspiracy charged in Count One; a 180-month term of imprisonment for each of the ten sexual exploitation offenses in Counts Two, Three, and Six through Thirteen; a 60-month term of imprisonment for each of the nine distribution of child pornography offenses in Counts Fourteen through Twenty-Two; and a 60-month term of imprisonment for each of the two possession of child pornography offenses in Counts Twenty-Seven and Twenty-Eight.

---

[1] References to pages of the appendix that Kopp filed are preceded by "A." References to entries in the district court's docket report in Case No. 5:16-cr-00108-GTS are preceded by "Dkt." The docket report appears at A: 1-14.

5

The court ordered these terms to run consecutively to each other, for a total 2,820-month term of imprisonment, A: 234, and also imposed a life term of supervised release.  A: 237.

Judgment was entered on September 14, 2016. A: 241-47; Dkt. #63.  On September 27, 2016, Kopp filed a timely notice of appeal.  A: 248; Dkt. #68.

Kopp is serving his term of imprisonment.

## STATEMENT OF FACTS

### A. Offense Conduct[2]

#### 1. The Conspiracy to Sexually Abuse V-1 from Birth and to Produce Images of that Abuse

Kopp and co-defendant Emily Oberst agreed that after V-1, a female, was born, they both would

---

[2] The description in this brief of Kopp's offense conduct is based on the presentence investigation report ["PSR"], which Kopp has filed with this Court. The district court adopted the factual recitation in the PSR.  A: 233.

Kopp denied committing some of the more horrific acts of abuse involving V-1, an infant victim, that are reported in the PSR, but the probation officer explained that there is photographic and video

6

sexually exploit the infant and produce images of that exploitation.  Oberst also agreed to distribute to Kopp images that she produced.  PSR ¶ 7.  V-1 was born on November 4, 2014.  *Id.*

While V-1 was in the hospital after birth, Kopp and Oberst exchanged many graphic text messages discussing their planned sexual abuse of the infant. Two days after V-1 was born and while she was still in the hospital, Oberst began producing pornographic images of her, consisting of "lascivious exhibition of V-1's genitals."  *Id.* ¶ 11.  These images were later found on Kopp's computer.  *Id.*

––––––––––––––––––

evidence depicting Kopp engaging in the described abuse.  PSR at pp. 45-46.  Kopp also claimed that his admitted communications with an undercover law enforcement agent, as documented in the PSR, overstated both the extent of his abuse of the infant and his plans for future abuse, but the probation office, relying on images and videos and Kopp's text message exchanges with Oberst, concluded that Kopp "did not hesitate to follow through with his 'dream' of molesting a baby and that he had no boundaries, other than physical limitations, when it came to using her as his 'sex toy.'"  *Id.*  (The term "sex toy" was Kopp's, not the probation officer's.  *Id.* at ¶ 7.)  Kopp also raised other factual objections to the PSR, *id.* p. 49, but they are not material here.

7

On November 9, Oberst sent Kopp a text message reporting that V-1 soon would be leaving the hospital. Kopp responded with an inquiry: "Can I get a pic of u licking her[?]" Oberst agreed to do this and, that night, sent Kopp an image of her licking V-1's vagina. PSR ¶ 7.

Kopp began sexually molesting V-1 when she was six days old and produced images of the abuse. *Id.* ¶ 8. This abuse was memorialized in two images later found on a cellular telephone belonging to Kopp, one depicting Kopp's penis in V-1's mouth while Oberst held V-1's head up and the other depicting V-1 naked from the waist down with Kopp's penis between her legs and touching her vagina. *Id.* In text messages, Kopp and Oberst discussed how what they had done was "f****** amazing" and Kopp stated, "I just can't wait till she gets older," which he later described as "shes like 2-3 n older." *Id.* ¶ 9.

Kopp's sexual abuse continued through March 18, 2016, when V-1 was 16 months old. As the PSR describes, Kopp and Oberst:

> produced images and videos of the exploitation, which depicted the lascivious exhibition of the infant's genitals; mouth to vagina contact; mouth to penis contact; penis to vagina contact; and finger to anal penetration. The images and videos were produced using the defendants' Samsung Galaxy cellular telephones, and some

8

of the images and videos were distributed between Oberst and Kopp, and others, via Kik [an instant messaging service that enables users to transmit images] and email.

*Id.* ¶ 10.

Kopp and Oberst agreed that "when [V-1] gets old enough," Oberst would "let [Kopp] "f*** her and give her a baby" and that "[Kopp] will be abke [sic] to give her a baby and hopefully we can have a baby girl to start all over with again."  PSR ¶ 7.[3]

### 2. The Investigation of Kopp and Oberst and the Sexual Abuse of V-3

Kopp and Oberst came to the attention of law enforcement in March 2016 when Kopp began communicating online with an undercover Federal Bureau of Investigation ["FBI"] task force officer who used the name "John" in a social media forum frequented by people with an interest in sex with children.  PSR ¶ 19.  Kopp told "John" that V-1 was 14 months old and that he "had her sense [sic] she was six days old."  *Id.*  Kopp graphically described his

---

[3] The PSR contains a more complete and graphic account of both Kopp's abuse of V-1 and his text message exchanges with Oberst related to the abuse. PSR ¶¶ 7-24.  At times, Oberst produced sexually explicit images of V-1 and distributed them to Kopp. *Id.* ¶ 14.

9

abuse of V-1, which included ejaculation in her mouth and digital penetration of her anus, and distributed numerous pornographic images of V-1, who he described to "John" as "my little bitch slut and whore." *Id*. ¶¶ 19-20. After describing ways in which he sexually abused V-1, Kopp explained to "John" that "I can do what I want to her." *Id*. ¶ 20. Kopp also told "John" that Oberst "has agreed to let me take [V-1's] virginity and get her . . . pregnant." *Id*.

At "John's" request, Kopp had Oberst produce images of V-1 that also depicted a sign stating "Hi John" and the current date in order to prove that the sexual abuse of V-1 that Kopp described to "John" was real. Kopp then distributed these images to "John." PSR ¶¶ 22-25. In his related text message exchanges with Oberst, Kopp described in graphic detail his plans for future sexual abuse of V-1. *Id*. ¶¶ 22-23. Kopp also sent other sexually explicit images of V-1 to "John," including "an image that depicts semen on the child's vagina and one image that depicts V-1 naked and straddling Kopp's erect penis." *Id*. ¶ 26.

In his exchanges with "John," Kopp also described another female victim, Kopp's own daughter, later designated as V-4, who was then 22 years old. Kopp explained that he had "touch[ed]" V-4 and her friends in the past when they spent the night at his residence and were sleeping. He stated that he used to take pictures of them, and described having "pics of [V-4's] pussy while she slept when she was like 11." PSR

10

¶ 21.  Kopp also explained that a female friend (later determined to be Oberst) sexually abused Kopp's two-year-old son, designated as V-3, including by "sucking his penis."  *Id*.  He stated that he once had a video of Oberst performing oral sex on both Kopp and V-3 but did not have it any more.  *Id.*

On March 18, 2016, law enforcement officials executed a search warrant at Kopp's residence in Liverpool, NY.  Kopp was arrested.  He admitted communicating with a person known to him as "John" and sending him pornographic images of an infant, which images Oberst had sent to him. PSR ¶ 27. Messages found on Kopp's cellular telephone confirmed that he had requested that Oberst produce and send him the sexually explicit images of V-1 that he had distributed to "John."  *Id*. ¶ 28.  Kopp admitted his agreement with Oberst to sexually abuse V-1 and that he allowed Oberst to sexually abuse V-3 at his residence.  *Id*. ¶ 29.  Execution of a search warrant at Oberst's residence and an interview of her corroborated the conspiracy, sexual abuse, and production and distribution of child pornography.  *Id*. ¶¶ 30-32.

