NO. 16-3355

IN THE UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA

APPELLEE

VS.

JASON KOPP - APPELLANT/DEFENDANT

EMILY OBERST - CO-DEFENDANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

PRO SE SUPPLEMENTAL REPLY BRIEF

Comes now the Appellant, Jason Kopp, pro-se in the
above captioned cause, and submits his pro se supplemental
reply in opposition to the Government's Supplemental Reply
Brief.

Incorporating all argument and authority in his
Supplemental Opening Brief, Mr. Kopp opposes and submits as
followed:

FACTS APPLICABLE TO ALL CLAIMS

The Government ["USA", ad hoc] admits in part the
facts applicable to all issues , yet denies the merit
thereof, warranting relief in this appeal in their
Supplemental Response. For reference, Mr. Kopp refers to his
Counsel's Opening Brief as ["Opening Brief"]; his Supplemental
Opening Brief as ["Supp. O.B."] and the Government's
Supplemental Response/Response as ["USA Supp."]. Mr. Kopp
additionally refers to the Government as ["USA"]: ad hoc.

Noting for the record, the USA's following
admissions:

— 1 —

OFFENSE CONDUCT. [USA SUPP. @ 5.]. The USA's description of
Kopp's case facts include;

(1)     ..Kopp and his Co-defendant, Emily Oberst ["Oberst",
ad hoc], pre-planned the Molestation of Oberst's new born
Child. [USA Supp. @ 5,6.]

(2)     ..that Oberst had agreed to distribute to Kopp, images
that she had already produced of other children. [USA Supp. @
6, ¶-1.]

(3)     ..that directly after the infant's birth, Oberst
photographed herself licking her newborn infant's vagina. [USA
Supp. @ 7, ¶-1];

(4)     ..subsequently, Kopp began his oral actions on
Oberst's newborn. [USA Supp. @ 7, ¶-2];

(5)     ..that Oberst and Kopp compliment their actions on
Oberst's infant as "F****** Awesome", in their subsequent
chats. [USA Supp. @ 7, ¶-2];

(6)     ..that Kopp and Oberst produced images and videos of
their actions on Oberst's infant. [USA Supp. @ 7, ¶-3,
passim].

(7)     ..that Oberst committed oral sex on Kopp's two year
old son. [USA Supp. @ 10, ¶-1], [i.e., V-3].

(8)     ..that Special Agent, "John", ["SA John", ad hoc]
became aware of Kopp and Oberst, in March of 2016, where Kopp
began describing these actions of him and Oberst, and at the
behest of SA John, Kopp and Oberst produced the images of the
infant, V-1, distributed them to SA John, which SA John used
to obtain a warrant. [USA Supp. @ 8, 9].

The USA for veracity, that Kopp conceded to (1)
communicating with SA "John"; (2) sending SA John images of V-

1; (3) requesting Oberst to produce the images of V-1, that were sent to SA John; and (4) allowing Oberst to sexually abuse her two year old son. Thus, charged Kopp in conspiracy with Oberst to produce, possess, and distribute images of child exploitation.

## OTHER KNOWN VICTIMS [USA SUPP. @ 12.4]

The USA lists irrelevant other alleged victims which Mr. Kopp (1) has never been convicted, and (2) is not a part of his instant offense conduct for which he pled guilty to [USA Supp. @ 12.4 - Pg:14].

## RULE 10(e)(1)(2)(3), FED.R.APP.P.

Mr. Kopp submits that the government omits some factors necessary for a fair and just determination to both parties and correction or modification of the record for appeal is necessary if the government is to use Emily Oberst, and SA John, as facts in comparison to his to determine the substantial reasonableness of the sentencing as to Kopp at 235 years, and Emily Oberst at 60 years [See Appendix Supp. A, attached hereto as Oberst].

Under Rule 10(e)(1) Fed.R.App.P., due process requires that if any differences arise about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by the Court and the record confirmed accordingly; and

(2) If anything material to either party is omitted from or misstated in the record, by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forward.

(A) on stipulation of both parties;

(B)     by the district court before or after the record has
been forwarded; or

(C)     by the Court of Appeals; and

(3)     All other questions of form and content of the record
must be presented to the Court of Appeals.

### OMISSIONS FROM THE RECORD

As will be referenced below, the record presented by
the USA, excludes as follows:

(9)     In reference to #(2) of offense conduct above, Mr.
Kopp submits that the district court's record as to his co-
defendant, Emily Oberst, reveals that the images she had
previously produced and distributed to Kopp are of her - as a
teacher - at the Syracuse All Saints Elementary School, where
she photographed several students in the nude, including other
images of Oberst's sexual ploys - inter alia.

(10)    In reference to #(8) of offense conduct above, Mr.
Kopp submits that the evidence available by the USA, defense
counsel, and the district court record, applicable to
Appendices for appeal, will reveal that SA John requested Kopp
to instruct Oberst to produce and distribute one set of child
porn photographs, and directly thereafter, instructed Kopp to
instruct Oberst to create and produce additional child porn
photos with a sign addressed to greet "John" with a date.

Mr. Kopp is unaware of Appellate Counsel's actions
before this court as to the record on appeal as counsel
refuses to answer for communications. Thus, is unaware if
Appellant's record includes these materials included in #(9)
and #(10) above, and requests these documents, in
preservation, certified as part of this record for review. The

significance of which, is demonstrated to wit:

## SUPPLEMENTAL RESPONSE

Mr. Kopp stands firmly on all points raised in his supplemental opening brief [Supp. O.B. @    ], and incorporates authority and fact by reference to the USA's Supplemental Response.

## SUPPLEMENTAL GROUND TWO:
### CRUEL AND UNUSUAL PUNISHMENT

The USA attempts to call Mr. Kopp's Eighth Amendment claim forfeited for appeal as Mr. Kopp's objection at sentencing as to the Eighth Amendment claim was "a 550 year sentence" and not a "235 year sentence". Thus, the USA asserts Mr. Kopp forfeited under U.S. v. Rivera, 546 F.3d 245, 254 (2nd.Cir.2008), et al, who completely failed to raise an Eighth Amendment objection, and thus, suggests Mr. Kopp to only "plain error" standard review.

Contrary to the USA's assertion however, whether 200 years, 500 years or 100 years, the object of the objection was the matter of cruel / unusual / or harsh sentence punishment, a contemporaneous objection to the sentencing procedure itself which is significant in open court so that it appears on the instant record for purposes of appeal. Fed.R.Evid., 103, F.R.Crim.P. 51. Thus, the objection is clearly in opposition to any more than statutory provisions of 30 years. Turner v. Murray, 476 US 28, 37 (1986) (objections to cruel and unusual punishments as to sentence is adequate for courts to conduct a meaningful inquiry into possible prejudices of a sentence outside the statutory recommended.

First, Mr. Kopp submits that his Eighth Amendment

claim be heard as thus, preserved for appeal specifically in excess of his statutory required 30 years, and especially in his expected 15 years for pleading guilty, as originally induced by counsel, and significantly in light of his co-defendant's 60 year sentence. The objection of cruel and unusual punishment stands preserved from the district court, and the USA did not contest Kopp's standing challenge that his unusual sentence, Id., results in a cruel pattern of error by the sentencing court. The USA's failure to argue this argument [Supp. O.B. @ 1] must be determined in light most favorable to the Appellant, whether as a preserved issue, or plain error. Kontric v. Ryan, 540 US 443 (2004).

SUBSTANTIAL REASONABLENESS / CRUEL AND UNUSUAL

Incorporating the above and (Supp. O.B.) Ibid., of cruel and unusual punishment, contrary to the government's assertion that other case conduct should not apply here [USA Supp. @ 36] and yet again, suggests proportionality of sentence for substantial unreasonableness, waived as not raised below [USA Supp. @ 30, ¶-2].

Contrary to the USA's assertion, again, the issue of substantial unreasonableness was in fact preserved through Eighth Amendment cruel and unusual analyzation, and, objection, Id., supra.

The USA suggests the Gall standard of reasonableness under Gall v. U.S., 552 US 38, 41 (2007) only in the plain error light, which requires still, the proportionality standards 144, 538 US 63 (2002) holds that, "the application of the Eighth Amendment prohibition against cruel and unusual punishment in terms of years, is articulated in the 'clearly

established' principle acknowledged by the court; 'a sentence grossly disproportionate to the offense for which it is imposed is unconstitutional.'" Id.

In Solem v. Helm, 77 L.Ed.2d 637, 463 US 277, 292 [@ n:10] (1993) provides that, "a court's proportionality analysis of criminal sentence, to determine the sentence propriety, under the 8th Amendment should be guided by objective criteria, including (1) the gravity of the offense and harshness of the penalty (2) the sentence imposed on other criminals in the same jurisdiction and (3) the sentence imposed for the commission of the same crime in other jurisdictions." Helm, supra.