Although investigators were unable to find images or videos of Oberst's sexual abuse of V-3 (which Oberst admitted), they uncovered images and videos on Kopp's computer and cellular telephone of Kopp sexually abusing V-3 when he was one and two years old, including depictions of penis to penis contact and

11

"lewd and lascivious exhibition of V-3's genitals."
PSR ¶¶ 34-39.

### 3. Kopp's Distribution and Possession of Child Pornography

The presentence investigation report detailed
evidence of Kopp's distribution of sexually explicit
digital video files of V-3 to Oberst in the summer of
2015; his distribution by electronic mail of three
sexually explicit images of V-3 to a person using the
name "jwilliams" on February 10, 2016; and of
sexually explicit images of both V-1 and V-3 to a
person using the name "Kristina" on February 15,
2016. PSR ¶¶ 40-43. The report also described
Kopp's distribution of pornographic images of V-1 to
the undercover officer and to Oberst in March 2016.
*Id*. ¶¶ 44-48.

Forensic examination of the hard drive of Kopp's
computer and of an external hard drive of Kopp's
uncovered 793 image files and 125 video files of child
pornography of victims other than V-1 and V-3. The
report described four of the files recovered: "an image
file depicting a female child who appears to be four or
five years old holding an adult penis and putting it in
her mouth"; "an image file depicting an adult's penis
pressed against the vagina of an infant/toddler with
semen on the child's vagina"; " a video file named '8
year old duct taped and raped24.(1).wmv,' which
depicts a female child whose age appears consistent
with the age stated in the title. The child's wrists and

12

ankles are bound together with duct tape while an adult male has sexual intercourse with her"; and "an image file with a name that contains a long string of letters and numbers, and depicts a female child approximately two or three years old with an adult penis in her mouth." PSR ¶¶ 53-54. Kopp possessed files "from known series that are widely traded on the Internet." *Id*. ¶ 53.

**4. Kopp's Other Known Victims**

The presentence investigation report described digital images found on the hard drive of Kopp's computer of Polaroid photographs depicting pornographic images of Kopp's daughter, V-4. Dates and captions written on the images indicate that V-4 was ten and eleven when these pictures were taken. The captions also indicated that V-4 was sleeping when the images, which included depictions of V-4's hand holding Kopp's penis and a hand moving V-4's underwear to display her vagina, were produced. PSR ¶ 55. Images and a video of some of V-4's friends (who apparently were the same age as V-4 when Kopp produced the pornographic images of her), including one showing a victim's skirt pulled up and another showing Kopp's penis on a victim's clothed buttocks, also were located on the computer. *Id*. ¶ 56.

V-4 reported that when she was between the ages of 11 and 13, she sometimes spent the night at Kopp's apartment, occasionally accompanied by friends. She once awoke and realized that Kopp was putting her

13

hand on his penis. She also told investigators that she had seen "inappropriate pictures of children" on Kopp's computer while there and that Kopp would pose as her when using email and her MySpace account to communicate with minors her age. PSR ¶ 57.

Forensic review of Kopp's external hard drive revealed sexually explicit images and a video of V-5 and V-6, sisters whose mother met Kopp through a mutual friend and, in 2006, once accepted his offer to watch her children for a night at his residence. V-5 and V-6 were three years old and one year old when Kopp produced these images and the video, which depict, among other things, Kopp "licking their vaginas"; "pressing his penis against their vaginas"; and, in the video, "Kopp penetrating one of the girl's vaginas with his finger." PSR ¶¶ 58-59.

Additional investigation showed that in 2014, Kopp had pressured an adult female sex partner who he met on Craigslist to take sexually explicit pictures of her ten-year-old daughter, V-7, and send them to Kopp. These images were found on Kopp's external hard drive and cellular telephone. PSR ¶¶ 60-61.

In or around 2000, Kopp had a romantic relationship with V-8, who was then 16 years old. Kopp was seven years older. They dated for three years but the relationship ended after V-8 realized that Kopp was sexually interested in young girls. When

14

investigators searched Kopp's computer, they found images of Polaroid pictures of V-8, which included V-8's name and captions. The pictures were taken when V-8 was 17 years old. Three of the images depict Kopp's penis in or near V-8's mouth while she was asleep. PSR ¶¶ 62-63.

## B. Sentencing Guidelines Calculations[4]

### 1. "Grouping" Analysis

The probation office determined that, under U.S.S.G. § 3D1.2, it would "group" together for purposes of calculating Kopp's offense level certain of the counts of conviction for (a) sexual exploitation of a child for the purpose of producing child pornography and (b) the distribution of the produced images, under the theory that the underlying conduct for any one such count was treated as a specific offense characteristic in or an adjustment to the guideline applicable to another such count. PSR ¶ 69. It further determined, however, that it would not "group" counts of conviction for sexual exploitation involving different victims or those involving harm to the same victim on different occasions. *Id*.

This grouping analysis resulted in the identification of 15 distinct "groups" of closely related counts of

---

[4] The probation office used the 2015 edition of the Federal Sentencing Guidelines Manual to calculate Kopp's advisory guidelines sentence. PSR at ¶ 68.

15

conviction: (a) the conspiracy count; (b) multiple groups of counts related to the sexual exploitation of V-1 on different occasions and the distribution of the produced images; (c) multiple groups of counts related to the sexual exploitation of V-3 on different occasions and the distribution of the produced images; (d) three groups of "pseudo-counts" related to the exploitation of V-1 in November 2014; and (e) a group consisting of the counts of conviction involving Kopp's possession of child pornography. PSR ¶¶ 71-187.

## 2. Offense Level Computation

The probation office applied U.S.S.G. § 2G2.1 to calculate Kopp's base offense level for "Group 1," the conspiracy-to-sexually-exploit-a-child-to-produce-child-pornography count of conviction. PSR ¶ 71. That guideline provides for a base offense level of 32, *id*., which was increased 4 levels under U.S.S.G. § 2G2.1(b)(1)(A) because the offense involved a minor who had not attained the age of 12, PSR ¶ 72; 2 levels under U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved the commission of a sexual act or contact, PSR ¶ 73; 2 levels under U.S.S.G. § 2G2.1(b)(3) because the offense involved the distribution of produced images, PSR ¶ 74; and 4 levels under U.S.S.G. § 2G2.1(b)(4) because the produced images depicted sadistic conduct or other depictions of violence, PSR ¶ 75, for an adjusted offense level of 44. PSR ¶ 79.