Again, for the instant case, Mr. Kopp incorporates his [Supp. O.B. @ 1-8] argument and relies on the Gall, supra, analysis, utilizing the same elements of review as Solem, supra.

At Supp. Appendix "A", the USA stresses the reason that Mr. Kopp received a 235 year sentence, versus Ms. Oberst's 60 year sentence, is that Kopp had a history of child abuse and Oberst did not have a criminal record [See Supp. Appx. A, @ 2]. The record reflects that Mr. Kopp's sentencing enhancements were based upon uncharged criminal conduct [USA Supp. @ 12.4]. These uncharged allegations were used as offense level computation [USA Supp. @ 17, ¶-2] suggesting a five level increase under USSG § 4B1.5(b) repeal and dangerous sex offender status, which clearly requires "prior convictions" which Mr. Kopp does not have, much like co-defendant Oberst. Thus, substantially unreasonable and erroneous applications of the guidelines. The USA stresses the

– 7 –

court's use of this information throughout his 18:3553(a)
factors [USA Supp. @ 13, ¶-2 - Pg:34]. Again, substantially
unreasonable as 18:3553(a) can only relate to offense conduct
plead guilty to under Federal criminal code. Use of uncharged
allegations outside the plea record is specifically erroneous
and unreasonable as it is based upon bias, unrelated facts to
the crime of conviction.

The aforementioned errors are in fact "clear and
obvious" rather than subject to reasonable dispute as they do
not relate to the elements or facts leading to the charged
offense plead guilty to. Thus, affecting the substantial
rights of Kopp which affected the outcome of the proceedings
with additional unwarranted applications of the guidelines to
impose a substantially harsher sentence than required by law,
discretion, and constitutional due process guarantees. Thus,
here is plain error, seriously affecting the fairness,
integrity, and public reputation of judicial proceedings [@
Supp. Appx. A, U.S. v. Marcus, 560 US 258, 262 (201) (Id., @
USA Supp. @ 41, ¶-1].

Further, the USA exposes that Mr. Kopp's sentence was
enhanced for sexual conduct which the federal law does not
punish, nor charge as a crime under the elements of federal
statutes.

Mr. Kopp was enhanced on 2G2.1(b)(2)(A) commission of
a sexual act or contact (2 levels); 2G2.1(b)(4) sadistic
conduct (4 levels) as to group one, totaling a 6 level
enhancement from base offense level of 32 (USA Supp. @ 15).
Groups 2-14 were essentially utilized the same, involving the
commission of a sexual act or contact / sadistic conduct,

assuming without text, another 6 levels totaling 12 levels based on sexual conduct. Group 15 was again, enhanced 4 levels under 2G2.2(b)(4), based on sadistic conduct and 5 levels under 2G2.2(b)(5) for sexual abuse of two minors. Thus, a total of 9 levels added to the previous 12 levels totals 21 levels based on sexual activity; which Kopp presents as unconstitutionally unreasonable to wit.

Child exploitation offenses employ the prosecution of offenses of using cameras, etc., which are used to depict children engaged in sexually explicit conduct. The product of the statutes are the materials used. Actual sexual criminal conduct has been deemed by the Supreme Court as the "provinces of the states' jurisdiction." Morrison v. United States, 529 US 598, 618 (2000).

To allow the Federal jurisdiction to use sexual conduct as statutory elements or sentencing schemes would conflict with constitutional sovereign 10th Amendment guarantees prohibiting double jeopardy, 5th Amendment. These type actions have already been deemed unconstitutional in U.S. v. Booker, 543 US 220, 245-46 (2005), and thus, the sentencing court's discretionary powers cannot trump the constitution's prohibitions. The court's use of these factors are unreasonable and should be prohibited as unfair and unjust, imposing harsh punishment without statutory authority, voiding such factual determinations.

### GRAVITY OF THE OFFENSE

The harshness of the offense starts at the words of the Second Circuit to which Mr. Kopp agrees. As the Justice agrees, Opening Brief at 27, a murderer would have received a

lesser sentence than a child porn offender (Brown). Mr. Kopp
does not ignore the federal statutes which carry possible
death sentences [USA Supp. @ 37, ¶-2] and neither should the
Second Circuit when considering the "Gravity" of the offense
here, as compared to murder, and the sentences they receive,
as the Justice points out. The point utilized in the instant
case, is the § 3553(a) factors. The need for the sentence
imposed, to reflect the seriousness of the offense, to promote
respect for the law, just punishment; adequate deterrence to
criminal conduct; and to protect the public from further
crimes of the defendant [USA Supp. @ 34].

As shown in Offense Conduct, above, [#1-10], co-
defendant Oberst was just as influentially involved with Kopp,
as Kopp was to meet the ultimate goal. Yet, Kopp gets 235
years, and Oberst gets 60 years. This upsets the
proportionality of the sentencing scheme, as to the § 3553(a)
factors. Mr. Kopp was a civilian job worker, semi-secluded
from society and Ms. Oberst was a public trusted figure
trusted to the public's children, who she confessed sexually
exploiting the school girls, at her own personal desire [Supp.
Appx. A, and Omission Record, #9, above]. Mr. Kopp nor Ms.
Oberst had any criminal record and their conduct was
essentially the same preplanned activity. Because there is no
justification to impose any harsher punishment on Kopp than on
Ms. Oberst, the sentence Mr. Kopp received was substantially
unreasonable and extremely harsh and thus, unusually cruel in
the eyes of fairness and integrity of the law. Ms. Oberst
should be treated no different because she is a female or Mr.
Kopp who is a male. The crime was Mr. Kopp was as well

enhanced based upon the facts that he used the computer /
Internet; and based on the facts that Kopp had distributed the
images to SA John, at the behest of SA John's encouragement,
not once, but twice (omitted facts at #10, supra). The USA
asserts law enforcement protocol to excuse the officer's
instructed request. Specifically, all law enforcement needed
to obtain a warrant [USA Supp. @ 34, ¶-3 - Pg:35, ¶-1] was
Kopp's e-mails conceding to the activity. The officer's
request for the production and distribution of child
pornography should not be excused and Mr. Kopp should not
legally be held accountable to sentence enhancements thereon,
much less charges pertaining to this request which SA John
becomes a co-defendant to. See <u>U.S. v. Russell, 411 US 423, 36
L.Ed.2d 366, 93 S.Ct. 1637 (1973)</u>.

    Mr. Kopp stands on his argument at his Brief [Supp.
O.B. @ 1, passim] as to the same crimes in other jurisdiction
for the same conduct, crimes and punishments. This court
should thus, remand for resentencing equal or less -
considering Ms. Oberst's trusted public position - to Ms.
Oberst, his co-defendant, otherwise, Mr. Kopp would be
subjected to cruel and unusual punishments without any
consideration of the possibility of rehabilitation, the
purpose of incarceration. Further, in light of reasonableness,
Mr. Kopp submits that President Trump entered an executive
order advising leniency on first offender's sentences on
January 15th, 2018. Thus, Mr. Kopp requests this Honorable
Court allow Mr. Kopp the lenience of the Trump Executive
Order.

<u>SUPP. GROUND THREE. SUPERVISED RELEASE</u>

SUPERVISED RELEASE - SEX REGISTRATION

Contrary to the USA's assertion, Mr. Kopp was given the form of punishment imposed by the court, supervised release and sex offender registration. Also, a form of cruel and unusual punishment in its own class of discriminatory form. The USA only stresses plain error review, and Mr. Kopp stands on those claims, as cruel and unusual, discriminatory, and completely depriving future civilized life possibilities as a target to violence by hate crime. Certainly unreasonable for the Harvard District Judge to receive 6 months house arrest, 6 months ankle monitoring, and 6 months sex registration for raping his step-daughter until she told at the age of 17 years (Supp. O.B. @ 4, 5, web sites). Thus, scrutinization unfolding to expose other sentence sanction disparities in other jurisdictions which is a clear and obvious error to any middle or low class citizen, and Kopp, rather than a reasonable dispute, affecting Kopp's substantial rights to be treated equal application of the laws, and afforded such due process protections, and disrupts the fairness, integrity and public reputation of judicial proceeding [USA Supp. @ 41, citing Marcus, supra].

SUPP. GROUND FOUR. INTERSTATE COMMERCE

VAGUENESS

The USA waives argument to the vagueness of the child exploitation statute and relies on Kopp's guilty plea which would not have occurred had he known the USA lacks jurisdiction of these offenses as to Commerce Clause [USA Supp. @ 46].

This argument is tied in with nexus to commerce

activity of child exploitation statutes [USA Supp. @ 47, passim]. To which the USA waives argument in response thereto, relying on a guilty plea that would not have occurred had he known the status, Id.