16

The offense level computation for Groups 2 through 14 was essentially the same as for Group 1, with each calculation yielding an offense level between 36 and 42 depending on whether the count(s) of conviction in the group included images involving the commission of a sexual act or contact; were distributed; and/or depicted sadistic conduct or other depictions of violence. PSR ¶¶ 80-177.

The offense level for Group 15 was determined using U.S.S.G. § 2G2.2, which provides for a base offense level of 18. PSR ¶ 178. That offense level was increased by 2 under U.S.S.G. § 2G2.2(b)(2) because the possessed material involved a prepubescent minor or one who had not attained the age of 12, PSR ¶ 179; 4 levels under U.S.S.G. § 2G2.2(b)(4) because the possessed material portrayed sadistic conduct or other depictions of violence, PSR ¶ 180; 5 levels under U.S.S.G. § 2G2.2(b)(5) because Kopp engaged in a pattern of activity involving the sexual abuse of two minors, PSR ¶ 181; 2 levels under U.S.S.G. § 2G2.2(b)(6) because Kopp used a computer to possess the material, PSR ¶ 182; and 5 levels under U.S.S.G. § 2G2.2(b)(7)(D) based on the number of images that Kopp possessed. PSR ¶ 183.

Applying U.S.S.G. § 3D1.4 to determine a single offense level for multiple groups, the probation offense calculated a combined adjusted offense level of 49. PSR ¶¶ 188-91. The PSR deducted 2 levels under U.S.S.G. § 3E1.1(a) for Kopp's acceptance of

17

responsibility and an additional level under U.S.S.G. § 3E1.1(b) based on Kopp's timely notice of his intention to plead guilty and an anticipated government motion. PSR ¶¶ 192-93.

The PSR then recommended a 5-level increase in Kopp's offense level under U.S.S.G. § 4B1.5(b) because he qualified as a repeat and dangerous sex offender against minors. PSR ¶ 195. These calculations resulted in a combined adjusted offense level of 51, which was reduced to a total offense level of 43, the highest permissible level under the sentencing guidelines. PSR ¶ 197.

### 3. Advisory Guidelines Sentence

The probation office determined that Kopp's criminal history score was zero, resulting in a criminal history category of I. PSR ¶ 204. An offense level of 43 and a criminal history category of I yields a guidelines sentence of life imprisonment. *Id*. ¶ 226. But, because no count of conviction permitted a life term of imprisonment, U.S.S.G. § 5G1.2 provided for consecutive statutory maximum terms of imprisonment on each count of conviction to the extent necessary to achieve the total punishment of a life term of imprisonment. PSR ¶ 227. Thus, Kopp's advisory guidelines term of imprisonment was 6,600 months or 550 years. *Id*. ¶ 226.

18

## C. Sentencing

### 1. The Parties' Sentencing Memoranda

In Kopp's sentencing memorandum, he asked the district court to impose "the statutory mandatory minimum term of fifteen years' imprisonment on each count imposed to run concurrently to be followed by lifetime supervision." A: 167.[5] Kopp argued that certain mitigating circumstances fell within the factors set out in 18 U.S.C. § 3553(a) and supported his argument for this proposed sentence, specifically Kopp's claims that his father physically abused him when he was a child; a neighborhood boy sexually abused him; his father suffered from dementia and attempted suicide; Kopp was diagnosed with a

---

[5] As explained in the PSR, there was a fifteen-year statutory mandatory minimum term of imprisonment and a thirty-year maximum term for each sexual exploitation count of conviction (Counts 1-3 and 6-13) pursuant to 18 U.S.C. § 2251(e); a five-year mandatory minimum term of imprisonment and a twenty-year maximum term for each distribution count of conviction (Counts 14-22) pursuant to 18 U.S.C. § 2252A(b)(1); and a twenty-year maximum term of imprisonment for each possession count of conviction (Counts 27-28) pursuant to 18 U.S.C. § 2252A(b)(2). PSR ¶ 225.

19

depressive disorder; and Kopp had a consistent employment history, acquired vocational training, and served in the military for a short time. A: 167-71. Kopp also urged the district court to consider the following when imposing sentence: his family support, his need for treatment, his age and reduced risk of recidivism as he aged, and his remorse and acceptance of responsibility. A: 171-74.

Kopp further argued that the PSR miscalculated his guidelines sentence to be 550 year when, in fact, the relevant guideline provision, U.S.S.G. § 5G1.2, mandated that Kopp's "life" sentence be limited to his anticipated life expectancy, which Kopp claimed to be 41.2 years. A: 174-75.

In its sentencing memorandum, the government urged the district court to impose a within-guidelines 550-year term of imprisonment and a life term of supervised release. A: 196. The government described Kopp as "a dangerous and repeat sex offender whose crimes continued to escalate in severity just as the ages of his victims continued to become shockingly younger," and argued that his criminal conduct demonstrated that he "must be separated from the rest of society, and children, forever." A: 201. The government's memorandum detailed Kopp's abuse of V-1 as an infant and V-3 when he was a toddler, and also described his "pattern of abuse dating back 16 years." A: 201-04.

20

In a separate filing, the government responded to Kopp's sentencing memorandum, explaining why the guidelines scoring was correct and Kopp's "life expectancy" argument was inconsistent with decisions from this and other federal appellate courts. A: 207-10. The government also took issue with Kopp's assertions concerning mitigating evidence, explaining that Kopp's claims of sexual abuse as a child had "morphed over time," and questioning the accuracy of Kopp's claims of both childhood physical abuse and its purported linkage to his criminal conduct. A: 211-15.

## 2. The Sentencing Hearing

At the sentencing hearing on September 13, 2016, defense counsel reiterated Kopp's objection to the PSR determination that the guidelines imprisonment term was 550 years, arguing instead that it was 39.2 years. A: 221-224. Defense counsel further argued that a 550-year term of imprisonment "would violate the Eighth Amendment and would be unreasonable pursuant to 18, U.S.C., 3553(a)." A: 224. The district court determined that the probation office had properly determined the guidelines sentence and that the 6,600-month or 550-year term would be "the starting point for the Court." A: 225.

The government reiterated its request for a within-guidelines sentence, noting that the 22 counts of conviction "represent[ed] a fraction of the offenses committed by this defendant against children over [a

21

period of] 16 years."  A: 226.  Government counsel argued that a sentence of 550 years would "emphasize[ ] to those like-minded individuals who similarly skulk around believing that their abuse of the most vulnerable victims is a silent crime for which there are no repercussions" and "broadcast[ ] to Jason Kopp, and others like him, that law enforcement is working tirelessly to find you and that the courts will not provide leniency of any sort where, like here, none is deserved."  A: 227.

In response, defense counsel noted that Kopp had immediately confessed when confronted by law enforcement, pled guilty to all counts in the indictment, and had accepted responsibility.  A: 229. Defense counsel then read to the district court a letter that Kopp had written.  A: 231-33.

The district court stated:

The Court has reviewed and considered all the pertinent information, including, but not limited to, the presentence investigation report, the addendum, submissions by counsel, the Sentencing Guidelines manual, as well as the factors outlined in 18 U.S.C. Section 3553(a).

The Court adopts the factual information and the Guideline applications contained in the presentence investigation report.