The USA does stress that Kopp used computers, etc., and Internet activity. Specifically, Mr. Kopp presents that the USA does not have legal jurisdiction of child exploitation offenses, because cameras, computers, cell phones, etc., that traveled in interstate commerce at one point in time. Thus, because once the camera, etc., reaches the states for purchase, the government's interstate commerce nexus "protection" ends. Employing Plasterers Assn., 347 US 186 (1954), et al, [Supp. O.B. @ 12]. The USA claims jurisdiction based on their insinuation that child porn is economic, which the statutes do not define, and that the statutes require (1) transportation, or (2) transmissions (3) using means and facilities of interstate and foreign commerce and (4) in and affecting such commerce, and (5) mailed, (6) shipped or (7) transported in and (9) affecting interstate and foreign commerce.

The child exploitation offenses are vague, as to how the USA must establish this nexus to federal jurisdiction. Computers, etc., are private property protected by the Fourth Amendment in the sovereign jurisdictions of the states [U.S.Const.Amend. 10]; there is no economic value to claim under the Commerce Clause, Art.1 § 8, CL.3, and the government has no possessory interests in privately owned communication facilities, nor economic interests therein as the communication facilities do not employ child porn on tax

return or etc.

Further, the USA entity, attempted to amend the child exploitation statutes to include the knowing or reason to know visual depictions will be transported, transmitted, etc., Id., was denied by House Bill, 115th Congress, 1st Session, H.R. 1761 @ 115-137 on September 28, 2017 [See Appendix B, attached hereto]. Thus confirmed, it is clear that the USA exploitation statutes are vague as to how they must prove and obtain jurisdiction of child exploitation offenses which occur in the states; and, that the USA does not have jurisdiction over the child porn exploitation offenses for which Kopp is convicted, according to law.

Wherefore, premises considered, Mr. Kopp requests this Court to analyze his supplemental claims based on the factual support thus provided and grant relief as law and constitution require, reverse and remand for acquittal, and/or reverse and remand for sentence reduction.

Respectfully Submitted,

On this the 17th day of January, 2018.

Jason Kopp. Reg.No. 24099-052
United States Penitentiary, Tucson
Post Office Box 24550
Tucson, Arizona 85734

-14-

CERTIFICATE OF SERVICE AND MAILING

I, _JASON KOPP_ , hereby certify under penalty of
perjury pursuant to Title 28 USC §1746, that I have served a true
copy of. the forgoing _PRO SE SUPPLEMENTAL RESPONSE._

upon the United States Attorney 100 South Clinton Street Syracuse, NY 13261 ; and
_c/c below,_ and an original copy of the same to
Second Circuit Court of Appeals 40 Foley SQ NEW YORK, NY 10007

by placing said in the hands·of the Prisons Mail room staff inmate
legal/US Mail system, first class postage pre-paid and properly
addressed on this the _17th_ day of _January_ ,2018
for mailing thereto.

SO SWORN

DECLARANT

Jason Kopp
24099-052
United States Penitentiary Tucson
PO Box 24550
Tucson, AZ 85734

CERTIFIED MAIL RECEIPT NO. 7015 1520 0001 8107 4552

COURT

NO.

OPPOSING PARTY

c/c

Federal Public Defender
Melissa A. Tuohey Esq
4 S Clinton SQ
3rd Floor
Syracuse, NY 13202

# All Saints teacher's aide promised 60 years for filming child porn

**Douglass Dowty**
*ddowty@syracuse.com*

A teacher's aide at All Saints Elementary School in Syracuse quietly admitted Wednesday that she exploited two young girls — one less than a year old — for child pornography at her home and at the school.

Emily Oberst, 24, pleaded guilty to conspiracy and child porn charges in federal court Wednesday in exchange for a promised sentence of 60 years in prison. There is no parole in federal prison, so she will not be released early.

Oberst's voice ranged from quiet to quivering during her half-hour plea proceeding.

Oberst is the second to plead guilty in the child porn case. Her boyfriend, Jason Kopp, 41, pleaded guilty last year and was sentenced to 235 years in prison.

Wednesday, Oberst admitted that she exploited one girl in 2014 when the victim was less than a year old. Oberst admitted producing pornography with that victim a total of 10 times between Nov. 6, 2014, and March 16, 2016.

She also admitted exploiting a second girl, born in 2011, once in July 2015.

The photos and video included a range of sex abuse, prosecutors said.

When U.S. District Judge Glenn Suddaby asked Oberst where the abuse took place, she responded in "different locations."

Asked to be specific, Oberst said "at home and at school." She was a teacher's aide at All Saints, a position she described Wednesday as a "helper."

One of the victims was a student at All Saints, according to sources. The FBI found naked photos of that child in a school bathroom, the sources said.

All Saints fired Oberst after her arrest last year.

Assistant U.S. Attorney Lisa Fletcher said in court the biggest reason Oberst got 60 years in prison and Kopp got 235 years is that Kopp had a history of child abuse. Oberst did not have a criminal record before her arrest.

Oberst met Kopp online and the two were romantically involved, sources said.

Under the agreement, Oberst pleaded guilty to the child porn charges, but did not have to plead guilty to the distribution charges.

She faced a maximum of 360 years in prison for the 12 guilty pleas. Appointed defense lawyer Kim Zimmer said afterward that Oberst made a good choice by taking the plea for 60 years.

Fletcher said after court

that the evidence against Oberst was overwhelming, so negotiations revolved around what was fair to everyone involved. There was so much evidence that the child victims would not have had to testify at trial, had Oberst declined the plea offer, Fletcher said.

Wednesday's plea is subject to approval by Suddaby, who will review a report of Oberst's past before making his decision. Suddaby called it a "reasonable" plea deal, subject to further investigation.

If the judge decides against the 60-year sentence, Oberst could back out of her plea deal.

Otherwise, sentencing is set for Aug. 18. Oberst remains in custody.

She left court with large red marks visible under each of her eyes.

## 84-year-old man charged with having child porn

**Elzabeth Doran** UTICA
*edoran@syracuse.com*

An 84-year-old Utica man has been charged with possessing child pornography, according to Oneida County sheriff's deputies.

Police said David F. Talman has been charged with multiple counts of possessing a sexual performance by a child, all felonies, police said. Talman's arrest came after police executed a search warrant Tuesday morning.

Additional charges are possible, police said.

Deputies said the investigation started after the Oneida County Child Advocacy Center received a tip from the National Center for Missing and Exploited Children and the Internet Crimes Against Children Task Force regarding an IP address in Utica.

## Man charged with sexually abusing 12-year-old  ROME

A Rome man has been charged after police said he sexually abused a 12-year-old girl in Rome on Tuesday.

Shane Ryan Wilson, 18, of Rome has been charged with second-degree sexual abuse, forcible touching and endangering the welfare of a child.

Oneida County sheriff's deputies said additional charges are possible. The victim has been offered counseling through the Oneida County Child Advocacy Center.
— *Elizabeth Doran*

APPENDIX-"A"

[House Report 115-137]
[From the U.S. Government Publishing Office]

| 115th Congress | } | | | { | Report |
|---|---|---|---|---|---|
| | | HOUSE OF REPRESENTATIVES | | | |
| 1st Session | } | | | { | 115-137 |

=================================================================

PROTECTING AGAINST CHILD EXPLOITATION ACT OF 2017

———

May 22, 2017.--Committed to the Committee of the Whole House on the
State of the Union and ordered to be printed

———

Mr. Goodlatte, from the Committee on the Judiciary, submitted the
following

R E P O R T

together with

DISSENTING VIEWS

[To accompany H.R. 1761]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the
bill (H.R. 1761) to amend title 18, United States Code, to
criminalize the knowing consent of the visual depiction, or
live transmission, of a minor engaged in sexually explicit
conduct, and for other purposes, having considered the same,
report favorably thereon with an amendment and recommend that
the bill as amended do pass.

CONTENTS

|  | Page |
|---|---|
| The Amendment.................................................... | 2 |
| Purpose and Summary.............................................. | 3 |
| Background and Need for the Legislation.......................... | 4 |
| Hearings......................................................... | 5 |
| Committee Consideration.......................................... | 5 |
| Committee Votes.................................................. | 5 |
| Committee Oversight Findings..................................... | 8 |
| New Budget Authority and Tax Expenditures........................ | 8 |
| Congressional Budget Office Cost Estimate........................ | 8 |
| Duplication of Federal Programs.................................. | 10 |
| Disclosure of Directed Rule Makings............................. | 10 |
| Performance Goals and Objectives................................. | 10 |

$APPENDIX-"B"$

Advisory on Earmarks............................................... 10
Section-by-Section Analysis........................................ 10
Changes in Existing Law Made by the Bill, as Reported.............. 11
Dissenting Views................................................... 15

The Amendment

.The amendment is as follows:
Strike all after the enacting clause and insert the
following:

SECTION 1. SHORT TITLE.

This Act may be cited as the ``Protecting Against Child Exploitation
Act of 2017''.

SEC. 2. SEXUAL EXPLOITATION OF CHILDREN.