22

The Court finds the Total Offense Level is 43, Criminal History Category of I and the Guideline imprisonment range is life.

However, since no count of conviction carries a potential life sentence, the Guideline sentence is 6,600 months, 550 years, which is the combined length of the authorized maximum sentences for the counts of conviction.

Ms. Bianco [defense counsel], the Court would note that in your sentencing argument here this morning, you indicated that the defendant did things right after being arrested. He cooperated with law enforcement. He didn't force a trial in this case. And the Court would note: Acceptance of responsibility recognizes that in every case where defendants do that and he's given credit for that by the consideration that was given in the offense level, as appropriate, by the government.

Upon your plea of guilty to Counts 1, 2, 3, 6 through 22, 27 and 28 of the indictment, it is the judgment of the Court that you are hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 2,820 months. This term consists of 360 months on Count 1; 180 months on each of Counts 2, 3, 6, 7, 8, 9, 10, 11, 12 and 13; and 60 months on each

23

of Counts 14, 15, 16, 17, 18, 19, 20, 21, 22, 27 and 28 all to run consecutively.

The Court believes a consecutive sentence is warranted in this case because each count of conviction constitutes a separate and distinct criminal act, which calls for a Guidelines sentence that is equivalent to a life of imprisonment.

The sentence just imposed represents the maximum sentence on Count 1 and the mandatory minimum sentence on each of the remaining counts, with the exception of Counts 27 and 28. These counts do not have a mandatory minimum sentence. However, I find a 60-month sentence is warranted for these counts, as well.

Now, let me further explain. The Court finds that this defendant's behavior, criminal acts, which were separate and distinct as charged in the indictment, warrant no consideration of any type of leniency and the Court would be justified in giving the 6,600 months or 550 years, as the government has requested. But the Court is, also, mindful of the case law in this area, which indicates that the Court should try and achieve a lifetime sentence, based on the Guidelines.

24

And after careful consideration of the record and the arguments presented by the parties, I find no reason to depart or vary from the applicable Guideline sentence, given this Court's responsibility to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. Section 3553(a). In fact, I find the Guideline sentence is necessary to reflect the seriousness of this defendant's numerous crimes against children, to provide just punishment for the extent of these crimes against children, and to deter others from engaging in the same incomprehensible conduct, that being the sexual exploitation of children as young as toddlers and a newborn baby. I do not find one mitigating factor for your behavior which spanned over a decade and involved the sexual exploitation of at least nine children, including your own two children.

Your attorney has made arguments in her submissions and, again, here today and your letter reflects, you know, the loss that your children will suffer as a result of not having you there as a father and, certainly, the Court recognizes that and considers that. But, under the circumstances, it's the Court's responsibility and, certainly, the Court believes, based on over a decade and a half of exploitation of children which included your own, the best thing this

25

Court could do is to protect your children from you, as well.

The escalation of your behavior over these years, your sickening conversations about your dream of molesting a baby, and the fact that you carried out this dream for Victim-1 from the time she was six days old until authorities rescued her at 16 months all underscore your danger to the community and your likelihood of recidivism. This is not a case where there were single acts but repeated acts against your own children, friends of your children and strangers who you sought out on the internet and then molested their children. This all underscores your danger to the community and, again, your likelihood of recidivism.

Your conduct, also, included the online distribution of produced images depicting two of your victims and your possession of internet pornography involving at least 62 identified victims who continue to be victimized by you and others who collect images of their abuse.

I find the sentence imposed today which guarantees a life sentence, which is what this Court is trying to accomplish, is justified and reasonable because you are a repeat and dangerous sex offender who preys on the most vulnerable in our society and because only a life

26

sentence can insure the safety of the community, reflect the seriousness of your offenses against children, provide just punishment for your crimes and afford adequate deterrence.

I request and recommend that you be placed as [sic] FCI Tucson where you can attend sex offender treatment.

The Court has imposed a sentence, with the understanding that you will not be released from prison. However, in the event that you are released for some unknown reasons to this Court, you shall be placed on supervised release for a term of life on each count to run concurrently.

A: 233-37.

When given an opportunity to do so, defense counsel did not object to the length of the sentence or its constitutionality. A: 239.

## SUMMARY OF ARGUMENT

Given the nature and duration of Kopp's horrific sexual abuse of children as young as six days old, his own children, and the children of others, and Kopp's production, distribution, and possession of pornographic images of that abuse, as well as his collection of images and video of the sexual abuse of

27

other children, the district court acted well within its discretion to ensure that Kopp would remain in prison for the remainder of his life, forever denying him future access to children. The term of imprisonment that the district court selected to achieve this reasonable outcome – 235 years – was a substantively reasonable means of signaling to Kopp and others the severity of Kopp's criminal conduct. Further, it was an appropriate exercise of the district court's considerable sentencing discretion to impose consecutive imprisonment terms to ensure that Kopp received distinct and additional punishment for each separate harm.

Because Kopp did not raise any constitutional challenges in the district court to the term of imprisonment imposed, the supervised release term, or the sex offender registration requirement, his *pro se* Due Process and Eighth Amendment challenges are subject to plain error review. Kopp's Eighth Amendment challenge to his statutorily-authorized life term of imprisonment, as recommended by the federal sentencing guidelines, is meritless. Because Kopp will not be released from prison during his lifetime, his constitutional objections to supervised release and sex offender registration will never ripen and, in any event, these claims fail under any standard of review.

Kopp's newly-raised and unpreserved *pro se* contentions about the vagueness of the interstate commerce requirement in the offenses of conviction

28

and the insufficiency of evidence with respect to those requirements were waived when Kopp pled guilty and, in any event, are meritless under any standard of review.

## ARGUMENT

**POINT I: Kopp's 235-Year Term of Imprisonment is Substantively Reasonable Whether Reviewed for Plain Error or an Abuse of Discretion.**

## A. Governing Law

"A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (*en banc*). "Substantive reasonableness 'focuses on a district court's explanation of its sentence in light of the factors contained in 18 U.S.C. § 3553(a).'" *United States v. Matta*, 777 F.3d 116, 124 (2d Cir. 2015) (quoting *United States v. Gonzalez*, 529 F.3d 94, 98 (2d Cir. 2008)).

Section 3584(a) of Title 18 provides in relevant part that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively . . . ." Subsection (b) explains that "[t]he court, in determining whether the terms imposed are to be

29

ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." A district court has discretion to impose consecutive sentences to reflect "the seriousness of [a] crime." *United States v. Matera*, 489 F.3d 115, 124 (2d Cir. 2007).

## B. Standard of Review

This Court reviews a sentence for substantive reasonableness under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007); *Cavera*, 550 F.3d at 189. In determining whether a sentence is substantively reasonable, an appellate court must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *Id*. at 190.

This Court's "review of a sentence for substantive reasonableness is particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). Under such review, district court sentences will be vacated on appeal only when they are "so 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law' that allowing them to stand would 'damage the administration of justice.'" *Id*. (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)).