Section 2251 of title 18, United States Code, is amended--
(1) by amending subsections (a) and (b) to read as follows:
``(a) Any person who, in a circumstance described in subsection (f),
knowingly--

``(1) employs, uses, persuades, induces, entices, or coerces
a minor to engage in any sexually explicit conduct for the
purpose of producing any visual depiction of such conduct, or
transmitting a live visual depiction of such conduct;

``(2) produces or causes to be produced a visual depiction of
a minor engaged in any sexually explicit conduct where the
production of such visual depiction involves the use of a minor
engaging in sexually explicit conduct and such visual depiction
is of such conduct;

``(3) transmits or causes to be transmitted a live visual
depiction of a minor engaged in any sexually explicit conduct;

``(4) has a minor assist any other person to engage in any
sexually explicit conduct during the commission of an offense
set forth in paragraphs (1) through (3) of this subsection; or

``(5) transports any minor in or affecting interstate or
foreign commerce with the intent that such minor be used in the
production or live transmission of a visual depiction of a
minor engaged in any sexually explicit conduct,
shall be punished as provided under subsection (e).
``(b) Any parent, legal guardian, or person having custody or control
of a minor who, in a circumstance described in subsection (f),
knowingly permits such minor to engage in, or to assist any other
person to engage in, sexually explicit conduct knowing that a visual
depiction of such conduct will be produced or transmitted shall be
punished as provided under subsection (e).'';

(2) in subsection (c)--

(A) in paragraph (1)--

(i) by striking ``employs, uses, persuades,
induces, entices, or coerces any minor to
engage in, or who has a minor assist any other
person to engage in, any sexually explicit
conduct'' and inserting ``engages in any
conduct described in paragraphs (1) through (5)
of subsection (a)''; and

(ii) by striking ``, for the purpose of
producing any visual depiction of such
conduct,'';

(B) in paragraph (2)(A), by inserting after
``transported'' the following: ``or transmitted''; and

                    ``(C) in paragraph (2)(B), by inserting after
               ``transports'' the following; ``or transmits'';
          (3) by adding at the end the following:
     ``(f) The circumstances referred to in subsections (a) and (b) are--
          ``(1) that the person knows or has reason to know that such
     visual depiction will be--
                    ``(A) transported or transmitted using any means or
               facility of interstate or foreign commerce;
                    ``(B) transported or transmitted in or affecting
               interstate or foreign commerce; or
                    ``(C) mailed;
          ``(2) the visual depiction was produced or transmitted using
     materials that have been mailed, or shipped or transported in
     or affecting interstate or foreign commerce by any means,
     including by computer;
          ``(3) such visual depiction has actually been--
                    ``(A) transported or transmitted using any means or
               facility of interstate or foreign commerce;
                    ``(B) transported or transmitted in or affecting
               interstate or foreign commerce; or
                    ``(C) mailed; or
          ``(4) any part of the offense occurred in a territory or
     possession of the United States or within the special maritime
     and territorial jurisdiction of the United States.
     ``(g) Notwithstanding any other provision of this section, no
criminal charge under subsection (a)(3) may be brought against an
electronic communication service provider or remote computing service
provider unless such provider has intentionally transmitted or caused
to be transmitted a visual depiction with actual knowledge that such
depiction is of a minor engaged in sexually explicit conduct, nor may
any such criminal charge be brought if barred by the provisions of
section 2258B.''.

SEC. 3. LIMITED LIABILITY FOR CERTAIN PERSONS WHEN RESPONDING TO SEARCH
                    WARRANTS OR OTHER LEGAL PROCESS.

     Section 2258B of title 18, United States Code, is amended--
          (1) in subsection (a), by inserting ``from the response to a
     search warrant or other legal process or'' before ``from the
     performance''; and
          (2) in subsection (b)(2)(C), by inserting ``the response to a
     search warrant or other legal process or to'' before ``the
     performance of any responsibility''.

                         Purpose and Summary

     H.R. 1761, the Protecting Against Child Exploitation Act,
amends 18 U.S.C. Sec. 2251(c) to address the Palomino decision
by adding additional bases of liability to the crime of
production of child pornography. Current law already
criminalizes employing, using, persuading, inducing, enticing,
or coercing a minor to engage in sexually explicit conduct
``for the purpose of'' producing a visual depiction of such
conduct. However, to respond to the adverse result in Palomino,
H.R. 1761 adds new criminal provisions, to specifically
prohibit the production of, or causing the production of, a
visual depiction of a real minor engaged in sexually explicit
conduct. H.R. 1761 also amends the law to prohibit the
transmission of, or causing the transmission of, a live visual
depiction of a minor engaged in sexually explicit conduct
(newly created Sections 2251(a)(2) and (3)), and to criminalize

the knowing creation of the visual depiction or the live
transmission of a minor engaged in sexually explicit conduct.

H.R. 1761 further modifies the language that currently
prohibits individuals from having ``a minor assist any other
person to engage in'' sexually explicit conduct for the purpose
of producing or transmitting any visual depiction of such
conduct to account for the new structure of Section 2251(a) and
prohibit having a minor assist any other person in engaging in
sexually explicit conduct.

Moreover, H.R. 1761 modifies the jurisdictional elements of
the offense. The statute currently criminalizes transporting
``any minor in or affecting interstate or foreign commerce, or
in any Territory or Possession of the United States, with the
intent that such minor engage in'' sexually explicit conduct
for the purpose of producing any visual depiction of such
conduct or for the purpose of transmitting a live visual
depiction of such conduct. This language is modified to account
for the new structure of Section 2251(a). The reference to
``any Territory or Possession of the United States'' is deleted
from the substantive criminal provision and is replaced with
language that provides for jurisdiction if any part of the
offense took place in the special maritime and territorial
jurisdiction of the United States.

The bill clarifies that it does not aim to capture
accidental or unintentional conduct of internet service
providers with respect to criminalizing the knowing
transmission of an illicit visual depiction of a minor. Thus,
it provides that an internet service provider can only be
charged under subsection (c) of the new statute, which
prohibits the knowing transmission of child pornography, where
the internet service provider has actual knowledge that the
content of the transmission is child pornography and where it
intentionally transmits the visual depictions.

Finally, the bill explicitly provides limited criminal and
civil liability for internet service providers to send child
pornography to law enforcement in response to legal process in
child exploitation cases.

### Background and Need for the Legislation

H.R. 1761 addresses an issue created by the U.S. Court of
Appeals for the Fourth Circuit in United States v. Palomino-
Coronado,\1\ which allowed a defendant to walk free despite
photographic evidence he had engaged in sexual abuse of a
seven-year-old child. On May 3, 2012, Prince George's County
police officers responded to a home in Laurel, Maryland based
on a report of a missing seven-year-old child, known as
``B.H.'' Officers found B.H. at the fence that separated her
house and her neighbor's house. Upon investigation, it was
uncovered that the neighbor, Anthony Palomino-Coronado, a
nineteen-year-old male, had sexually molested the child.

---------------------------------------------------------------------------

\1\805 F.3d 127 (4th Cir. 2015).

---------------------------------------------------------------------------

At trial, the jury found the defendant guilty of knowingly
employing, using, persuading, inducing, enticing, or coercing a
minor in sexually explicit conduct, for the purpose of
producing a visual depiction of that conduct in violation of 18
U.S.C. Sec. 2251(a). This statute is commonly referred to as
the ``Production of Child Pornography'' statute. The court
sentenced the defendant to thirty years' imprisonment.

    The defendant appealed his conviction based on a
sufficiency of the evidence challenge. The Fourth Circuit
vacated the defendant's conviction, finding insufficient
evidence to support it. In so holding, the Fourth Circuit
focused on the elements required for conviction under 18 U.S.C.
Sec. 2251(a), specifically the ``purpose'' element. To be
convicted under the statute, a defendant must coerce a minor to
engage in sexually explicit conduct ``for the purpose of
producing any visual depiction of such conduct.'' The Fourth
Circuit found there was insufficient evidence the defendant's
sexual abuse of the seven-year-old girl was ``for the purpose
of'' creating an image of such conduct. The Court found that,
though the defendant engaged in sexual conduct with a child,
``the fact that only one image was produced militates against
finding that his intent in doing so was to take a picture. The
single photo is not evidence that Palomino- Coronado engaged in
sexual activity with [the child] to take a picture, only that
he engaged in sexual activity with [the child] and took a
picture.''\2\
-------------------------------------------------------------------------

    \2\805 F.3d at 132 (emphasis added).
-------------------------------------------------------------------------

    Under Palomino, therefore, a defendant could admit to
sexually abusing a child, and memorializing the conduct, but
could argue he should nonetheless escape federal conviction
because he lacked the requisite ``purpose,'' or specific
intent, prior to initiating the sexual abuse. That seems
clearly contrary to Congress's objective of protecting children
and criminalizing the production of images of child sexual
abuse.