30

Ultimately, this Court will set aside a sentence "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *Cavera*, 550 F.3d at 189 (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). While this Court does not presume that a within-Guidelines sentence is substantively reasonable, in "the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

Despite an opportunity to do so at sentencing, Kopp did not argue that the term of imprisonment was substantively unreasonable. A: 239. Under Fed. R. Crim. P. 52(b), only "[a] plain error that affects substantial rights may be considered" on appeal when it "was not brought to the [district] court's attention." This Court has not decided "whether plain error review applies to an unpreserved challenge to the substantive reasonableness of a sentence." *United States v. Thavaraja*, 740 F.3d 253, 258 n.4 (2d Cir. 2014).[6]

---

[6] The "plain error" standard of review is described in Section IIB at pp. 40-41 *infra*.

31

## C. Discussion

Whether reviewed under the plain error standard or a deferential abuse of discretion standard, the district court's decision to impose a 235-year term of imprisonment was substantively reasonable. The sentence consisted of the statutory maximum 30-year term of imprisonment charged in Count One for the Kopp-Oberst conspiracy to sexually molest V-1 and produce images of the molestation from the time she was born until at least Kopp would attempt to impregnate her when she was older, a plot that Kopp and Oberst vigorously implemented from November 2014 until their arrest in March 2016; statutory minimum 15-year terms for each of the ten substantive counts of conviction for sexual exploitation for the purpose of producing child pornography; statutory minimum 5-year terms for each of the nine counts of conviction for distribution of child pornography; and 5-year terms for each of the two counts of conviction for possession of child pornography, A: 234, all to run consecutively to each other. The resulting 235-year term was slightly more than half the advisory guidelines' recommended 550-year term, and either term would have implemented the district court's stated objective of ensuring that Kopp served a life term of imprisonment.[7]

---

[7] Kopp does not press on appeal his unsuccessful claim in the district court that the probation office wrongly determined in the PSR that U.S.S.G. § 5G1.2

32

The district court explained this sentence, adopting the sentencing guidelines calculations in the presentence report providing for a 550-year term of imprisonment, and noting that consecutive sentences were appropriate because "each count of conviction constitutes a separate and distinct criminal act" and these acts "warrant no consideration of any type of leniency." A: 234-35.

The district court made clear its conclusion that a life term of imprisonment, as mandated by the guidelines, was firmly grounded in factors set out in 18 U.S.C. § 3553(a), explaining that it "is necessary to reflect the seriousness of this defendant's numerous crimes against children, to provide just punishment for the extent of these crimes against children, and to deter others from engaging in the same incomprehensible conduct, that being the sexual exploitation of children as young as toddlers and a newborn baby." A: 235. At the same time, the district court was unable to identify "one mitigating factor for your behavior which spanned over a decade and involved the sexual

---

required that Kopp's life term of imprisonment be implemented by a 550-year term of imprisonment. *See* PSR ¶¶ 226-27. Nor could he credibly do so. *See, e.g.*, *United States v. McLean*, 287 F.3d 127, 136 (2d Cir. 2002); *United States v. McLeod*, 251 F.3d 78, 82 (2d Cir. 2001); *United States v. Howells*, 676 F. App'x 55, 58 (2d Cir. 2017); *United States v. Hamilton*, 548 F. App'x 728 (2d Cir. 2013).

33

exploitation of at least nine children, including your own two children." A: 235.

The district court also explained that its sentence was necessary "to protect the public from further crimes of the defendant," *id*. at § 3553(a)(2)(C), referring to "[t]he escalation of [Kopp's] behavior over these years," his "sickening conversations about your dream of molesting a baby, and the fact that you carried out this dream for Victim-1 from the time she was six days old until authorities rescued her at 16 months," and his commission of "repeated acts [of sexual molestation] against your own children, friends of your children and strangers who you sought out on the internet and then molested their children." A: 236.

The district court also based its sentence on Kopp's "online distribution of produced images depicting two of [his] victims and [his] possession of internet pornography involving at least 62 identified victims who continue to be victimized by [Kopp] and others who collect images of their abuse." A: 236-37.

Kopp complains that "the district court focused on no other § 3553(a) factor than Kopp's offense conduct," Kopp Opening Brief at p. 19, ignoring that almost all of the § 3553(a) factors require judicial consideration of an offender's conduct, which informs "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), as well as "the need for the sentence imposed . . . to reflect the seriousness of the

34

offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant." *Id*. at § 3553(a)(2)(A)-(C).

Kopp also argues that the district court may have had a "strong, visceral revulsion" to Kopp's conduct, thereby blinding it to what Kopp argues is "the government's participation in a portion of that conduct," namely the undercover agent's multiple requests to Kopp to send images proving that his boasts of ready access to an infant whom he could molest at will were genuine. Kopp Opening Brief at pp. 20-22.

There are a number of flaws with this argument. First, it fails to account for the legitimate law enforcement need to triage child exploitation investigations, addressing with more urgency those in which a pedophile like Kopp is actually molesting a child rather than distributing images of past molestation by others. This often can be done only by encouraging pedophiles to prove their access to victims, which the undercover operative did here. And, indeed, the day after Kopp's transmission of an image establishing his access to V-1, law enforcement officials executed a search warrant at Kopp's residence and arrested him. PSR ¶¶ 25, 27.

35

Second, even had it been improper for the government to request proof-of-access images from Kopp, this is not a relevant basis for a reduction in Kopp's sentence. *United States v. Sriram*, 482 F.3d 956, 961 (7th Cir. 2007), *cert. granted, judgment vacated on other grounds*, 552 U.S. 1163 (2008), *and opinion reinstated in* 274 F. App'x 493 (7th Cir. 2008) ("And as for governmental misconduct, nothing in section 3553(a) suggests that punishing the government is a proper goal of sentencing; two wrongs don't make a right.").

Third, although one certainly could understand a "strong, visceral revulsion" to Kopp's depraved intentions, his reprehensible agreement with Oberst, and, as Kopp describes it, his "appalling" conduct, Kopp Opening Brief at p. 27, there is no evidence that the district court's sentence was influenced by such a reaction.[8] The court addressed Kopp respectfully at the sentencing hearing, A: 230-31; acknowledged Kopp's post-arrest conduct, A: 233-34 ("He cooperated with law enforcement. He didn't force a trial in this case."); and discussed Kopp's conduct in

---

[8] Kopp quotes the government's description at sentencing of Kopp as "inherently evil" and its request that Kopp remain "behind bars for the rest of his life." Kopp Opening Brief at p. 20. This is advocacy, not "visceral revulsion," and there is no reason to believe that these remarks caused the district court to rely on improper considerations when sentencing Kopp.

36

restrained terms, never denigrating Kopp personally.
A: 233-38.

Kopp also complains that he received no
sentencing credit for his "acceptance of responsibility
and cooperative behavior with law enforcement when
he was first confronted," because his offense level was
so high due to a guidelines provision that "is not the
product of any careful study or empirical data." Kopp
Opening Brief at 22-23. However, as noted above, the
district court acknowledged Kopp's post-arrest
conduct but determined that it did not merit a lower
sentence, a decision well within the district court's
discretion. "[T]he requirement that a sentencing judge
consider an 18 U.S.C. § 3553(a) factor is not
synonymous with a requirement [that] the factor be
given determinative or dispositive weight in the
particular case." *United States v. Florez*, 447 F.3d
145, 157 (2d Cir. 2006) (internal quotation marks,
citation, and emphasis omitted). This Court has made
clear that "the weight to be given any § 3553(a)
factor[ ] is a matter firmly committed to the discretion
of the sentencing judge and is beyond our [appellate]
review, as long as the sentence ultimately imposed is
reasonable in light of all the circumstances presented."
*Id*. at 158 (internal quotation marks and citation
omitted).