                              Hearings

    The Committee on the Judiciary held no hearings on H.R.
1761, but held a hearing on the subject of child exploitation
generally on March 16, 2017.

                       Committee Consideration

    On April 27, 2017, the Committee met in open session and
ordered the bill, H.R. 1761, favorably reported, with an
amendment, by voice vote, a quorum being present.

                          Committee Votes

    In compliance with clause 3(b) of rule XIII of the Rules of
the House of Representatives, the Committee advises that the
following roll call votes occurred during the Committee's
consideration of H.R. 1761.
    1. An Amendment, offered by Ms. Jackson Lee to exclude
certain offenders aged 19 and under from the mandatory minimum
penalties for production of child pornography offenses under
current law. The amendment was defeated by a roll call vote of
11 to 18.

                          ROLLCALL NO. 1
---------------------------------------------------------------------------
                                          Ayes    Nays    Present
---------------------------------------------------------------------------
Mr. Goodlatte (VA), Chairman...................      X
Mr. Sensenbrenner, Jr. (WI)....................

| | Ayes | Nays | Present |
|---|---|---|---|
| Mr. Smith (TX).................................. | | | |
| Mr. Chabot (OH)................................. | | | |
| Mr. Issa (CA).................................. | | X | |
| Mr. King (IA).................................. | | X | |
| Mr. Franks (AZ)................................ | | X | |
| Mr. Gohmert (TX)............................... | | X | |
| Mr. Jordan (OH)................................ | | X | |
| Mr. Poe (TX).................................... | | X | |
| Mr. Chaffetz (UT).............................. | | | |
| Mr. Marino (PA)................................ | | X | |
| Mr. Gowdy (SC)................................. | | X | |
| Mr. Labrador (ID).............................. | | X | |
| Mr. Farenthold (TX)............................ | | | |
| Mr. Collins (GA).............................. | | X | |
| Mr. DeSantis (FL).............................. | | X | |
| Mr. Buck (CO).................................. | | X | |
| Mr. Ratcliffe (TX)............................ | | X | |
| Ms. Roby (AL).................................. | | | |
| Mr. Gaetz (FL)................................. | | X | |
| Mr. Johnson (LA).............................. | | X | |
| Mr. Biggs (AZ)................................ | | X | |
| | | | |
| Mr. Conyers, Jr. (MI), Ranking Member.......... | X | | |
| Mr. Nadler (NY)................................ | X | | |
| Ms. Lofgren (CA).............................. | X | | |
| Ms. Jackson Lee (TX).......................... | X | | |
| Mr. Cohen (TN)................................. | X | | |
| Mr. Johnson (GA).............................. | X | | |
| Mr. Deutch (FL)................................ | X | | |
| Mr. Gutierrez (IL)............................ | | | |
| Ms. Bass (CA).................................. | X | | |
| Mr. Richmond (LA)............................. | | | |
| Mr. Jeffries (NY)............................. | | | |
| Mr. Cicilline (RI)............................ | | | |
| Mr. Swalwell (CA)............................. | | X | |
| Mr. Lieu (CA).................................. | X | | |
| Mr. Raskin (MD)................................ | | | |
| Ms. Jayapal (WA).............................. | X | | |
| Mr. Schneider (IL)............................ | X | | |
| Total........................................ | 11 | 18 | ....... |

2. An Amendment by Ms. Jackson Lee to exclude certain offenders aged 19 and under from registration on the sex offender registry after federal conviction for production of child pornography. The amendment was defeated by a roll call vote of 9 to 18.

ROLLCALL NO. 2

| | Ayes | Nays | Present |
|---|---|---|---|
| Mr. Goodlatte (VA), Chairman.................... | | X | |
| Mr. Sensenbrenner, Jr. (WI).................... | | | |
| Mr. Smith (TX)................................. | | X | |
| Mr. Chabot (OH)................................ | | | |
| Mr. Issa (CA)................................. | | | |
| Mr. King (IA)................................. | | X | |
| Mr. Franks (AZ)............................... | | X | |

| | Ayes | Nays |
|---|---|---|
| Mr. Gohmert (TX).............................. | | X |
| Mr. Jordan (OH)............................... | | X |
| Mr. Poe (TX).................................. | | X |
| Mr. Chaffetz (UT)............................. | | |
| Mr. Marino (PA)............................... | | X |
| Mr. Gowdy (SC)................................ | | X |
| Mr. Labrador (ID)............................. | | |
| Mr. Farenthold (TX).......................... | | |
| Mr. Collins (GA)............................. | | X |
| Mr. DeSantis (FL)............................. | | X |
| Mr. Buck (CO)................................. | | X |
| Mr. Ratcliffe (TX)........................... | | X |
| Ms. Roby (AL)................................. | | |
| Mr. Gaetz (FL)................................ | | X |
| Mr. Johnson (LA)............................. | | X |
| Mr. Biggs (AZ)................................ | | X |
| | | |
| Mr. Conyers, Jr. (MI), Ranking Member.......... | X | |
| Mr. Nadler (NY)............................... | X | |
| Ms. Lofgren (CA).............................. | X | |
| Ms. Jackson Lee (TX).......................... | X | |
| Mr. Cohen (TN)................................ | X | |
| Mr. Johnson (GA).............................. | X | |
| Mr. Deutch (FL).............................. | X | |
| Mr. Gutierrez (IL)............................ | | |
| Ms. Bass (CA)................................. | X | |
| Mr. Richmond (LA)............................. | | |
| Mr. Jeffries (NY)............................. | | |
| Mr. Cicilline (RI)........................... | | |
| Mr. Swalwell (CA)............................. | | X |
| Mr. Lieu (CA)................................. | X | |
| Mr. Raskin (MD)............................... | | |
| Ms. Jayapal (WA).............................. | | |
| Mr. Schneider (IL)........................... | | X |
| Total....................................... | 9 | 18 |

3. An Amendment, offered by Mr. Conyers to repeal mandatory minimum sentences under 22 U.S.C. 2251, the production of child pornography statute. The amendment was defeated by a roll call vote of 9 to 17.

ROLLCALL NO. 3

| | Ayes | Nays | Present |
|---|---|---|---|
| Mr. Goodlatte (VA), Chairman................... | | X | |
| Mr. Sensenbrenner, Jr. (WI)................... | | | |
| Mr. Smith (TX)................................ | | X | |
| Mr. Chabot (OH)............................... | | | |
| Mr. Issa (CA)................................. | | | |
| Mr. King (IA)................................. | | X | |
| Mr. Franks (AZ)............................... | | X | |
| Mr. Gohmert (TX).............................. | | X | |
| Mr. Jordan (OH)............................... | | X | |
| Mr. Poe (TX).................................. | | X | |
| Mr. Chaffetz (UT)............................. | | | |
| Mr. Marino (PA)............................... | | X | |
| Mr. Gowdy (SC)................................ | | X | |

Case 16-3355, Document 83, 01/25/2018, 2221998, Page24 of 37

| | | |
|---|---|---|
| Mr. Labrador (ID).............................. | | |
| Mr. Farenthold (TX)........................... | | |
| Mr. Collins (GA).............................. | | X |
| Mr. DeSantis (FL)............................. | | X |
| Mr. Buck (CO)................................. | | X |
| Mr. Ratcliffe (TX)........................... | | X |
| Ms. Roby (AL)................................. | | |
| Mr. Gaetz (FL)................................ | | X |
| Mr. Johnson (LA).............................. | | X |
| Mr. Biggs (AZ)................................ | | X |
| | | |
| Mr. Conyers, Jr. (MI), Ranking Member......... | X | |
| Mr. Nadler (NY)............................... | X | |
| Ms. Lofgren (CA).............................. | X | |
| Ms. Jackson Lee (TX).......................... | | |
| Mr. Cohen (TN)................................ | X | |
| Mr. Johnson (GA).............................. | X | |
| Mr. Deutch (FL).............................. | X | |
| Mr. Gutierrez (IL)........................... | | |
| Ms. Bass (CA)................................. | | |
| Mr. Richmond (LA)............................. | | |
| Mr. Jeffries (NY)............................ | | |
| Mr. Cicilline (RI)........................... | | |
| Mr. Swalwell (CA)............................. | | X |
| Mr. Lieu (CA)................................. | X | |
| Mr. Raskin (MD).............................. | X | |
| Ms. Jayapal (WA)............................. | | |
| Mr. Schneider (IL)........................... | X | |
| Total....................................... | 9 | 17 | ....... |

## Committee Oversight Findings

In compliance with clause 3(c)(1) of rule XIII of the Rules of the House of Representatives, the Committee advises that the findings and recommendations of the Committee, based on oversight activities under clause 2(b)(1) of rule X of the Rules of the House of Representatives, are incorporated in the descriptive portions of this report.

## New Budget Authority and Tax Expenditures

Clause 3(c)(2) of rule XIII of the Rules of the House of Representatives is inapplicable because this legislation does not provide new budgetary authority or increased tax expenditures.