And, in any event, Kopp's offense level was
enhanced largely due to his extensive and ongoing
abuse of V-1 and V-3, resulting in multiple "groups"

37

of counts of conviction, which, when each considered for purpose of determining the sentencing range, increased his offense level by 5, PSR ¶ 188; and his status as a repeat and dangerous sex offender against minors, resulting in an additional 5-level increase, PSR ¶ 195, not some anomaly in the applicable Chapter Two guidelines provision, U.S.S.G. § 2G2.1. Moreover, Kopp's claim that these enhancements impose "repeat punishment" ignores that the grouping rules are designed to take into account distinct harms, *see* U.S.S.G. Chap. 3, Part D, intro. cmt. ("The rules in this Part seek to provide incremental punishment for significant additional criminal conduct."), and Kopp's repeat sex offender status can be supported by his abuse of victims not included within Kopp's counts of conviction, including his own daughter. *See* U.S.S.G. § 4B1.5(b) cmt. n.4(B)(i) (defining required elements of "pattern of activity involving prohibited sexual conduct" to mean that "the defendant engaged in prohibited sexual conduct with a minor" on at least two separate occasions).

Ignoring that some federal offenses carry a possible death sentence, *see, e.g.*, 18 U.S.C. § 1111(b), Kopp further complains that he could not have received a harsher sentence for murder. Kopp Opening Brief at p. 25. In any event, the question presented here is not the severity of sentences imposed on other offenders who commit other crimes. It is whether Kopp's term of imprisonment – effectively a life sentence − is substantively reasonable given undisputed evidence

38

that he sexually abused children in horrific ways for at least 16 years, including infants, toddlers, and his own children; carefully planned, eagerly anticipated, apparently reveled in, produced and caused the production of pornographic images of a new born infant, and then boasted about his repeated sexual abuse of her; involved others in his schemes to molest children and produce child pornography; and produced, distributed, and possessed images of his abuse. Under these circumstances, it was not an abuse of discretion for the district court to adopt and implement the guidelines-recommended life term of imprisonment.

Kopp's further claim that he should have received sentencing benefit because "the majority of his victims . . . will hopefully have no memory of the abuse, given their young age," Kopp Opening Brief at p. 27, is one that, if adopted, would reward abuse of very young and sleeping victims, a notion sensibly rejected in the controlling opinion in *United States v. Brown*, 843 F.3d 74, 84 (2d Cir. 2016) (Droney, *CJ.*) ("Simply because [the victims] did not know of Brown's actions when they were sleeping does not diminish the harm they suffered. As to Jane Doe 3, the fact that she was asleep for all of the sexual abuse does not mean that she will never learn of it, or that she will not suffer the emotional and psychological harm described by the other victims."). Other federal appellate courts have determined that the sexual abuse of unaware victims merits sentencing increases, not leniency. *Id.* at n.7.

39

Kopp's additional claims that "the district court over-exaggerated the threat Kopp poses to the community" and that treatment, judicial supervision, and sex offender registration are adequate to safeguard other children once Kopp serves a mandatory minimum fifteen-year imprisonment term, Kopp Opening Brief at p, 29, ignores the facts. The nature, extent, and duration of Kopp's criminal conduct and his demonstrated escalating desire and willingness to repeatedly sexually abuse very young children, including his own and a newborn, provided the district court with ample reason to consider him among the most dangerous predatory pedophiles and sentence him accordingly.

**POINT II: Whether Reviewed for Plain Error or Otherwise, Kopp's *Pro Se* Claim that His Term of Imprisonment Violates the Eighth Amendment is Meritless.**

## A. Governing Law

The Eighth Amendment provides in pertinent part that "cruel and unusual punishments" shall not be "inflicted." U.S. Const. amend. VIII. Although this constitutional right can be violated by the length of an imprisonment term, "the Eighth Amendment does not require strict proportionality between crime and sentence, but rather forbids only extreme sentences that are grossly disproportionate to the crime." *United*

40

*States v. Bullock*, 550 F.3d 247, 252 (2d Cir. 2008) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 960 (1991) (Kennedy, *J.*, plurality opinion)). "Lengthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms." *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003); *see also United States v. Adams*, 768 F.3d 219, 225 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1726 (2015) (quoting *Yousef* with approval).

## B. Standard of Review

A defendant who fails to raise in the district court an Eighth Amendment claim that his sentence is "cruel and unusual" forfeits it. *United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008) ("Rivera challenges his sentence as cruel and unusual, in violation of the Eighth Amendment. Since Rivera failed to raise this claim in the District Court, we deem it forfeited."). This Court reviews such forfeited claims for plain error only. *United States v. Carter*, 110 F. App'x 165, 166 (2d Cir. 2004) ("He did not raise the issue of Eighth Amendment proportionality below, and so we review for plain error.").

Under the plain error standard, an appellate court may, in its discretion, correct an error not raised below, but only when the defendant has shown that: (1) there

41

is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the [defendant's] substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett v. United States,* 556 U.S. 129, 135 (2009)). The defendant bears the burden of showing plain error. *See United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004); *United States v. Turner*, 720 F.3d 411, 427 (2d Cir. 2013).

This Court "keep[s] in mind the Supreme Court's guidance that reversal for plain error should 'be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

## C. Discussion

At his sentencing hearing, Kopp, through counsel, raised an Eighth Amendment claim, but contended only "that *a sentence of 550 years* would violate the Eighth Amendment." A: 224 (emphasis added). As a result, Kopp's *pro se* appellate claim that his 235-year term of imprisonment was unconstitutional should be reviewed under the plain error standard.

42

Under any level of appellate review, this claim fails. It is undisputed on appeal that the term of imprisonment the district court imposed was consistent with the federal sentencing guidelines and within statutory requirements. Thus, there is no Eighth Amendment error. *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003).

**Point III:** **Kopp's *Pro Se* Due Process and Eighth Amendment Challenges to Supervised Release and Sex Offender Registration are Non-Justiciable and Meritless.**

## A. Background

In his *pro se* supplemental brief, Kopp argues that supervised release and sex offender registration are *per se* unconstitutional. Kopp *Pro Se* Supplemental Brief at pp. 8-11. Kopp appears to rely on the notion of "substantive due process" to support this claim; he does not allege that the district court committed procedural error during sentencing or that he was denied due process before being required to register as a sex offender. Because Kopp did not raise these claims below, if justiciable, they are subject to plain error review.