## Congressional Budget Office Cost Estimate

In compliance with clause 3(c)(3) of rule XIII of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill, H.R. 1761, the following estimate and comparison prepared by the Director of the Congressional Budget Office under section 402 of the Congressional Budget Act of 1974:

U.S. Congress,
Congressional Budget Office,
Washington, DC, May 19, 2017.

Hon. Bob Goodlatte, Chairman,

Case 16-3355, Document 83, 01/25/2018, 2221998, Page25 of 37

Committee on the Judiciary,
House of Representatives, Washington, DC.

Dear Mr. Chairman: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 1761, the Protecting Against Child Exploitation Act of 2017.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Mark Grabowicz, who can be reached at 226-2860.

Sincerely,

Keith Hall.

Enclosure.

cc: Honorable John Conyers, Jr.
Ranking Member

H.R. 1761--Protecting Against Child Exploitation Act of 2017

As ordered reported by the House Committee on the Judiciary on May 3, 2017

H.R. 1761 would broaden the coverage of current laws related to sexual exploitation of minors. As a result, the government might be able to pursue cases that it otherwise would not be able to prosecute. CBO expects that the bill would apply to a relatively small number of offenders, however, so any increase in costs for law enforcement, court proceedings, or prison operations would not be significant. Any such spending would be subject to the availability of appropriated funds.

Enacting the bill could affect direct spending and revenues; therefore, pay-as-you-go procedures apply. Because those prosecuted and convicted under H.R. 1761 could be subject to criminal fines, the federal government might collect additional fines if the legislation is enacted. Criminal fines are recorded as revenues, deposited in the Crime Victims Fund, and later spent without further appropriation action. CBO expects that any additional revenues and associated direct spending would not be significant because the legislation would probably affect only a small number of cases.

CBO also estimates that enacting H.R. 1761 would not increase net direct spending or on-budget deficits in any of the four consecutive 10-year periods beginning in 2028.

H.R. 1761 would preempt state laws and exempt providers of electronic communications or remote computer services from state criminal charges if such providers unintentionally transmit certain images. Electronic communication providers, remote computer providers, and domain registers also would be exempt from state criminal charges for such transmissions if done in response to a search warrant or other legal proceeding. Preemptions are mandates as defined in the Unfunded Mandate Reform Act (UMRA) because they limit the application of state laws. However, CBO estimates that this preemption would not affect the budgets of state governments because it would impose

no duty on states that would result in additional spending or a loss of revenue.

H.R. 1761 contains no private-sector mandates as defined in UMRA.

The CBO staff contacts for this estimate are Mark Grabowicz (for federal costs) and Rachel Austin (for intergovernmental mandates). The estimate was approved by H. Samuel Papenfuss, Deputy Assistant Director for Budget Analysis.

### Duplication of Federal Programs

No provision of H.R. 1761 establishes or reauthorizes a program of the Federal government known to be duplicative of another Federal program, a program that was included in any report from the Government Accountability Office to Congress pursuant to section 21 of Public Law 111-139, or a program related to a program identified in the most recent Catalog of Federal Domestic Assistance.

### Disclosure of Directed Rule Makings

The Committee estimates that H.R. 1761 specifically directs to be completed no specific rule makings within the meaning of 5 U.S.C. 551.

### Performance Goals and Objectives

The Committee states that pursuant to clause 3(c)(4) of rule XIII of the Rules of the House of Representatives, H.R. 1761 strengthens 18 U.S.C. 2251 by adding a provision criminalizing the ``knowing'' production of child pornography.

### Advisory on Earmarks

In accordance with clause 9 of rule XXI of the Rules of the House of Representatives, H.R. 1761 does not contain any congressional earmarks, limited tax benefits, or limited tariff benefits as defined in clause 9(e), 9(f), or 9(g) of Rule XXI.

### Section-by-Section Analysis

Section 1. Short Title. This section cites the short title of the legislation as the ``Protecting Against Child Exploitation Act of 2017.''

Section 2. Sexual Exploitation of Children. This section amends 18 U.S.C. 2251(c) to:

> Prohibit the production of, or causing the production of, a visual depiction of a real minor engaged in sexually explicit conduct;
> Prohibit the transmission of, or causing the transmission of, a live visual depiction of a minor engaged in sexually explicit conduct;
> Criminalize the knowing creation of the visual depiction or the live transmission of a minor engaged in sexually explicit conduct;
> Prohibit having a minor assist any other person in engaging in sexually explicit conduct; and
> Clarify that an internet service provider can only be charged under subsection (c) of the new statute, which prohibits the knowing transmission of child pornography where the internet service provider

has actual knowledge that the content of the
transmission is child pornography and where it
intentionally transmits the visual depictions.
    Section 3. Limited Liability for Certain Persons When
Responding to Search Warrants or Other Legal Process. This
section, added by amendment, expands 18 U.S.C. 2258B, by
explicitly giving immunity to internet service providers to
send illicit visual depictions of minors in responding to legal
process.

Changes in Existing Law Made by the Bill, as Reported

    In compliance with clause 3(e) of rule XIII of the Rules of
the House of Representatives, changes in existing law made by
the bill, as reported, are shown as follows (existing law
proposed to be omitted is enclosed in black brackets, new
matter is printed in italics, and existing law in which no
change is proposed is shown in roman):

TITLE 18, UNITED STATES CODE

        *       *       *       *       *       *       *

PART I--CRIMES

        *       *       *       *       *       *       *

CHAPTER 110--SEXUAL EXPLOITATION AND OTHER ABUSE OF CHILDREN

Sec. 2251. Sexual exploitation of children

    [(a) Any person who employs, uses, persuades, induces,
entices, or coerces any minor to engage in, or who has a minor
assist any other person to engage in, or who transports any
minor in or affecting interstate or foreign commerce, or in any
Territory or Possession of the United States, with the intent
that such minor engage in, any sexually explicit conduct for
the purpose of producing any visual depiction of such conduct
or for the purpose of transmitting a live visual depiction of
such conduct, shall be punished as provided under subsection
(e), if such person knows or has reason to know that such
visual depiction will be transported or transmitted using any
means or facility of interstate or foreign commerce or in or
affecting interstate or foreign commerce or mailed, if that
visual depiction was produced or transmitted using materials
that have been mailed, shipped, or transported in or affecting
interstate or fo reign commerce by any means, including by
computer, or if such visual depiction has actually been
transported or transmitted using any means or facility of
interstate or foreign commerce or in or affecting interstate or
foreign commerce or mailed.
    [(b) Any parent, legal guardian, or person having custody or
control of a minor who knowingly permits such minor to engage
in, or to assist any other person to engage in, sexually
explicit conduct for the purpose of producing any visual
depiction of such conduct or for the purpose of transmitting a
live visual depiction of such conduct shall be punished as
provided under subsection (e) of this section, if such parent,
legal guardian, or person knows or has reason to know that such

visual depiction will be transported or transmitted using any
means or facility of interstate or foreign commerce or in or
affecting interstate or foreign commerce or mailed, if that
visual depiction was produced or transmitted using materials
that have been mailed, shipped, or transported in or affecting
interstate or foreign commerce by any means, including by
computer, or if such visual depiction has actually been
transported or transmitted using any means or facility of
interstate or foreign commerce or in or affecting interstate or
foreign commerce or mailed.]

 (a) Any person who, in a circumstance described in
subsection (f), knowingly--

   (1) employs, uses, persuades, induces, entices, or
  coerces a minor to engage in any sexually explicit
  conduct for the purpose of producing any visual
  depiction of such conduct, or transmitting a live
  visual depiction of such conduct;

   (2) produces or causes to be produced a visual
  depiction of a minor engaged in any sexually explicit
  conduct where the production of such visual depiction
  involves the use of a minor engaging in sexually
  explicit conduct and such visual depiction is of such
  conduct;

   (3) transmits or causes to be transmitted a live
  visual depiction of a minor engaged in any sexually
  explicit conduct;

   (4) has a minor assist any other person to engage in
  any sexually explicit conduct during the commission of
  an offense set forth in paragraphs (1) through (3) of
  this subsection; or

   (5) transports any minor in or affecting interstate
  or foreign commerce with the intent that such minor be
  used in the production or live transmission of a visual
  depiction of a minor engaged in any sexually explicit
  conduct,

shall be punished as provided under subsection (e).

 (b) Any parent, legal guardian, or person having custody or
control of a minor who, in a circumstance described in
subsection (f), knowingly permits such minor to engage in, or
to assist any other person to engage in, sexually explicit
conduct knowing that a visual depiction of such conduct will be
produced or transmitted shall be punished as provided under
subsection (e).