43

## B. Discussion

### 1. Kopp's Challenges to Supervised Release and Sex Offender Registration Are Not Justiciable.

Kopp will never be released from federal prison. Thus, he cannot show that he will be subject to either supervised release or sex offender registration. This renders his challenges to these never-to-be-realized consequences of his conviction non-justiciable. *See Doe v. Cuomo*, 755 F.3d 105, 114 (2d Cir. 2014) (affirming district court's determination that plaintiff challenging New York State's Sex Offender Registration Act ["SORA"] requirements lacked standing; "[e]ven assuming, without deciding, that the SORA provisions precluding registered offenders from obtaining insurance coverage or health benefits for erectile dysfunction implicate Doe's privacy rights in intimate affairs, Doe failed to allege any injury as a result of those provisions, and no injury may reasonably be inferred."); *United States v. Thomas*, 198 F.3d 1063, 1065 (8th Cir. 1999) (refusing to address defendant's due process challenge to a supervised release condition, explaining that "because Thomas has not shown a current, substantial controversy relating to the challenged provision, his due process vagueness claim is premature. Thomas will not be subject to the condition for nearly a decade, during which time any number of events may occur that would make the condition irrelevant. Until such

44

time as the condition's enforcement is imminent, the dispute is only abstract.").

## 2. Kopp's Due Process and Eighth Amendment Challenges to Supervised Release and Sex Offender Registration Are Meritless.

Further, Kopp's claims are meritless. This Court has rejected a due process challenge to a conviction under 18 U.S.C. § 2250(a) for a violation of the federal Sex Offender Registration and Notification Act ["SORNA"]. *See United States v. Hester*, 589 F.3d 86, 88 (2d Cir. 2009) ("For the reasons stated below, we conclude, as have all of our sister circuits that have considered the issue, that prosecution for failure to register as a sex offender under 18 U.S.C. § 2250(a) does not violate the right to due process of law."). If criminal prosecution for failing to register as a sex offender is consistent with the Due Process Clause, the underlying registration obligation necessarily withstands a constitutional challenge.

Further, requiring sex offender registration is not "punitive," even if failure to register can result in criminal prosecution. *Smith v. Doe*, 538 U.S. 84, 105 (2003) ("Our examination of [Alaska's Sex Offender Registration Act's] effects leads to the determination that respondents cannot show, much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme. The Act is nonpunitive . . . ."); *see also*

45

*United States v. Under Seal,* 709 F.3d 257, 265 (4th Cir. 2013) ("SORNA's registration requirements have not been regarded in our national history and traditions as punishment."); *United States v. W.B.H.*, 664 F.3d 848, 860 (11th Cir. 2011) ("[W]hen it enacted SORNA Congress did not intend to impose additional punishment for past sex offenses but instead wanted to put into place a civil and non-punitive regulatory scheme."). Accordingly, such required registration does not implicate the Eighth Amendment "Cruel and Unusual *Punishments* Clause."

Although an overly intrusive or burdensome and unnecessary supervised release *condition* can violate substantive due process, *United States v. McLaurin*, 731 F.3d 258, 264 (2d Cir. 2013) (holding that "the plethysmographic condition . . . may not, consistent with substantive due process, be imposed on McLaurin."), there is no authority for the proposition that the mere imposition of a statutorily-permissible term of supervised release violates the Due Process Clause. Indeed, federal law required that the district court here impose a term of at least five years, 18 U.S.C. § 3583(k), and the federal sentencing guidelines recommended a life term. U.S.S.G. § 5D1.2(b) (Policy Statement). Under these circumstances, when there is no authority supporting Kopp's constitutional challenge, the district court's imposition of a supervised release term cannot have been plain constitutional error.

46

**Point IV:  Kopp's _Pro Se_ "Interstate Commerce" Claim Was Waived by His Guilty Plea and, in Any Event, Lacks Merit.**

## A. Background

Although the heading for "Ground Four" in Kopp's _pro se_ brief poses the question "whether child exploitation offenses are void for vagueness," Kopp Supplemental _Pro Se_ Brief at p. 11 (capitalization removed), the ensuing discussion focuses on whether there was sufficient evidence to support the interstate commerce requirements in the statutes of conviction. _Id_. at 11-15.  Whether Kopp's claim is interpreted as a vagueness challenge or a sufficiency of evidence claim, he waived it by pleading guilty and, in any event, it lacks merit.  Because Kopp did not raise either of these claims in the district court, any available review should be for plain error only.

47

## B. Discussion

### 1. By Pleading Guilty, Kopp Waived His Claims That There Was Insufficient Evidence and That the Interstate Commerce Requirements in the Statutes Under Which He Was Convicted Were Unconstitutionally Vague.

A criminal defendant waives his right to appeal most challenges to a prosecution when he pleads guilty. "A knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings." *United States v. Coffin*, 76 F.3d 494, 496 (1996) (citations omitted); *see also United States v. Lasaga*, 328 F.3d 61, 63 (2d Cir. 2003) ("A defendant who pleads guilty unconditionally admits all elements of the formal charge and, in the absence of court-approved reservation of issues for appeal, waives all challenges to prosecution except those going to the court's jurisdiction."). Jurisdiction in this context refers to "the courts' statutory or constitutional *power* to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998)) (emphasis in original). "Thus, to attack a conviction post-plea, a defendant must establish that the district court lacked the 'power to entertain the prosecution.'" *United States v. Kumar*, 617 F.3d 612, 620 (2d Cir. 2010) (quoting *Hayle v. United States*, 815 F.2d 879, 882 (2d Cir. 1987)).

48

Thus, this Court has held that a defendant who pleads guilty waives a claim that the evidence of his guilt was insufficient. *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) ("In sum, where, as here, we have concluded that the district court adequately complied with the requirements of Rule 11, or where there was error but it was harmless, we will not entertain a challenge to the sufficiency of the evidence.").

Similarly, a defendant who, like Kopp, pleads guilty unconditionally, waives a claim that the statute of conviction was unconstitutionally vague. *See, e.g.*, *United States v. Wheeler*, 857 F.3d 742, 744 (7th Cir. 2017) (holding that defendant who pled guilty waived a claim that the "residual clause" in the statute used to convict him was vague); *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011) ("Having already admitted guilt of the substantive crime and affirmed as true the underlying facts of the conviction, the defendant can no longer re-argue the facts on appeal and challenge the statute as vague in application."); *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1299 (10th Cir. 2008) ("We conclude that Defendant, in pleading guilty, waived his right to raise his as-applied vagueness argument on appeal."); *United States v. Martinez-Martinez*, 69 F.3d 1215, 1224 (1st Cir. 1995) ("We need not reach the merits of these contentions [that 21 U.S.C. §§ 841 and 846 are unconstitutionally vague] because a valid guilty plea

49

waives all challenges to the factual and legal foundations of the charges.") (footnote omitted).[9]

## 2. The Commerce Requirements in Kopp's Offenses of Conviction Were Satisfied by His Admissions and Are Not Unconstitutionally Vague.

### a. The Commerce Requirements Charged in the Indictment

In Count One (charging conspiracy) and Counts Two and Three (charging Kopp with sexual exploitation for the purpose of producing child pornography), the indictment substantially tracked the alternative interstate commerce requirements set out in 18 U.S.C. § 2251(a), alleging that Kopp either conspired to or exploited a minor victim to produce child pornography "knowing and ha[ving] reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, and where the visual depictions were produced using materials that have been mailed,

---

[9] These decisions may be limited to "as-applied" vagueness challenges. Kopp's fact-bound vagueness claim in this context can only be interpreted as an "as-applied," not a "facial" challenge. *See Dickerson v. Napolitano*, 604 F.3d 732, 743 (2d Cir. 2010) (discussing limited circumstances in which a facial vagueness challenge can be asserted).