 (c)(1) Any person who, in a circumstance described in
paragraph (2), [employs, uses, persuades, induces, entices, or
coerces any minor to engage in, or who has a minor assist any
other person to engage in, any sexually explicit conduct]
engages in any conduct described in paragraphs (1) through (5)
of subsection (a) outside of the United States, its territories
or possessions[, for the purpose of producing any visual
depiction of such conduct,] shall be punished as provided under
subsection (e).

 (2) The circumstance referred to in paragraph (1) is that--

   (A) the person intends such visual depiction to be
  transported or transmitted to the United States, its
  territories or possessions, by any means, including by
  using any means or facility of interstate or foreign
  commerce or mail; or

   (B) the person transports or transmits such visual
  depiction to the United States, its territories or
  possessions, by any means, including by using any means

Case 16-3355, Document 83, 01/25/2018, 2221998, Page29 of 37

or facility of interstate or foreign commerce or mail.

    (d)(1) Any person who, in a circumstance described in paragraph (2), knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering--

        (A) to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; or

        (B) participation in any act of sexually explicit conduct by or with any minor for the purpose of producing a visual depiction of such conduct;

shall be punished as provided under subsection (e).

    (2) The circumstance referred to in paragraph (1) is that--

        (A) such person knows or has reason to know that such notice or advertisement will be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mailed; or

        (B) such notice or advertisement is transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mailed.

    (e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years, but if such person has 2 or more prior convictions under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 35 years nor more than life. Any organization that violates, or attempts or conspires to violate, this section shall be fined under this title. Whoever, in the course of an offense under this section, engages in conduct that results in the death of a person, shall be punished by death or imprisoned for not less than 30 years or for life.

    (f) The circumstances referred to in subsections (a) and (b) are--

        (1) that the person knows or has reason to know that such visual depiction will be--

            (A) transported or transmitted using any means or facility of interstate or foreign commerce;

            (B) transported or transmitted in or affecting interstate or foreign commerce; or

            (C) mailed;

        (2) the visual depiction was produced or transmitted using materials that have been mailed, or shipped or

transported in or affecting interstate or foreign
commerce by any means, including by computer;
    (3) such visual depiction has actually been--
        (A) transported or transmitted using any
        means or facility of interstate or foreign
        commerce;
        (B) transported or transmitted in or
        affecting interstate or foreign commerce; or
        (C) mailed; or
    (4) any part of the offense occurred in a territory
or possession of the United States or within the
special maritime and territorial jurisdiction of the
United States.
  (g) Notwithstanding any other provision of this section, no
criminal charge under subsection (a)(3) may be brought against
an electronic communication service provider or remote
computing service provider unless such provider has
intentionally transmitted or caused to be transmitted a visual
depiction with actual knowledge that such depiction is of a
minor engaged in sexually explicit conduct, nor may any such
criminal charge be brought if barred by the provisions of
section 2258B.

    *       *       *       *       *       *       *

Sec. 2258B. Limited liability for electronic communication service
                providers, remote computing service providers, or
                domain name registrar

  (a) In General.--Except as provided in subsection (b), a
civil claim or criminal charge against an electronic
communication service provider, a remote computing service
provider, or domain name registrar, including any director,
officer, employee, or agent of such electronic communication
service provider, remote computing service provider, or domain
name registrar arising from the response to a search warrant or
other legal process or from the performance of the reporting or
preservation responsibilities of such electronic communication
service provider, remote computing service provider, or domain
name registrar under this section, section 2258A, or section
2258C may not be brought in any Federal or State court.
  (b) Intentional, Reckless, or Other Misconduct.--Subsection
(a) shall not apply to a claim if the electronic communication
service provider, remote computing service provider, or domain
name registrar, or a director, officer, employee, or agent of
that electronic communication service provider, remote
computing service provider, or domain name registrar--
        (1) engaged in intentional misconduct; or
        (2) acted, or failed to act--
            (A) with actual malice;
            (B) with reckless disregard to a substantial
            risk of causing physical injury without legal
            justification; or
            (C) for a purpose unrelated to the response
            to a search warrant or other legal process or
            to the performance of any responsibility or
            function under this section, sections 2258A,
            2258C, 2702, or 2703.
  (c) Minimizing Access.--An electronic communication service
provider, a remote computing service provider, and domain name

```
registrar shall--
        (1) minimize the number of employees that are
    provided access to any image provided under section
    2258A or 2258C; and
        (2) ensure that any such image is permanently
    destroyed, upon a request from a law enforcement agency
    to destroy the image.
```

                *       *       *       *       *       *       *

## Dissenting Views

    H.R. 1761, the ``Protecting Against Child Exploitation
Act,'' is intended to enhance section 2251 of title 18 of the
United States Code, the statute prohibiting the production of
child pornography. Although well-intentioned, the bill's
resulting expansion of section 2251 would subject more
individuals, including young people prosecuted for ``sexting,''
to substantial mandatory prison sentences. We have long-opposed
the imposition of mandatory minimum sentences because they are
unjust, cause prison overcrowding, waste taxpayer money, and
defy common sense. Given the fact that H.R. 1762 would subject
more individuals to mandatory minimum sentencing, we must
respectfully dissent and urge our colleagues to oppose this
legislation when it comes to the floor.

## DESCRIPTION AND BACKGROUND

### DESCRIPTION

    H.R. 1761, the ``Protecting Against Child Exploitation
Act,'' expands and modifies the meaning of ``sexual
exploitation of children,'' thereby creating new offenses that
may be prosecuted under section 2251 of title 18 of the United
States Code, and modifies existing offenses included in that
provision. The bill's amendments to section 2251 create two new
offenses in direct response to the Fourth Circuit's decision in
U.S. v. Palomino-Coronado, which limited the application of the
statute.\1\ In addition to these substantive changes, this bill
reorganizes section 2251 so that the statute can be read more
easily.

---

    \1\U.S. v. Palomino, 805 F.3d 127 (4th Cir. 2015).

---

### BACKGROUND

    Section 2251(a) of title 18 of the United States Code\2\
prohibits individuals from employing, using, persuading,
inducing, enticing, or coercing a minor to engage in sexually
explicit conduct for the purpose of producing a visual
depiction of such conduct--known colloquially as the production
of child pornography. Thus, section 2251(a) generally prohibits
the production of child pornography.

---

    \2\18 U.S.C. 2251(e) (2017) provides that any individual who
violates, or attempts or conspires to violate, section 2251(a) shall be
imprisoned not less than 15 years nor more than 30 years.

---

    In U.S. v. Palomino-Coronado, the Fourth Circuit reversed a

defendant's conviction for violating section 2251(a) based on a
finding that the government failed to prove the defendant acted
for the purpose of producing a visual depiction. The court
reasoned that section 2251(a) contained a specific intent
element, requiring the government prove that production of a
visual depiction was the purpose for engaging in the sexually
explicit conduct. Following this reasoning, the court
determined that there was insufficient evidence that the
defendant sexually abused the child victim for the purpose of
taking a photograph, stating, ``The single photo is not
evidence that Palomino-Coronado engaged in sexual activity with
B.H. to take a picture, only that he engaged in sexual activity
with B.H. and took a picture.''\3\

---

    \3\805 F.3d at 132.

---

    Under the reasoning of the Palomino opinion, a defendant
could admit sexual conduct with a minor and also admit taking a
photo of the conduct, but successfully prevent a conviction by
arguing lack of intent to take the photo. Palomino is not the
first case to examine the meaning and scope of ``for the
purpose of'' in the context of section 2251.\4\ The Fourth
Circuit discussed the examination of this language over the
years by several other circuit courts. As stated by the
Palomino court, section 2251(a) currently criminalizes the use
of a child for an impermissible purpose.

---

    \4\Id. at 130-132.

---

    H.R. 1761 would add new offenses to section 2251 in
response to the Palomino decision. It would explicitly prohibit
the creation of a visual depiction or live transmission of a
minor engaged in sexually explicit conduct; restructure
provisions of section 2251 to clarify the elements of proof
required for each variation of the offense, particularly the
jurisdictional provisions; and ensure that all subsections use
consistent language. The structure of the statute would be
significantly modified for clarity, separating section 2251(a)
into five enumerated offenses codified as section 2251(a)(1)-
(5).

    The bill would add new offenses to prohibit production of,
or causing the production of, a visual depiction of a minor
engaged in sexually explicit conduct; and the transmission of,
or causing the transmission of, a live visual depiction of a
minor engaged in sexually explicit conduct (such as live
streaming sexual abuse). These offenses would be codified as
sections 2251(a)(2) and (3). The current version of the statute
criminalizes the use of a child for an impermissible purpose,
requiring proof of conduct intended to cause a photo to be
taken. These new provisions would criminalize the knowing
creation of a visual depiction or the live transmission of a
minor engaged in sexually explicit conduct, only requiring
proof that a photo was taken.