50

shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and where such visual depictions were actually transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce." A: 16, 17.[10] In the remaining sexual exploitation counts naming Kopp, Counts Six through Thirteen, the indictment alleged only one of the alternative statutory commerce requirements: "where the visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer." A: 18.

In Counts Fourteen through Twenty-Two, charging Kopp with distribution of child pornography, the indictment tracked the relevant commerce requirement

---

[10] The statute, 18 U.S.C. § 2251(a), sets out each alternative means of proving a sufficient commerce nexus in the disjunctive; the indictment did so in the conjunctive. This is standard practice to provide the defendant with notice of all of the ways in which his conduct violated the statute. *See United States v. Mejia*, 545 F.3d 179, 207 (2d Cir. 2008); *United States v. Cioffi*, 487 F.2d 492, 499 (2d Cir. 1973) ("it appears settled that indictments worded in the conjunctive, charging violations of statutes worded in the disjunctive, can be supported by proof of either of the conjoined means of violating the act").

51

in 18 U.S.C. § 2252A(a)(2)(A), alleging that Kopp used "a means and facility of interstate and foreign commerce, shipped and transported in and affecting such commerce by any means, including by computer," and specifically alleged Kopp's use of the internet to distribute the charged images. A: 19.

In Counts Twenty-Seven and Twenty-Eight, charging Kopp with possession of child pornography, the indictment tracked the relevant commerce requirements in 18 U.S.C. § 2252A(a)(5)(B), alleging that the child-pornography-bearing material that Kopp possessed "had been transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce by any means, including by computer, and that was produced using materials that had been shipped and transported in and affecting such commerce by any means, including by computer," and specifically identified two pieces of "electronic media," an external hard drive and an internal computer hard drive. A: 20.

### b. Kopp's Admissions Concerning the Commerce Nexus to His Production, Distribution, and Possession of Child Pornography

The amended offer of proof stated the following with respect to facts establishing the commerce requirement for the conspiracy count:

52

The images and videos of V-1 were produced using Samsung Galaxy cellular telephones, each of which was manufactured outside the State of New York, and thus transported in interstate and foreign commerce. Further, images and videos of V-1 produced as a part of the conspiracy were also distributed between Oberst and Kopp, as well as with others, including via an online messaging application and email, and as such were actually transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce.

A: 116 (footnote omitted).

The offer of proof also asserted that Kopp used a Samsung cellular telephone to produce the images of child pornography charged in the sexual exploitation counts in the indictment, except those described in Counts Two and Three, involving pornographic images of V-1 that Kopp had Oberst produce and, as explained in the proffer, send to him by use of an internet-based messaging application. The proffer also stated that Kopp used an internet-based messaging application and electronic mail to transmit child pornography, as charged in each distribution count in the indictment, and obtained the pornographic images charged in the possession counts "from the Internet" and stored them on foreign-manufactured hard drives. A: 116-22.

53

Government counsel reiterated these facts during Kopp's change of plea hearing, A: 145-53, and Kopp admitted their truth. A: 154. Under these circumstances, Kopp's *pro se* claims that there was insufficient evidence of an interstate or foreign commerce nexus are frivolous. *See, e.g.*, *United States v. Ramos*, 685 F.3d 120, 132-33 (2d Cir. 2012) ("We . . . hold that the act of using computer equipment manufactured outside the United States to produce child pornography meets the jurisdictional requirement of § 2252A(a)(5)(B).") (footnote omitted); *United States v. Holston*, 343 F.3d 83, 90-91 (2d Cir. 2003) ("Accordingly, we conclude that insofar as § 2251(a) prohibits the production of child pornography using materials that have moved in interstate commerce, it is a permissible exercise of Congress's authority under the Commerce Clause" and the fact that a defendant "neither shipped the materials interstate nor intended to benefit commercially from his conduct is of no moment."); *see also United States v. MacEwan*, 445 F.3d 237, 244-46 (3d Cir. 2006) (finding evidence sufficient to convict for receipt of child pornography under § 2252A without proof that the images moved between states; "we conclude that because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce"); *United States v. Runyan*, 290 F.3d 223, 241-43 (5th Cir. 2002) (rejecting sufficiency challenge to receipt and

54

possession of child pornography convictions under § 2252A when the evidence showed that the images were obtained through the internet).

### c. The Charged and Admitted Commerce Requirements Were Not Plainly Unconstitutionally Vague.

The Supreme Court "has held that the Due Process Clause prohibits the Government from taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (internal quotation marks and citations omitted). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (citation omitted).

Kopp offers no explanation for his assertion that the interstate and foreign commerce requirements in the statutes under which he was convicted were too vague to provide notice to him or the public and sufficient guidance to law enforcement or the court. Kopp *Pro se* Supplemental Brief at pp. 11-15. Nor does he cite any authority supporting his vagueness claim. Federal appellate courts have rejected similar

55

contentions. *See, e.g.*, *United States v. Stokes*, 726 F.3d 880, 896 (7th Cir. 2013) (holding that 18 U.S.C. § 2423(b) and similar offenses criminalizing interstate or foreign travel for the purpose of engaging in sex with a minor are not unconstitutionally vague); *United States v. Rodriguez*, 360 F.3d 949, 954 (9th Cir. 2004) ("We find that section 1951's definition of commerce is well-established and therefore not unconstitutionally vague."). Accordingly, the district court did not commit plain error by refraining from determining, *sua sponte*, that the interstate and foreign commerce requirements were impermissibly vague and thereby dismissing the charges against Kopp.

56

## CONCLUSION

For the reasons stated above, the district court's judgment of conviction and sentence should be affirmed in all respects.

Dated: Syracuse, New York
October 2, 2017

Respectfully submitted,

Grant C. Jaquith
*Acting United States Attorney for*
*the Northern District of New York*
*Attorney for Appellee*

/s/ *Steven D. Clymer*
By: STEVEN D. CLYMER
*Assistant United States Attorney*

LISA M. FLETCHER
*Assistant United States Attorney*
*of Counsel*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellant Procedure, the undersigned counsel for the United States hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B). As measured by the word-processing system used to prepare this brief, there are approximately 11,508 words in the brief.

GRANT C. JAQUITH
*Acting United States Attorney for the*
  *Northern District of New York*


/s/ *Steven D. Clymer*
By: STEVEN D. CLYMER
*Assistant United States Attorney*

**CERTIFICATE OF SERVICE**
**BY NEXTGEN CM/ECF**

UNITED STATES OF AMERICA
v.
KOPP

Docket No. 16-3355

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on October 2, 2017, she served a copy of the appellee's Brief on the United States Court of Appeals for the Second Circuit and counsel for appellant, Melissa A. Tuohey, Esq., by uploading to the Second Circuit's ECF system a Portable Document Format (PDF) version of the Brief.

/s/ *Deanna Lieberman*
Deanna Lieberman