    Section 2251(a) prohibits having ``a minor assist any other
person to engage in'' any sexually explicit conduct for the
purpose of producing or transmitting a visual depiction of the
conduct. As amended, new section 2251(a)(4) would prohibit
having a minor assist another person to engage in sexually
explicit conduct during the commission of an offense described
in sections 2251(a)(1) through (3). This provision would
include, for example, a photo of a child forced to masturbate

another person.

Subsection 2251(b), which addresses production of child
pornography by parents or guardians, and subsection 2251(c),
which addresses production of child pornography abroad, would
be modified for clarity to ensure that Sections 2251(a) through
(c) are consistent in scope. Pursuant to H.R. 1761, section
2251(c) would be amended to prohibit the live transmission of
child pornography. Apparently, when the ``live transmission''
language was added to section 2251 in 2008,\5\ subsection (c)
was inadvertently overlooked. Jurisdictional language would be
placed in new subsection 2251(f), to improve readability as
well as language establishing jurisdiction over cases within
special maritime and territorial jurisdictions of the United
States.

---

\5\``Providing Resources, Officers, and Technology to Eradicate
Cyber Threats to Our Children Act of 2008'' or the ``PROTECT Our
Children Act of 2008,'' Pub. L. No. 110-401 (2008) (prohibiting the
broadcast of live images of child abuse).

---

## CONCERNS WITH H.R. 1761

### I. H.R. 1761 WOULD SUBJECT MORE INDIVIDUALS TO MANDATORY MINIMUM PENALTIES

Although this bill is intended to protect children from
being victimized through their depiction in child pornography,
H.R. 1761 unfortunately subjects new classes of offenders to
mandatory minimum sentencing. This bill expands section 2251 to
include three new ways in which an individual may violate the
prohibition against the production or dissemination of child
pornography. Consequently, more offenders would be subject to
the existing lengthy mandatory minimum terms of imprisonment of
15 years, 25 years, or 35 years codified in section 2251.\6\ To
eliminate this result, Ranking Member John Conyers, Jr. offered
an amendment during the Committee's consideration of this bill
to eliminate the mandatory minimum penalties applicable to
section 2251 while retaining the existing maximum penalties,
which are very high. The amendment was unfortunately defeated
by a vote of 9 to 17.

---

\6\See 18 U.S.C. 2251(e) (2017).

---

We cannot overlook the consequences of mandatory minimum
sentencing, which the Committee on the Judiciary helped expose
in recent years.\7\ For far too long, the federal criminal
justice system has relied on an unsustainable system of mass-
incarceration that is largely driven by inflexible mandatory
minimum sentencing. Mandatory minimum penalties are applied
inconsistently, contribute to unwarranted sentence disparity,
disproportionate and excessively high sentences, and constitute
neither a deterrent nor an effective law enforcement tool.
Minority communities across the country have been especially
impacted by mandatory minimum sentences. In an effort to
earnestly reconcile the lessons learned in recent years, it is
necessary to begin eliminating mandatory minimum penalties.\8\

---

\7\See, e.g., Agency Perspectives: Hearing Before the Over-
criminalization Task Force of 2014, H. Comm. on the Judiciary, 113th
Congress (2014) (statement of Judge Patti B. Saris, Chair, U.S.

Sentencing Commission); Sentencing Reform Act of 2015: Hearing on H.R.
3713 Before the H. Comm. on the Judiciary, 114th Congress (2015).

\8\See, e.g., Michelle Alexander, The New Jim Crow: Mass
Incarceration in the Age of Colorblindness (2010); Lauren-Brooke Eisen,
Mandatory Minimum Sentences--Time to End Counterproductive Policy,
South Coast Today (June 9, 2015).

---

Of course, sex offenses that victimize children are
reprehensible. Perpetrators of such crimes should be held
accountable and we should do all we can to prevent such crimes
and assist victims. Yet, as stated in a letter from Families
Against Mandatory Minimums, ``even for the most serious crimes,
courts should have flexibility to fit the punishment to each
crime and each offender.''\9\ Sentencing based on mandatory
minimum penalties inappropriately removes sentencing discretion
from judges. Ranking Member Conyers's amendment would have
placed discretion back in the hands of judges, who could still
impose severe penalties, up to the maximum terms, as currently
provided for in section 2251, when appropriate after evaluating
the facts and circumstances of each case. The removal of
mandatory minimum penalties will not hinder imposition of
proportionate and just punishment for these very serious
offenses.

---

\9\Letter from Kevin Ring, President, Families Against Mandatory
Minimums, to Chairman Bob Goodlatte (R-VA) & Ranking Member John
Conyers, Jr., H. Comm. on the Judiciary (Apr. 4, 2017) (on file with H.
Comm. on the Judiciary Democratic staff).

---

## II. H.R. 1761 WOULD SUBJECT YOUNG AMERICANS WHO PARTICIPATE IN ``SEXTING'' TO MANDATORY MINIMUM PENALTIES AND SEX OFFENDER REGISTRY REQUIREMENTS

Teenagers who send seemingly innocuous photos of a sexual
nature to their friends may be prosecuted pursuant to the
current version of section 2251 and, thus, subject to mandatory
prison sentences of at least 15 years. Section 2251 lacks any
``Romeo and Juliet'' exceptions, i.e., the penalties apply even
when conduct is consensual and when the victim and offender are
close in age. For example, if a 19-year-old and a 17-year-old
videoed themselves engaged in a sexual act and then emailed the
video to their own email accounts, the 19-year-old would be
subject to the mandatory minimums set by section 2251.\10\

---

\10\Id.

---

The pervasiveness of personal devices, such as cellphones
and tablets, has given rise to teenage ``sexting''--the use of
these devices to send and receive sexually explicit messages or
images. Research has shown that teenage sexting is widespread,
even among middle school-aged youth.\11\ A study conducted by
Drexel University found that more than half of the
undergraduate students who took part in an online survey said
that they sexted when they were teenagers.\12\ Thirty percent
said they included photos in their messages and 61 percent did
not know that sending nude photos via text could be considered
child pornography. Another online survey published in 2008
found that almost 40 percent of teenagers between ages 13 and
19 had sent sext messages, almost 50 percent had received a
sext message, and 20 percent posted nude or semi-nude content

online.\13\ Under section 2251, teenagers prosecuted for taking
and sending such messages would be subject to mandatory prison
sentences of at least 15 years and sex offender registration.
------------------------------------------------------------------------------
    \11\Dep't of Justice, Office of Violence Against Women, Futures
Without Violence. Effective Responses to Teen Sexting: A Guide for
Judges and Other Professionals (2009).
    \12\H. Strohmaier et al., Youth Sexting: Prevalence Rates, Driving
Motivations, and the Deterrent Effect of Legal Consequences, 11 D. Sex
Res Soc Policy 245 (2014).
    \13\Sex and Tech: Results from a Survey of Teens and Young Adults,
The National Campaign to Prevent Teen and Unplanned Pregnancy and Cosmo
Girl.com (2008).
------------------------------------------------------------------------------
    Crime, Terrorism, Homeland Security, and Investigations
Ranking Member Shelia Jackson Lee offered two amendments during
the Committee's consideration of this bill that would have
provided an opportunity to avoid mandatory minimum sentences
and sex offender registry requirements in cases involving
sexting by teenagers. Unfortunately, both amendments were
defeated. The first amendment, defeated by a vote of 11 to 18,
would have allowed for the imposition of misdemeanor penalties
as an alternative, in cases involving a defendant who is no
more than 19 years old and no more than four years older than
the victim, where the victim was a willing participant in
producing or transmitting a sexually explicit video or video.
Additionally, since sex offender registration can inflict
lifelong consequences that affect registrants' ability to work,
obtain an education, or find housing, the Rep. Jackson Lee's
amendment would have specifically exempted teenagers who were
involved in sexting and convicted of the proposed misdemeanor
offense from federal sex offender registration requirements.
The amendment, however, was defeated by a vote of 9 to 18.

                            CONCLUSION

    No child pornography offense should go unpunished. H.R.
1761, however, would subject more individuals to mandatory
minimum penalties at a time when the federal criminal justice
system should be moving away from such sentencing schemes.
While well-intentioned, the bill would exacerbate a problem
that is clearly unfair and unnecessary.
    Accordingly, we oppose H.R. 1761 and we urge our colleagues
to join us in opposition.

                            Mr. Conyers, Jr.
                            Ms. Jackson Lee.
                            Mr. Johnson, Jr.
                            Mr. Gutierrez.
                            Ms. Bass.
                            Mr. Richmond.
                            Ms. Jeffries.



CERTIFIED MAIL

7015 1520 0001 8107 4552

Reg. No. 24055-052
UTES PENITENTIARY, Tucson
P Box # 24550
Arizona.    85739

LEGAL MAIL

⇔24099-052⇔
Second Circuit
40 Foley SQ
Court of Appeals
NEW YORK, NY 10007
United States

Second Circuit
Court of Appeals
40 Foley Square
New York, N.Y. 10007

